Michael W. Sobol (SBN 194857)
msobol@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

Steven W. Teppler (*pro hac vice*)
steppler@abbottlawpa.com
ABBOTT LAW GROUP, P.A.
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: 904.292.1111

Joseph J. Siprut (*pro hac vice*)
jsiprut@siprut.com
SIPRUT, PC
17 North State Street, Suite 1600
Chicago, IL 60602
Telephone: 312.236.0000

Ariana J. Tadler (*pro hac vice*)
atadler@milberg.com
MILBERG, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: 212.946.9453

Mark S. Goldman (*pro hac vice*)
goldman@lawgsp.com
GOLDMAN SCARLATO & PENNY, P.C.
101 E. Lancaster Avenue, Suite 204
Wayne, PA 19087
Telephone: 484.342.0700

*Attorneys for Plaintiffs and the Proposed Class
Additional Counsel listed on Signature Page*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INTUIT DATA LITIGATION | Master Docket No. 15-CV-1778-EJD |
| THIS DOCUMENT RELATES TO: | **CONSOLIDATED AMENDED COMPLAINT** |
| **ALL ACTIONS** | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |

1                  **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

2             Pursuant to the Court's August 24, 2015 Order (Dkt. 39), Plaintiffs submit this

3  Consolidated Amended Complaint.

4                           **INTRODUCTION**

5       1.      Defendant Intuit, Inc. ("Intuit") has failed to provide adequate security for the safe

6  use of its product TurboTax, tax preparation software used by an estimated 30 million American

7  taxpayers every year.  This resulted in the disclosure and use of customers' most sensitive and

8  personal private information, as well as the filing of thousands of fraudulent tax returns with

9  federal and state governments.

10       2.      Intuit knew or should have known that criminals were using its product to defraud

11  both innocent consumers and the government.  Indeed, as discussed below, Intuit knew or should

12  have known precisely how criminals used its product to perpetrate the fraud, but it affirmatively

13  chose not to take steps to prevent it.

14       3.      Through its knowing, reckless, and negligent acts, Intuit violated California's

15  Unfair Competition Laws, Bus. & Prof. Code §§ 17200, *et seq.*, and California's Customer

16  Records Act, Cal. Civ. Code §§ 1798.81.5, 1798.92.  Intuit also violated the common law by

17  aiding and abetting fraud, negligently enabling third-party imposter fraud, negligence, breach of

18  contract, and breach of the implied warranty of merchantability.  By retaining revenues derived

19  from its policy of encouraging and facilitating fraud rather than protecting consumers, Intuit has

20  been unjustly enriched at the expense of Plaintiffs and the Class.

21       4.      Plaintiffs in this action are victims of identity theft and fraud who discovered that

22  Intuit facilitated the filing of tax returns using their Social Security numbers without their consent

23  or authorization.  Some of these Plaintiffs were also victims of Intuit's failure to protect their

24  personal and financial information; i.e., criminals stole these Plaintiffs' personal information from

25  Intuit and then used TurboTax to file fraudulent tax returns based on that stolen data.

26       5.      Plaintiffs bring this action for damages and equitable and other relief as stated

27  herein, including for a Court order requiring Intuit to implement meaningful security measures to

28  protect its users and the public at large.

**THE PARTIES**

6.      Defendant Intuit, Inc. is headquartered in Mountain View, California, and incorporated under the laws of the State of Delaware.  Intuit markets and sells TurboTax, a tax preparation software product and service.

7.      Plaintiff Richard Brown is a resident and citizen of Hanover, Pennsylvania.

8.      Plaintiff Christine Diaz is a citizen and resident of Avon, Ohio.

9.      Plaintiff Michelle Fugatt is a citizen and resident of Athens, Alabama.

10.      Plaintiff Carol Knoch is a resident and citizen of Joliet, Illinois.

11.      Plaintiff James Lebinski is a resident and citizen of Monroe, Connecticut.

12.      Plaintiff Todd Siegel is a resident and citizen of Murrieta, California.

13.      Plaintiff David Stock is a resident and citizen of Baltimore, Maryland.

14.      Plaintiff Marilyn Williams is a resident and citizen of Marlboro, Maryland.

**JURISDICTION & VENUE**

15.      Pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, this Court has subject matter jurisdiction over this putative nationwide class action because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, some members of the putative Class are citizens of states different than Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.      This Court has personal jurisdiction over Intuit because its corporate headquarters are in California, Intuit conducts substantial business in California, and Intuit purposefully placed its tax preparation and filing products and services into the stream of commerce within California and throughout the United States.

17.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(1) because Intuit is headquartered in this District, and a substantial part of the events and omissions giving rise to the claims alleged herein occurred within this District.  On information and belief, a substantial portion of the TurboTax software application and information security policy development took place within this District in Mountain View, California.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

**INTRADISTRICT ASSIGNMENT**

18.     Assignment to this Division is appropriate under Civil Local Rule 3-2 because Intuit is headquartered in Santa Clara County, within the San Jose Division of this District.

**FACTS COMMON TO ALL COUNTS**

I.     **Intuit's Power in the Lucrative Market for Tax Preparation Software**

19.     Intuit is an American software company that develops financial and tax preparation software and related services.  At the close of the 2014 fiscal year, Intuit had a market capitalization of over $23 billion, $4.5 billion in annual revenue, and approximately 8,000 employees.

20.     At all relevant times, Intuit has owned, manufactured, promoted, and sold TurboTax, one of the most widely-used tax preparation products in the United States, which has a particularly large presence in the market for electronic tax preparation and filing ("e-filing").

21.     The majority of American taxpayers e-file their tax returns.  Of approximately 144 million tax returns filed in 2015, more than 123 million returns were e-filed. [1]

22.     Of the approximately 50 million "self-prepared" tax returns filed in 2015,[2] an estimated 91% were prepared on computers using tax preparation software.[3]  TurboTax is the most commonly used such software.

23.     Intuit markets TurboTax as more than just a product to aid in tax preparation.  TurboTax also provides its customers with the option to obtain Intuit's "expert" and "professional" services in connection with tax preparation.  Intuit states on its website that its "experts are always standing by to help you with any tax situation," and Intuit encourages TurboTax customers to "[g]et answers to both tax and technical questions from tax experts" on

---

[1] Internal Revenue Service, *Filing Season Statistics for Week Ending Aug. 28, 2015,* http://www.irs.gov/uac/Newsroom/Filing-Season-Statistics-for-Week-Ending-Aug.-28,-2015 (last visited Sept. 28, 2015).

[2] *Id.*

[3] Internal Revenue Service, *More than 122 Million Returns E-Filed in 2013,* http://www.irs.gov/uac/More-than-122-million-Returns-eFiled-in-2013 (last visited Sept. 28, 2015).

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

the TurboTax website.[4]  Intuit offers customers the ability to "chat live or call to speak with" one of its "credentialed tax experts," which, Intuit explains at a hyperlink in that text, means that its "credentialed tax experts, all CPAs and EAs, are here to talk to you one-on-one, by phone if you need it."[5]

24.     TurboTax can be utilized online at www.turbotax.com, or it can be installed on the customer's personal computer.  All versions of TurboTax require customers to enter their sensitive and personal information in order to prepare (and ultimately file) tax returns.

25.     Intuit affirmatively represents to TurboTax users that it safeguards their personal information.  For example, in a section of Intuit's Software End User License Agreement for TurboTax Desktop Software-Tax Year 2010, entitled "Privacy and Use of Personal and Tax Return Information," Intuit states: "At Intuit we place the highest importance on respecting and protecting the privacy of our customers.  Our most important asset is our relationship with you. We want you to feel comfortable and confident when using our products and services and with entrusting your personal and tax return information to us."

26.     Likewise, Intuit's TurboTax website represents that "[a]ll TurboTax platforms offer a **secure,** easy-to-use experience."[6]

27.     On information and belief, approximately 29 million individuals used TurboTax in 2015 to file their 2014 tax returns.

**II.     Intuit Knew the Risk of Criminal Fraud and Data Theft on TurboTax**

28.     Intuit knew that criminals were using TurboTax to file fraudulent tax returns and claim tax refunds in the names of innocent taxpayers.  Indeed, these risks were common knowledge in the industry.

