1 RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
2 SONGMEE L. CONNOLLY (CSB No. 228555)
sconnolly@fenwick.com
3 ANGEL CHIANG (CSB No. 280546)
achiang@fenwick.com
4 HAILEY TETON (CSB No. 294262)
hteton@fenwick.com
5 FENWICK & WEST LLP
Silicon Valley Center
6 801 California Street
Mountain View, CA  94041
7 Telephone:     650.988.8500
Facsimile:      650.938.5200
8
Attorneys for Defendant
9 INTUIT INC.

10

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

UNITED STATES DISTRICT COURT

11 NORTHERN DISTRICT OF CALIFORNIA

12 SAN JOSE DIVISION

13

14

| IN RE INTUIT DATA LITIGATION | Master Docket No. 15-CV-01778-EJD |
|---|---|
| | **NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS KNOCH, LEBINSKI, SIEGEL, STOCK, AND WILLIAMS TO ARBITRATION AND TO STAY THEIR PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |

15

16

17

18

19

20 Date:        February 18, 2016
Time:        9:00 a.m.
21 Location:   Courtroom 4, 5th floor
Judge:       The Hon. Edward J. Davila

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Page

3  NOTICE OF MOTION AND MOTION .................................................................. 1

4  STATEMENT OF RELIEF SOUGHT ................................................................... 1

5  MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

6  I.     Introduction ................................................................................................... 1

7  II.    Statement of Issues to Be Decided ............................................................... 2

8  III.   Statement of Facts ......................................................................................... 3

9         A.    The Parties ............................................................................................ 3

10              1.    Intuit ........................................................................................... 3

11              2.    Carol Knoch ............................................................................... 3

12              3.    James Lebinski ........................................................................... 4

13              4.    Todd Siegel ................................................................................ 4

14              5.    David Stock ................................................................................ 4

15              6.    Marilyn Williams ....................................................................... 5

16        B.    Plaintiffs Agreed to the TurboTax Online Terms of Service ("TTO TOS") or
                the TurboTax Desktop End User License Agreement ("TTD EULA") for TY13.. 5

17              1.    The TTO TOS and User Acceptance Process ............................. 5

18              2.    The TTD EULA and User Acceptance Process .......................... 6

19        C.    The TTO TOS and TTD EULA Includes Agreements to Arbitrate Disputes on
                an Individual, Non-Class Basis ............................................................ 7

20

21        D.    Procedural History and the Arbitration Plaintiffs' Claims.................... 8

22  IV.   Argument ....................................................................................................... 9

23        A.    The Court Should Compel the Arbitration Plaintiffs to Arbitration ..... 9

24              1.    There Are Valid and Enforceable Agreements to Arbitrate....... 9

25                    a.    The Arbitration Plaintiffs Have Already Conceded the
                            Enforceability of the Agreements ................................. 10

26
27                    b.    The Agreements Are Standard Clickwrap Agreements to Which
                            Arbitration Plaintiffs Assented Before Using TurboTax ............. 11

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF CONTENTS**
(continued)

Page

          c.      The Arbitration Plaintiffs Cannot Invalidate the Presumptively Valid and Enforceable Dispute Resolution Agreements ............... 12

      2.      The Arbitration Plaintiffs' Claims Are Within the Scope of the Dispute Resolution Agreements ........................................................................... 13

  B.      The Court Should Stay Proceedings As to the Arbitration Plaintiffs .................... 15

V.      Conclusion ........................................................................................................................ 16

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
*Ambler v. BT Americas Inc.*,
      964 F. Supp. 2d 1169 (N.D. Cal. 2013) ..................................................................15
5

6
*AT&T Mobility LLC v. Concepcion*,
      563 U.S. 333 (2011) .........................................................................................2, 3, 12, 13

7
*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
      475 U.S. 643 (1986) ..................................................................................................12
8

9
*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*,
      No. 5:13-cv-2664-EJD, 2014 WL 3371842 (N.D. Cal., Jul. 9, 2014) ..................3, 15
10

11
*Beard v. PayPal, Inc.*,
      No. 09-1339-JO, 2010 WL 654390 (D. Or. Feb. 19, 2010).......................................12

12
*Cayanan v. Citi Holdings, Inc.*,
      928 F. Supp. 2d 1182 (S.D. Cal. 2013) ....................................................................15
13

14
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
      207 F.3d 1126 (9th Cir. 2000)...............................................................................9, 14
15

16
*Coneff v. AT & T Corp.*,
      673 F.3d 1155 (9th Cir. 2012)..................................................................................13

17
*Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*,
      118 F.3d 619 (8th Cir. 1997)....................................................................................15
18

19
*Green Tree Fin. Corp.-Ala. v. Randolph*,
      531 U.S. 79 (2000) ..................................................................................................12
20

21
*Hancock v. Am. Tel. & Tel. Co.*,
      701 F.3d 1248 (10th Cir. 2012)................................................................................12

22
*Inter-Mark USA, Inc. v. Intuit Inc.*,
      No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008)........................12
23

24
*KPMG LLP v. Cocchi*,
      132 S. Ct. 23 (2011) ................................................................................................14
25

26
*Laughlin v. VMware, Inc.*,
      No. 5:11-cv-530-EJD, 2012 WL 298230 (N.D. Cal. Feb. 1, 2012).........................16

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
(continued)

2
                                                                                    **Page(s)**

3     CASES

4
*Leong v. Myspace, Inc.*,
5     No. CV 10-8366 AHM EX, 2011 WL 7808208 (C.D. Cal. Mar. 11, 2011)............................12

6     *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
      473 U.S. 614 (1985) .............................................................................15
7

8     *Next Step Med. Co. v. Johnson & Johnson Int'l*,
      619 F.3d 67 (1st Cir. 2010) ....................................................................15
9
      *Peters v. Amazon Servs. LLC*,
10    2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) .....................................................15

