RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
SONGMEE L. CONNOLLY (CSB No. 228555)
sconnolly@fenwick.com
ANGEL CHIANG (CSB No. 280546)
achiang@fenwick.com
HAILEY C. TETON (CSB No. 294262)
hteton@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:      650.938.5200

Attorneys for Defendant
INTUIT INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUIT DATA LITIGATION | Master Docket No. 15-CV-01778-EJD |
| | **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |
| | Date:          February 18, 2016 |
| | Time:          9:00 a.m. |
| | Location:     Courtroom 4, 5th floor |
| | Judge:         The Hon. Edward J. Davila |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... iii

TABLE OF ABBREVIATIONS .................................................................................................... viii

TABLE OF ARGUMENTS ............................................................................................................ xi

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................... 1

STATEMENT OF RELIEF SOUGHT ............................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.      INTRODUCTION .............................................................................................................. 1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

III.    STATEMENT OF FACTS ................................................................................................. 3

        A.      The Recent Rise in Identity Theft and Tax Refund Fraud ...................................... 3

        B.      Intuit ....................................................................................................................... 4

        C.      Plaintiffs ................................................................................................................. 6

                1.      Non-Customer Plaintiffs Brown and Fugatt ............................................... 6

                2.      TY10 Customer Plaintiff Diaz ................................................................... 6

                3.      TY13-14 Customer Plaintiffs Knoch, Lebinski, Siegel, Stock, and
                        Williams ...................................................................................................... 6

                4.      Plaintiffs' Alleged Harm ............................................................................ 7

        D.      The Governing Agreements .................................................................................... 8

IV.     LEGAL STANDARDS ...................................................................................................... 9

V.      ARGUMENT .................................................................................................................... 10

        A.      Plaintiffs Fail to State a Breach of Contract (Sixth Count) ................................. 10

                1.      Plaintiffs Fail to Allege Breach of any "Three State E-Filing"
                        Limitation ................................................................................................. 11

                2.      Plaintiffs Fail to Allege Any Other Breach of Contract by Intuit ............ 11

                3.      Plaintiffs Fail to Allege Breach of the ICGFFD ...................................... 13

        B.      Plaintiffs Fail to State a Breach of the Implied Warranty of Merchantability
                (Seventh Count) .................................................................................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF CONTENTS**
(continued)

Page

C.  Plaintiffs Fail to State a Claim of Negligence (Fifth Count) ............................... 16

    1.  The Economic Loss Doctrine Bars the Customer Plaintiffs'
        Negligence Claims ...................................................................... 16

    2.  Intuit Owes No Duty to Non-Customers.................................................. 17

D.  The Negligent Enablement of Third Party Imposter Fraud (Fourth Count)
    Should be Dismissed Without Leave to Amend ................................................. 19

E.  Plaintiffs Fail to State a CRA Violation (Second Count) .................................... 19

    1.  The Non-California Customer Plaintiffs Cannot Bring a CRA Claim ..... 20

    2.  Intuit Is Exempt under Subsection 1798.81.5(e)(5)................................ 20

    3.  Siegel Lacks Standing to Bring the Section 1798.82 Claim.................... 21

F.  The Aiding and Abetting Fraud Claim (Third Count) Fails ................................. 22

    1.  Plaintiffs Have Not Pled Actual Knowledge ........................................... 22

    2.  Plaintiffs Have Not Pled Substantial Assistance...................................... 24

G.  The Unjust Enrichment Claim (Eighth Count) Should Be Dismissed
    Without Leave to Amend .............................................................................. 25

VI.  CONCLUSION.................................................................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Aas v. Superior Court*,
24 Cal. 4th 627 (2000), *superseded by statute on other grounds* ............................16

5

*Alfus v. Pyramid Tech. Corp.*,
6    745 F. Supp. 1511 (N.D. Cal. 1990) ........................................................................24

7

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
824 F. Supp. 2d 1164 (C.D. Cal. 2011) ...............................................................22, 25

8

*Antman v. Uber Techs., Inc*,
9    Case No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ...............3, 20, 22

10

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) .......................................................................................16, 17

11

*ARB, Inc. v. Luz Const., Inc.*,
12    972 F.2d 1336, 1992 WL 164487 (9th Cir. July 16, 1992)...........................................24

13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................10

14

*Atkinson v. Elk Corp. of Texas*,
15    142 Cal. App. 4th 212 (2006) ...............................................................................14

16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................10

17

*Ben-Zvi v. Edmar Co.*,
18    40 Cal. App. 4th 468 (1995), *as modified* (Nov. 21, 1995) .......................................13

19

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994), *overruled on other grounds*,
20    *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)..................................6

21

*Burns v. Neiman Marcus Grp., Inc.*,
173 Cal. App. 4th 479 (2009) .................................................................................18

22

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
23    2 Cal. 4th 342 (1992) .........................................................................................13

24

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) ..........................................................18, 22, 23, 24

25

*Castro Valley Union 76 v. Vapor Sys. Techs., Inc.*,
26    No. C 11-0299 PJH, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012) ..............................14

27

*Chazen v. Centennial Bank*,
61 Cal. App. 4th 532 (1998) ..........................................................................18, 19

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

**Page(s)**

3
*Chirico v. Merrill Lynch, Pierce, Fenner & Smith*,
  No. C 99-2263 CRB, 1999 WL 1285458 (N.D. Cal. Dec. 13, 1999) ......................................12

4

*Clapper v. Amnesty Int'l USA*,
5
  133 S. Ct. 1138 (2013) ...........................................................................................................21

6
*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008).................................................................................................14

7

*Colony Cove Props., LLC v. City of Carson*,
8
  640 F.3d 948 (9th Cir. 2011)...................................................................................................10

9
*Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990)...................................................................................................10

10

*Cooper v. Pickett*,
11
  137 F.3d 616 (9th Cir. 1997)...................................................................................................25

12
*Corona v. Sony Pictures Entm't, Inc.*,
  No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015).....................17, 20

13

14
*Dunkel v. eBay Inc.*,
  No. 5:12-CV-01452-EJD, 2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) .........................13, 14

15
*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ...............................................................................................25

16

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
17
  678 F.3d 659 (8th Cir. 2012)...................................................................................................23

18
*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
  795 F. Supp. 2d 874 (D. Minn. 2011) ......................................................................................25

19

*Erlich v. Menezes*,
20
  21 Cal. 4th 543 (1999) ...........................................................................................................17

21
*Facebook, Inc. v. MaxBounty, Inc.*,
  274 F.R.D. 279 (N.D. Cal. 2011).............................................................................................24

22

*Fiol v. Doellstedt*,
23
  50 Cal. App. 4th 1318 (1996) ..................................................................................................24

24
*Freeman & Mills, Inc. v. Belcher Oil Co.*,
  11 Cal. 4th 85 (1995) .............................................................................................................16

25

*Gonzalez v. Planned Parenthood of Los Angeles*,
26
  759 F.3d 1112 (9th Cir. 2014).................................................................................................10

27
*Huggins v. Citibank, N.A.*,
  355 S.C. 329 (2003) ...............................................................................................................19

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ....................................................................21, 22

*In re Facebook Internet Tracking Litig.*,
  2015 WL 6438744 (N.D. Cal. Oct. 23, 2015) ..........................................................9, 10

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .................................................................................23

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ....................................................................17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................16, 17

*Inter-Mark USA, Inc. v. Intuit Inc.*,
  No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ...........................16

*Joffe v. United Cal. Bank*,
  141 Cal. App. 3d 541 (1983) .................................................................................18

*Karen Kane v. Bank of America Nat'l Trust & Sav. Ass'n*,
  67 Cal. App. 4th 1192 (1998) ............................................................................18, 19

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...............................................................................3

*McDonald v. John P. Scripps Newspaper*,
  210 Cal. App. 3d 100 (1989), *as modified* (May 10, 1989) ...........................10, 12, 13

*McKinney v. Google, Inc.*,
  No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ...........17

*Melican v. Regents of Univ. of Cal.*,
  151 Cal. App. 4th 168 (2007) ...............................................................................13

*Nwabueze v. AT&T Inc.*,
  No. C 09-1529 SI, 2011 WL 332473 (N.D. Cal. Jan. 29, 2011) .................................25

*Polzer v. TRW, Inc.*,
  256 A.D.2d 248 (N.Y. App. Div. 1998) ..................................................................19

*Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*,
  11 Cal. App. 4th 1026 (1992) ...............................................................................13

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .........................................................................................16

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
  732 F. Supp. 2d 952 (N.D. Cal. 2010) ....................................................................13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*S.E.C. v. Berry,*
 580 F. Supp. 2d 911 (N.D. Cal. 2008) ...................................................................................22

*SFS Check, LLC v. First Bank of Del.,*
 774 F.3d 351 (6th Cir. 2014)...............................................................................................19

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.,*
 88 F.3d 780 (9th Cir. 1996)..................................................................................................10

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,*
 49 Cal. App. 4th 472 (1996) ...........................................................................................18, 19

*Taylor & Co. v. Bank of Am. Corp.,*
 No. 3:14-cv-00092-MOC-DSC, 2014 WL 3557679 (W.D.N.C. July 18, 2014) .....................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 551 U.S. 308 (2007) ............................................................................................................10

*Third Story Music, Inc. v. Waits,*
 41 Cal. App. 4th 798 (1995) ................................................................................................14

*White v. Lee,*
 227 F.3d 1214 (9th Cir. 2000)..............................................................................................10