29.     TurboTax's deputy general counsel Michael Lyons indicated that Intuit did not take meaningful efforts to prevent fraudulent e-filings because Intuit felt that criminals would

---

[4] Intuit TurboTax, *We've got you covered*, https://turbotax.intuit.com/best-tax-software/personalized-tax-services/ (last visited Sept. 28, 2015).
[5] *Id.*
[6]  Intuit TurboTax, *Sign-in Page*, https://turbotax.intuit.com/ (last visited Sept. 28, 2015) (emphasis added).

simply use some other software for fraudulent returns if they were not using TurboTax: "As you can imagine, the bad guys being smart and savvy, they saw [Intuit's previous measures to prevent fraudulent e-filings] and noticed it, they just went somewhere else . . . . The amount of fraudulent activity didn't change. The landscape didn't change. It was like squeezing a balloon. They recognized that TurboTax returns were getting stopped at the door. So they said, 'We'll just go over to H&R Block, to TaxSlayer or TaxAct, or whatever.' And all of a sudden we saw what we call 'multi-filer activity' had completely dropped off a cliff but the amount that the IRS reported coming through digital channels and through their self-reported fraud network was not changing at all. The bad guys had just gone from us to others."[7]

30.     Similarly, David Williams, Intuit's chief tax officer has been quoted as saying, "If any one company, ours or any other company, decided to take a whole bunch of actions that would 100% determine that every single one of their customers was exactly who they said they were, that would not stop fraud in the industry . . . . It would just push the fraud around. It would squeeze the balloon."[8]

31.     In 2013, the IRS publicly announced that use of an individual's personally identifiable information to commit tax fraud, such as to file a fraudulent tax return, was the most common scam that taxpayers could encounter during the year.[9]

32.     The Federal Trade Commission ("FTC") reports that in 2014, it received 332,646 consumer complaints specifically reporting incidents of identity theft—more than any other

---

[7] KrebsOnSecurity, *TurboTax's Anti-Fraud Efforts Under Scrutiny* (Feb. 15, 2015) http://krebsonsecurity.com/2015/02/turbotaxs-anti-fraud-efforts-under-scrutiny/ (last visited Sept. 28, 2015).

[8] Jonnelle Marte and Craig Timberg, *Who's to Blame When Fraudsters Use TurboTax to Steal Refunds?*, Wash. Post (Mar. 4, 2015), http://www.washingtonpost.com/news/get-there/wp/2015/03/04/unprecedented-surge-in-online-tax-scams-raises-questions-about-turbotax/ (last visited Sept. 28, 2015).

[9] Internal Revenue Service, *IRS Releases the Dirty Dozen Tax Scams for 2013*, http://www.irs.gov/uac/Newsroom/IRS-Releases-the-Dirty-Dozen-Tax-Scams-for-2013 (last visited Sept. 28, 2015).

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

consumer complaint category, including debt collection.[10]  The largest portion of these identity

theft complaints were specifically related to tax identity thefts.[11]

33.     In just the past four years, the U.S. Department of Justice ("DOJ") has issued

dozens of press releases concerning the use of a taxpayer's personally identifiable information to

fraudulently claim a tax refund in the name of the victim, which the DOJ refers to as "Stolen

Identity Refund Fraud," or "SIRF."[12]

34.     As a major participant in the tax software market, Intuit had access to such

information about the risks of online tax fraud.

35.     Indeed, the popularity of e-filing has, itself, made it easier and more appealing for

criminals to file fraudulent tax returns.  According to the DOJ, "criminal enterprises are able to

exploit the speed and relative anonymity of highly automated systems for storing personal

information, preparing and filing tax returns electronically, and generating income tax refunds

quickly—often in the form of electronic payments."[13]

36.     Intuit knew, well before the start of tax season in 2015, that criminals had

unprecedented access to the kinds of information needed to file fraudulent tax returns and illicitly

obtain tax refunds.

37.     Sensitive, personally identifiable information about millions of Americans has

recently become available to criminals as the result of what are commonly known as data

breaches.[14]  Many of these breaches may in fact have been perpetrated by criminals whose

ultimate objective was to use the information they obtained to e-file fraudulent tax refund claims,

or to sell the data to other criminals who would.

---

[10] Federal Trade Commission, *Consumer Sentinel Network Data Book for January-December 2014*, https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2014/sentinel-cy2014-1.pdf, at 5 (last visited Sept. 28, 2015).
[11] *Id.*, at 6.
[12] Department of Justice, *Stolen Identity Refund Fraud Press Releases*, http://www.justice.gov/tax/stolen-identity-refund-fraud-press-releases (last visited Sept. 28, 2015).
[13] Department of Justice, *Stolen Identity Refund Fraud*, http://www.justice.gov/tax/stolen-identity-refund-fraud (last visited Sept. 28, 2015).
[14] *See* Wikipedia, *Data Breach*, https://en.wikipedia.org/wiki/Data_breach (discussing selected widely known data breaches) (last visited Sept. 28, 2015).

38.     There are numerous widely-reported data breaches that were publicized before and during tax season in 2015, early enough that Intuit had ample time to respond by implementing measures to:  (1) prevent criminals from using Intuit as a platform to file fraudulent returns based on information stolen in those breaches; and (2) protect its customers from similar data breaches. For example:

      a.    In January 2014, Target Corporation confirmed that the names, mailing addresses, phone numbers, email addresses, and payment information of up to 110 million customers had been obtained by hackers.[15]

      b.    In summer 2014, JP Morgan Chase confirmed that the names, email and mailing addresses, and phone numbers of account holders had been obtained by hackers, in a breach that affected 76 million households and 7 million small businesses.[16]

      c.    In late 2014, Home Depot confirmed that files containing approximately 53 million email addresses were stolen, and approximately 56 million credit and debit cards were compromised by hackers.[17]

      d.    In December 2014, Sony Pictures Entertainment confirmed that the names, mailing addresses, Social Security numbers and financial information of its employees and their families, as well as e-mails between employees and information about executive salaries at the company, had been obtained by hackers.[18]  Forty-seven thousand of these stolen Social Security numbers

---

[15] Elizabeth Harris and Nicole Perlroth, *For Target, the Breach Numbers Grow*, N.Y. Times (Jan. 10, 2014), http://www.nytimes.com/2014/01/11/business/target-breach-affected-70-million-customers.html (last visited Sept. 28, 2015).

[16] Dominic Rushe, *JP Morgan Chase Reveals Massive Data Breach Affecting 76m Households*, The Guardian, http://www.theguardian.com/business/2014/oct/02/jp-morgan-76m-households-affected-data-breach (last visited Sept. 28, 2015).

[17] Robin Sidel, *Home Depot's 56 Million Card Breach Bigger than Target's*, Wall St. J. (Sept. 18, 2014), http://www.wsj.com/articles/home-depot-breach-bigger-than-targets-1411073571 (last visited Sept. 28, 2015).

[18] Sony Pictures, *Letter to Sony Pictures Entertainment Employees* (Dec. 8, 2014), http://oag.ca.gov/system/files/12%2008%2014%20letter_0.pdf (last visited Sept. 28, 2015).

subsequently appeared more than 1.1 million times on 601 publicly-posted files.[19]

    e.    In February 2015, health insurer Anthem, Inc. announced that the names, birth dates, Social Security numbers, health care ID numbers, home addresses, email addresses, and employment information, including income data, of approximately 80 million people had been exposed in a data breach.[20]

    f.    In March 2015, health insurer Premera Blue Cross confirmed that claims data, including clinical information, along with banking account numbers, Social Security numbers, birth dates, and other data of 11 million customers had been compromised by hackers.[21]

39.    As a repository of lucrative personally identifiable information, Intuit was on notice that criminals would likely target the data stored by TurboTax.

40.    As a provider of e-filing software, which is a mechanism for criminals to turn stolen personal information into untraceable cash, Intuit was on notice that criminals would likely attempt to use TurboTax to monetize personally identifiable information obtained through data breaches and/or purchased on the black market.

41.    The TurboTax website makes clear that TurboTax is an ideal mechanism for monetizing such data.  It states that the information needed to file a tax return includes "Social Security numbers and dates of birth for you, your spouse, and your dependents."[22]  Indeed, Intuit advertises that on TurboTax, "[y]ou don't really need anything but your email address to get

---

[19] Identity Finder, *Identity Finder Research Uncovers Depth of Sony Breach* (Dec. 5, 2014), http://www.identityfinder.com/us/Press/20141204210449 (last visited Sept. 28, 2015).

[20] Tim Evans, *Anthem Data Breach*, USA Today (Feb. 5, 2015), http://www.usatoday.com/story/tech/2015/02/05/anthem-data-breach-protect-customers/22934777/ (last visited Sept. 28, 2015).

[21] Reuters, *Premera Blue Cross Says Data Breach Exposed Medical Data* (Mar. 27, 2015), http://www.nytimes.com/2015/03/18/business/premera-blue-cross-says-data-breach-exposed-medical-data.html (last visited Sept. 28, 2015).

[22] Intuit TurboTax, *Tax Preparation Checklist*, https://turbotax.intuit.com/tax-tools/tax-tips/Tax-Planning-and-Checklists/Tax-Preparation-Checklist/INF12048.html (last visited Sept. 28, 2015).

started! . . . You don't even need to have your W–2s or 1099s, we can import that information directly from more than a million participating employers and financial institutions."[23]

42.     Intuit places few requirements on individuals, including criminals, who seek to file tax returns using TurboTax.  For example, TurboTax users may choose to receive tax refunds on a prepaid credit or debit card, such as a Walmart Money Card, rather than provide their checking account information.

**III.     Intuit Failed to Protect Consumers From These Known and Foreseeable Risks**

43.     Although Intuit was on notice of the risks to taxpayers before a single tax return was filed in 2015 (and knew that TurboTax would be used to facilitate identity theft and fraud), Intuit failed to implement minimally adequate security measures to prevent criminals from illicitly using TurboTax.