11    *Randazzo Enters. Inc. v. Applied Underwriters Captive Risk Assurance Co.*,
      No. 14-cv-2374-EJD, 2014 WL 6997961 (N.D. Cal. Dec. 11, 2014).....................................16
12

13    *Rassoli v. Intuit Inc.*,
      No. H-11-2827, 2012 WL 949400 (S.D. Tex. Mar. 19, 2012) ..................................12
14
      *Sanchez v. Valencia Holding Co., LLC*,
15    61 Cal. 4th 899 (2015) .........................................................................13

16    *Sanders v. Cty. of Santa Cruz*,
      No. 13-cv-3205-EJD, 2014 WL 4773992 (N.D. Cal. Sept. 19. 2014).....................................15
17

18    *Savetsky v. Pre-Paid Legal Servs., Inc.*,
      No. 14-03514-SC, 2015 WL 4593744 (N.D. Cal. July 30, 2015) ....................................10, 15
19

20    *Simula, Inc. v. Autoliv, Inc.*,
      175 F.3d 716 (9th Cir. 1999).....................................................................15

21    *Sullivan v. Lumber Liquidators, Inc.*,
      No. C-10-1447 MMC, 2010 WL 2231781 (N.D. Cal. Jun. 2, 2010)..........................................12
22

23    *Swift v. Zynga Game Network, Inc.*,
      805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................................11

24
      *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
25    925 F.2d 1136 (9th Cir. 1991)...................................................................14

26    *Tompkins v. 23andMe, Inc.*,
      No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. Jun. 25, 2014) ..............................11
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**CASES**

*Valdiviezo v. Phelps Dodge Hildago Smelter, Inc.*,
    995 F. Supp. 1060 (D. Ariz. 1997)..................................................................10, 11

*ValueSelling Assocs., LLC v. Temple*,
    No. 09-CV-1493-JM, 2009 WL 3736264 (S.D. Cal. Nov. 5, 2009)........................15

**STATUTES AND RULES**

9 U.S.C. §§ 2, *et seq*..................................................................................1, 9, 2, 15

Cal. Bus. & Prof. Code § 17200 .............................................................................8, 13

Cal. Civ. Code § 1550..................................................................................................10

Cal. Civ. Code § 1798.81.5...........................................................................................8

Cal. Civ. Code § 1798.82...............................................................................................8

Fed. R. Civ. P. 12(b)(1)..................................................................................................2

Fed. R. Civ. P. 12(b)(6)..................................................................................................2

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 18, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Hon. Edward J. Davila, Courtroom 4, 5th Floor of the U.S. District Court for the Northern District of California, located at 280 South First Street, San Jose, CA 95113, Defendant Intuit Inc. ("Intuit") shall and hereby does move the Court to compel plaintiffs Carol Knoch, James Lebinski, Todd Siegel, David Stock, and Marilyn Williams (the "Arbitration Plaintiffs") to arbitrate their claims on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, *et seq*. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Claudine R.L. Co and Rodger R. Cole and their attached exhibits, all pleadings and papers on file in this consolidated action and any related actions, and such other written or oral argument as may be properly presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Intuit respectfully requests that the Court enter an order compelling arbitration of the claims of the Arbitration Plaintiffs pursuant to the Federal Arbitration Act and the relevant contractual terms between the Arbitration Plaintiffs and Intuit. Intuit further requests an order staying the claims of the Arbitration Plaintiffs pending their respective arbitrations.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Five of the eight named plaintiffs—Carol Knoch, James Lebinski, Todd Siegel, David Stock, and Marilyn Williams (the "Arbitration Plaintiffs")—are Intuit customers who have used Intuit's TurboTax software and services for many years to prepare and file their tax returns. Before they could access and use TurboTax, they affirmatively agreed that "any dispute or claim" relating to the TurboTax software or services (or relating to their agreements with Intuit), would be subject to binding arbitration and that they would bring their claims in their individual capacities, and not in class proceedings. Ignoring their written agreements, the Arbitration

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Plaintiffs joined in this consolidated class action in which they now seek to represent two

2    nationwide classes on a variety of contract and common law and statutory tort claims against

3    Intuit arising out of their use of TurboTax and purported data security issues related to the

4    TurboTax software and services.  The contract claims the Arbitration Plaintiffs assert are based

5    on the very same contracts where the Arbitration Plaintiffs and Intuit agreed to arbitrate "any

6    dispute of claim" between them.  The agreements to arbitrate between the Arbitration Plaintiffs

7    and Intuit are valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, *et*

8    *seq.*, and well-settled law enforcing such class action waivers in arbitration agreements.  *See, e.g.*,

9    *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  Intuit respectfully requests the Court to

10   compel the Arbitration Plaintiffs to arbitrate their claims, and to stay their proceedings pending

11   the determination of the matters in arbitration.[1]

12   **II.     STATEMENT OF ISSUES TO BE DECIDED**

13        1.   Should the Court order the Arbitration Plaintiffs to arbitrate their claims pursuant to
             the 9 U.S.C. §§ 2, *et seq.*, in light of their arbitration agreements with Intuit?

14

15        2.   Should the Court stay the claims of the Arbitration Plaintiffs pending resolution of
             their respective arbitrations?

16

---

24   [1]  Intuit concurrently moves to dismiss the claims of all Plaintiffs (including the Arbitration
     Plaintiffs) pursuant Rule 12(b)(1) and Rule 12(b)(6).  *See* Motion to Dismiss Plaintiffs'
25   Consolidated Amended Complaint Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal
     Rules of Civil Procedure ("Motion to Dismiss") filed concurrently herewith.  If the Court grants
26   this motion to compel arbitration, Intuit's Motion to Dismiss as to the Arbitration Plaintiffs is
     moot.  If the Court were to deny this motion to compel arbitration, Intuit respectfully requests
27   dismissal of the Arbitration Plaintiffs' claims on these alternative grounds.