*Williamson v. Apple, Inc.,*
 No. 5:11-cv-00377 EJD, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ................................25

**STATUTES AND RULES**

26 U.S.C. §§ 7216, *et seq.*...................................................................................................4, 5

Cal. Civ. Code §§ 895, *et seq.*..................................................................................................16

Cal. Civ. Code § 1798.81, *et seq.*.................................................................................... *passim*

Cal. Com. Code § 1201(10) ....................................................................................................15

Cal. Com. Code § 2316, *et seq*.............................................................................................2, 15

Fed. R. Civ. P. 9(b) ....................................................................................................2, 22, 24, 25

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 3, 9, 10

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 10

U.S. Const. art. III .................................................................................................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES
**(continued)**

2

**Page(s)**

3

**OTHER AUTHORITIES**

4

16 C.F.R. § 314 ......................................................................................................5, 6

5

26 C.F.R. § 301.7216 .................................................................................................4

6

IRS Publication 1345 ...........................................................................................5, 24

7

IRS Publication 3112 ...........................................................................................5, 21

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Arbitration Plaintiffs | Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams |
| Brown | Plaintiff Richard Brown, a resident of Pennsylvania |
| CAC | Consolidated Amended Complaint, filed Sept. 29, 2015 (Dkt. No. 51) |
| Co Decl. | Declaration of Claudine R.L. Co in Support of:  (1) Motion to Compel Arbitration; and (2) Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6), filed concurrently herewith |
| Cole Decl. | Declaration of Rodger R. Cole in Support of:  (1) Motion to Compel Arbitration; and (2) Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6), filed concurrently herewith |
| CRA | California Customer Records Act, California Civil Code §§ 1798.80, *et seq.* |
| Customer Plaintiffs | Diaz, Knoch, Lebinski, Siegel, Stock, and Williams |
| Data Breach Victim Class | Customer Plaintiffs (*see* CAC ¶ 133) |
| Diaz | Plaintiff Christine Diaz, a resident of Ohio |
| *Diaz* Compl. | Complaint filed in *Diaz, et al. v. Intuit, et al.*, Case No. 15-cv-01778 (N.D. Cal., filed Apr. 20, 2015) (Dkt. No. 1) |
| Fraudulent Tax Return Filing Class | Plaintiffs[1] |
| FTC | Federal Trade Commission |
| Fugatt | Plaintiff Michelle Fugatt, a resident of Alabama |
| GLBA | Gramm-Leach Bliley Act |
| ICGFFD | Implied covenant of good faith and fair dealing |
| Intuit | Defendant Intuit Inc. |
| IRC | Internal Revenue Code |
| IRS | Internal Revenue Service |

---

[1] For purposes of this Motion only, Intuit assumes Williams' omission from the Fraudulent Tax Return Filing Class is a scrivener's error and presumes she is included in this alleged class.  *See* CAC at ¶ 133 (listing Brown twice, but omitting Williams).

**TABLE OF ABBREVIATIONS**
(continued)

| | |
|---|---|
| IRS Pub. 1345 | IRS Publication 1345, "Handbook for Authorized IRS e-file Providers of Individual Income Tax Returns," attached as Exhibit B to the Cole Decl. |
| IRS Pub. 3112 | IRS Publication 3112, "IRS e-file Application and Participation," attached as Exhibit C to the Cole Decl. |
| Knoch | Plaintiff Carol Knoch, a resident of Illinois |
| *Knoch* Compl. | Complaint filed in *Knoch v. Intuit*, Case No. 15-cv-3560 (N.D. Ill., filed Apr. 24, 2015) (Dkt. No. 1), attached as Exhibit G to the Cole Decl. |
| Lebinski | Plaintiff James Lebinski, a resident of Connecticut |
| *Lebinski* Compl. | Complaint filed in *Lebinski v. Intuit*, Case No. 15-cv-02209 (N.D. Cal., filed May 15, 2015) (Dkt. No. 1) |
| Motion | Intuit's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint Pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure |
| Non-California Customer Plaintiffs | Plaintiffs Diaz, Knoch, Lebinski, Stock, and Williams |
| Non-Customer Plaintiffs | Plaintiffs Brown and Fugatt |
| PII | Personally identifiable information |
| Plaintiffs | Brown, Diaz, Fugatt, Knoch, Lebinski, Siegel, Stock, and Williams |
| RJN | Request for Judicial Notice in Support of Defendant Intuit Inc.'s Motion to Dismiss Plaintiffs' Consolidated Amended Complaint, filed concurrently herewith |
| Section 1798.81.5 | CRA, California Civil Code § 1798.81.5 |
| Section 1798.82 | CRA, California Civil Code § 1798.82 |
| Section 7216 | 26 U.S.C. § 7216, *et seq.* |
| Siegel | Plaintiff Todd Siegel, a resident of California |
| SSN | Social Security Number |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF ABBREVIATIONS**
(continued)

| | |
|---|---|
| Stock | Plaintiff David Stock, a resident of Maryland |
| *Stock* Compl. | Complaint filed in *Stock v. Intuit*, Case No. 15-cv-02287 (N.D. Cal., filed May 21, 2015) (Dkt. No. 1) |
| TTD | TurboTax Desktop |
| TTD EULAs | TY10 TTD EULA, TY13 TTD EULA, and TY14 TTD EULA |
| TTO | TurboTax Online |
| TTO Customer Plaintiffs | Knoch, Lebinski, Siegel, and Stock |
| TTO TOS | TY13 TTO TOS and TY14 TTO TOS |
| TY | Tax Year |
| TY10 Customer Plaintiff | Diaz |
| TY10 TTD EULA | Intuit Software End User License Agreement TurboTax Desktop Software-Tax Year 2010, attached as Exhibit 11 to the Co Decl. and as Exhibit 1 to the *Diaz* Compl. |
| TY13 TTD EULA | Intuit Software End User License Agreement TurboTax Desktop Software—Tax Year 2013, attached as Exhibit 9 to the Co Decl. |
| TY13 TTO TOS | Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2013, attached as Exhibit 2 to the Co Decl. |
| TY13-14 Customer Plaintiffs | Knoch, Lebinski, Siegel, Stock, and Williams (also the Arbitration Plaintiffs) |
| TY14 TTD EULA | Intuit Software End User License Agreement TurboTax Desktop Software—Tax Year 2014, attached as Exhibit 10 to the Co Decl. |
| TY14 TTO TOS | Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2014, attached as Exhibit 5 to the Co Decl. |
| Williams | Plaintiff Marilyn Williams, a resident of Maryland |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF ARGUMENTS**

| Argument(s) | Non-Customers | | Customers | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Brown (PA) | Fugatt (AL) | Diaz (OH) | Knoch (IL) | Lebinski (CT) | Siegel (CA) | Stock (MD) | Williams (MD) |
| Claims subject to Intuit Terms of Service ("TOS") or End User License Agreement ("EULA") | | | Yes | Yes | Yes | Yes | Yes | Yes |
| Claims subject to arbitration/small claims | | | | Yes | Yes | Yes | Yes | Yes |
| *Count 1:  UCL*[2] | | | | | | | | |
| *Count 2:  CRA* | Not asserted | | | | | | | |
| Non-CA residents cannot bring CRA claim | | | Yes | Yes | Yes | | Yes | Yes |
| Intuit is exempt from § 1798.81.5 under § 1798.81.5(e)(5) | | | Yes | Yes | Yes | Yes | Yes | Yes |
| No Art. III standing for § 1798.82 claim | | | Yes | Yes | Yes | Yes | Yes | Yes |
| *Count 3:  Aiding and Abetting Fraud* | | | | | | | | |
| Actual knowledge insufficiently pled | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| Substantial assistance insufficiently pled/fails Rule 9(b) | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| *Count 4:  Negligent Enablement of Third Party Imposter Fraud* | | | | | | | | |
| Not a cognizable claim under CA law | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| Barred by economic loss doctrine | | | Yes | Yes | Yes | Yes | Yes | Yes |
| No duty | Yes | Yes | | | | | | |
| *Count 5:  Negligence* | | | | | | | | |
| Barred by economic loss doctrine | | | Yes | Yes | Yes | Yes | Yes | Yes |
| No duty | Yes | Yes | | | | | | |

---

[2] Although Intuit does not move on Plaintiffs' First Count for violation of the UCL on this Motion, Intuit in no way concedes that the claim is adequately pled.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF ARGUMENTS**
(continued)

| Argument(s) | Non-Customers | | Customers | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Brown (PA) | Fugatt (AL) | Diaz (OH) | Knoch (IL) | Lebinski (CT) | Siegel (CA) | Stock (MD) | Williams (MD) |
| *Count 6: Breach of Contract* | | | | | | | | |
| No contract with Intuit | Yes | Yes | | | | | | |
| No contractual provision limiting "three state e-filings per every one federal return" | | | | Yes | Yes | Yes | Yes | |
| No allegation of more than 3 state e-filings | | | | Yes | Yes | Yes | Yes | Yes |
| No provision otherwise alleged or purportedly breached causing alleged damages | | | Yes | Yes | Yes | Yes | Yes | Yes |
| No breach of ICCGFD because inconsistent with express contract terms | | | Yes | Yes | Yes | Yes | Yes | Yes |
| *Count 7: Breach of Implied Warranty of Merchantability* | | | | | | | | |
| No privity between Intuit and plaintiff | Yes | Yes | | | | | | |
| Valid disclaimer of implied warranty of merchantability | | | Yes | Yes | Yes | Yes | Yes | Yes |
| *Count 8: Unjust enrichment* | | | | | | | | |
| Not a cognizable claim under CA law | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3  　　　PLEASE TAKE NOTICE that on February 18, 2016, at 9:00 a.m., or as soon thereafter as

4  the matter may be heard, before the Hon. Edward J. Davila, Courtroom 4, 5th Floor of the above-

5  entitled court, located at 280 South First Street, San Jose, CA 95113, Intuit will move the Court to

6  dismiss the Consolidated Amended Complaint of Richard Brown, Christine Diaz, Michelle

7  Fugatt, Carol Knoch, James Lebinski, Todd Siegel, David Stock, and Marilyn Williams[3] pursuant

8  to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Intuit's Motion is based on this Notice

9  of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declarations

10  of Claudine R.L. Co and Rodger R. Cole and their attached exhibits, Request for Judicial Notice,

11  all papers on file in this consolidated action and any related actions, and such other written or oral

12  argument as may be properly presented to the Court at the time of hearing or otherwise.