44.     Intuit's failure to implement such measures allowed criminals easier access to the personal information that customers had previously entered using TurboTax software, and enhanced criminals' ability successfully to file returns using data obtained from sources other than TurboTax.

45.     These failures resulted in an extreme 3,700% increase in fraudulent state tax refund filings during the most recent tax season.[24]  On information and belief, and as described below, the vast majority of this fraud was perpetrated through the use of TurboTax.

46.     In early February 2015, just as tax season began to get underway, Intuit announced that a "small handful of states" had notified it of an uptick in suspicious filings.  Intuit responded by temporarily suspending e-filings over TurboTax.[25]

47.     Until the suspension, TurboTax customers could file a state return without also filing a federal return—an option not offered by Intuit's competitors.[26]

---

[23] Intuit TurboTax, *Frequently Asked Questions*, https://turbotax.intuit.com/best-tax-software/common-questions.jsp (last visited Sept. 28, 2015).

[24] KrebsOnSecurity, *The Rise in State Tax Refund Fraud* (Feb. 15, 2015), http://krebsonsecurity.com/2015/02/the-rise-in-state-tax-refund-fraud/ (last visited Sept. 28, 2015).

[25] Katie Lobosco and Chris Isidore, *TurboTax Restarts E-Filing of State Tax Returns After Fraud Concerns*, CNN Money (Feb. 6, 2015), http://money.cnn.com/2015/02/06/news/companies/turbotax/ (last visited Sept. 28, 2015).

48.     A February 6, 2015 article on the *Wall Street Journal* website noted that aside from TurboTax, "[n]o other providers have yet been identified as a source of fraudulent state e-filed returns."[27]  It further quoted a spokesman from TurboTax competitor H&R Block who said, "H&R Block has no indication of similar problems with its state tax filings.  H&R Block continues to file state and federal returns as usual."  A spokesman for another TurboTax competitor, TaxAct, stated that it was not seeing similar fraud issues, and that customers could file state and federal returns as usual.[28]

49.     According to the Utah Tax Commission, as of February 2015, nineteen states—nearly half of all U.S. States—had identified a significant number of suspicious e-filed tax returns.[29]  Utah tax officials announced that all of the potentially fraudulent tax returns identified in the state had been filed through TurboTax.[30]

## IV.     Intuit Chose to Facilitate Tax Fraud to Boost its Revenues and Market Share

50.     On information and belief, criminals who use TurboTax to file fraudulent tax returns do so either by taking over existing accounts, such as by obtaining or guessing a victim's existing TurboTax login information, or by procuring a victim's personally identifiable information in some other way, and creating a new TurboTax account with that information.

51.     Intuit was aware that criminals used both such mechanisms to commit fraud with the aid of TurboTax.  In a February 2015 interview with the computer security and cybercrime blog KrebsOnSecurity.com, Intuit's Chief Information Security Officer reportedly stated that about 40% of the returns flagged as likely fraudulent by Intuit were the result of account takeovers, while the other 60% appeared to come from the use of personally identifiable information obtained from third-party sources.

---

*Footnote continued from previous page*

[26] Laura Sanders, *TurboTax Update: One Month After the E-Filing Halt*, Wall St. J. (Mar. 4, 2015), http://blogs.wsj.com/totalreturn/2015/03/04/turbotax-update-one-month-after-the-e-filing-halt/ (last visited Sept. 28, 2015).

[27] Laura Sanders, *TurboTax Halts State E-Filing Amid Data-Breach Probe*, Wall St. J. (Feb. 6, 2015), http://blogs.wsj.com/totalreturn/2015/02/06/turbotax-halts-e-filing-of-state-tax-returns/. (last visited Sept. 28, 2015).

[28] *Id.*

[29] *Id.*

[30] *Id.*

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

52.     Criminals need not make any financial outlay to file fraudulent tax returns on TurboTax.  On information and belief, criminals pay Intuit's "tax preparation fee" in one of two ways:  by using stolen credit cards, or by opting to deduct the cost of such processing directly from the fraudulently-obtained tax refund.

53.     If criminals use stolen credit cards to pay the tax preparation fee, to purchase Intuit's desktop TurboTax software, or for other TurboTax products or services, Intuit retains the revenue from those transactions whether or not the fraudulent tax returns are ultimately accepted by the IRS or appropriate state agency.[31]

54.     Because Intuit retains the revenues from such use of stolen credit cards, Intuit has a financial incentive to "look the other way" when criminals choose TurboTax as the instrument of their fraud.

55.     If criminals opt to deduct TurboTax's tax preparation fee from the fraudulently-obtained tax refund, Intuit assesses an additional charge for its "refund processing service" of approximately $34.99.[32]  Intuit then receives and retains revenue from such filings after the tax return is accepted by the IRS.[33]  If the IRS or appropriate state agency determines *after* making such payment that the relevant tax return was fraudulent, then, on information and belief, the agency does not seek reimbursement from Intuit for these fees.

56.     On information and belief, if the IRS or appropriate state agency determines that a tax return was fraudulent *prior* to paying Intuit's fees, and rejects the tax return, then Intuit sends a bill for its fees to the individual in whose name the rejected tax return was submitted, i.e., the victim of the fraud.  Because such victims are unlikely to pay bills for fraudulently-filed tax returns, Intuit has a financial incentive to maximize the number of fraudulent returns that are accepted, and paid, by the agency to which they are submitted.

---

[31] Intuit TurboTax, *TurboTax FAQ: Can I get a refund of the e-filing fee if my TurboTax Online return is rejected?*, https://ttlc.intuit.com/questions/1901176-can-i-get-a-refund-of-the-e-filing-fee-if-my-turbotax-online-return-is-rejected (last visited Sept. 28, 2015).

[32] Intuit TurboTax, *TurboTax FAQ: What is the Refund Processing Service?*, https://ttlc.intuit.com/questions/1900596-what-is-the-refund-processing-service (last visited Sept. 28, 2015).

[33] *Id.*

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

57.     In addition to these revenue streams, Intuit also earns illicit revenues from the victims of tax fraud perpetrated over TurboTax.  Such victims, who prepare their legitimate tax returns using TurboTax prior to discovering the fraud, are charged Intuit's "tax preparation fee," even though their tax returns will subsequently be rejected because a fraudulent return had already been filed using their identities.[34]  On information and belief, once TurboTax collects fees from such victims, those fees are non-refundable.

58.     As stated by the commissioner of the Alabama Department of Revenue, discussing the large number of fraudulent tax returns filed using TurboTax, "[c]ommercial tax preparation software vendors . . . are driven by profit. . . The easier they make it to file a return, the more customers they can get and the more profitable they will become.  There is no incentive for them to stop fraud."[35]  Through TurboTax, Intuit makes filing fraudulent returns especially easy.

## V.     Intuit Ignored its Own Security Experts to Bolster Short-Term Revenues

59.     In mid-2015, two former Intuit employees reported that Intuit had made millions of dollars in illicit revenue by knowingly processing state and federal tax returns filed by criminals and by purposefully failing to implement security measures that would have prevented the widespread fraud that occurred in 2015.

        a.     Robert Lee, who worked as a security business partner at Intuit's consumer tax group until July 2014, said in an interview with KrebsOnSecurity.com that he and his team had developed sophisticated models for identifying and closing accounts that were being used to commit tax refund fraud, but Intuit refused to adopt such basic policies.[36]

                i.     In that interview, Mr. Lee reportedly stated, "If I sign up for an account and file tax refund requests on 100 people who are not me, it's

---

[34] Some of these individuals presumably are also charged for the purchase of TurboTax software.

[35] Jonnelle Marte and Craig Timberg, *Who's to Blame When Fraudsters Use TurboTax to Steal Refunds?*, Wash. Post (Mar. 4, 2015), http://www.washingtonpost.com/news/get-there/wp/2015/03/04/unprecedented-surge-in-online-tax-scams-raises-questions-about-turbotax/ (last visited Sept. 28, 2015).

[36] KrebsOnSecurity, *TurboTax's Anti-Fraud Efforts Under Scrutiny* (Feb. 15, 2015) http://krebsonsecurity.com/2015/02/turbotaxs-anti-fraud-efforts-under-scrutiny/ (last visited Sept. 28, 2015).