28   NOTICE OF MOTION AND MOTION TO
     COMPEL ARBITRATION; MEMO. OF
     POINTS AND AUTHORITIES IN SUPPORT
     THEREOF                                              2                    Case No.: 5:15-cv-01778-EJD

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## III.   STATEMENT OF FACTS[2]

### A.   The Parties

#### 1.   Intuit

Intuit develops and offers various financial and tax preparation software and related services, including the leading tax preparation software TurboTax.  CAC ¶¶ 19-20.  TurboTax, offered in online and desktop versions, is utilized by millions of American taxpayers each year to file their federal and state tax returns.  *Id.* ¶¶ 1, 24.  Customers using TurboTax Online ("TTO") must create an account with Intuit after which they can use the TTO service to prepare and e-file tax returns with the IRS and state tax agencies.  Co Decl. ¶¶ 6-13.  Customers may also use the TurboTax Desktop ("TTD") software, which is downloaded and installed on the user's own computer, to prepare tax returns.  *Id.* ¶ 14.

#### 2.   Carol Knoch

Carol Knoch is an Illinois resident and has been a TurboTax customer for 12 years.  CAC ¶¶ 91, 93, 95.  In 2014, Knoch used TTO to prepare and e-file her Tax Year 2013 ("TY13") tax return.  Co Decl. ¶ 23.  In March 2015 (before she had filed her Tax Year 2014 ("TY14") return), Knoch received a refund check from the IRS.  CAC ¶ 92.  When she spoke with Intuit regarding the refund, Knoch alleges a TurboTax representative said that her personal information had been "breached" through TurboTax and that her and her husband's personal information had been taken from her TY13 tax return to file a fraudulent federal return.  *Id.* ¶ 93.  Knoch later completed her TY14 federal and state returns using TurboTax, but because she could not e-file her returns, alleges she was "forced" to print paper returns.  *Id.* ¶ 95.

---

[2]  On a motion to compel arbitration, the Court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.  *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-cv-2664-EJD, 2014 WL 3371842, at *3 (N.D. Cal., Jul. 9, 2014). Intuit cites herein to:  the allegations of the Consolidated Amended Complaint ("CAC") (Dkt. No. 51); the Declaration of Claudine R.L. Co in Support of:  (1) Motion to Compel Arbitration; and (2) Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ("Co Decl.") and its attached exhibits; and the Declaration of Rodger R. Cole in Support of:  (1) Motion to Compel Arbitration; and (2) Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) ("Cole Decl.") and its attached exhibits.

### 3.    James Lebinski

James Lebinski is a Connecticut resident, and has used TurboTax to file joint federal and state returns with his wife for at least 10 years. *Id.* ¶ 11; *Lebinski v. Intuit,* Case No. 15-cv-02209, Compl. ¶ 8 (N.D. Cal., filed May 15, 2015) (Dkt. No. 1) ("*Lebinski* Compl."). In 2014, Lebinski used TTO to prepare and e-file his TY13 tax return. Co Decl. ¶ 23. Lebinski claims that he had started preparing his TY14 returns in 2015, paid the TurboTax tax preparation fee, but received an "error message" and could not e-file his federal or state returns. CAC ¶ 96. Lebinski alleges a TurboTax representative "confirmed" he was a victim of identity theft and that a new TurboTax account was opened using his personal information. *Id.* ¶ 97.

### 4.    Todd Siegel

Todd Siegel is a California resident, and has used TurboTax to prepare his California and federal tax returns every year since 2008. *Id.* ¶ 101. In 2014, Siegel used TTO to prepare and e-file his TY13 tax return. Co Decl. ¶ 23. In 2015, Siegel used TTO to file joint TY14 returns with his wife. *Id.* ¶ 23; CAC ¶ 103. After requesting an extension, Siegel attempted to e-file his tax returns in mid-July 2015, but learned a federal return had already been e-filed using his personal information on February 27, 2015. CAC ¶¶ 104-106.

### 5.    David Stock

David Stock is a Maryland resident, and has used TurboTax to prepare and file his federal and state returns for the last seven or eight years. CAC ¶¶ 13, 111. In 2014, Stock used TTO to prepare and file his TY13 return. Co Decl. ¶ 24. In 2015, Stock claims that he purchased TTO to prepare and file his TY14 returns, but when he clicked to e-file his tax return, he was notified that one had already been filed using his Social Security number. CAC ¶¶ 112-114. Stock allegedly contacted Intuit and an Intuit representative "advised" that state and federal returns were filed using his Social Security number, but used a different email address than the one Stock used to register with TurboTax. *Id.* ¶ 115. Stock alleges that, as of the filing of the CAC, Intuit had not contacted him or provided him with further information. *Id.* ¶ 117.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

6.      **Marilyn Williams**

Marilyn Williams is a Maryland resident, and has used TurboTax to prepare and file her taxes for approximately fourteen years.  CAC ¶¶ 14, 120.  Williams purchased TTD in 2001 and the software purchase automatically renews every year.  *Id*. ¶ 120.  In 2014, Williams used TTD to file her TY13 federal and state tax returns.  Co Decl. ¶ 25.  Williams claims that when she attempted to e-file her TY14 tax returns on April 14, 2015, she discovered that federal and state tax returns were filed through TurboTax using her Social Security number.  CAC ¶ 123.

**B.      Plaintiffs Agreed to the TurboTax Online Terms of Service ("TTO TOS") or the TurboTax Desktop End User License Agreement ("TTD EULA") for TY13**

In order to access and use Intuit's TurboTax software or services, users must accept either the TurboTax Online Terms of Service (in the case of TTO users) or the TurboTax End User License Agreement (in the case of TTD users).  These agreements govern the relationship between Intuit and TurboTax users (including plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams), and set for the terms and conditions for their use of TurboTax.