13

## STATEMENT OF RELIEF SOUGHT

14  　　　Intuit seeks dismissal of the Second Count pursuant to Rule 12(b)(1) for lack of Article III

15  standing and dismissal of the Second through Eighth Counts pursuant to Rule 12(b)(6) for failure

16  to state a claim upon which relief can be granted.

17

## MEMORANDUM OF POINTS AND AUTHORITIES

18

### I.　　INTRODUCTION

19  　　　This case is unlike any of the "data breach" lawsuits or cases reported in the press.  No

20  factual allegations plausibly suggest Intuit's systems were "breached."  Rather, this case involves

21  eight Plaintiffs (customers and non-customers of Intuit) whose personal information had been

22  previously compromised at some unknown time by unknown third parties through unknown

23  means.  Unknown third-party fraudsters then subsequently used Plaintiffs' stolen information this

24  past tax season to e-file fraudulent tax returns with the IRS and State taxing authorities through

25  TurboTax.  While Plaintiffs generally complain that Intuit did not do enough to notify them of or

26

27  [3] Intuit has also moved to compel arbitration and stay proceedings against the Arbitration
Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams, and thus moves to dismiss their claims in

28  the alternative only if its motion to compel arbitration is not granted.

NOTICE OF MOTION AND MOTION TO DISMISS;
MEMO. OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF　　　　　　　　1　　　　　　Master Docket No. 15-CV-01778-EJD

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

stop these fraudulent returns, they do not allege how Intuit could have known these returns were

fraudulent when filed.  Nor do they allege what Intuit—as an authorized IRS e-file provider—

could have done to prevent the transmission of these returns to the taxing authorities.

Nevertheless, Plaintiffs sued Intuit under several contract and tort theories seeking compensation

for a wide range of harms they purportedly suffered as victims of identity theft and tax return

fraud.  But on the facts alleged, and in light of the governing contracts, Plaintiffs either fail to

state a claim upon which relief may be granted or lack standing to bring their claims.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Sixth Count for Breach of Contract and Seventh Count for Breach of the Implied Warranty of
Merchantability (brought by all Plaintiffs):

1.  Should the Non-Customer Plaintiffs' Sixth and Seventh Counts be dismissed without
     leave to amend because no contract with Intuit is alleged nor can be alleged?

2.  Should the Customer Plaintiffs' Sixth Count be dismissed because they fail to identify any
     express or implied contractual provision purportedly breached by Intuit?

3.  Should the Customer Plaintiffs' Seventh Count be dismissed without leave to amend
     because Intuit validly disclaimed any implied warranty of merchantability under Cal.
     Com. Code § 2316(2)?

Fifth Count for Negligence and Fourth Count for Negligent Enablement of Third Party Imposter
Fraud (brought by all Plaintiffs):

4.  Should the Customer Plaintiffs' Fifth and Fourth Counts be dismissed without leave to
     amend because the economic loss doctrine bars their claims?

5.  Should the Non-Customer Plaintiffs' Fifth and Fourth Counts be dismissed without leave
     to amend because Intuit owes them no duty?

6.  Should the Fourth Count be dismissed without leave to amend because it is not a
     cognizable claim?

Third Count for Aiding and Abetting Fraud (brought by all Plaintiffs):

7.  Should the Third Count be dismissed because Plaintiffs fail to allege actual knowledge?

8.  Should the Third Count be dismissed because Plaintiffs fail to allege substantial
     assistance, including with the particularity required by Rule 9(b)?

Second Count for Violation of CRA (brought by Customer Plaintiffs):

9.  Should the Non-California Customer Plaintiffs' Second Count be dismissed without leave
     to amend because they are not California residents?

10. Should the Second Count for alleged violation of Section 1798.81.5 be dismissed because
     Intuit is exempt under Section 1798.81.5(e)(5)?

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

11. Should the Second Count for alleged violation of Section 1798.82 be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack Article III standing?

<u>Eighth Count for Unjust Enrichment (brought by all Plaintiffs):</u>

12. Should the Eighth Count be dismissed without leave to amend because it is not a cognizable claim?

## III.    STATEMENT OF FACTS[4]

**A.    The Recent Rise in Identity Theft and Tax Refund Fraud**

In the past year there was an unprecedented increase in identity theft and fraud across all industries. CAC ¶¶ 32, 37-38, nn.10, 15-21.[5]  Among that fraud, there was a substantial increase in fraudulent tax filings submitted to the IRS and state taxing authorities. *Id*. ¶¶ 29, 31, nn.7, 9. The fraudulent tax filings generally took one of two forms:  (a) stolen identity refund fraud ("SIRF") or (b) account takeovers ("ATOs"). *Id.* ¶¶ 35, 34, nn.13, 24.  SIRF involves a third-party criminal attempting to file a tax return using an individual's PII that was obtained from a third-party source (*i.e*., outside of Intuit). *Id.* ¶ 35, n.13.  In this situation, the third-party criminal can create a new TurboTax account for an individual whose PII was stolen, including one who may have never used TurboTax. *Id.* ¶¶ 29, 35, nn.7, 13.  ATO involves a fraudster's use of valid login credentials obtained from a source outside of Intuit to illegally access a customer's existing TurboTax account. *Id.* ¶ 45, n.24.  In both cases, fraudsters illegally obtain information from either massive and well-publicized data breaches that have nothing to do with Intuit, or through less popular means such as phishing schemes or malware installations on a victim's computer. Such information misappropriation affects individuals across industries. *Id*. ¶¶ 29, 47, nn.7, 26.

The increase in attempted SIRF and ATOs in TY14 is attributable to the increased availability of PII and valid login credentials acquired through other (non-Intuit) entities and the increased deployment of aggressive phishing and malware campaigns. *Id.* ¶¶ 29, 45, 47, nn.7, 24,

---

[4] All citations herein are made to CAC, the documents incorporated therein by reference, and any other matters judicially noticeable, and unless otherwise stated are assumed true for purposes of this Motion only.  *See, e.g., Antman v. Uber Techs., Inc*, Case No. 3:15-cv-01175-LB, 2015 WL 6123054, at *2 n.2 (N.D. Cal. Oct. 19, 2015) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)) (proper to consider under incorporation-by-reference doctrine materials referenced and relied on in pleading); *see also* RJN.

[5] For the Court's convenience, copies of the materials from the 26 URLs cited in the CAC are submitted as Exhibit A (with numbered subparts 1-26) to the Cole Decl.  *See* Cole Decl. ¶ 3.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

26.  For example, the Office of Personnel Management revealed around June 4, 2015, and July 9, 2015, (after the regular tax season) that it had suffered one of the largest government data breaches in U.S. history, whereby the PII of 4.2 million current and former government employees and 21 million other individuals had been compromised (including the background investigation records of current, former and prospective federal employees and contractors).  *See* Cole Decl. ¶¶ 7-8, Exs. E-F.  Similarly, it was reported after the regular tax season that over 300,000 taxpayer accounts had been illegally accessed through the IRS "Get Transcript" service since February 2015.  *See id.* ¶ 6, Ex. D.  Third-party criminals acquire personal information illegally through any number of such sources, and share or sell it on underground forums, making it accessible to other fraudsters.

Criminals also try to exploit consumers' tendency to re-use the same user IDs and passwords across different websites by trying to log on to various websites (including Intuit's websites) using credentials illegally acquired elsewhere, including those acquired through the use of malware or phishing scams.  CAC ¶¶ 45, 47, nn.24, 26.  Indeed, the CAC itself alleges that from 2014 to March 2015 hundreds of millions of identities and personal information had been exposed.  *Id.* ¶ 38, nn.15-21.  This growth in stolen identities increased even further during the 2015 tax season.  *See* Cole Decl. ¶¶ 6-8, Exs. D-F.  In this regard, the increase in SIRF and ATOs is reflective of an industry-wide phenomenon and is not specific to Intuit.