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

obviously fraud . . . . We found literally millions of accounts that were 100% used only for fraud.  But management explicitly forbade us from either flagging the accounts as fraudulent, or turning off those accounts."[37]

    ii.    Some of the basic policies that Intuit rejected, according to Mr. Lee, include blocking the re-use of the same Social Security number across a certain number of TurboTax accounts, and preventing the same account from filing more than a small number of tax returns.[38]

    b.    Shane MacDougall, a former Intuit security engineer who resigned from Intuit in February 2015, also went public about Intuit's deliberate failure to implement adequate security measures.  Indeed, Mr. MacDougall filed an official whistleblower complaint with the U.S. Securities and Exchange Commission exposing Intuit's deliberate decision to reject preventative security measures for e-filings and, instead, to facilitate criminals' efforts to commit fraud using TurboTax.[39]

    i.    According to KrebsOnSecurity.com, Mr. MacDougall's whistleblower complaint alleges that Intuit systematically prioritized profits over ethics when it came to its processing of fraudulent tax filings.[40]

    ii.    Mr. MacDougall has stated that he repeatedly raised issues with Intuit executives about trying to rectify ongoing tax fraud, but was continuously rebuffed and told that Intuit could not do anything that would "hurt the numbers."[41]

    60.    On information and belief, one of Intuit's policies to secure a competitive advantage over competitors in attracting customers, including criminals, is to enforce an unnecessary three-week delay between

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

1                Intuit's determination that a tax return is suspicious and its reporting of

2                those suspicions to the IRS.[42]  Three weeks is approximately the amount of

3                time it takes the IRS to process a return and issue a refund.[43]  This delay

4                increases the likelihood that, if a fraudulent tax return is filed, the fraud

5                will not be discovered until *after* Intuit gets paid.

6      61.     An internal Intuit strategy presentation reportedly obtained by the Washington

7 Post showed that the number of "suspicious" customers who successfully filed a return using

8 TurboTax grew from about 900,000 in 2010 to about 2.5 million in 2012.[44]

9      62.     Only on February 5, 2015, under pressure from states that had noticed a dramatic

10 number of suspicious tax returns being submitted over TurboTax, did Intuit temporarily halt

11 transmission of state e-filing tax returns.

12     63.     Even then, Intuit failed to notify its customers that their personal information, as

13 maintained by Intuit, had been used to file fraudulent tax returns.  Intuit also failed to notify non-

14 customers that their personal information had been improperly used to file fraudulent tax returns.

15     64.     On February 13, 2015, Intuit finally implemented a two-step authentication

16 process, a basic security measure commonly employed by websites including social media

17 providers.

18                **FACTS PERTAINING TO PLAINTIFFS**

19 **I.**     **Richard Brown**

20     65.     Plaintiff Richard Brown has never been a TurboTax customer.  At no time has he

21 ever provided information to TurboTax or authorized it to file any tax returns on his behalf.

22     66.     On or about March 2, 2015, Mr. Brown's accountant informed him that he could

23 not e-file Mr. Brown's federal tax return because a fraudulent federal tax return had already been

24 filed using Mr. Brown's Social Security number.

---

[42] *Id.*

[43] *Id.*

[44] Jonnelle Marte and Craig Timberg, *Who's to Blame When Fraudsters Use TurboTax to Steal Refunds?*, Wash. Post (Mar. 4, 2015), http://www.washingtonpost.com/news/get-there/wp/2015/03/04/unprecedented-surge-in-online-tax-scams-raises-questions-about-turbotax/ (last visited Sept. 28, 2015).

67. On or about April 23, 2015, Mr. Brown received a bill from Intuit seeking $37.09 for "TURBOTAX ONLINE DELUXE TY2014 PREP."

68. On or about April 24, 2015, Mr. Brown sent letters addressed to Intuit and the vice president of customer advocacy for TurboTax, Bob Meighan, explaining that he was the victim of identity theft and asking for assistance tracking the IP address associated with the fraudulent tax return filed through TurboTax using his Social Security number. In his letters, Mr. Brown recommended that Intuit eliminate its refund processing service so that it could use credit card data to further verify the identity of the individual paying to file a tax return. Mr. Brown has yet to receive a response to his letters.

69. Mr. Brown has expended considerable time and resources dealing with the ramifications of the fraud. To guard against further identity theft, Mr. Brown pays Equifax $29.95 each month for identity theft protection and credit monitoring. Mr. Brown has additionally spent hours contacting various government entities, including the IRS, the FTC, his local police department, and his Congressman, Scott Perry.

70. Because of this fraud, Mr. Brown is no longer eligible to e-file his tax returns. The result is that any potential tax refund will be delayed for a significant period of time; this delay will cause Mr. Brown considerable hardship.

71. Further, because of Intuit's actions, Mr. Brown is at a heightened risk of further identity theft requiring him to pay indefinitely for on-going credit monitoring.

**II.     Christine Diaz**

72. In or about late 2010 or early 2011, Christine Diaz purchased the right to use the online version of TurboTax's software in order to file her 2010 joint tax return with her husband. Subsequently, Ms. Diaz and her husband determined that the online version did not meet their needs, and she subsequently purchased from Intuit the right to download and use the desktop version of TurboTax in order to file their 2010 joint tax return.

73. Ms. Diaz then provided to Intuit, through TurboTax, sensitive personally identifiable information, including her and her spouse's Social Security numbers, her email address, home address, phone number, bank account information, and date of birth.

74.     Ms. Diaz reasonably expected that Intuit would take reasonable and appropriate measures to ensure that her family's personal information remained secure.

75.     In 2011, Ms. Diaz e-filed her 2010 Ohio State, and federal, tax returns using TurboTax.

76.     In purchasing the right to use TurboTax, Ms. Diaz entered into an agreement with Intuit.  On information and belief, included within that agreement are the following provisions:

    a.     that TurboTax imposes a limit of three State e-filings per each federal return;

    b.     that pursuant to IRS requirements, Intuit would notify the IRS of the IP address from which the return originated;

    c.     that Intuit places the highest importance on protecting the privacy of its customers, and that customers should feel comfortable and confident that their personal data is being protected by Intuit;

    d.     that the agreement would be governed by California law and applicable federal law; and

    e.     that any federal court filings would be filed in the Northern District of California.

77.     Ms. Diaz has not utilized TurboTax since filing her joint tax returns in 2010.

78.     In or about January 2015, Ms. Diaz learned that fraudulent state tax filings were filed in her name with the federal government, as well as in Michigan, Missouri, Ohio, and Oklahoma.

79.     In March 2015, approximately four years after Ms. Diaz had last utilized or entered any information on TurboTax, Ms. Diaz received a bill from Intuit for the e-filing in her name of 2014 state tax returns in Michigan, Missouri, Ohio, and Oklahoma, and for filing a federal home and business tax return, in the amount of $242.75.

80.     When Ms. Diaz learned of the multiple fraudulent filings, she had not yet submitted her tax returns for 2014.

81.     On March 29, 2015, Ms. Diaz's husband called TurboTax customer support about the fraudulent e-filings.  He was advised only that the fraudulent filings were made on January 26, 2015.  Intuit refused to provide more information on the call, and advised Ms. Diaz's husband that someone from Intuit would be in contact with him.  As of the date of this filing, no one from Intuit has contacted him.

82.     Ms. Diaz and/or her husband have had to spend more than 30 hours dealing with the ramifications of this fraud.

83.     Because of this fraud, Ms. Diaz is no longer eligible to e-file her tax returns, and as a result, her future tax refunds will be delayed for a significant period of time, causing hardship for her family.

84.     Further, because Intuit enabled criminals to access Ms. Diaz's account information, in violation of its contract with users and its obligations to secure private and sensitive data, Ms. Diaz is at a heightened risk of additional future identity theft; as a result she must pay indefinitely for on-going credit monitoring.

### III.     Michelle Fugatt

85.     Plaintiff Michelle Fugatt has never been a TurboTax customer.  At no time has she ever provided information to TurboTax or authorized it to file any tax returns on her behalf.

86.     On or about March 3, 2015, Ms. Fugatt learned that a fraudulent federal tax return had been filed under her name, when she received a bill from Intuit seeking payment for using TurboTax to file the tax return.  Ms. Fugatt had not yet filed her 2014 tax return.

87.     Ms. Fugatt has had to spend considerable time dealing with the ramifications of the fraud.

88.     Because of this fraud, Ms. Fugatt is no longer eligible to e-file her tax returns.  The result is that tax refunds will be delayed for a significant period of time; this delay will cause Ms. Fugatt considerable hardship.

89.     The fraudulent return reported much greater income than Ms. Fugatt was entitled to claim.  As a result, Ms. Fugatt is reasonably concerned that the fraudulent filing could jeopardize her eligibility for certain government programs.

90.     Further, because of Intuit's actions, Ms. Fugatt is at a heightened risk of further identity theft requiring her to pay indefinitely for on-going credit monitoring.

**IV.     Carol Knoch**

91.     Ms. Knoch has been a TurboTax customer for 12 years. During that time, Ms. Knoch has maintained an account with TurboTax that stores her sensitive personal and financial information.

92.     On March 2, 2015, Ms. Knoch received a refund check from the IRS in the amount of $7,942.  Ms. Knoch had not yet filed her 2014 tax return and does not typically receive any refund from the IRS.

93.     On March 3, 2015, Ms. Knoch contacted TurboTax to inquire about the check. The TurboTax representative with whom she spoke informed Ms. Knoch that her and her husband's names, address, and Social Security numbers had been lifted from her 2013 tax return, e-filed through TurboTax, and used to file a fraudulent federal tax return in her name.  The representative specifically informed Ms. Knoch that her personal information had been breached through TurboTax, explaining that the criminals had initially attempted to put the refund on a reloadable debit card but had been rejected by the IRS, resulting in the mailing of the physical check to Ms. Knoch's residence.