**1.      The TTO TOS and User Acceptance Process**

In TY13, TTO users—including Knoch, Lebinski, Siegel, and Stock—agreed to the "Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2013" (the "TY13 TTO TOS").[3]  Co Decl. ¶¶ 23-24.  This is because in order to access and use TTO, a user is required to affirmatively agree to the governing TTO TOS.  *Id*. ¶¶ 6-13.  Specifically, in the case of return TTO users with existing TTO accounts (like Knoch, Lebinksi, Siegel, and Stock),[4] each was presented with a "Sign In" page on which they could enter their user ID and password.  This "Sign In" page notifies the user immediately below the blue "Sign In" button, that "*By*

---

[3]  As TY13 TTO users, the TTO Arbitration Plaintiffs (Knoch, Lebinski, Siegel and Stock) are governed by the TY13 TTO TOS.  To the extent that they contend their claims are governed instead by next year's TY14 TTO TOS, it is immaterial because the TY14 TTO TOS has the same material terms as the TY13 TTO TOS.  *See* Co Decl. ¶¶ 27, 29, 32-35, Exs. 2, 5.

[4]  Because Knoch, Lebinski, Siegel and Stock are all existing TTO customers, the login process for return TTO customers is described herein.  However, the process is no different for new users.  *See* Co Decl. ¶¶ 10-13, Ex. 4 (describing near identical process for new users, who are presented with a similar "Create your TurboTax Account" page instead).

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMO. OF
POINTS AND AUTHORITIES IN SUPPORT
THEREOF                                                    5                          Case No.: 5:15-cv-01778-EJD

Fenwick & West LLP
Attorneys at Law
Mountain View

*clicking Sign In, you agree to our License Agreement*."   *Id.* ¶ 7, Ex. 1 (italics and blue font type in original).  The term "*License Agreement*" on this "Sign In" page (as reflected by its blue font type) is hyperlinked text that the user can click to access the TTO license agreement.  *Id.* ¶ 8.[5]  In TY13, this hyperlinked text directed users to the TY13 TTO TOS.  *Id.*  Thus in TY13, Knoch, Lebinski, Siegel, and Stock necessarily accepted the terms of the TY13 TTO TOS in order to use TTO to file their tax returns.  *Id.* ¶¶ 6-13, 23-24.

### 2.  The TTD EULA and User Acceptance Process

In TY13, TTD users (like Williams) agreed to the "Intuit Software End User License Agreement TurboTax Desktop Software—Tax Year 2013" ("TY13 TTD EULA").[6]  Co Decl. ¶¶ 14-19.  This is because TTD users cannot complete installation of the TTD software unless they affirmatively agree to the applicable TTD EULA.  *Id.* ¶¶ 14-16.  Specifically, in the case of a TTD user (including those like Williams whose TTD software purchase automatically renews each year), the user is presented with a screen with the TTD EULA during the installation process.  *Id.*; *see also id.* ¶ 14 n.2.  The user must click an "I Agree" button to indicate acceptance of the TTD EULA before the installation can proceed.[7]  *Id.* ¶ 16, Exs. 6-7.  After installation, the user can again view the terms of the TTD EULA at any time through the "Help" drop down menu.  Co Decl. ¶ 17, Ex. 8.  Thus in TY13, Williams necessarily accepted the terms of the TY13 TTD EULA in order to use TTD to file her tax returns.  *Id.* ¶¶ 14-19, 25; CAC ¶ 120.

---

[5]  The term "Software License Agreements" in gray font (which is at the bottom of this same "Sign In" page) is also hyperlinked text that the user can click on to go to the "License Agreements" page where the user can access the TTO license agreement, license agreements for previous years and license agreements for other TurboTax related products.  *Id.* ¶ 9.

[6]  As a TY13 TTD user, the TTD Arbitration Plaintiff Williams is governed by the TY13 TTD EULA.  To the extent Williams contends her claims are governed instead by next year's TY14 TTD EULA, it is immaterial because the TY14 TTD EULA has the same material terms as the TY13 TTD EULA.  *See* Co Decl. ¶¶ 28, 30-31, 32 n.9, 34 nn.10-11, Exs. 9-10.

[7]  On this screen, the user can also save a copy of the TTD EULA, print a copy of the TTD EULA, cancel the installation process, or go back in the installation process.  *Id.* ¶ 16, Ex. 6.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**C.    The TTO TOS and TTD EULA Includes Agreements to Arbitrate Disputes on an Individual, Non-Class Basis**

The TY13 TTO TOS and TY13 TTD EULA (collectively, the "Agreements") each contain a near identical dispute resolution and class action waiver agreement (the "Dispute Resolution Agreement") in capital letters that is set apart in its own separate bolded heading. This Dispute Resolution Agreement provides that "ANY DISPUTE OR CLAIM RELATING IN ANY WAY" to the TurboTax services or the Agreements would be resolved by binding arbitration[8] on an individual basis only.  Co Decl. ¶¶ 27-28.  Specifically, the TY13 TTO TOS states:

> **14.  DISPUTES.**  ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify.  The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters.  Notwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction. WE EACH AGREE THAT ANY AND ALL DISPUTES MUST BE BROUGHT IN THE PARTIES' INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  BY ENTERING INTO THIS AGREEMENT AND AGREEING TO ARBITRATION, YOU AGREE THAT YOU AND INTUIT ARE EACH WAIVING THE RIGHT TO FILE A LAWSUIT AND THE RIGHT TO A TRIAL BY JURY.  IN ADDITION, YOU AGREE TO WAIVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR LITIGATE ON A CLASS-WIDE BASIS.  YOU AGREE THAT YOU HAVE EXPRESSLY AND KNOWINGLY WAIVED THESE RIGHTS.
>
> To begin an arbitration proceeding, send a letter requesting arbitration and describing your claim to Intuit Inc., in care of our registered agent Corporation Service Company, 2711 Centerville Road, Wilmington, DE 19808.  Arbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules, which are available at www.adr.org or by calling 1-800-778-7879.  Payment of all filing, administration and arbitrator fees and costs will be governed by the AAA's rules, but if you are unable to pay any of them, Intuit will pay them for you.  In addition, Intuit will reimburse all such fees and costs for claims totaling less than $75,000 unless the arbitrator determines the claims are frivolous.  Likewise, Intuit will not seek its attorneys' fees or costs in arbitration unless the arbitrator determines your claims or defenses are frivolous.  You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at

---

[8]  The Dispute Resolution Provision also permits TurboTax users to file their claims in small claims court.