## B.    Intuit

Intuit develops and offers various financial and tax preparation software and related services, including the leading tax preparation software TurboTax. CAC ¶¶ 19-20.  TurboTax, offered in online and desktop versions, is utilized by millions of American taxpayers each year to file their federal and state tax returns.  *Id.* ¶ 19-22, n.7.  As a provider of do-it-yourself tax preparation software and as an authorized IRS e-file provider, Intuit is subject to a complex federal regulatory environment, including certain provisions of the IRC, its attendant regulations, and published IRS guidance.  *See, e.g.*, Section 7216; 26 C.F.R. § 301.7216; Cole Decl. ¶¶ 4-5, Exs. B-C (IRS Pubs. 1345 and 3112).  This regulatory environment does not permit a do-it-yourself software provider like Intuit to use taxpayer information to block returns from being e-

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

filed unless the IRS has provided direct guidance.  *See, e.g.*, Section 7216(a) (prohibiting any person engaged in "providing services in connection with the preparation of [tax returns]" from "us[ing] any such information for any purpose other than to prepare, or assist in preparing, any such return"); *see generally* IRS Pub. 1345.  Rather, it generally provides two rules for when Intuit is permitted to stop a return from being filed:   (1) when there is an attempt to file a second return using the same Taxpayer Identification Number (*e.g.*, SSN); and (2) when more than five electronic returns are filed from one software package or one e-mail address.  IRS Pub. 1345 at 12, 43.   Intuit is otherwise required to "[t]ransmit all electronic portions of returns within three calendar days of receipt."[6]  *Id.* at 34.

In its role as an IRS authorized e-file provider, Intuit is also subject to rules and regulations with respect to the privacy and security of taxpayer information.  For example, the IRS mandates six "security, privacy, and business standards to better serve taxpayers and protect [the taxpayer] information collected, processed and stored by Online [e-file] Providers."  IRS Pub. 1345 at 5-6.  Such standards "are based on industry best practices and are intended to supplement the [GLBA] and the implementing rules and regulations promulgated by the Federal Trade Commission."  *Id.*; *see also, e.g.*, IRS Pub. 3112 at 18; 16 C.F.R. § 314 (FTC Safeguards Rule requiring data security measures for financial institutions).  While the CAC discusses at length the recent rash of mass data breaches and subsequent exposure of millions of individuals' PII (*see* CAC ¶¶ 37, 38), it alleges no facts suggesting that Intuit's systems were "hacked" or that Intuit suffered a "data breach."  *See generally id.*  Indeed, Plaintiffs do not allege if or how Intuit ever failed to meets it statutory and regulatory obligations with respect to its use and safeguarding of taxpayer information generally, or with respect to Plaintiffs' personal information specifically.

---

[6] It is important to understand that fraudulent returns and suspicious returns are not synonymous. Intuit does not determine whether suspicious activity represents actual fraud—only the IRS or the equivalent state taxing authority determines which tax returns are fraudulent, and whether to accept or reject a tax return. *See* Cole Decl. ¶ 14. Ex. L (IRS Commissioner describing "clear lines of distinction between the roles [government and the private sector] play in the tax ecosystem" and how "[i]ndustry is providing essential help by sharing key information" to "allow the government to quickly and accurately make determinations of what is fraudulent and what is not"); *see also id.* ¶ 15, Ex. M.  Thus, even if Intuit believes a return might be suspicious, the regulatory framework limits Intuit's options on what it can do with such a return.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## C.      Plaintiffs

### 1.        Non-Customer Plaintiffs Brown and Fugatt

Richard Brown is a Pennsylvania resident.  CAC ¶ 7.  Michelle Fugatt is an Alabama resident.  *Id.* ¶ 9.  Neither were ever TurboTax customers.  *Id.* ¶¶ 65, 85.  They thus have never used TurboTax, never provided their PII or paid money to Intuit, and have no contractual relationship with Intuit.  *Id.*  Both allege they were victims of identity theft, but do not allege when or how this occurred.  *Id.* ¶¶ 68, 86.  Both claim they were also victims of fraudulent tax returns filed through TurboTax in their names in TY14.  *Id.* ¶¶ 66, 86.

### 2.        TY10 Customer Plaintiff Diaz

Christine Diaz is an Ohio resident.  *Id.* ¶ 8.  In 2011, Diaz purchased TTD and the TY10 TTD EULA governs her relationship with Intuit.  *Id.* ¶¶ 72, 76; *Diaz* Compl. ¶ 53, Ex. 1.  Diaz claims she provided her and her family's PII to Intuit to e-file her and her husband's joint Ohio state and federal tax returns in TY10.  CAC ¶ 73.  Since then, she has not used TurboTax.  *Id.* ¶ 77.  Diaz alleges that in March 2015 she learned that a federal return and four State returns were fraudulently filed in her name in January 2015.  *Id.* ¶¶ 78, 79, 81.  While Diaz alleges, in conclusory fashion, that Intuit "enabled criminals to access [her] account information," she fails to allege any supporting facts, including:  when or how any such criminals purportedly accessed her "account information," what this "account information" consisted of, or what Intuit did (or did not do) that "enabled" them to do so.  *Id.* ¶¶ 82-84.

### 3.        TY13-14 Customer Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams

Carol Knoch is an Illinois resident, has been a TurboTax customer for 12 years, and e-filed her returns through TTO in at least TY13 and TY14.  *Id.* ¶¶ 91, 93, 95; Co Decl. ¶ 23.[7]  In March 2015 (before filing her TY14 return), Knoch received a refund check from the IRS for

---

[7] Knoch, as well as Lebinski and Stock, do not specify if they were TTO or TTD customers in TY13 or TY14.  *See generally id.*  However, the Court should take judicial notice of the fact that they were all TTO users.  *See* RJN at Part II; Co Decl. ¶¶ 23-24.  These are facts not reasonably subject to dispute and all three have alleged Intuit's purported breach of their contracts.  They have thus placed such contracts at issue in their pleading.  They cannot now avoid the terms of these contracts (*i.e.*, the TY13 TTO TOS) by failing to attach them to the CAC.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

$7,942.  *Id.* ¶ 92.  Knoch claims a TurboTax representative told her that her personal information had been "breached" through TurboTax and that her and her husband's personal information had been taken from her TY13 tax return to file a fraudulent federal return.  *Id.* ¶ 93.  Knoch nevertheless used TTO to complete her TY14 federal and state returns, but claims she was "forced" to pay $100 to print her paper returns because she could not e-file her returns.  *Id.* ¶ 95.

James Lebinski is a Connecticut resident, and has used TurboTax to file joint federal and state returns with his wife for at least 10 years.  *Id.* ¶ 11; *Lebinski* Compl. ¶ 8.  Lebinski is a TTO user and claims that he had started his TY14 returns, paid "the TurboTax tax preparation fee," but received an "error message" and could not e-file his federal or state returns.  CAC ¶ 96; *supra* n.6.  Lebinski alleges a TurboTax representative "confirmed" he was a victim of identity theft, that he was not an ATO victim, and that a new TurboTax account had been opened using his personal information.  CAC ¶ 97.

Todd Siegel is a California resident, and has used TurboTax to prepare his California and federal tax returns every year since 2008.  *Id.* ¶ 101.  In 2015, Siegel paid approximately $120 to use TTO to file joint returns with his wife.  *Id.* ¶ 103; *supra* n.6.  Siegel attempted to e-file his returns in mid-July 2015 (after requesting an extension in April), but learned a federal return had already been e-filed using his personal information on February 27, 2015.  CAC ¶ 105.

David Stock is a Maryland resident, and has used TurboTax for the past seven or eight years.  *Id.* ¶¶ 13, 111.  For TY14, Stock purchased TTO for $94.98 and logged into his TurboTax account to complete his returns, but could not e-file his return after receiving a pop-up message stating a return had already been filed using his SSN.  *Id.* ¶¶ 113, 114.

Marilyn Williams is also a Maryland resident, and has used TTD for the last 14 years.  *Id.* ¶¶ 14, 120.  When Williams tried to e-file her returns in April 2015, she learned tax returns had already been e-filed on TurboTax using her SSN.  *Id.* ¶ 123.  After calling Intuit, she learned that a federal return and three state returns had been filed in her name.  *Id.* ¶ 124.

### 4.    Plaintiffs' Alleged Harm

All eight Plaintiffs allege similar harms, including:  lost time to deal with the "ramifications of the fraud" (*id.* ¶¶ 69-71, 82-84, 87-90, 94-95, 98, 100, 107-09, 116, 125-26 128,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

130-131); the inability to e-file their returns (*id.* ¶¶ 70, 83, 88, 95, 98-99, 109, 114, 130); hardship

due to the delay in any refunds (*id.* ¶¶ 70, 83, 88, 98, 109, 116, 130); being at heightened risk of

further identity theft (*id.* ¶¶ 71, 84, 90, 110, 132); and the cost of ongoing credit monitoring (*id.*

¶¶ 71, 84, 90, 98, 108, 129).  Only Knoch, Lebinski, Siegel, and Stock allege they paid Intuit in

TY14, and of those, only Stock alleges he requested, but was not given, a refund.  *Id.* ¶ 118.  The

CAC does not consistently delineate which purported harms arise from the initial identity theft

versus the alleged tax refund fraud.  Plaintiffs also allege no facts concerning:  who committed

the initial identity theft (nor when or how); how Intuit could have known of or prevented the prior

identity theft; who committed the subsequent tax fraud; how Intuit could have known or

determined that the tax returns were fraudulent when filed; whether or how Intuit purportedly

failed to protect Plaintiffs' data; and what Intuit could have done to prevent the fraudulent tax

returns from being filed with the government taxing authorities.  *See generally id.*  And none of

the Plaintiffs allege, nor could they, that their tax refunds, if any, will not be paid.  *Id.*

**D.      The Governing Agreements**

Each Customer Plaintiff concedes s/he entered a written agreement with Intuit (*id.* ¶¶ 196-

198), but the specific agreements are not identified or attached to the CAC.  However, Diaz

concedes the TY10 TTD EULA governs her relationship with Intuit.  *Id.* ¶ 76; *Diaz* Compl. ¶ 53,

Ex. 1.  Moreover, Knoch, Lebinski, Siegel, and Stock were TTO users in TY13, thus the TY13

TTO TOS governs their claims.  *See* CAC ¶¶ 91, 96, 101, 111; Co Decl. ¶¶ 23-24; *Knoch* Compl.