94.     Following this conversation, Ms. Knoch filed a police report with the Joliet, Illinois Police Department reporting the identity theft, contacted three credit bureaus to inform them that her identity had been stolen, and completed forms with the IRS in an attempt to clear her name.

95.     Ms. Knoch was ultimately forced to paper file her federal and state tax returns. Ms. Knoch completed her returns through TurboTax but, because she could not e-file the returns, was forced to pay a $100 printing fee out-of-pocket for her paper returns.  Ms. Knoch has not been reimbursed for this necessary expenditure.

**V.     James Lebinski**

96.     In early April 2015, Mr. Lebinski, who had previously used TurboTax to file joint federal and state tax returns with his wife, attempted to use TurboTax to begin the process of

1  filing his 2014 federal and state tax returns.  Mr. Lebinski paid the TurboTax tax preparation fee,

2  and attempted to e-file his returns.  On April 14, 2015, Mr. Lebinski received an "error message"

3  from TurboTax, indicating a problem with the filing.  Mr. Lebinski called TurboTax customer

4  service that night, stayed on the line for over two hours, but never got through to anyone.

5        97.    On April 15, 2015, Mr. Lebinski called TurboTax again.  Again, he had to endure

6  a wait of over two hours before connecting with TurboTax representative Amanda Carter. Intuit's

7  Ms. Carter confirmed the following information:

8          a.    Mr. Lebinski was a victim of identity theft;

9          b.    Mr. Lebinski was not the victim of an account takeover.  Rather, a new

10              TurboTax account had been opened in Mr. Lebinski's name, using his

11              Social Security number, and his home address with a slight mistake in the

12              spelling of the street name;

13          c.    Mr. Lebinski's private information had been coupled with the information

14              of another man, and both were used to file a return under a statute used by

15              same sex domestic partners;

16          d.    A new email address had been added to this account;

17          e.    The new account did not include Mr. Lebinski's wife or children;

18          f.    The criminals obtained refunds of between $1,000 and $5,000, with those

19              amounts placed onto untraceable disposable/reloadable credit cards;

20          g.    As a result, Mr. Lebinski will have to go through a long, arduous process to

21              obtain the refunds owed him, a process that will take approximately 180

22              days.  It is unclear if Mr. Lebinski will be able to e-file his taxes again.

23       98.    As a result of the identity theft, Mr. Lebinski has paid for his own, outside

24  personal credit protection service, signed up for Credit Karma credit score monitoring, reported

25  the identity theft to TurboTax and credit monitoring companies, reported the fraud to his

26  employer, filed fraud alerts, filed a police report, started the process of re-filing his tax returns,

27  and changed all relevant passwords, among other protective actions.

28

99.     TurboTax charged Mr. Lebinski $111.08 even though he could not file his federal or state return.

100.    To date, and as result of this identity theft, Mr. Lebinski has spent almost 100 hours dealing with the ramifications of this fraud.

## VI.    Todd Siegel

101.    Plaintiff Todd Siegel has been using TurboTax software to prepare his California State and federal taxes every year since 2008.

102.    As a TurboTax customer, Mr. Siegel has provided to Intuit sensitive personally identifiable information, including his and his spouse's Social Security numbers, his email address, home address, phone number, bank account information, and date of birth.  He expected that his personal information would be protected by Intuit against access by third parties, and against fraudulent use.

103.    In 2015, Mr. Siegel decided to use TurboTax to file his joint tax returns with his wife for the 2014 tax year.  Mr. Siegel paid Intuit approximately $40 for the license to use the TurboTax software in connection with the California state return, and approximately $80 in connection with the federal tax return.

104.    On April 15, 2015, Mr. Siegel requested an extension on the tax return filing deadline via TurboTax, which was granted.  At that time, Intuit did not inform Mr. Siegel that any unusual or suspicious activity had occurred in connection with either his TurboTax account, or his Social Security number.

105.    When Mr. Siegel attempted to e-file his tax returns in mid-July 2015, he discovered that a federal tax return had already been e-filed on TurboTax using his identity.

106.    Mr. Siegel contacted Intuit to try and figure out what had happened.  An Intuit representative advised Mr. Siegel that a federal tax return had been filed using his Social Security number, that the fraudulent filing had taken place on February 27, 2015, and that the criminal or criminals who filed the fraudulent return using Mr. Siegel's identity received over $6,000 in the form of a transfer to a prepaid Walmart Money Card.

107.    Mr. Siegel has expended considerable time and resources dealing with the

1    ramifications of the fraud.

2        108.    To guard against further identity theft, Mr. Siegel has registered for identity theft

3    protection from Experian, has filed a report with the City of Murrieta, California Police

4    Department, and has filed an Identity Theft Affidavit with the IRS.  Additionally, Mr. Siegel has

5    registered a fraud alert with the three major credit reporting bureaus.

6        109.    As a result of the fraud, Mr. Siegel is no longer eligible to e-file his tax

7    returns.  The result is that any potential tax refund will be delayed for a significant period of time;

8    this delay will cause Mr. Siegel considerable hardship.

9        110.    Further, because of Intuit's actions, Mr. Siegel is at a heightened risk of further

10    identity theft.

11    **VII.    <u>David Stock</u>**

12        111.    Plaintiff David Stock has been using TurboTax software to prepare his state and

13    federal taxes for approximately the last seven or eight years.

14        112.    To complete and file his 2014 tax return, Mr. Stock decided to use the TurboTax

15    website.

16        113.    Mr. Stock purchased the TurboTax online software "State MD TY2014 PREP"

17    and "DELUXETY2014 PREP," for $94.98.

18        114.    On or about April 13, 2015, Mr. Stock logged into his TurboTax account and

19    completed his tax return forms.  Mr. Stock then clicked to e-file his tax return, but a pop-up

20    message appeared on his computer screen stating that a tax return had already been filed using his

21    Social Security number and that another tax return using his Social Security number could not be

22    filed.

23        115.    Mr. Stock then contacted Intuit to try and figure out what had happened.  An Intuit

24    representative advised Mr. Stock that state and federal tax returns had indeed been filed using his

25    Social Security number, but a different email address from the one used by Mr. Stock to register

26    with TurboTax had been used for the filing.  An Intuit representative advised Mr. Stock to contact

27    Maryland's state tax authorities and to file form 14039 with the IRS to alert the IRS about the

28    fraudulent filing.

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

116.    As a result of this fraud, Mr. Stock spent many hours contacting Maryland State tax authorities, filing a police report, contacting the IRS, hand delivering his state tax filings to the state Comptroller's Office in Annapolis, Maryland, among other things. Mr. Stock is still awaiting the resolution of this issue, including his tax refund, and has neither been contacted by nor received any further information from Intuit at the time of this filing.

117.    Intuit provided no further support or answers as to why or how Mr. Stock's information was stolen.

118.    On or about April 13, 2015, Mr. Stock requested from Intuit a full refund for the purchase price of TurboTax Online tax preparation software, but Intuit refused to issue any refund.

119.    Instead, on or about April 13, 2015, Intuit sent an email to Mr. Stock in which it stated, "[y]ou may be eligible for a $25 cash back offer, go to https://turbotax.intuit.com/25back." Mr. Stock never claimed the offer.

## VIII.   **Marilyn Williams**

120.    Plaintiff Marilyn Williams purchased TurboTax software for use on her desktop in 2001.  This software purchase automatically renews every year.  Ms. Williams has been using TurboTax to prepare her taxes for approximately the last fourteen years.

121.    Ms. Williams provided Intuit sensitive personally identifiable information, including her and her spouse's Social Security numbers, her email address, home address, phone number, bank account information, and date of birth.

122.    Ms. Williams reasonably expected that Intuit would take appropriate measures to ensure that her family's personal information remained secure.

123.    When Ms. Williams attempted to e-file her tax returns on April 14, 2015, she discovered that tax returns had already been e-filed on TurboTax using her Social Security number.

124.    On April 15, 2015, Ms. Williams contacted Intuit by telephone to try to figure out what had happened.  A TurboTax representative informed her that a fraudulent federal tax return

had been filed in her name, along with several additional fraudulent state tax returns, including for New York, Michigan, and Maryland.

125.    On April 15, 2015, Ms. Williams called the IRS, which instructed her to file a paper federal tax return by mail and to include a tax fraud affidavit with proper documentation.

126.    Also on April 15, 2015, Ms. Williams visited the Maryland Comptroller's Office in person.  A Comptroller's Office representative confirmed that a filing had been made in Ms. Williams's name, on April 7, 2015.  Ms. Williams was instructed to return the following day with her Maryland State tax documents, and she was told that Maryland would accept a paper tax return filing in person.  Her Maryland state tax refund was delayed due to the fraudulent returns.

127.    Approximately one week after discovering that fraudulent returns had been filed, Ms. Williams received in the mail a Walmart Money Card, in her husband's name. Approximately one week later, she received a second Walmart Money Card in her own name. Neither she nor her husband had applied for these cards.