1

2

3

> another mutually agreed location.  The decision of the arbitrator shall be final and
> not appealable, and judgment on the arbitration award may be entered in any
> court having jurisdiction thereof.  This Section 14 shall survive expiration,
> termination or rescission of this Agreement.

4   Co Decl. ¶ 27, Ex. 2 (emphases in original).  The Dispute Resolution Agreement in the TY13

5   TTD EULA is identical except that it applies to any dispute or claim relating in any way to the

6   "INTUIT SOFTWARE" (instead of "SERVICES"), and includes a typo to the word "rescission"

7   (spelled as "recession").  *Id.* ¶ 28, Ex. 9.

8       **D.**     **Procedural History and the Arbitration Plaintiffs' Claims**

9           Despite their agreements to pursue their claims on a non-class basis, Arbitration Plaintiffs

10  Knoch, Lebinski, and Stock filed putative class action lawsuits against Intuit.  *See Knoch v. Intuit*,

11  Case No. 1:15-cv-03650 (N.D. Ill., filed Apr. 24, 2015)[9]; *Lebinski v. Intuit Inc.*, Case No. 15-cv-

12  02209-EJD-PSG (N.D. Cal., filed May 15, 2015); *Stock v. Intuit Inc.*, Case No. 15-cv-02287-

13  EJD-NC (N.D. Cal., filed May 21, 2015).  They, as well as Siegel and Williams, then

14  subsequently joined their claims in this consolidated action with the first filed action, *Diaz, et al.*

15  *v. Intuit, et al.*, Case No. 5:15-cv-01778-EJD (N.D. Cal., filed Apr. 20, 2015).[10]  In the CAC, the

16  Arbitration Plaintiffs allege the same eight claims, consisting of:

17
18
- two contract-related claims (Sixth Count for breach of contract and breach of the
  implied covenant of good faith and fair dealing and Seventh Count for breach of the
  implied warranty of merchantability);

19
20
- three tort claims (Third Count for aiding and abetting fraud, Fourth Count for
  negligent enablement of third party imposter fraud, and Fifth Count for negligence);

21
22
- two statutory violations (First Count for violation of Cal. Bus. & Prof. Code § 17200
  and Second Count for violation of California Customer Records Act, Cal. Civ. Code
  §§ 1798.81.5 and 1798.82);

23
- unjust enrichment (Eighth Count).

24

[9]  Intuit previously moved to compel Knoch to arbitration.  *Id.* at Dkt. Nos. 21-22.  However,
25  before filing her response, Knoch dismissed her class case without prejudice to join this
consolidated action.  *Id.* at Dkt. No. 28.

26  [10]  The first filed putative class action *Diaz* (unlike *Knoch*, *Lebinski*, and *Stock*) had been brought
only by a non-customer plaintiff (Michelle Fugatt) and a former TTD customer (Christine Diaz)
27  whose 2011 contract with Intuit did not include the Dispute Resolution Agreement.

28  NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION; MEMO. OF
POINTS AND AUTHORITIES IN SUPPORT
THEREOF                                                    8                              Case No.: 5:15-cv-01778-EJD

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

All of their foregoing legal claims and theories arise from one or more of the same core factual allegations relating to their use of TurboTax and Intuit's security measures concerning TurboTax.  Namely, they allege that Intuit purportedly failed to:  (1) protect the data they had provided through TurboTax; (2) prevent the filing of fraudulent tax returns filed in their names; or (3) timely notify them that their information had been compromised through TurboTax.  *See* CAC ¶¶ 43-49, 93, 97, 105, 115, 117, 123, 138, 146-147, 158-159, 166-174, 179-183, 187-191, 197-200, 206-208, 212-214.  Each fundamentally relate to the TurboTax "SERVICES" or "SOFTWARE," or the "AGREEMENT[S]," and thus fall within the broad scope of the Dispute Resolution Agreements.  Co Decl. Exs. 2, 5, 9-10.  Accordingly, the Court should require that the Arbitration Plaintiffs pursue their claims in the proper forum.[11]

## IV.   ARGUMENT

### A.   The Court Should Compel the Arbitration Plaintiffs to Arbitration

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).  A court must compel arbitration where the party seeking arbitration establishes that:  (1) the parties agreed to arbitrate; and, if so (2) the scope of that agreement to arbitrate encompasses the claims at issue.  *Chiron Corp.*, 207 F.3d at 1130; 9 U.S.C. § 4.  As seen herein, Intuit establishes both.

#### 1.   There Are Valid and Enforceable Agreements to Arbitrate

The Dispute Resolution Agreements are valid and enforceable between the Arbitration

---

[11]  Indeed at least two TurboTax users have pursued their claims in accordance with their Dispute Resolution Agreements with Intuit.  *See* Cole Decl. ¶ 11, Ex. I (arbitration demand filed with American Arbitration Association on May 1, 2015 by TTO customers in Virginia); *id.* ¶ 12, Ex. J (small claims action filed on April 22, 2015 by TTO customer in Texas).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Plaintiffs and Intuit.  To determine whether a valid arbitration agreement exists, courts "apply

2   ordinary state-law principles that govern the formation of contracts."  *Savetsky v. Pre-Paid Legal*

3   *Servs., Inc.*, No. 14-03514-SC, 2015 WL 4593744, at *2 (N.D. Cal. July 30, 2015).  A valid

4   contract is formed where parties consent to a lawful object with sufficient consideration.  Cal.