¶ 56; *Stock* Compl. ¶¶ 40, 47.  Finally, Williams is a TY13 TTD user, thus the TY13 TTD EULA

governs her claims.  *See* CAC ¶ 120; Co Decl. ¶ 25.[8]

These Agreements contain several key provisions material to this Motion.  First, the

Agreements include a "**DISCLAIMER OF WARRANTIES**" that states the user uses TurboTax

entirely at his or her own risk and that TurboTax is provided "AS IS," and also disclaims any

express or implied warranties, including any warranty of merchantability or that TurboTax is

---

[8] To the extent the Customer Plaintiffs will claim the TY14 TTO TOS or TY14 TTD EULA
instead governs their relationships with Intuit, this is immaterial because their terms are
substantively identical to the TY13 TTO TOS and TTD EULA.  *See* Co Decl. ¶¶ 26-35; *see also
id.* at Exs. 2, 5, 9-10.

1    secure, free from interruption or theft.  *See* TY13 TTO TOS § A.8.1; *see also* TY10 TTD EULA

2    § B.6; TY13 TTD EULA § A.8.1 (similar warranty disclaimers).

3         Second, the Agreements include a "**LIMITATION OF LIABILITY AND**

4    **INDEMNITY**" provision which expressly states Intuit is not liable for any damages relating to

5    security, loss or theft of data.  *See* TY13 TTO TOS § A.9; *see also* TY10 TTD EULA § B.7;

6    TY13 TTD EULA § A.9 (similar limitations of liability).  The TY13 TTO TOS also provide

7    "Additional Terms and Conditions for the TurboTax Online Tax Preparation Services," which

8    includes a further "**LIMITATION OF LIABILITY AND DAMAGES**" that reminds the user of

9    Intuit's limitation of liability, including that Intuit will not be liable for "inability to file your

10   return, delay in preparing your tax return, any access to, or use of your password and user id by

11   an unauthorized person."  TY13 TTO TOS § B.8.

12        Third, the Agreements include express provisions allocating certain responsibilities on the

13   user for the security of their information, including their user IDs and passwords.  *See* TY13 TTO

14   TOS § A.7.4; TY13 TTD EULA § A.7.5 ("You are responsible for securely managing your

15   password(s) for the Services and to contact Intuit if you become aware of any unauthorized access

16   to your account."); TY10 TTD EULA § B.4; TY13 TTD EULA § B.3 ("You are responsible for

17   protecting the information on your computer such as by installing anti-virus software, updating

18   your software, password protecting your files, and not permitting third party physical or

19   electronic access to your computer.").  The TY13 TTO TOS further provides that the user is the

20   "only person authorized to use your user ID and password and for maintaining the confidentiality

21   of your user ID and password. You shall not permit or allow other persons to have access to or

22   use your user ID and password.  You are responsible for the use of the Services under your user

23   ID."  TY13 TTO TOS § B.6.

24                    **IV.    LEGAL STANDARDS**

25        A Rule 12(b)(1) motion challenges subject matter jurisdiction and may be either facial or

26   factual.  *In re Facebook Internet Tracking Litig.*, 2015 WL 6438744, at *3 (N.D. Cal. Oct. 23,

27   2015) (citation omitted).  When, as here, a facial challenge is made, the complaint's material

28   allegations are assumed true, and the court must determine whether lack of federal jurisdiction

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

appears from the face of the complaint itself.  *Id.*  Standing is properly challenged through a Rule 12(b)(1) motion.  *Id.* (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A plaintiff has the burden to establish standing.  *Id.* (citation omitted).

Under Rule 12(b)(6), dismissal is appropriate where plaintiff fails to assert a cognizable legal theory or allege sufficient facts under a cognizable legal theory.  *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996).  A complaint must allege sufficient well-pleaded facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" and must also allege facts that, when considered true, raise the right to relief "above the speculative level."  *Twombly*, 550 U.S. at 555.  Courts need not accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).  Nor must courts accept as true allegations contradicted by documents and materials referred to in the complaint.  *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).  When ruling on a motion to dismiss, a court may consider the complaint, documents attached to, or incorporated by reference into, the complaint, and any matter subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  If deficiencies cannot be cured by amendment, dismissal should be without leave to amend.  *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## V.    ARGUMENT[9]

### A.    Plaintiffs Fail to State a Breach of Contract (Sixth Count)

To state a breach of contract Plaintiffs must show:  a contract; Plaintiffs' performance or excuse for nonperformance; Intuit's breach; and resulting damages.  *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989), *as modified* (May 10, 1989).  As an initial matter,

---

[9] For purposes of this Motion *only*, and unless otherwise stated, Intuit applies California law to Plaintiffs' claims.  In so doing, Intuit does not concede, and expressly reserves, its rights to challenge California law's applicability to one or more of Plaintiffs' claims, including on class certification or summary judgment.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the Non-Customer Plaintiffs' claim must be dismissed without leave to amend because there is no contract.  CAC ¶ 197 (conceding claim inapplicable to non-customers).

With respect to the remaining Customer Plaintiffs, this count rests on three theories:  (1) Intuit breached a provision limiting "three state e-filings per every one federal return"; (2) Intuit failed to "protect the data provided it to [*sic*] by the customer"; and (3) Intuit breached the ICGFFD to "maintain the security of customers' data, and to take reasonable measures to protect customers from criminals using TurboTax to file fraudulent tax returns using such customers' identities."  *Id.* ¶¶ 197-199.  Each fails in light of the express terms of the governing Agreements.

### 1. Plaintiffs Fail to Allege Breach of any "Three State E-Filing" Limitation

The first theory—that Intuit agreed to "impose a limit of three state e-filings"—fails as to all of the TTO Customer Plaintiffs because no "three state e-filing" limitation exists in the TTO TOS; it exists only in the TTD EULAs.  *Compare* TY13 TTO TOS *with* TY10 TTD EULA § A.2.A.3.b and TY13 TTD EULA § B.2.A(3)(b).  Thus, the TTO Customer Plaintiffs cannot assert this breach of contract theory.  This claim also independently fails because no Plaintiff besides Diaz alleges that more than three State returns were e-filed on their behalves.  CAC ¶ 93 (only "a federal return" alleged for Knoch); *id.* ¶ 97.c (only "a return" alleged for Lebinski); *id.* ¶¶ 105, 106 (only a "federal return" alleged for Siegel); *id.* ¶ 115 (vaguely alleging "State and federal tax returns" for Stock); *id.* ¶ 124 (only federal and three State filings alleged for Williams).  Accordingly, this breach of contract theory should be dismissed as to all Plaintiffs except Diaz.

### 2. Plaintiffs Fail to Allege Any Other Breach of Contract by Intuit

The second theory—that Intuit purportedly promised to "protect the data provided it to [*sic*] by the customer"—also fails.  First, the only contractual language cited does not support this conclusory assertion.  Rather, Plaintiffs cite:  "We want you to feel comfortable and confident when using our products and services and with entrusting your personal and tax return

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

information to us." [10]  CAC ¶¶ 25, 76, 198.  A plain reading reflects no contractual promise that customer data would be protected (as Plaintiffs suggest).  In fact, the express terms of the Agreements foreclose this assertion.  They expressly disclaim any promise that Intuit's services are secure or free from theft.  Part III.D *supra*.  They further state that Intuit is not liable for damages relating to security, loss, or theft of data, or for the inability to file a tax return, any delay in preparing a tax return, or any access to, or use of, a customer's password and user ID by an unauthorized user.  *Id*.  The Agreements also clearly place the responsibility on Plaintiffs (not Intuit) to maintain the confidentiality of their user ID and password, and to not permit third-party access to their computer or tax files.[11]  *Id.*

A second fundamental problem with this theory is that no facts are alleged that would constitute breach by Intuit of this purported obligation (if it even existed).  Claimants simply argue, in conclusory fashion, that Intuit breached "contractual obligations" by "failing to safeguard" their information, by "failing to prevent the fraudulent filing of tax returns"; and by "failing to timely notify customers that their personal and financial information had been compromised."  CAC ¶ 200.  But no allegations suggest that Intuit did not comply with any federal or state regulatory scheme governing the safeguarding, security and treatment of taxpayer information.  *See* Part III.B *supra*.  There are also no allegations of:  how the customers' information had been purportedly "compromised"; if and how Plaintiffs' personal information had been "compromised" from Intuit's systems; or how Intuit could have known the filings were fraudulent when filed.  *See* CAC.  Nor do Plaintiffs allege what Intuit—as an IRS authorized e-

---

[10] Although the CAC also references a contractual provision that "Intuit would notify the IRS of the IP address from which the return originated" (*see id.* ¶ 76.b.), no breach thereof is alleged.  The CAC otherwise does not specify any other purport express obligation at issue.  *See generally id.* ¶¶ 194-202; *Chirico v. Merrill Lynch, Pierce, Fenner & Smith*, No. C 99-2263 CRB, 1999 WL 1285458, at *1-2 (N.D. Cal. Dec. 13, 1999) (dismissing claim for failure to identify contract "and the provision that defendant allegedly breached") (citation omitted).