128.    To guard against further identity theft, Ms. Williams has formally notified the New York State Department of Taxation and Finance, the State of Michigan, the State of Maryland, the FTC, the credit bureau Experian, and the IRS that she has been the victim of identity theft.

129.    Ms. Williams has purchased credit monitoring through Protect My ID for herself, at the cost of $100 per year.

130.    As a result of the fraud, Mr. Williams is no longer eligible to e-file her tax returns.  The result is that any potential tax refund will be delayed for a significant period of time; this delay will cause Ms. Williams considerable hardship.

131.    Ms. Williams has expended considerable time and resources dealing with the ramifications of the fraud, including having to take April 15, 2015 and April 16, 2015 off work.

132.    Further, because of Intuit's actions, Ms. Williams is at a heightened risk of further identity theft.

1

## CLASS ALLEGATIONS

2        133.    Plaintiffs bring this nationwide class action, pursuant to Federal Rules of Civil

3   Procedure, Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4), individually and on behalf of all members

4   of the following Classes:

5             **Fraudulent Tax Return Filing Class**[45]

          (Represented by Richard Brown, Christine Diaz, Michelle Fugatt,

6             James Lebinski, Todd Siegel, David Stock, Carol Knoch, and

          Richard Brown)

7

8             All consumers in whose names fraudulent tax returns were filed

          using TurboTax.

9             **Data Breach Victim Class**[46]

          (Represented by Christine Diaz, James Lebinski, Todd Siegel,

10            David Stock, Carol Knoch, and Marilyn Williams)

11            All consumers whose data was provided to Intuit through TurboTax

          and, while that data was being held by Intuit, was subsequently

12            accessed by unauthorized persons.

13       134.    Together, these Classes shall be referred to herein as the "Class."

14       135.    Excluded from the Class are the following individuals and/or entities: Defendant,

15  its affiliates, employees, officers and directors, any entity in which Intuit has a controlling

16  interest, all individuals who make a timely election to be excluded from this proceeding using the

17  correct protocol for opting out, and all Judge(s) assigned to hear any aspect of this litigation, as

18  well as their immediate family members.

19       136.    Plaintiffs reserve the right to modify, change, or expand the definition of the Class.

20       137.    The Class is so numerous that joinder of all members is impracticable.  On

21  information and belief, thousands of fraudulent tax returns were filed using TurboTax, and

22  thousands or millions of TurboTax customers' data has been accessed by unauthorized persons.

23  The number of separate consumers in whose names fraudulent tax returns were filed, or whose

24

25  _____

[45] This class may be divided into sub-classes of those Plaintiffs and Class members who had

26  previously utilized TurboTax services and those who had not.  This Class or sub-class may

proceed as a national Class or be divided into sub-classes for Plaintiffs and Class members of

27  individual states.

[46] This Class or sub-class may proceed as a national Class or be divided into sub-classes for

28  Plaintiffs and Class members of individual states.

data was accessed on TurboTax by unauthorized persons, is identifiable and ascertainable based upon Intuit's records.

138.    Common questions of law or fact, the answer to which will drive the resolution of this case, include:

a.    whether Intuit failed to reasonably securely store and protect customer data provided through TurboTax;

b.    whether Intuit's actions and omissions were intentional;

c.    whether TurboTax was systematically used to file fraudulent tax returns;

d.    whether Intuit failed to take reasonable measures to prevent the creation of fraudulent accounts for the purpose of filing tax returns in the name of Class members without such Class members' authorization;

e.    whether TurboTax was systematically used to open fraudulent accounts for the purpose of filing fraudulent tax returns in the names of Class members;

f.    whether the information provided by Intuit customers to Intuit was accessed by unauthorized third parties;

g.    whether Intuit failed to notify affected consumers as to fraudulent tax filings in their names;

h.    whether Intuit's facilitation of third-party fraud is common to all or some of the Class members;

i.    whether Intuit knowingly failed to disclose the existence and cause of the surge in fraudulent tax filings that took place in 2015;

j.    whether Intuit's conduct was unlawful;

k.    whether, as a result of Intuit's conduct in this case, Plaintiffs and members of the Class have suffered an ascertainable loss of money or property;

l.    whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies, and, if so, the nature of any such relief; and

m.    whether injunctive and/or declaratory relief against Intuit should be awarded.

139.    Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and all members of the Class sustained monetary and economic injuries including ascertainable losses arising out of Intuit's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.  Intuit's policies and procedures regarding the security of TurboTax, including as to the creation of fraudulent accounts, access to existing accounts, and otherwise accessing data stored by Intuit, were common as to all Class members, including Plaintiffs.

140.    Plaintiffs will adequately and fairly protect the interests of the Class.  Plaintiffs' interests do not conflict with the interests of the Class members.  Plaintiffs have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

141.    A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Intuit's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.

142.    Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  On information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Intuit's customer database and records of complaints.

143.    Intuit has acted, and failed and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST COUNT**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200)**
**(On Behalf of the Fraudulent Tax Return Filing Class and Data Breach**
**Victim Class)**

144.    Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

145.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

146.    Intuit has engaged in unfair competition and unfair, unlawful, and fraudulent business practices by the conduct described above, including by misrepresenting the security of data stored by Intuit, knowingly or carelessly failing to secure data, failing to adequately confirm the identity or authorization of the person preparing and/or filing a given tax return, and facilitating third-party tax fraud, thereby increasing its revenues.

147.    Plaintiffs and Class members reasonably relied on Intuit to maintain the security of the data that they provided to Intuit and to take reasonable measures to prevent criminals from using TurboTax to file fraudulent tax returns.

148.    Intuit should have disclosed the extent of tax fraud committed using TurboTax to affected consumers because Intuit was in a superior position to know the true facts related to such fraud.  Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to Intuit's facilitation of third-party tax fraud; they reasonably relied on Intuit to inform them of such material facts.

149.    The surge in fraudulent tax filings in 2015 constitutes a security issue that triggered Intuit's duty to disclose to affected taxpayers the shortcomings of the security in place for TurboTax.

150.    These acts and practices have deceived Plaintiffs, and are likely to deceive the public, including with respect to the security of data stored by Intuit.  By failing to notify Plaintiffs and Class members as to the fraudulent tax filings made in their names, Intuit breached its duty to disclose these facts, violated the UCL, and injured Plaintiffs and the Class.  Intuit's

1    failure to make such notifications pertained to information that was material to Plaintiffs and

2    Class members, as it would have been to all reasonable consumers.

3          151.    Plaintiffs have lost money or property as a result of Intuit's UCL violations.

4          152.    The application of this California statute to customers outside the state of

5    California is proper, in part, because Intuit's uniform contract with customers provides that

6    California law governs any disputes under the contract.  Further, Intuit is a resident of California,

7    and, on information and belief, all or a substantial number of the decisions by Intuit that resulted

8    in the facts alleged herein were made within California.

9          153.    The injuries suffered by Plaintiffs and the Class members are greatly outweighed

10   by any potential countervailing benefit to consumers or to competition.  Plaintiffs and Class

11   members could not reasonably have avoided such injuries.  Furthermore, to the extent that Intuit

12   has discretion in choosing and implementing security measures and providing notice of fraudulent

13   conduct, it has not done so reasonably and in good faith.

14         154.    Intuit's acts and practices are unlawful because they violate California Civil Code

15   §§ 1798.81.5 and 1798.82, and other additional federal and state statutes and regulations.

16         155.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices

17   by Intuit, to obtain restitutionary disgorgement of all monies and revenues generated by Intuit as a

18   result of such practices, and to obtain all other relief allowed under the UCL.

19                          **SECOND COUNT**
                **VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT**
20                    **(Cal. Civ. Code §§ 1798.81.5, 1798.82)**
                           **(Data Breach Victim Class)**
21

22         156.    Plaintiffs incorporate the substantive allegations contained in all prior and

     succeeding paragraphs as if fully set forth herein.
23

24         157.    "[T]o ensure that personal information about California residents is protected,"

25   the California legislature enacted California Civil Code section 1798.81.5, which requires that

26   any business that "owns or licenses personal information about a California resident shall

27   implement and maintain reasonable security procedures and practices appropriate to the nature of

28

the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

158.    By failing to implement reasonable measures to protect its customers' personal data, Intuit violated California Civil Code section 1798.81.5.

159.    By failing to promptly notify all affected TurboTax customers that criminals had used TurboTax to file fraudulent tax returns using their identities, Intuit violated California Civil Code section 1798.82 of the same title.

160.    Due to Intuit's violations of California Civil Code sections 1798.81.5 and 1798.82, it "may be enjoined" under Civil Code section 1798.84(e).

161.    Additionally, Intuit's violations of California Civil Code section 1798.81.5 and 1798.82 constitute an unlawful act or practice under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., which affords the Court discretion to enter whatever orders it concludes are necessary to prevent future unlawful acts or practices.