5   Civ. Code § 1550.  Here, Plaintiffs cannot dispute they are bound by the Dispute Resolution

6   Agreements.  First, they have already judicially admitted the Agreements are valid and

7   enforceable by pleading that the contracts exist and asserting breach of contract claims based on

8   the same contracts.  Second, the Agreements are standard clickwrap agreements to which the

9   Arbitration Plaintiffs necessarily manifested assent in order to use TurboTax.  Finally, the

10  Arbitration Plaintiffs have not alleged (and cannot allege) any facts to invalidate these

11  presumptively valid and enforceable Dispute Resolution Agreements.

### a.   The Arbitration Plaintiffs Have Already Conceded the Enforceability of the Agreements

14      The Arbitration Plaintiffs have already acknowledged that they are bound by the

15  Agreements.  First, Plaintiffs admit in the CAC that they are long time TurboTax customers and

16  that "Intuit entered into written contracts with Plaintiffs and members of the class."  CAC ¶ 197;

17  *see, e.g.*, *Valdiviezo v. Phelps Dodge Hildago Smelter, Inc.*, 995 F. Supp. 1060, 1065 (D. Ariz.

18  1997) (noting Ninth Circuit law that "a statement in a complaint serves as a judicial admission")

19  (citations omitted).  And although Plaintiffs do not specify the "written contracts" referenced in

20  the CAC, they cannot dispute that the TY13 TTO TOS governs Intuit's relationships with Knoch,

21  Lebinski, Siegel and Stock, and the TY13 TTD EULA governs Intuit's relationship with

22  Williams.  *See* Part III.B *supra*.  Indeed, they cite their very terms in the CAC.  *See* CAC ¶¶ 152,

23  195 (citing choice of law provision), *id.* ¶ 198 (quoting TY13 TTD EULA § B.3 and TY13 TTO

24  TOS § B.7).

25      Second, Plaintiffs concede the enforceability of the Agreements by asserting a claim for

26  breach of contract against Intuit.  *See* CAC ¶¶ 194-202.  Plaintiffs cannot claim the benefits of the

27  Agreements by asserting a claim for breach of contract and, at the same time, deny that the

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Agreements are enforceable in an attempt to avoid their obligation to arbitrate claims. *Valdiviezo*, 995 F. Supp. at 1064 (plaintiff bound by arbitration agreement in handbook which had served as basis for contract claim and noting well-settled rule that a "party cannot reap the benefits of a contract and then seek to avoid the corresponding burdens"). The Arbitration Plaintiffs have already conceded the validity and enforceability of the Agreements; they cannot now avoid their very terms because they want to pursue class claims.

> **b.** **The Agreements Are Standard Clickwrap Agreements to Which Arbitration Plaintiffs Assented Before Using TurboTax**

Even if the Arbitration Plaintiffs had not admitted that the parties entered a valid contract and asserted claims based on those contracts, the Agreements are valid and enforceable standard clickwrap agreements that the Arbitration Plaintiffs affirmatively accepted before being able to access and use TurboTax. Intuit presented Knoch, Lebinski, Siegel, and Stock hyperlinks to the TY13 TTO TOS and they were required to click a button to indicate their acceptance of the Agreements in order to use TTO. Co Decl. ¶¶ 6-13. Similarly, Williams could not complete installation of the TTD software without first accepting the TY13 TTD EULA. *Id.* ¶¶ 14-16. This process cannot be unfamiliar to them, as they allege to have been long-time TurboTax customers. *See, e.g.*, CAC ¶ 91 (alleging Knoch a customer for at least 12 years); *id.* ¶ 101 (alleging Siegel a customer since at least 2008); *id.* ¶ 111 (alleging Stock a customer for the past seven or eight years); *id.* ¶ 120 (alleging Williams a customer for at least 14 years); *Lebinski* Compl. ¶ 8 (alleging Lebinksi a customer for at least ten years).

Courts within and outside of the Ninth Circuit have routinely enforced such "clickwrap" agreements. *See, e.g.*, *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *5 (N.D. Cal. Jun. 25, 2014) (explaining a clickwrap agreement "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011); *Leong v. Myspace, Inc.*, No. CV 10-8366 AHM EX, 2011 WL 7808208, at *5 (C.D. Cal. Mar. 11, 2011); *Beard v. PayPal, Inc.*, No. 09-1339-JO, 2010 WL

Fenwick & West LLP
Attorneys at Law
Mountain View

1    654390, at *1 (D. Or. Feb. 19, 2010); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th

2    Cir. 2012) (collecting cases).  Indeed, courts have uniformly enforced similar clickwrap

3    agreements between Intuit and its customers, and no court has held Intuit's clickwrap agreement

4    to be unenforceable.  *See, e.g.*, *Inter-Mark USA, Inc. v. Intuit Inc.*, No. C-07-04178 JCS, 2008

5    WL 552482, at *8-9 (N.D. Cal. Feb. 27, 2008); *Rassoli v. Intuit Inc.*, No. H-11-2827, 2012 WL

6    949400, at *2 (S.D. Tex. Mar. 19, 2012).  The Court should similarly do so here.