[11] Such an allocation of risk makes complete sense.  It is within ***Plaintiffs'*** control (and not Intuit's) as to:  what password they will use; how complicated their password will be; whether they will risk using the same or similar passwords across online accounts; how frequently they will change their password; with whom they will share their user ID and password; with whom they will share copies of their tax returns; where and how securely they will store their tax returns; under what circumstances they will disclose their personal information to other third parties; how they respond to phishing attempts; and if and when they may download malware.

file provider—could have done to stop the submission of the returns.  *See id.*  Without specifics as to what Intuit did or did not do to breach the Agreements, Plaintiffs' claim should be dismissed. *Melican v. Regents of Univ. of Cal.*, 151 Cal. App. 4th 168, 174 (2007) (dismissing claim for failing to specifically allege facts regarding breach, rejecting mere "general allegations," and explaining it is "well settled" that "a pleader must state with certainty the facts constituting a breach of contract"); *Dunkel v. eBay Inc.*, No. 5:12-CV-01452-EJD, 2014 WL 1117886, at *4 (N.D. Cal. Mar. 19, 2014) (Davila, J.) (dismissing claim for failure to identify existence of contract and "relevant provision breached").

Plaintiffs effectively seek to impose a contractual obligation on Intuit to guarantee the detection and prevention of third-party fraud—a guarantee that, if breached, would leave Intuit bearing almost limitless liability to its customers.  This interpretation is unreasonable and directly contradicts (and would render meaningless) the express terms of the governing Agreements.  *Ben-Zvi v. Edmar Co.*, 40 Cal. App. 4th 468, 473 (1995), *as modified* (Nov. 21, 1995) ("A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone.").

### 3.    Plaintiffs Fail to Allege Breach of the ICGFFD

To state a claim for breach of the ICGFFD, a plaintiff must allege:  (a) a contract; (b) the plaintiff fulfilled his or her obligations under that contract; (c) conditions precedent to defendant's performance occurred; (d) the "defendant unfairly interfered with plaintiff's right to receive the benefits of the contract"; and (e) "the plaintiff was harmed by defendant's conduct."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373, 376 (1992).  The implied covenant "rests upon the existence of some specific contractual obligation."  *Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1031 (1992) (citation omitted).  The covenant is implied as a supplement to the express contractual covenants, "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  *Id.* at 1031-32

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   (citation and internal quotation marks omitted).  As such, the implied covenant cannot impose an

2   obligation at odds with the express terms of a contract.  *Third Story Music, Inc. v. Waits*, 41 Cal.

3   App. 4th 798, 808 (1995).

4        Here, the ICGFFD theory fails for the same reasons as the express contract theory.  First,

5   with respect to the Non-Customer Plaintiffs, no contract exists.  Second, with respect to the

6   Customer Plaintiffs, the CAC alleges an ICGFFD "regarding contractual obligations…through

7   which Intuit had a good faith obligation to maintain the security of customers' data, and to take

8   reasonable measures to protect customers from criminals using TurboTax to file fraudulent tax

9   returns using such customers' identities."  CAC ¶ 199.  However, Plaintiffs fail to tie this

10  purported implied covenant to any express obligation in the Agreements.  This is because no such

11  express obligation exists whereby Intuit guarantees its customers that third parties would not file

12  fraudulent returns in their names.  To the contrary, the Agreements place responsibility on

13  customers to maintain the confidentiality of their user IDs and passwords and to protect their data.

14  Part III.D *supra*.  Such an implied covenant is also directly inconsistent with the Agreement's

15  limitation of liability and disclaimer provisions.  *See id.* (disclaiming loss or theft of data, limiting

16  damages, and disclaiming warranties from theft or that the software is secure).  Because the

17  ICGFFD Plaintiffs seek to impose is inconsistent with and would vary the clear terms of the

18  express Agreements, this claim should be dismissed.  *Dunkel*, 2014 WL 1117886, at *4-5.

19  **B.     Plaintiffs Fail to State a Breach of the Implied Warranty of Merchantability**
20  **(Seventh Count)**

21       The Seventh Count also fails.  First, the Non-Customer Plaintiffs cannot state an implied

22  warranty claim because they have no contract with Intuit.  Contractual privity is a prerequisite for

23  recovery on a breach of implied warranty claim.  *See Castro Valley Union 76 v. Vapor Sys.*

24  *Techs., Inc.*, No. C 11-0299 PJH, 2012 WL 5199458, at *4 (N.D. Cal. Oct. 22, 2012); *Atkinson v.*

25  *Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (2006) ("Privity…remain[s] a requirement for

26  actions based on the implied warranty of merchantability" (internal quotation marks and citation

27  omitted)).  Thus, the Non-Customer Plaintiffs' claim should be dismissed without leave to amend.

28  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (affirming dismissal

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    of implied warranty claims for lack of privity).

2       Second, the remaining Customer Plaintiffs' claim should be dismissed without leave to

3    amend because the Agreements, on their face, include a conspicuous and valid warranty

4    disclaimer that satisfies the requirements of California Commercial Code § 2316.  In California,

5    the implied warranty of merchantability is effectively excluded where the language of the

6    disclaimer (1) mentions merchantability and, in the case of a writing, (2) is conspicuous.  Cal.

7    Com. Code § 2316(2).  Section 2316 also provides that "all implied warranties are excluded by

8    expressions like 'as is,' 'with all faults' or other language which in common understanding calls

9    the buyer's attention to the exclusion of warranties and makes plain that there is no implied

10   warranty."  *Id.* at § 2316(3)(a).  A disclaimer is "conspicuous" if it is "so written, displayed, or

11   presented that a reasonable person against whom it is to operate might have noticed it."  Cal.

12   Com. Code § 1201(10).  Examples of conspicuous terms include:  "(A) a heading in capitals

13   equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the

14   surrounding text of the same or lesser size; and (B) language in the body of a record or display in

15   larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text

16   of the same size, or set off from surrounding text of the same size by symbols or other marks that

17   call attention to the language."  *Id.*

18      Here, the warranty disclaimers in all of the Agreements are substantively identical and

19   satisfy the conspicuousness requirement under the Commercial Code.  Each disclaimer is set out

20   separately under a bolded "**DISCLAIMER OF WARRANTIES**" heading, with the disclaiming

21   text in all capital letters, serving to distinguish the disclaimer and call special attention to it.  *See*

22   TY13 TTO TOS § A.8; TY10 TTD EULA § B.6; TY13 TTD EULA § A.8.  Each disclaimer

23   specifically: excludes "ALL WARRANTIES," including any warranty of merchantability;

24   contains "AS-IS" language which Section 2316(3)(a) states is ***itself*** sufficient to act as a

25   disclaimer of all implied warranties; and uses language which makes plain to the user that there is

26   no implied warranty.  Cal. Com. Code §§ 2316(2); 2316(3)(a).

27      Courts routinely enforce warranty disclaimers like this one on motions to dismiss, and in

28   fact, a virtually identical warranty disclaimer in Intuit's license agreements has been enforced in

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

this district.  *See Inter-Mark USA, Inc. v. Intuit Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at

*8-9 (N.D. Cal. Feb. 27, 2008) (granting motion to dismiss breach of implied warranty claim

without leave to amend); *see also, e.g.*, *In re Sony Gaming Networks & Customer Data Sec.*

*Breach Litig.*, 996 F. Supp. 2d 942, 983 (S.D. Cal. 2014) (dismissing implied warranty claims

without leave to amend where agreements disclaimed all claims arising under implied warranty of

merchantability and stated all services were provided "AS IS").  Accordingly, the Seventh Count

should be dismissed with prejudice.  *See Inter-Mark*, WL 552482, at *8-9.

**C.     Plaintiffs Fail to State a Claim of Negligence (Fifth Count)**

The negligence claim fails because:  (1) it is barred by the economic loss doctrine[12] with

respect to the Customer Plaintiffs; and (2) Intuit owes no duty to the Non-Customer Plaintiffs.

**1.     The Economic Loss Doctrine Bars the Customer Plaintiffs' Negligence Claims**

The economic loss doctrine bars recovery of purely economic losses in tort actions absent

personal injury or physical damage to one's property.  *Aas v. Superior Court*, 24 Cal. 4th 627,

643 (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely

restate contractual obligations."), *superseded by statute on other grounds*, Cal. Civ. Code §§ 895,

*et seq.*  The rule contemplates the divergent purposes behind contract and tort damages, and is

designed to "prevent[] the law of contract and the law of tort from dissolving into one another."

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  Whereas contract damages

are "generally limited to those within the contemplation of the parties when the contract was

entered into or at least reasonably foreseeable by them at that time…tort damages are awarded to

compensate the victim for injury suffered…whether it could have been anticipated or not."

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515-16 (1994).  Thus, by

limiting recovery to contract damages, the economic loss rule makes it easier for parties to

"estimate in advance the financial risks of their enterprise."  *Freeman & Mills, Inc. v. Belcher Oil*

*Co.*, 11 Cal. 4th 85, 106 (1995) (quoting *Applied Equip. Corp.*, 7 Cal. 4th at 515)).