162.    Accordingly, Plaintiffs request that the Court enter an injunction requiring Intuit to implement and maintain reasonable security measures, including, but not limited to, ordering that Intuit:  (1) utilize strong industry encryption algorithms; (2) return to its previous practice of flagging and reporting fraudulent tax filings to the IRS in a timely manner;  (3) engage in third-party and internal security audits to conduct testing, including simulated attacks, penetration tests, and audits on TurboTax's systems periodically, consistent with industry standard practices;  (4) engage third-party security auditors and internal security personnel to run automated security monitoring, consistent with industry standard practices;  (5) audit, test, and adequately train its security personnel regarding any new or modified procedures;  (6) conduct regular database scanning and security checks, consistent with industry standard practices; (7) periodically conduct internal training and education for internal security personnel on how to identify, contain, and otherwise respond to a data breach should one occur, consistent with industry standard practices; and (8) disclose to affected entities the date, data, and circumstances of any data that was accessed and/or utilized by unauthorized persons.

1      163.    Further, Plaintiffs request that the Court require Intuit to identify and notify all

2   members of the Class within 24 hours of Intuit discovering that their personal information has

3   been compromised.

4                                    **THIRD COUNT**
                              **AIDING AND ABETTING FRAUD**
5   **(On Behalf of the Fraudulent Tax Return Filing Class and Data Breach Victim Class)**

6      164.    Plaintiffs incorporate the substantive allegations contained in all prior and

7   succeeding paragraphs as if fully set forth herein.

8      165.    Plaintiffs bring this action for aiding and abetting under the common law rule for

9   imposing liability based on aiding and abetting, which has been adopted by California courts.

10     166.    Criminals utilized TurboTax software to file fraudulent tax returns, and to claim

11   tax refunds in the names of Plaintiffs and members of the Class.

12     167.    On information and belief, Intuit knew that criminals intended to utilize TurboTax

13   to file fraudulent tax returns.

14     168.    On information and belief, Intuit knew that criminals would use personally

15   identifiable information obtained through Intuit or from other sources to file fraudulent tax returns

16   through TurboTax.

17     169.    On information and belief, Intuit intended for criminals to use TurboTax, rather

18   than Intuit's competitors, to file fraudulent tax returns.

19     170.    Before and during the commission of the crime, Intuit intended to aid and abet

20   criminals in the fraudulent filing of tax returns by failing to implement adequate protective

21   security measures to ensure that the person creating an account using TurboTax was authorized to

22   use the identity used in such account creation.

23     171.    Before and during the commission of the crime, Intuit intended to aid and abet

24   criminals in the fraudulent filing of tax returns by failing to implement adequate protective

25   security measures to ensure that the person accessing an existing account using TurboTax was

26   authorized to access such account.

27     172.    Before and during the commission of the crime, Intuit intended to aid and abet

28   criminals in the fraudulent filing of tax returns by failing to employ commercially reasonable

means of verifying that the person filing taxes through a TurboTax account was authorized to use the identity used in such filing.

173.    Before and during the commission of the crime, Intuit intended to aid and abet criminals in the fraudulent filing of tax returns by transmitting the fraudulent tax returns in Plaintiffs' and Class members' names to the IRS and state agencies.

174.    Before and during the commission of the crime, Intuit intended to aid and abet criminals in the fraudulent filing of tax returns by failing to timely transmit to the IRS or state agencies data in Intuit's possession regarding filings that appeared suspicious by Intuit's internal, or any other, standard.

175.    Intuit's words or conduct did in fact aid and abet the perpetrators' commission of fraud upon Plaintiffs, members of the Class, the United States government, and state governments.

176.    As a result of Intuit's words and conduct, Plaintiffs and Class members have been injured.  Among other injuries, they have become victims of identity theft and tax fraud, and have had their personally identifiable information exposed to criminals, and seek relief as prayed for below.

**FOURTH COUNT**
**NEGLIGENT ENABLEMENT OF THIRD-PARTY IMPOSTER FRAUD**
**(Fraudulent Tax Return Filing Class)**

177.    Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

178.    On information and belief, Intuit knew or should have known that criminals were repeatedly using TurboTax to create fraudulent accounts, or to access existing accounts without authorization, with the goal of filing fraudulent tax returns.

179.    On information and belief, Intuit knew or should have known that criminals were repeatedly using TurboTax to prepare tax returns without authorization to use the names and identifying information used to prepare such returns, which were then filed by criminals using TurboTax.

180.    At all times, Intuit knew or should have known that there was a great possibility that criminals would use TurboTax customers' personal information obtained through Intuit, or from other sources, to prepare and file fraudulent tax returns through TurboTax.

181.    Intuit owes a duty of reasonable care to the person in whose name any TurboTax account is opened and maintained to ensure that the person using that account to prepare and file tax returns is authorized to use that person's identity and is not an imposter.

182.    On information and belief, Intuit failed in its duty to employ commercially reasonable means of verifying that the person filing tax returns through a TurboTax account was authorized to use that identity and not an imposter.

183.    Intuit at all relevant times has had an affirmative duty not to knowingly transmit fraudulent tax returns in Plaintiffs' and Class members' names to the IRS or state agencies.  Intuit also had an affirmative duty to take reasonable measures to prevent the transmission of fraudulent tax returns.

184.    Intuit at all relevant times has had an affirmative duty to timely notify affected government agencies and any affected consumer of the fact that tax returns submitted through TurboTax were suspicious or fraudulent.  Intuit negligently enabled imposter fraud by failing or delaying to flag such fraudulent filings.

185.    As a direct and proximate result of Intuit's breach of these duties, Plaintiffs and Class members have been injured.  Among other injuries, they have become victims of identity theft and imposter fraud, and have had their personally identifiable information exposed to criminals, and seek relief as prayed for below.

**FIFTH COUNT**
**NEGLIGENCE**
**(On Behalf of the Fraudulent Tax Return Filing Class and Data Breach Victim Class)**

186.    Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

187.    Intuit required Plaintiffs and Class members to submit sensitive personal and financial information in order to prepare and/or file tax returns using TurboTax.  Intuit had a duty to use reasonable means to secure and safeguard this personal and financial information, and to

1    prevent access to and use of that information by criminals.  Included in Intuit's duty was a

2    responsibility to implement a process by which it could detect a breach of its security systems.

3    188.    Intuit provided, and was in the business of providing, expert assistance and

4    software to the public for the preparation of tax returns, and processed such returns in the course

5    of submitting them to the designated government agency.  Intuit had a duty to provide services

6    consistent with the care, skill, knowledge, and competence of members of that profession.

7    189.    Intuit had a duty to take reasonable measures to prevent the filing of fraudulent tax

8    returns using Plaintiffs' and Class members' personal data as maintained by TurboTax.

9    190.    Intuit had a duty to detect and prevent the unauthorized use on TurboTax of the

10   identities of non-TurboTax customers to prepare and/or file fraudulent tax returns.

11   191.    Intuit had a duty to use reasonable means to detect and prevent the criminal misuse

12   of TurboTax, particularly for the preparation and filing of tax returns.

13   192.    Because Intuit had actual notice of the risks associated with data breaches and

14   identity theft, Intuit had a duty to promptly and fully inform affected consumers if their personal

15   information maintained by TurboTax were compromised, or if any fraudulent tax returns using

16   their identities were prepared and/or filed on TurboTax.

17   193.    Through its actions and omissions, Intuit has breached each of the above duties.

18   As a result of Intuit's breaches, Plaintiffs and Class members have been injured.  Among other

19   injuries, they have become victims of identity theft and tax fraud, and have had their personally

20   identifiable information exposed to criminals, and seek relief as prayed for below.

21                              **SIXTH COUNT**
                           **BREACH OF CONTRACT**
22   **(On Behalf of the Data Breach Victim Class and the Fraudulent Tax Return Class)**

23   194.    Plaintiffs incorporate the substantive allegations contained in all prior and

24   succeeding paragraphs as if fully set forth herein.

25   195.    Plaintiffs bring this action for breach of contract under California law, pursuant to

26   the choice of law provision set forth in Intuit's contract with all of its customers.

27   196.    As such, Plaintiffs acknowledge that this breach of contract claim would not apply

28   to those Plaintiffs and members of the Fraudulent Tax Return Class who, as non-customers, did

not enter into a customer agreement with TurboTax.  However, if the Fraudulent Tax Return Class is later divided into sub-classes, then Plaintiffs' breach of contract claim would apply to the sub-class comprised of Class members who currently are, or were, TurboTax customers.

197.    Intuit entered into written contracts with Plaintiffs and members of the Class in which Intuit agreed to:  (1) impose a limit of three state e-filings per every one federal return; and (2) protect the data provided it to by the customer.

198.    As part of its written agreement with Plaintiffs and Class members, Intuit stated, "We want you to feel comfortable and confident when using our products and services and with entrusting your personal and tax return information with us."  However, as Intuit's conduct described herein illustrates, Intuit failed to act in accordance with this express contractual term as it facilitated the commitment by third-party criminals of tax fraud, using TurboTax, and intentionally failed to timely report suspicious tax return filings to the IRS or state tax agencies. In doing so, Intuit placed its own profits above the security of its customers' sensitive personal and financial data.