7                **c.**      **The Arbitration Plaintiffs Cannot Invalidate the Presumptively**

8                          **Valid and Enforceable Dispute Resolution Agreements**

9         Where a contract contains an arbitration clause, the clause is presumed valid.  *See AT&T*

10   *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Under the FAA and the

11   strong federal policy in favor of arbitration, "the party resisting arbitration bears the burden of

12   proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v.*

13   *Randolph*, 531 U.S. 79, 91-92 (2000) (citation omitted); *see also Sullivan v. Lumber Liquidators,*

14   *Inc.*, No. C-10-1447 MMC, 2010 WL 2231781, at *3 (N.D. Cal. Jun. 2, 2010) ("[T]he party

15   opposing arbitration has the burden of proving the arbitration provision is unconscionable.").

16        Although Section 2 of the FAA permits courts to declare arbitration agreements

17   unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract,"

18   the United States Supreme Court has made clear that "[t]his savings clause permits agreements to

19   arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or

20   unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning

21   from the fact that an agreement to arbitrate is at issue."  *Concepcion*, 563 U.S. at 339 (citations

22   omitted).

23        Here, the CAC alleges no facts suggesting that the Dispute Resolution Agreements are not

24   enforceable.  No allegations suggest any such fraud, duress, or unconscionability when the

25   Arbitration Plaintiffs entered their agreements with Intuit.  *See generally* CAC.  And, of course,

26   the Arbitration Plaintiffs could not make any such suggestion since they acknowledge the

27   contracts they each entered and assert claims based on those contracts.  Even if the Arbitration

28   NOTICE OF MOTION AND MOTION TO
     COMPEL ARBITRATION; MEMO. OF
     POINTS AND AUTHORITIES IN SUPPORT
     THEREOF

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Plaintiffs did so allege, any attempt to assert the class action waiver to be unconscionable would lack merit in the wake of *Concepcion*. *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1157-61 (9th Cir. 2012) ("*Concepcion* controls, the FAA preempts . . . state law invalidating the class-action waiver"); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, at 923-24 (2015).  Indeed, the Dispute Resolution Agreements present terms substantively the same or more favorable than the arbitration agreements already upheld in *Concepcion* and *Coneff*.  *See* Cole Decl. ¶ 13, Ex. K (summarizing comparison of Dispute Resolution Agreement with those upheld in *Concepcion* and *Coneff*).  As in *Coneff*, "the arbitration agreement here has a number of fee-shifting and otherwise pro-consumer provisions."  *Coneff*, 673 F.3d at 1159.  And like in *Concepcion*, the Dispute Resolution Agreement includes:  Intuit's obligation to pay arbitration costs; waiver of Intuit's right to recover attorneys' fees (unless the claims are deemed frivolous); use of American Arbitration Association rules; the consumer's right to choose the manner in which the arbitration is heard; and the consumer's right to have the hearing in the county in which they live.  *See* Cole Decl., Ex. K (comparing TY13 TTO TOS with agreement at issue in *Concepcion*).

In fact, TurboTax customers have taken advantage of this arbitration procedure to obtain an economical and efficient ruling on claims similar to those asserted by the Arbitration Plaintiffs. On May 1, 2015, Kathrin and Justin Donovan—alleged victims of tax fraud—filed an arbitration demand with the American Arbitration Association ("AAA"), and (after amendment of their demand) asserted claims for breach of contract, negligence, and unfair competition under Cal. Bus. & Prof. Code Section 17200.  Cole Decl. ¶ 11, Ex. I.  The Donovans were able to participate in this arbitration at minimal expense because Intuit paid the AAA fees and because the Donovans chose to conduct the arbitration based on written submissions.  *Id.*  The arbitrator's award, if any, is expected within approximately seven months of the Donovans' filing of their arbitration demand.  *Id.*

## 2. The Arbitration Plaintiffs' Claims Are Within the Scope of the Dispute Resolution Agreements

The Dispute Resolution Agreements also encompass the Arbitration Plaintiffs' claims

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    against Intuit.  Under the FAA, "any doubts concerning the scope of arbitrable issues should be

2    resolved in favor of arbitration."  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d

3    1136, 1139, 1144 (9th Cir. 1991) (citations omitted).  As with any contract, the parties' intentions

4    control, but those intentions "are generously construed as to issues of arbitrability." *Id.* at 1139

5    (citations omitted).

6            Here, the Dispute Resolution Agreements use paradigmatically broad clauses.

7    Specifically, Knoch, Lebinski, Siegel, and Stock as TTO users agreed to arbitrate on an individual

8    basis "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS

9    AGREEMENT."  Co Decl. ¶ 27.  Williams as a TTD user similarly agreed to arbitrate on an

10   individual basis "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE INTUIT

11   SOFTWARE OR THIS AGREEMENT." *Id.* ¶ 28.  As described in Part III.D *supra*, all of the

12   Arbitration Plaintiffs' claims relate to TurboTax or their Agreements.  Their allegations concern

13   Intuit's purported failure to safeguard their personal information and to prevent the filing of

14   fraudulent tax returns in their names.  CAC ¶¶ 43-49, 93, 97, 105, 115, 117, 123, 138, 146-147,

15   158-159, 166-174, 179-183, 187-191, 197-200, 206-208, 212-214.  They also allege that Intuit

16   failed to meet its contractual obligations under the Agreements themselves. *Id.* ¶¶ 195-202.

17   These claims necessarily fall within the scope of the Dispute Resolution Agreements and must be

18   resolved through arbitration. *See KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24 (2011) ("Agreements

19   to arbitrate that fall [directly] within the scope and coverage of the Federal Arbitration Act…must

20   be enforced in state and federal courts.").

21           Courts have consistently held that the type of "any dispute…relating to" clauses used in

22   the Dispute Resolution Agreements is meant to be "broad and far reaching." *Chiron Corp.*, 207

23   F.3d at 1131; *ValueSelling Assocs., LLC v. Temple*, No. 09-CV-1493-JM, 2009 WL 3736264, at

24   *2 (S.D. Cal. Nov. 5, 2009) ("A clause providing for the arbitration of 'any claim or controversy

25   arising out of or relating to the agreement' has been held to be the paradigm of a broad clause.")