---

[12] On this Motion, Intuit raises only the economic loss doctrine with respect to the Customer Plaintiffs on the negligence counts.  By so doing, Intuit does not concede (and expressly reserves the right to dispute) that it owes any common law duty to customers.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Here, the Customer Plaintiffs allege no physical injury or damage to property as a result of Intuit's purported negligence.[13]  Rather, their alleged damages consist entirely of economic damages associated with their identity theft or fraud remediation efforts—*e.g.*, out-of-pocket costs for filing a paper return; inability to e-file a tax return; costs associated with credit monitoring; lost time; and delays in receiving any tax refunds.  *See* CAC ¶¶ 82-84, 94-95, 98-100, 107-110, 116, 126, 128-131.  These are precisely the type of economic damages contemplated and barred by the economic loss rule, and which courts have refused to allow under a tort theory of recovery.  *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014) (dismissing negligence claims brought under California law in data breach case under the economic loss rule).  Without any allegations of personal injury or property loss, Plaintiffs cannot plead around the Agreements and recover in tort what are explicitly disclaimed by contract.  To hold otherwise would eviscerate the distinction between tort and contract remedies and handicap Intuit's ability to calculate the financial risks of its commercial relationship with its customers.  *See Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999) ("If every negligent breach of a contract gives rise to tort damages the [economic loss] limitation would be meaningless, as would the statutory distinction between tort and contract remedies.").  The Customer Plaintiffs' negligence claim should be dismissed.  *See McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120, at *8 (N.D. Cal. Aug. 30, 2011) (Davila, J.) (dismissing negligence claim where plaintiff does not allege any injury beyond economic loss).

### 2. Intuit Owes No Duty to Non-Customers

The Third Count should be dismissed as to the remaining Non-Customer Plaintiffs because Intuit owes no duty to them as non-customers.  Courts primarily consider the foreseeability of the risk in determining whether to impose a duty of care, and generally do not impose one in the identity theft or fraud context where there is no direct relationship between the

---

[13] Although this is not a data breach case, courts in such cases have soundly rejected arguments that exposure or misappropriation of PII amounts to "property damage" supporting tort liability. *See Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (noting PII has no compensable value in economy at large (citation omitted)); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012) (under California law, consumers' personal information did not constitute personal property).

parties.  *See, e.g.*, *Burns v. Neiman Marcus Grp., Inc.*, 173 Cal. App. 4th 479, 488-90 (2009) (department store had no duty to non-customer to inquire before accepting third-party checks where third party used non-customer's checks to pay off department store credit card); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1149 (2005) ("[A] bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder."); *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 543-45 (1998); *Karen Kane v. Bank of America Nat'l Trust & Sav. Ass'n*, 67 Cal. App. 4th 1192, 1197-1203 (1998) (no duty of inquiry to non-customer with no pre-existing relationship).[14]

Even if the Court were to consider an exception to this general rule, the CAC fails to allege sufficient facts to impose a duty on Intuit for non-customers.  Here, the CAC alleges Intuit had a duty to "detect and prevent the unauthorized use on TurboTax of the identities of non-TurboTax customers to prepare and/or file fraudulent tax returns."  CAC ¶ 190.  However, foreseeability of harm to non-customers turns on whether the plaintiffs have alleged "objective indicia" of fraud.  *See Joffe v. United Cal. Bank*, 141 Cal. App. 3d 541, 556 (1983).  Neither Brown nor Fugatt has done so.  Both purportedly received invoices from Intuit seeking payment for TurboTax services for TY14 despite never providing their information to TurboTax or authorizing TurboTax to file any tax returns on their behalves.  CAC ¶¶ 65, 67, 85-86.  But nothing in the CAC suggests Intuit had reason to believe the returns were fraudulent.  Intuit had no prior dealings with them, and no facts suggest Intuit could have known the TurboTax accounts opened in their names were not legitimate.  Intuit thus owed no duty to inquire into these accounts.  To hold otherwise would effectively impose on Intuit a duty to the entire universe of American taxpayers and "stretch the concept of foreseeability of harm in determining duty beyond recognition." *Burns*, 173 Cal. App. 4th at 489.

---

[14] Although the question of whether to impose a general duty on IRS e-file providers is one of first impression, California law is clear in the banking context that "absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer."  *See Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479 (1996).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**D.    The Negligent Enablement of Third Party Imposter Fraud (Fourth Count) Should Be Dismissed Without Leave to Amend[15]**

Plaintiffs' Fourth Count for negligent enablement of third party imposter fraud fails because it is not a cognizable claim.  Although an issue of first impression in California, courts have almost uniformly refused to recognize negligent enablement of imposter fraud as a claim separate and distinct from ordinary negligence.  *See Taylor & Co. v. Bank of Am. Corp.*, No. 3:14-cv-00092-MOC-DSC, 2014 WL 3557679, at *2 (W.D.N.C. July 18, 2014) (no tort claim for negligent enablement of imposter fraud under North Carolina law); *Huggins v. Citibank, N.A.*, 355 S.C. 329, 334 (2003) (refusing to recognize claim under South Carolina law where plaintiff sued bank for issuing credit card in plaintiff's name to unknown imposter, since there is "no duty on the part of credit card issuers to protect potential victims of identity theft"); *Polzer v. TRW, Inc.*, 256 A.D.2d 248, 248 (N.Y. App. Div. 1998) (same under New York law); *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) ("Although we recognize the serious threat posed by identity theft, we are not prepared to impose a new duty on banks, particularly one that has been rejected by courts across the country.").  This Court should follow the majority of jurisdictions and decline to create a new separate tort from that of ordinary negligence.[16]

**E.    Plaintiffs Fail to State a CRA Violation (Second Count)**

The CAC asserts (on behalf of only the Customer Plaintiffs) violation of Sections 1798.81.5 and 1798.82 of the CRA.  *See* CAC ¶¶ 156-63; Cal. Civ. Code § 1798.81.5(b) (requiring "[a] business that owns, licenses, or maintains personal information about a California resident…implement and maintain reasonable security procedures and practices…to protect the personal information from unauthorized access, destruction, use, modification, or disclosure"); *id.*

---

[15] The Fourth Count is the only count brought by only the Fraudulent Tax Return Filing Class.

[16] Even if this Court were to allow this claim (though it should not), it still fails for the same reasons as the negligence count.  *See* Part V.C. *supra.*  While no courts have analyzed negligence in the unique context of tax fraud through an IRS e-file provider, in cases involving financial institutions' alleged enablement of third party criminals to commit identity theft courts have used the ordinary negligence framework.  *See Software Design & Application*, 49 Cal. App. 4th at 478-83 (analyzing negligence claim brought against credit card issuer and finding defendant owed no duty to non-customer plaintiff); *Chazen*, 61 Cal. App. 4th at 543-45 (defendant bank owed no duty of care to a non-depositor third party); *Karen Kane*, 67 Cal. App. 4th at 1199 (check cashing service and bank owed no duty of inquiry to non-customer).

§ 1798.82 (requiring businesses to "disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person").

Here, the CRA claim should be dismissed for three reasons. First, it should be dismissed as to all but Siegel because they are not California residents. Second, the Section 1798.81.5 claim fails because Intuit is exempt under 1798.81.5(e)(5). Third, the Section 1798.82 fails because Siegel has not established Article III standing.

### 1.    The Non-California Customer Plaintiffs Cannot Bring a CRA Claim

The CRA's plain language limits its application to only California residents. *Id.* § 1798.81.5 (legislative intent "to ensure that personal information about California residents is protected," and "purpose" "to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information"); *id.* § 1798.82(a) (requiring businesses to "disclose a breach of the security of the system…of the data to [any] resident of California"). Courts have likewise concluded only California residents can bring claims under Sections 1798.81.5 and 1798.82. *See Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *7 (C.D. Cal. June 15, 2015) ("[I]t is clear that the statute intends to protect California residents in their role [as] customers."); *Antman v. Uber Techs., Inc.*, Case No. 3:15-cv-01175-LB, 2015 WL 6123054, at *12 (N.D. Cal. Oct. 19, 2015) (Sections 1798.81.5 and 1798.82 protect "personal information about California residents"). Diaz, Lebinski, Stock, and Williams' CRA claim should be dismissed without leave to amend because they are not California residents.

### 2.    Intuit is Exempt Under Subsection 1798.81.5(e)(5)

The remaining plaintiff Siegel's[17] Section 1798.81.5 claim fails because the statute's provisions regarding reasonable security measures do not apply to Intuit. Cal. Civ. Code § 1798.81.5(e). Section 1798.81.5 specifically exempts any business "regulated by state or federal

---

[17] If the Court were to nevertheless allow the Non-California Customer Plaintiffs to proceed with their CRA claim, it would fail for the same reasons as Siegel's.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

law providing greater protection to personal information than that provided by [Section 1798.81.5]." *Id.* § 1798.81.5(e)(5).  For these exempt businesses, compliance with such state or federal laws "shall be deemed compliance with [Section 1798.81.5] with regard to those subjects." *Id.*  As a business engaged in providing services in connection with the preparation of tax returns and an authorized IRS e-file provider, Intuit is governed by various federal regulations, including the IRC, accompanying IRS rules, regulations, guidance, and even certain GLBA and FTC requirements. *See* Part III.B *supra*.  The California Legislature intended to exempt entities like Intuit that are already governed by such privacy rules and regulations. *See* Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1950 (2003-2004 Reg. Sess.) as amended, May 25, 2004, p.1) ("This bill seeks to establish a broadly applicable baseline standard for the treatment of personal information by entities which are not covered by specific privacy statutes" (citing GLBA as one such already-existing privacy law)); *id.* at 5 (exemption "reflects the author's intent that the bill serve as a 'gap filler' for entities or information that [were] not covered by existing law"); IRS Pub. 3112 at 18 (noting GLBA and implementing rules and regulations promulgated by FTC "include rules that are designed to ensure the security and privacy of taxpayer information and are applicable to Providers").