199.    Additionally, there is an implied covenant of good faith and fair dealing regarding contractual obligations between Intuit and its customers, through which Intuit had a good faith obligation to maintain the security of customers' data, and to take reasonable measures to protect customers from criminals using TurboTax to file fraudulent tax returns using such customers' identities.

200.    Intuit breached its express and implied contractual obligations by failing to safeguard the personal and financial information of Plaintiffs and the Class; by failing to prevent the fraudulent filing of tax returns; and by failing to timely notify customers that their personal and financial information had been compromised.

201.    Plaintiffs and Class members have performed all conditions, covenants, and promises required under the terms and conditions of the contract.

202.    As a direct and proximate result of Intuit's breach of express terms and implied covenants of the contract, Plaintiffs and the Class members have been injured and seek relief as

1 prayed for below, including but not limited to all compensatory damages, incidental and

2 consequential damages, and other damages allowed by law.

3 **SEVENTH COUNT**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (UCC § 2-314)**

4 **(On Behalf of the Data Breach Victim Class and the Fraudulent Tax Return Class)**

5 203.   Plaintiffs incorporate the substantive allegations contained in all prior and

6 succeeding paragraphs as if fully set forth herein.

7 204.   The TurboTax product is a consumer good.

8 205.   Under the Uniform Commercial Code, the implied warranty of merchantability

9 instructs that goods for sale will be fit for ordinary purposes.  They must be free from major

10 defects, be reasonably safe, and be of the average quality of similar goods for sale at that price

11 range.

12 206.   The ordinary purpose of Intuit's TurboTax product is to securely store the

13 personally identifiable information of TurboTax users, and to transmit such information to the

14 IRS or state agencies only with the knowledge and express consent of such users.  This means,

15 among other things, that only users authorized by the individual in whose name an account is

16 created should have access to such accounts.

17 207.   Intuit specifically touts TurboTax's ability to facilitate the preparation and filing of

18 tax returns.  To fulfill its ordinary and intended purpose, the data stored by Intuit must be safe and

19 secure.

20 208.   Intuit has violated the implied warranty of merchantability because its product is

21 not fit for the ordinary and intended uses of storing sensitive personal information securely, or of

22 ensuring that tax returns that reach the IRS or state tax agencies in the name of a given individual

23 were in fact submitted with the authorization of such individual.

24 209.   As a result of Intuit's violation, Plaintiffs and Class members have been injured.

25 Among other injuries, they have become victims of identity theft and tax fraud, and have had

26 their personally identifiable information exposed to criminals, and seek relief as prayed for below.

27

28

## EIGHTH COUNT
## UNJUST ENRICHMENT (QUASI CONTRACT)
### (On Behalf of the Data Breach Victim Class and the Fraudulent Tax Return Class)

210.    Plaintiffs incorporate the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein.

211.    Significant benefits were conferred upon Intuit in connection with tax returns filed in the names of Plaintiffs and members of the proposed Class.

212.    Instead of successfully filing tax returns in the names of Plaintiffs and Class members for the benefit of the individuals named on the returns, Intuit submitted such tax returns for the benefit of criminals, and thereby injured Plaintiffs and Class members who were forced to take steps to mitigate the harm of identity theft, became ineligible for e-filing, and who have suffered other injuries as set forth herein.

213.    Plaintiffs and Class members who purchased the right to use TurboTax conferred significant benefits upon Intuit with the expectation that Intuit would secure and protect the data that they provided to Intuit.

214.    Additionally, significant benefits were conferred upon Intuit in connection with the use of TurboTax by victims of tax fraud who paid TurboTax's tax preparation fee even though, because of the fraud, they would not be able to e-file their tax returns using TurboTax.

215.    Intuit retained the monetary benefits conferred upon it despite not only failing to deliver a promised service, but also exposing Plaintiffs and Class members to harm.

216.    As a direct and proximate result of Intuit's actions, Plaintiffs and Class members are entitled to restitution in the full amount by which Intuit has been unjustly enriched, and Intuit should be required to disgorge the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

1      B.     appoint Plaintiffs as the representatives of the Class and their counsel as Class

2  counsel;

3      C.     enter judgment against Intuit for Plaintiffs' and Class members' asserted causes of

4  action;

5      D.     award all actual, general, special, incidental, statutory, equitable, punitive, and

6  consequential damages, and restitution to which Plaintiffs and the Class members are entitled;

7      E.     award pre-judgment and post-judgment interest on such monetary relief;

8      F.     grant appropriate injunctive and/or declaratory relief, including, without limitation,

9  an order that requires Intuit to implement stricter security measures that will adequately safeguard

10  the sensitive personal and financial data that it stores;

11      G.     award reasonable attorneys' fees and costs, pursuant to the customer agreement,

12  California Civil Procedure § 1021.5, California Civil Code § 1798.84(g), and other relevant

13  statutes and laws; and

14      H.     grant such further relief as this Court deems appropriate.

Dated:  September 29, 2015     Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:    */s/ Michael W. Sobol*

Michael W. Sobol (msobol@lchb.com)
Melissa A. Gardner (mgardner@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111
415.956.1000

Jason L. Lichtman (jlichtman@lchb.com)
250 Hudson, 8th Floor
New York, NY 10003
212.355.9500

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

Dated:  September 29, 2015     ABBOTT LAW GROUP P.A.


                               By:   /s/ Steven W. Teppler

                                  Steven W. Teppler (FL SBN 14787)
                                  steppler@abbottlawpa.com
                                  2929 Plummer Cove Road
                                  Jacksonville, FL  32223
                                  904.292.1111


Dated:  September 29, 2015     GOLDMAN SCARLATO & PENNY, P.C


                               By:   /s/ Mark S. Goldman

                                  Mark S. Goldman (goldman@lawgsp.com)
                                  Paul J. Scarlato (scarlato@lawgsp.com)
                                  Brian Douglas Penny (penny@lawgsp.com)
                                  101 E. Lancaster Avenue, Suite 204
                                  Wayne, PA 19087
                                  484.342.0700


Dated:  September 29, 2015     MILBERG LLP


                               By:   /s/ Ariana J. Tadler
                                  Ariana J. Tadler (atadler@milberg.com)
                                  Andrei Rado (arado@milberg.com)
                                  Carey Alexander (calexander@milberg.com)
                                  One Pennsylvania Plaza, 49th Floor
                                  New York, NY  10119
                                  212.946.9453


Dated:  September 29, 2015     SIPRUT, PC


                               By:   /s/ Joseph J Siprut

                                  Joseph J Siprut (jsiprut@siprut.com)
                                  Michael Loren Silverman (msilverman@siprut.com)
                                  17 North State Street, Suite 1600
                                  Chicago, IL 60602
                                  312.236.0000

AHDOOT & WOLFSON, P.C.

    Tina Wolfson (twolfson@ahdootwolfson.com)
    Ted Maya (tmaya@ahdootwolfson.com)
    1016 Palm Avenue
    West Hollywood, CA 90069
    310.474.9111

BERMAN DEVALERIO

    Todd Anthony Seaver (tseaver@bermandevalerio.com)
    One California Street, Suite 900
    San Francisco, CA 94111
    415.433.3200

GUSTAFSON GLUEK PLLC

    Daniel E. Gustafson (dgustafson@gustafsongluek.com)
    Daniel C. Hedlund (dhedlund@gustafsongluek.com)
    Eric S. Taubel (etaubel@gustafsongluek.com)
    Canadian Pacific Plaza
    120 South 6th Street, Suite 2600
    Minneapolis, MN 55402
    612.333.8844

HAMMONDLAW, PC

    Julian Ari Hammond (jhammond@hammondlawpc.com)
    1180 S. Beverly Drive, Suite 601
    Los Angeles, CA 90035
    310.601.6766

    Polina Pecherskaya (ppecherskaya@hammondlawpc.com)
    Ari Nathan Cherniak (acherniak@hammondlawpc.com)
    1829 Reisterstown Road, Suite 410
    Baltimore, MD 21208
    310.601.6766

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD

JONES WARD PLC

Jasper Ward (jasper@jonesward.com)
312 South Fourth Street, 6th Floor
Louisville, KY 40202
502.882.6000

LAW OFFICES OF PAUL WHALEN PC

Paul C. Whalen
768 Plandome Road
Manhasset, NY 11030
516.627.5610

LITE DEPALMA GREENBERG LLC

Katrina Carroll (kcarroll@litedepalma.com)
Kyle Alan Shamberg (kshamberg@litedepalma.com)
211 W. Wacker Drive, Suite 500
Chicago, IL 60606
312.750.1265

MCCUNE WRIGHT LLP

Richard D. McCune (rdm@mccunewright.com)
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
909.557.1250

MORGAN AND MORGAN, P.A.

John A. Yanchunis (jyanchunis@forthepeople.com)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
813.275.5272

RHINE LAW FIRM, P.C

Joel R. Rhine (jrr@rhinelawfirm.com)
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
910.777.7651

*Attorneys for Plaintiffs and the Proposed Class*

CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
15-CV-1778-EJD