26

27

28   NOTICE OF MOTION AND MOTION TO
     COMPEL ARBITRATION; MEMO. OF
     POINTS AND AUTHORITIES IN SUPPORT
     THEREOF                                    14              Case No.: 5:15-cv-01778-EJD

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    (citation omitted).[12]  Moreover, to the extent there is any doubt as to whether the claims fall

2    within the scope of the Dispute Resolution Agreements, they must be "resolved in favor of

3    arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26

4    (1985) (claims fall within the scope of broadly defined arbitration provisions if they merely

5    "touch" the matters covered by the arbitration provision); *see also Simula, Inc. v. Autoliv, Inc.*,

6    175 F.3d 716, 721 (9th Cir. 1999) (same).[13]

7            **B.      The Court Should Stay Proceedings As to the Arbitration Plaintiffs**

8            Under the FAA, a court must stay proceedings if it is satisfied that an issue before it is

9    referable to arbitration under an agreement.  9 U.S.C. § 3; *Ambler v. BT Americas Inc.*, 964 F.

10   Supp. 2d 1169, 1178 (N.D. Cal. 2013) (noting "plain language of the FAA demonstrates that a

11   stay, not a dismissal, is the appropriate course of action…both Supreme Court and Ninth Circuit

12   authority more strongly favor a stay over a dismissal"); *Sanders v. Cty. of Santa Cruz*, No. 13-cv-

13

14   [12]  *See also Savetsky*, 2015 WL 4593744, at *9 ("[A]ll disputes and claims relat[ing] to
     [defendant] LegalShield" sufficiently broad to encompass claims of "improperly charged
15   recurring payments"); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash.
     2013) (finding "any dispute" clause in arbitration provision sufficiently broad to cover claims that
16   arose before the execution of the agreement); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d
     1182, 1207 (S.D. Cal. 2013) ("Defendants' arbitration agreements all contain the broad 'related
17   to' or 'relating to' language, and the Court accordingly reads the clauses broadly."); *Fleet Tire
     Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) (describing clause
18   requiring arbitration of "[a]ny claim or controversy arising out of or relating to this Agreement"
     as "constitut[ing] the broadest language the parties could reasonably use"); *Next Step Med. Co. v.
19   Johnson & Johnson Int'l*, 619 F.3d 67, 72 (1st Cir. 2010) (describing an arbitration clause
     covering "any dispute, controversy or claim…arising out of or relating in any way to the business
20   relationship between [the parties]" as "broadly worded").

21   [13]  The Arbitration Plaintiffs' claims also relate to subject matters governed by the Agreements
     and are thus independently subject to the Dispute Resolution Agreements.  *See, e.g., Atlas*, 2014
22   WL 3371842, at *5 ("Because all of Plaintiff's claims are based on theft and wrongful use of
     information that is related to the same business relationship that is governed by the Distributor
23   Agreement, the entire dispute is subject to arbitration"); Co Decl. Exs. 2, 5, 9-10 (TY13 TTO
     TOS §§ A.1, A.5; TY14 TTO TOS §§ A.1, A.5; TY13 TTD EULA §§ A.1, A.5; TY14 TTD
24   EULA §§ A.1, A.4) (incorporating by reference Intuit's Privacy Policy which discusses Intuit's
     data security practices); *id.* ¶¶ 29-33, Exs. 2, 5, 9-10 (TY13 TTO TOS §§ A.8.1, A.9, B.8; TY14
25   TTO TOS §§ A.8.1, A.9, B.9; TY13 TTD EULA §§ A.8.1, A.9; TY14 TTD EULA §§ A.7.1,
     A.8) (warranty and limitation of liability provisions covering security and loss or theft of data); *id.*
26   ¶¶ 34-35 nn.10-11, Exs. 2, 5, 9-10 (TY13 TTO TOS §§ A.7.4, B.6, B.7; TY14 TTO TOS §§
     A.7.4, B.6, B.7; TY13 TTD EULA §§ A.7.5, B.3; TY14 TTD EULA §§ A.6.4, B.3) (provisions
27   governing user's responsibility for maintaining secure passwords and for notifying Intuit of any
     unauthorized access to the account).

28   NOTICE OF MOTION AND MOTION TO
     COMPEL ARBITRATION; MEMO. OF
     POINTS AND AUTHORITIES IN SUPPORT
     THEREOF

     Case No.: 5:15-cv-01778-EJD

1   3205-EJD, 2014 WL 4773992, at *8 (N.D. Cal. Sept. 19. 2014) (compelling arbitration and

2   staying action); *Randazzo Enters. Inc. v. Applied Underwriters Captive Risk Assurance Co.*, No.

3   14-cv-2374-EJD, 2014 WL 6997961, at *6 (N.D. Cal. Dec. 11, 2014) (same); *Laughlin v.*

4   *VMware, Inc.*, No. 5:11-cv-530-EJD, 2012 WL 298230, at *8 (N.D. Cal. Feb. 1, 2012) (same).

5   Accordingly, with respect to the Arbitration Plaintiffs, the Court should stay these proceedings.

6   **V.     CONCLUSION**

7          Intuit respectfully requests that the Court require the Arbitration Plaintiffs to honor their

8   Dispute Resolution Agreements and grant Intuit's motion to compel arbitration, and to stay their

9   cases pending the resolution of their respective arbitrations.

10  Dated:   December 1, 2015                FENWICK & WEST LLP

11

12                                          By: */s/ Rodger R. Cole*
                                                Rodger R. Cole
13
                                            Attorneys for INTUIT INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  NOTICE OF MOTION AND MOTION TO
    COMPEL ARBITRATION; MEMO. OF
    POINTS AND AUTHORITIES IN SUPPORT
    THEREOF                          16          Case No.: 5:15-cv-01778-EJD