Here, no alleged facts plausibly suggest Intuit is non-compliant with federal regulations governing its use and security of taxpayer information. *See* CAC.  Absent that, Intuit is exempt under Section 1798.81.5(e)(5) and the CAC fails to state a violation of Section 1798.81.5.

### 3.   Siegel Lacks Standing to Bring the Section 1798.82 Claim

Article III standing requires a plaintiff to "plead and prove that [he or] she has suffered sufficient injury to satisfy the 'case or controversy' requirement of Article III of the United States Constitution." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1211 (N.D. Cal. 2014) (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)).  "[A] plaintiff must therefore allege: (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d at 1211.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Here, Siegel alleges Intuit violated Section 1798.82 by "failing to promptly notify all affected TurboTax customers that criminals had used TurboTax to file fraudulent tax returns using their identities." CAC ¶ 159. But Siegel does not allege a cognizable injury stemming from Intuit's supposed failure to timely notify him "that criminals had used TurboTax to file fraudulent tax returns using [his identity]." *Id.* In other words, he has not alleged any incremental harm as a result of the delay in notification that is separate from the harm associated with the alleged fraudulent filing. In fact, the CAC is totally silent on this issue. *Id.* ¶¶ 156-163.

Under these circumstances, courts dismiss Section 1798.82 claims for lack of Article III standing. *See, e.g.*, *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d at 1217-18 (dismissing Section 1798.82 claim for lack of Article III standing because plaintiffs failed "to allege any injury resulting from a failure to provide reasonable notification of the…data breach" *i.e.*, plaintiffs did not allege they "suffered any incremental harm as a result of the delay"); *Antman*, 2015 WL 6123054, at *11 (dismissing CRA and UCL claims for lack of Article III standing because no injury-in-fact pled, including "injury related to the delay [in notification]," noting that "delay alone is not enough"). The Court should similarly do so here.

## F.     The Aiding and Abetting Fraud Claim (Third Count) Fails

To state a claim for aiding and abetting an intentional tort, a plaintiff must plead that the defendant: (1) had actual knowledge of the specific primary wrong; and (2) substantially assisted in it. *Casey*, 127 Cal. App. 4th at 1145. These elements are subject to the heightened pleading requirements of Rule 9(b). *S.E.C. v. Berry*, 580 F. Supp. 911, 923-24 (N.D. Cal. 2008). Substantial assistance must be pled with particularity, while actual knowledge may be averred generally. Fed. R. Civ. P. 9(b); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011). Plaintiffs do not satisfy either element.

### 1.     Plaintiffs Have Not Pled Actual Knowledge

First, Plaintiffs must allege that Intuit possessed actual knowledge of the specific primary violation. *Casey*, 127 Cal. App. 4th at 1152. This requires pleading "more than a vague suspicion of wrongdoing." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006). "[A]iding and abetting…necessarily requires a defendant to reach a *conscious decision* to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*participate in tortious activity* for the purpose of assisting another in performing a wrongful act." *Casey*, 127 Cal. App. 4th at 1146-52 (emphasis in original) (citation omitted) (holding trustee of bankrupt corporation failed to state aiding and abetting claim against banks for allegedly facilitating looting by fiduciaries where it was only generally alleged bank knew fiduciaries were involved in "wrongful or illegal conduct," but did not plead actual, specific knowledge).

Here, the CAC alleges that Intuit "knew that criminals intended to utilize TurboTax to file fraudulent tax returns," "knew that criminals would use [PII] obtained through Intuit or from other sources to file fraudulent tax returns through TurboTax," and "intended for criminals to use TurboTax, rather than Intuit's competitors, to file fraudulent returns." CAC ¶¶ 167-69. These allegations are insufficient to establish actual knowledge of the specific primary violation because Plaintiffs do not allege that Intuit could determine the difference between a legitimate tax return and a fraudulent one. *See E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012) (affirming dismissal where plaintiff failed to plead bank knew information processed from cardholders were false at the time of receipt). Plaintiffs also assert that Intuit "intended to aid and abet criminals in the fraudulent filing of tax returns by transmitting the fraudulent tax returns in Plaintiffs' and Class members' names to the IRS and state agencies." *Id.* ¶ 173. But for this to be true, Intuit would have to have known which tax returns were fraudulent and intentionally transmitted them to the taxing authorities anyway. Plaintiffs do not allege this anywhere. Nor could they, as only the IRS or the equivalent state taxing authority can determine which tax returns are fraudulent. *See supra* n.6.

Plaintiffs also inadequately plead actual knowledge because the CAC does not allege that Intuit knew that the specific tax returns filed in Plaintiffs' names were fraudulent when filed. At best, the CAC alleges only that Intuit knew *generally* that fraudulent tax returns were being filed through TurboTax. *Id.* ¶¶ 167-69. But to hold Intuit liable for aiding and abetting fraud, Plaintiffs must allege that Intuit "knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that tort*." *Casey*, 127 Cal. App. 4th at 1145-46 (internal citation and quotation marks omitted) (emphasis in original). Intuit cannot aid and abet another's tort if it did not know the tort was being committed, who was committing it, and against

whom the tort was being committed.  *Casey*, 127 Cal. App. 4th at 1145-46 ("[A] defendant can only aid and abet another's tort if the defendant knows what 'that tort' is…[T]he defendant must have acted to aid the primary tortfeasor 'with knowledge of the object to be attained.'" (internal citations omitted)).  Without allegations showing Intuit knew that the specific returns filed using Plaintiffs' personal information were fraudulent, or even that it could distinguish between a fraudulent return and a legitimate one, the aiding and abetting claim fails.

### 2.    Plaintiffs Have Not Pled Substantial Assistance

Second, Plaintiffs fail to plead substantial assistance because:  (1) the mere failure to act does not give rise to substantial assistance; and (2) Plaintiffs fail to plead it with the requisite particularity required by Rule 9(b).  To establish substantial assistance, Plaintiffs must plead Intuit's actions were a "substantial factor" in causing their injuries.  *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) (citation omitted).  Substantial assistance requires "a significant and active, as well as a knowing participation in the wrong."  *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520 (N.D. Cal. 1990) (citation omitted).  A mere failure to act does not constitute substantial assistance and "cannot be the basis for liability unless the party failing to [act] owes a fiduciary or statutory duty [to the plaintiffs]."  *ARB, Inc. v. Luz Const., Inc.*, 972 F.2d 1336, 1992 WL 164487, at *3 (9th Cir. July 16, 1992).

Here, Plaintiffs' allegations that Intuit aided and abetted by failing to do something—*i.e.*, failing to implement adequate security measures to verify a user's identity when an account is created or accessed, or when a tax return is filed, and failing to timely report suspicious filings to the IRS and state agencies (*see* CAC ¶¶ 170-72, 174)—cannot give rise to aiding and abetting liability.[18]  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) ("Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting.").  And Plaintiffs have not (and cannot) allege that Intuit owes them any fiduciary or statutory duty.  *See*

---

[18] Plaintiffs' sole allegation of any affirmative action by Intuit is that it "transmitted" the fraudulent tax returns to the IRS and relevant state authorities.  CAC ¶ 173.  Even if this were enough to qualify as "substantial assistance" (though it does not) as stated in Part III.B *supra*, Intuit is statutorily obligated to transmit returns to the IRS unless otherwise expressly authorized.  *See* IRS Pub. 1345 at 34 (requiring e-file provider to "[t]ransmit all electronic portions of returns within three calendar days of receipt").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CAC; TY13 TTO TOS § B.9 ("You agree that Intuit is not acting as your agent or fiduciary in connection with your use of the Software or any Services."); *see also, e.g.*, *Nwabueze v. AT&T Inc.*, No. C 09-1529 SI, 2011 WL 332473, at *20 (N.D. Cal. Jan. 29, 2011) (no fiduciary relationship where customers provided confidential information in purchase of phone service).

This claim also fails because Plaintiffs have not pled substantial assistance with particularity. *Allstate Ins. Co.*, 824 F. Supp. 2d at 1188. To satisfy the heightened pleading requirement of Rule 9(b), Plaintiffs must allege the "who, what, when, where, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Here, Plaintiffs have not identified the third party fraudsters who filed fraudulent tax returns in Plaintiffs' names. *See, e.g.*, *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F. Supp. 2d 874, 877 (D. Minn. 2011) (dismissing aiding and abetting fraud claim against bank that issued credit cards allegedly used in fraudulent purchase of merchandise from plaintiff's website where plaintiff failed to plead identity of who had engaged in alleged fraudulent conduct; general allegations that unspecified third parties engaged in fraudulent transactions were insufficient). Without sufficient specificity into *who* engaged in the underlying fraud, Plaintiffs' aiding and abetting claim must fail.

**G.     The Unjust Enrichment Claim (Eighth Count) Should Be Dismissed Without Leave to Amend**

The Eighth Count should be dismissed without leave to amend because it is not a claim under California law. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[N]o cause of action in California for unjust enrichment") (internal quotations and citations omitted); *Williamson v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 WL 3835104, at *10 (N.D. Cal. Sept. 4, 2012) (Davila, J.) (dismissing claim "because it is not a recognized claim in California").

## VI.     CONCLUSION

For the foregoing reasons, Intuit requests its Motion be granted in its entirety.

Dated:   December 1, 2015                    FENWICK & WEST LLP
                                             By: */s/ Rodger R. Cole*
                                             _____
                                                 Rodger R. Cole
                                                 Attorneys for Defendant
                                                 INTUIT INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW