1   RODGER R. COLE (CSB No. 178865)
    rcole@fenwick.com
2   SONGMEE L. CONNOLLY (CSB No. 228555)
    sconnolly@fenwick.com
3   ANGEL CHIANG (CSB No. 280546)
    achiang@fenwick.com
4   HAILEY C. TETON (CSB No. 294262)
    hteton@fenwick.com
5   CARLY BITTMAN (CSB No. 305513)
    cbittman@fenwick.com
6   FENWICK & WEST LLP
    Silicon Valley Center
7   801 California Street
    Mountain View, CA  94041
8   Telephone:     650.988.8500
    Facsimile:     650.938.5200
9
    Attorneys for Defendant
10  INTUIT INC.

11

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15

16  IN RE INTUIT DATA LITIGATION         Master Docket No. 15-CV-01778-EJD

17                                       **REPLY MEMORANDUM IN
                                         SUPPORT OF INTUIT'S MOTION TO
18  _____       COMPEL PLAINTIFFS KNOCH,
                                         LEBINSKI, SIEGEL, STOCK, AND
19  THIS DOCUMENT RELATES TO:            WILLIAMS TO ARBITRATION AND
                                         TO STAY THEIR PROCEEDINGS**
20          ALL ACTIONS
                                         <u>**CLASS ACTION**</u>
21
                                         Date:       May 12, 2016
22                                       Time:       9:00 a.m.
                                         Location:   Courtroom 4, 5th floor
23                                       Judge:      The Hon. Edward J. Davila
24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ ii

TABLE OF ABBREVIATIONS .................................................................................... vi

I.      INTRODUCTION ................................................................................... 1

II.     ISSUES OF ARBITRABILITY SHOULD BE DECIDED BY THE ARBITRATOR ..... 2

        A.      The Law of this Circuit Supports a Finding of Clear and Unmistakable
                Intent to Delegate Arbitrability to the Arbitrator in this Case ............................... 2

        B.      The Arbitration Plaintiffs' "Wholly Groundless" Claim Is, Itself, Wholly
                Groundless ................................................................................................................ 4

III.    THE ARBITRATION PLAINTIFFS MUST ARBITRATE THEIR CLAIMS. ................ 5

        A.      The Dispute Resolution Agreement is Paradigmatically Broad and
                Encompasses the Claims Alleged by the Arbitration Plaintiffs. ........................... 5

        B.      There is No "Temporal" Limitation to the TurboTax Agreements........................ 8

        C.      The Arbitration Plaintiffs Fail to Carry Their Burden to Invalidate the
                Arbitration Agreements on Unconscionability, Or Any Other Grounds .............. 10

        D.      The Arbitration Plaintiffs Must Arbitrate Their Common Law Claims and
                Cannot Proceed As Class Representatives ............................................................ 12

IV.     THE ARBITRATION PLAINTIFFS' PROCEEDINGS SHOULD BE STAYED.......... 13

V.      CONCLUSION. ...................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

<div align="center">

1

**TABLE OF AUTHORITIES**

</div>

2
**Page(s)**

3
**CASES**

4
*AccentCare Inc. v. Echevarria,*
No. C 15-01078 JSW, 2015 WL 3465761 (N.D. Cal. June 1, 2015)..........................2

5

6
*Antonelli v. Finish Line,*
No. 5:11-cv-03874 EJD, 2012 WL 525538 (N.D. Cal. Feb. 16, 2012) ....................12

7
*Aral v. Earthlink Inc.,*
134 Cal. App. 4th 544 (2005) ...................................................................................12

8

9
*Armendariz v. Found. Health Psychcare Servs., Inc.,*
24 Cal. 4th 83 (2000) ...............................................................................................12

10
*ASUS Computer Int'l v. InterDigital, Inc.,*
No. 15-cv-01706-BLF, 2015 WL 5186462 (N.D. Cal. Sept. 4, 2015) ..................3, 5

11

12
*AT&T Mobility LLC, v. Concepcion,*
563 U.S. 333 (2011) ...........................................................................................11, 12

13
*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.,*
No. 5:13-CV-02664-EJD, 2014 WL 3371842 (N.D. Cal. July 9, 2014) ...................6

14

15
*Aviles v. Quick Pick Express, LLC,*
No. CV-15-5214-MWF, 2015 U.S. Dist. LEXIS 174960 (C.D. Cal. Dec. 3, 2015) ..........3

16
*Bernal v. Sw. & Pac. Specialty Fin., Inc.,*
No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 7, 2014).........................3

17

18
*Bischoff v. DirecTV, Inc.,*
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ...................................................................14

19
*Brennan v. Opus Bank,*
796 F.3d 1125 (9th Cir. 2015).................................................................................2, 3

20

21
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
207 F.3d 1126 (9th Cir. 2000)....................................................................................4

22
*Crook v. Wyndham Vacation Ownership, Inc.,*
No. 13-CV-03669, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013)...............................3

23

24
*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985)..................................................................................................14

25
*Douglas v. Regions Bank,*
757 F.3d 460 (5th Cir. 2014)......................................................................................5

26

27
*Elite Logistics Corp. v. Hanjin Shipping Co.,*
589 Fed. Appx. 817 (9th Cir. 2014) .........................................................................12

28

<div align="left" style="font-variant: small-caps">FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW</div>

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**Page(s)**

*Ellsworth v. U.S. Bank, N.A.*,
    No. C 12-02506, 2012 WL 4120003 (N.D. Cal. Sept. 19, 2012) ............................................3, 5

*Fimby-Christensen v. 24 Hour Fitness USA, Inc.*,
    No. 5:13-CV-01007-EJD, 2013 WL 6158040 (N.D. Cal. Nov. 22, 2013) ....................8, 10, 11

*Galen v. Redfin Corp.*,
    No. 14-CV-05229-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ....................................4

*Gerton v. Fortiss, LLC*,
    No. 15-cv-04805-TEH, 2016 WL 613011 (N.D. Cal. Feb. 16, 2016) ....................................12

*Global Live Events v. Ja-Tail Enters., LLC*,
    No. CV 13-8293 SVW, 2014 WL 1830998 (C.D. Cal. May 8, 2014)....................................14

*Gray v. Conseco, Inc.*,
    No. SA CV 00-322DOC, 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000) ....................13, 14, 15

*Hoai Dang v. Samsung Elecs.*,
    No. 14-cv-0053-LHK, 2015 U.S. Dist. LEXIS 105594 (N.D. Cal. Aug. 10, 2015)................13

*In re TFT-LCD Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 106268 (N.D. Cal. Sept. 19, 2011) ....................................................9

*InterDigital Commc'ns, LLC v. ITC*,
    718 F.3d 1336 (Fed. Cir. 2013)..............................................................................................5

*Interdigital Tech. Corp. v. Pegatron Corp.*,
    No. 15-CV-02584-LHK, 2016 WL 234433 (N.D. Cal. Jan. 20, 2016)....................................2

*Kag W., LLC v. Malone*,
    No. 15-CV-03827-TEH, 2015 WL 6693690 (N.D. Cal. Nov. 3, 2015) ....................................2

*Khraibut v. Chahal*,
    No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016) ..............................3, 4, 5

*Koyoc v. Progress Fin. Co.*,
    No. CV 13-09165-RSWL, 2014 WL 1878903 (C.D. Cal. May 9, 2014) ..............................5, 6

*Levin v. Caviar, Inc.*,
    No. 15-cv-01285-EDL, 2016 WL 270619 (N.D. Cal. Jan. 22, 2016)....................................2, 4

*Loewen v. Lyft*,
    No. 15-CV-01159-EDL, 2015 WL 5440729 (N.D. Cal. Sept. 15, 2015) ................................10

*Long v. Fid. Water Sys., Inc.*,
    No. C-97-20118, 2000 WL 989914 (N.D. Cal. May 26, 2000) ................................................9

*Mance v. Mercedez-Benz USA*,
    901 F. Supp. 2d 1147 (N.D. Cal. 2012) ................................................................................11

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Meadows v. Dickey's Barbeque Rest. Inc.*,
   No. 15-cv-02139-JST, 2015 WL 7015396 (N.D. Cal. Nov. 12, 2015) ...................................3

4

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983) ..................................................................................13, 14

5

6

*Mendoza v. Microsoft Inc.*,
   No. 2:14-cv-00316-MJP, 2014 WL 4540225 (W.D. Wash. Sept. 11, 2014) ............................3

7

*Morse v. Servicemaster Global Holdings, Inc*,
   No. C 10-00628 SI, 2012 U.S. Dist. LEXIS 144691 (N.D. Cal. Oct. 4, 2012) ......................10

8

9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...............................................................................................6, 13

10

*Ortiz v. Hobby Lobby Stores, Inc.*,
   52 F. Supp. 3d 1070, 1087 (E.D. Cal. 2014) ..................................................................13

11

12

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) .....................................................................................5, 6

13

*Sanders v. County of Santa Cruz*,
   No. 5:13-cv-03205 EJD, 2014 WL 4883992 (N.D. Cal. Sept. 19, 2014) ...............................9

14

15

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .....................................................................................5, 6

16

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013) ..........................................................................................12

17

18

*Three Valleys Mun. Water Dist v. E.F. Hutton & Co.*,
   925 F.2d 1136 (9th Cir. 1991) ...................................................................................10

19

*Tompkins v. 23andMe, Inc.*,
   No. 5:13-cv-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014) .......................................3

20

21

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*,
   42 F.3d 1292 (9th Cir. 1994) .......................................................................................5

22

*Walsh v. Microsoft Corp.*,
   No. C14-424-MJP, 2014 WL 4168479 (W.D. Wash. Aug. 20, 2014) ....................................3

23

24

*Zenelaj v. Handybook Inc.*,
   82 F. Supp. 3d 968 (N.D. Cal. 2015) .....................................................................2, 3, 4

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**STATUTES**

9 U.S.C. § 3 .................................................................................................................1, 13

Cal. Civ. Code § 1638 ............................................................................................................9

Cal. Civ. Code § 1641 ............................................................................................................9

Cal. Civ. Code § 1644 ............................................................................................................9

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| AAA | American Arbitration Association |
| Agreements | TTO TOS and TTD EULA |
| Arbitration Plaintiffs | Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams |
| ATO | Account takeover |
| Brown | Plaintiff Richard Brown, a resident of Pennsylvania |
| Co Decl. II | Declaration of Claudine R.L. Co in Support of Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint, filed on February 4, 2016 (Dkt. No. 76) |
| Cole Decl. II | Declaration of Rodger R. Cole in Support of Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint, filed on February 4, 2016 (Dkt. No. 77) |
| Cole Decl. III | Supplemental Declaration of Rodger R. Cole in Support of Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint, filed concurrently herewith |
| Diaz | Plaintiff Christine Diaz, a resident of Ohio |
| Dispute Resolution Agreement | Dispute resolution and class action waiver agreement in TY13 TTO TOS, TY14 TTO TOS, TY13 TTD EULA, and TY14 TTD EULA |
| FAA | Federal Arbitration Act, 9 U.S.C. §§ 2, *et seq.* |
| Fugatt | Plaintiff Michelle Fugatt, a resident of Alabama |
| Heller Decl. | Declaration of Roger N. Heller in Support of Plaintiffs' Opposition to Intuit's Motion to Compel Plaintiffs Knoch, Lebinski, Siegel, Stock and Williams to Arbitration and to Stay Their Proceedings, filed on March 11, 2016 (Dkt. No. 82-1) |
| Intuit | Defendant Intuit Inc. |
| Knoch | Plaintiff Carol Knoch, a resident of Illinois |
| Lebinski | Plaintiff James Lebinski, a resident of Connecticut |
| MSA | Multi-step authentication |
| MTC | Intuit's Second Motion to Compel Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams to Arbitration and to Stay Their Proceedings, filed on February 4, 2016 (Dkt. No. 75) |
| MTD Opp. | Plaintiffs' Opposition to Intuit's Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint, filed on March 11, 2016 (Dkt. No. 83) |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF ABBREVIATIONS**
(continued)

| | |
|---|---|
| Opposition or Opp. | Plaintiffs' Opposition to Intuit's Motion to Compel Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams to Arbitration and to Stay Their Proceedings, filed on March 11, 2016 (Dkt. No. 82) |
| Opp. Mot. Open Disc. | Intuit's Opposition to Plaintiffs' Motion to Open Discovery, filed on February 2, 2016 (Dkt. No. 73) |
| PII | Personally identifiable information |
| Plaintiffs | Brown, Diaz, Fugatt, Knoch, Lebinski, Siegel, Stock, and Williams |
| SCAC | Second Consolidated Amended Complaint, filed on December 18, 2015 (Dkt. No. 69) |
| Siegel | Plaintiff Todd Siegel, a resident of California |
| SIRF | Stolen identity refund fraud |
| SSN | Social Security Number |
| Stock | Plaintiff David Stock, a resident of Maryland |
| TTD | TurboTax Desktop |
| TTD EULA | TTD End User License Agreement |
| TTO | TurboTax Online |
| TTO TOS | TTO Terms of Service |
| TY | Tax Year |
| TY13 TTD EULA | Intuit Software End User License Agreement TurboTax Desktop Software – Tax Year 2013, attached as Exhibit 9 to Co Decl. II |
| TY13 TTO TOS | Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2013, attached as Exhibit 2 to Co Decl. II |
| TY14 TTD EULA | Intuit Software End User License Agreement TurboTax Desktop Software – Tax Year 2014, attached as Exhibit 10 to Co Decl. II |
| TY14 TTO TOS | Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2014, attached as Exhibit 5 to Co Decl. II |
| UCL | Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. |
| Williams | Plaintiff Marilyn Williams, a resident of Maryland |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## I.      INTRODUCTION

Nothing in the Opposition requires—or even permits—departure from the overwhelming, binding federal authority that requires the Arbitration Plaintiffs to proceed with their claims in arbitration (or small claims court), and not as putative class representatives in this forum.

The material facts are not in dispute:  the Arbitration Plaintiffs concede that they have been TurboTax users for seven years or more and thereby repeatedly agreed to Intuit's TTO TOS or TTD EULA.  The Arbitration Plaintiffs concede agreement to the Dispute Resolution Agreement in TY12, TY13, and TY14.  And this presumptively valid and enforceable Dispute Resolution Agreement consists of "RELATING IN ANY WAY TO" language that the Ninth Circuit has held to be "broad and far reaching."

Indeed, as the Ninth Circuit instructs, the Arbitration Plaintiffs' allegations need only "touch matters" related to their use of TurboTax or the subject matters of their Agreements— which the SCAC plainly does.  No plausible reading of the Agreements supports a "temporal" limit to their terms as the Opposition asserts, and regardless, the Dispute Resolution Agreement is an express surviving provision in the Agreements.  Finally, if there were any doubt as to whether the Arbitration Plaintiffs' claims fall within the scope of their arbitration agreements with Intuit— which there is not—federal law requires any such doubt be resolved "in favor of arbitration."

The Arbitration Plaintiffs' remaining arguments fail as well.  For instance, the Arbitration Plaintiffs have not carried their burden to invalidate their arbitration agreements on unconscionability, or any other grounds.  Nor does the presence of a singular equitable claim for violation of the UCL aid the Arbitration Plaintiffs in their attempt to avoid the Dispute Resolution Agreement to which they each agreed.  Contrary to the Arbitration Plaintiffs' assertions, equitable claims *can*, in fact, be addressed by the arbitrator.  And because there is nearly complete overlap of factual and legal issues between the UCL claim and the common law claims that should be decided by the arbitrator, parallel proceedings in this Court on the UCL claim alone would be an utter waste of judicial resources and a real threat to result in inconsistent findings.  The Court should thus stay their proceedings pending resolution of their arbitrable claims under 9 U.S.C. § 3, and grant Intuit's motion.

## II.        ISSUES OF ARBITRABILITY SHOULD BE DECIDED BY THE ARBITRATOR.

A threshold question before this Court is whether arbitrability should be decided by this Court or an arbitrator.  The language at issue is not disputed.  It provides:  "Arbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules."  Co Decl. II ¶¶ 27-28, Exs. 2, 5, 9-10.  And the AAA rules uniformly provide that the decision of whether a dispute is arbitrable is, itself, left to the arbitrator.  *See* Part II.A, n.1 *infra*.  Neither the Arbitration Plaintiffs' repeated (and erroneous) characterization of this incorporation of the AAA rules as "threadbare" nor their (groundless) assertion that Intuit's demand for arbitration is "wholly groundless" has any merit whatsoever.

### A.       The Law of this Circuit Supports a Finding of Clear and Unmistakable Intent to Delegate Arbitrability to the Arbitrator in this Case.

In 2015, the Ninth Circuit held that the incorporation of AAA rules constitutes "'clear and unmistakable' evidence of the parties' intent" to delegate arbitrability to an arbitrator.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D. Cal. Jan. 20, 2016) (noting "binding" precedent of *Brennan* ).  Significantly, the Ninth Circuit in that same opinion expressly did "not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts," noting "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts."  *Brennan*, 796 F.3d at 1130-31.

Likewise, after (and even before) *Brennan*, the weight of decisions have held that the incorporation of AAA rules constitutes clear and unmistakable intent to delegate arbitrability, regardless of the parties' sophistication.  *E.g.*, *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 974 (N.D. Cal. 2015) (finding abitrability delegated by incorporation of AAA rules "[r]egardless of  [parties'] sophistication");  *Levin v. Caviar, Inc.*, No. 15-cv-01285-EDL, 2016 WL 270619, at *3 (N.D. Cal. Jan. 22, 2016) (driver and food delivery service); *Kag W., LLC v. Malone*, No. 15-CV-03827-TEH, 2015 WL 6693690, at *3 (N.D. Cal. Nov. 3, 2015) (driver and transportation company); *AccentCare Inc. v. Echevarria*, No. C 15-01078 JSW, 2015 WL 3465761, at *3 (N.D.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Cal. June 1, 2015) (in-home care providers and employer); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. C 12-05797 SBA, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (consumer loan agreement); *Crook v. Wyndham Vacation Ownership, Inc.*, No. 13-CV-03669, 2013 WL 6039399, at *6 (N.D. Cal. Nov. 8, 2013) (time share agreement); *see also Mendoza v. Microsoft Inc.*, No. 2:14-cv-00316-MJP, 2014 WL 4540225, at *4-5 (W.D. Wash. Sept. 11, 2014) (consumer agreement); *Walsh v. Microsoft Corp.*, No. C14-424-MJP, 2014 WL 4168479, at *4-5 (W.D. Wash. Aug. 20, 2014) (consumer agreement).

In contrast, the Opposition relies on pre-*Brennan* cases that run counter to prevailing law. The court in *Meadows v. Dickey's Barbeque Rest. Inc.*, No. 15-cv-02139-JST, 2015 WL 7015396 (N.D. Cal. Nov. 12, 2015) (Opp. 9:13) drew heavily on *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014). *Tompkins*, decided before *Brennan*, has since been recognized as "at odds with the prevailing trend of case law." *Zenelaj*, 82 F. Supp. 3d at 974 (*Tompkins*' "discussion of the alleged 'sophisticated parties' limitation was merely dicta"); *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *5 (N.D. Cal. Mar. 18, 2016) (*Tompkins* outdated in light of *Brennan*). The court in *Aviles v. Quick Pick Express, LLC*, No. CV-15-5214-MWF, 2015 U.S. Dist. LEXIS 174960 (C.D. Cal. Dec. 3, 2015) (Opp. 8:21), similarly relied on *Tompkins* by its reliance on *Meadows*. *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506, 2012 WL 4120003 (N.D. Cal. Sept. 19, 2012) (Opp. 7:24) is also "unpersuasive" as it "was decided before the Ninth Circuit's decision in *Brennan*." *ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-cv-01706-BLF, 2015 WL 5186462, at *5 (N.D. Cal. Sept. 4, 2015).

The weight of authority in this Circuit compels a finding of clear and unmistakable delegation to the arbitrator in this case. Here, the Arbitration Plaintiffs agreed to the arbitration agreement at least three times (in TY12, TY13, and TY14) as experienced TurboTax users of seven years or more. No evidence suggests that they did not read or understand it or its incorporation of the AAA rules, nor that these long-time do-it-yourself tax preparers were even inexperienced, uneducated, or otherwise unsophisticated in any way.

While the Arbitration Plaintiffs argue about the uncertainty of which AAA rules apply at any given time (Opp. 11:5-12:12), this is a red herring. The Opposition cites no AAA rules that

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

do not delegate questions of arbitrability to the arbitrator.  This omission is likely because the

cited AAA rules *all empower the arbitrator to do so*.[1]  Moreover, courts in this District repeatedly

have held that reference to a specific set of AAA rules need not be included to show an agreement

to arbitrate arbitrability.  *See, e.g.*, *Khraibut*, 2016 WL 1070662, at *4 ("[*Brennan's*] holding puts

the Ninth Circuit in line with a number of other circuits which require only inclusion of the AAA

Rules, and no further or more specific instructions, to find sufficient evidence of delegation.");

*Galen v. Redfin Corp.*, No. 14-CV-05229-TEH, 2015 WL 7734137, at *7 (N.D. Cal. Dec. 1,

2015) (ambiguity did not defeat clear intent where both sets of rules included delegation

provisions).  Because the parties clearly and unmistakably delegated issues of arbitrability by

incorporation of AAA rules, the arbitrator should decide whether the claims are arbitrable.

**B.     The Arbitration Plaintiffs' "Wholly Groundless" Claim Is, Itself, Wholly Groundless.**

        Despite this clear and unmistakable delegation, the Arbitration Plaintiffs ask this Court to

conduct its "limited" inquiry to determine whether Intuit's assertion of arbitrability is "wholly

groundless."  Opp. 12:18; *Zenelaj*, 82 F. Supp. 3d at 975 ("[B]ecause any inquiry beyond a

'wholly groundless' test would invade the province of the arbitrator…the district court need not,

and should not, determine whether [the claims] are in fact arbitrable." (citation and internal

quotations omitted)).  However, an assertion of arbitrability is not "wholly groundless" so long as

the agreement is broad enough to "potentially encompass" a plaintiff's claim.  *Levin*, 2016 WL

270619, at *4; *Khraibut*, 2016 WL 1070662, at *7 (if "even loosely related" to claims, action

should be stayed pending arbitrator's ruling on arbitrability); *Zenelaj*, 82 F. Supp. 3d at 975

(arbitration should not be denied unless there is "positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute").  Here, the "RELATED IN

ANY WAY TO" language is "broad and far reaching" whereby the Arbitration Plaintiffs' claims

fall well within their scope.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131

(9th Cir. 2000); MTC 16:28-19:5; Part III.A *infra*.  None of the cases cited in the Opposition

---

[1] *See* Heller Decl. ¶ 2, Ex. A (June 1, 2009 Commercial Arbitration Rules and Mediation
Procedures) (arbitrator has power "to rule on his or her own jurisdiction, including any objections
with respect to the existence, scope or validity of the arbitration agreement."); *id.* ¶¶ 3, 6, Exs. B,
E (Oct. 1, 2013 Commercial Arbitration Rules and Mediation Procedures) (same); *id.* ¶ 5, Ex. D
(Sept. 1, 2014 Consumer Arbitration Rules) (same).

1   involve such broad language[2] or otherwise support a "wholly groundless" finding here.  This

2   argument should be rejected out of hand.  *See Khraibut*, 2016 WL 1070662, at *7-8.

3   **III.    THE ARBITRATION PLAINTIFFS MUST ARBITRATE THEIR CLAIMS.**

4   Even if this Court, and not the arbitrator, were to decide issues of arbitrability, the result

5   should be the same:  Intuit's motion should be granted because the Arbitration Plaintiffs' claims

6   fall within the scope of their broad, valid and enforceable Dispute Resolution Agreements with

7   Intuit and they have presented no grounds on which to otherwise invalidate them.

8   **A.    The Dispute Resolution Agreement is Paradigmatically Broad and
         Encompasses the Claims Alleged by the Arbitration Plaintiffs.**

9

10   On its face, the Dispute Resolution Agreement uses the broadest possible language,

11   whereby the parties agreed that "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO

12   THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING

13   ARBITRATION, RATHER THAN IN COURT."  When there is a broad arbitration clause such as

14   this one, the Ninth Circuit instructs that the factual allegations need only "touch matters" covered

15   by the contract with the arbitration clause.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir

16   1999).[3]  In the contracts between Intuit and the Arbitration Plaintiffs, the pledge to arbitrate claims

---

17   [2] Indeed, the omission of such broad "relating to" language in the cases cited by the Opposition is
18   "significant."  *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir.
     1994) ("arising out of" more narrowly construed than broader "relating to" language).  Both
19   *InterDigital Commc'ns, LLC v. ITC*, 718 F.3d 1336, 1340 (Fed. Cir. 2013) (Opp. 13:15) and
     *ASUS Computer*, 2015 WL 5186462, at *2 (Opp. 14:8), involved licensing agreements requiring
20   disputes "arising under" those agreements be arbitrated, and the claims involved patents not
     licensed thereunder.  In *Ellsworth* (Opp. 14:6), defendant sought arbitration of a mortgage dispute
21   based on a contract plaintiff entered when opening a separate checking account.  The clause at
     issue required arbitration of "a dispute concerning your account" and was thus "substantially
22   narrower."  *Ellsworth*, 2012 WL 4120003, at *1, *9 ("only commonality" between two
     agreements were parties involved).  Finally, in *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th
23   Cir. 2014) (Opp. 13:22), plaintiff had brought claims arising from "a car accident, a settlement,
     and embezzlement of the funds through an account that a third party held with the bank" which
24   had "nothing to do with her checking account opened [ten] years earlier for only a brief time."
     There (unlike here), defendant's "only theory" that its claim was not wholly groundless was the
25   existence of a delegation provision, an argument the Fifth Circuit found "circular."
     [3] The Opposition cites cases holding in Intuit's favor.  In *Simula* (Opp. 15:19-23), the Ninth
26   Circuit affirmed arbitration even when more limiting language was at issue.  *Simula*, 175 F.3d at
     721 (analyzing "arising in connection with [the Agreement]" and repeating strong federal policy
27   to expansively interpret arbitration clauses and that "allegations need only 'touch matters'"
     covered by the contract).  The court in *Koyoc v. Progress Fin. Co.*, No. CV 13-09165-RSWL,
28   2014 WL 1878903, at *4 (C.D. Cal. May 9, 2014) (Opp. 16:11-13) similarly ordered arbitration,
     recognizing "the FAA's federal policy favoring arbitration agreements" and the claims need only

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    is not only related to the Agreement itself, but also related "in any way to the Services." With

2    such a broad arbitration clause, a "heightened presumption in favor of arbitration" exists such that

3    the Arbitration Plaintiffs must show "forceful evidence of a purpose to exclude the claim from

4    arbitration." *Koyoc*, 2014 WL 1878903, at *2 (citing *AT&T Techs. v. Commcns Workers of Am.*,

5    475 U.S. 643 (1986)). Thus, even if this Court were to find any ambiguity as to whether their

6    claims are encompassed—which it should not—any such ambiguity "should be resolved in favor

7    of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

8        The Arbitration Plaintiffs present no such "forceful evidence" here. Instead, they attempt

9    to avoid this broad arbitration agreement by insisting that their claims have "nothing to do with

10   any of their actual, legitimate dealings with Intuit in the past or TY14, or even whether they had

11   any legitimate dealings with Intuit at all." Opp. 4:3-5. But these assertions cannot be reconciled

12   with the SCAC's plain language.[4] *Simula*, 175 F.3d at 721 ("[W]e must examine the factual

13   allegations raised to determine which of [Plaintiff's] causes of action are arbitrable."); *Atlas Int'l*

14   *Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *5 (N.D.

15   Cal. July 9, 2014) (Davila, J.) (finding claims based on alleged theft and wrongful use of

16   information related to same relationship governed by contract, thereby subjecting "entire dispute"

17   to arbitration); MTC 17:13-19:5. No matter how adamantly the Arbitration Plaintiffs deny it, their

18   express claims in the SCAC logically and necessarily relate to their use of TurboTax,[5] including

19   the existence and use of their TurboTax accounts and the software and services, as well as the

20   provision of their PII (*e.g.*, SSN, contact, and taxpayer information) to Intuit. For example:

---

22   "touch matters" covered by the contract. In *Republic of Nicaragua v. Standard Fruit Co.*, 937
     F.2d 469 (9th Cir. 1991) (Opp. 17:4-5), the Ninth Circuit reversed and remanded for an order to

23   arbitrate. *Id.* at 475 (arbitration agreements "shall be rigorously enforced").
     [4] Artful pleading to avoid arbitration is also evident from Plaintiffs' discovery requests. Cole

24   Decl. III ¶ 8, Ex. F (subpoena seeking information related *existing* TurboTax accounts or ATOs).
     Thus while the SCAC portrays this case as being solely about SIRF (*see* SCAC ¶¶ 88, 98, 108,

25   115, 124, 133,142, 152), the discovery requests plainly reveal otherwise.
     [5] The Dispute Resolution Agreement actually does not limit its scope to *their* use, but more

26   generally to "the Services." MTC 17:5-18:10. The Arbitration Plaintiffs' attempt to limit "the
     Services" as encompassing only *their* use, is inconsistent the term's use throughout the Agreement.

27   *E.g.*, Co Decl. II, Ex. 2 § B.2.1 ("Services" include "any state version of TTO"), § A.5 (user gives
     Intuit permission to combine their information entered or uploaded for the Services with that of

28   "other users of the Services"). But the Court need not decide this issue given that their claims still
     relate to *their* use of the Services and the subject matters of their Agreements. *See* Part III.A.

---

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

- The Arbitration Plaintiffs allege that Intuit failed to implement sufficient "multi-step authentication" ("MSA").  SCAC ¶ 37.  But MSA depends on Intuit's ability to verify the submitted MSA data against the data Intuit *already* possessed which legitimate customers would have provided the prior year (pursuant to the terms of their TurboTax Agreements).

- The Arbitration Plaintiffs allege that Intuit should not have allowed customers' SSNs to be used across more than one account.  *Id.* ¶ 38, 64, 195 (alleging "Intuit had a duty to maintain reasonable authentication and security protocols regarding the opening of new TurboTax accounts…where TurboTax accounts were sought to be opened *for identities and [SSNs] for which TurboTax accounts already existed*") (emphasis added).  Again, this relates to legitimate customers' existing accounts and their provision of their information and SSNs to Intuit—all of which are governed by the terms of their Agreements.

- The Arbitration Plaintiffs allege that Intuit failed to notify them (as legitimate users) of a suspicious or fraudulent return filed in their names.  *Id.* ¶¶ 42, 62, 63, 66, 73 (alleging "had Intuit timely notified [them] about the fraud, they could have taken steps to prevent or limit the harm they suffered"), 213.  Intuit would have no means to identify suspicious activity (nor to notify these individuals) but for their legitimate use of the Software or Services, and having provided their contact information through such use.

- The Arbitration Plaintiffs allege that Intuit charges non-refundable tax preparation fees even when their returns are rejected due to fraud.  *Id.* ¶¶ 47, 134-35 (alleging Siegel paid $140); 143, 147 (alleging Stock paid $94.98).  Such fees are undisputedly related to these customers' use of TurboTax and payment terms under their TurboTax Agreements.[6]

The Arbitration Plaintiffs' allegations also "touch" subject matters covered by their contracts.  For instance, the Agreements govern Intuit's treatment and security of customers' PII, and what Intuit may or may not do with their data.  *E.g.*, Co. Decl. II, Ex. 2 §§ A.5, B.7, Ex. 9 §§ A.5, B.3 (privacy and use of personal and tax return information); Ex. 2 § A.1, Ex. 9 § A.1.1 (incorporating Privacy Statement); Ex. 2 § A.7.2, Ex. 9 § A.7.2 (permitted use of information); Ex. 2 § B.2.2.b, Ex. 9 § B.8 (user consent to disclosure of information to taxing authorities).  The Agreements also state that "Intuit may, but has no obligation to, monitor content on the Services" and describes communications Intuit may have with the user (*id.* Ex. 2 §§ A.6.4, A.7.3, Ex. 9 § A.7.4).  They further state the user (and not Intuit) is responsible for filing their return manually if "the taxing authority rejects" it (*id.* Ex. 2 § B.2.2.a, Ex. 9 § B.8) and that Intuit is not liable for the "INABILITY TO FILE YOUR RETURN, DELAY IN PREPARING YOUR TAX RETURN …[and] ANY DEFAULT OR DELAY…DUE TO…THE ACTIONS OR OMISSIONS OF THIRD PARTIES" (*id.* Ex. 2 § B.7).  Again, these matters all "relate" to the SCAC, including the

---

[6] Even if this particular theory relates to their *TY14* TurboTax use only, it is immaterial.  They concede entering both TY13 and TY14 Agreements, which are substantively identical and have the same Dispute Resolution Agreement.  Thus, in either case, their claims are arbitrable.

allegations specified above.

The Arbitration Plaintiffs attempt to artificially confine their claims as related to "only" the fraudsters' use of TurboTax.  Opp. 15:8-13.  Not only is this untrue (*see* Part III.A *supra*), but this "either or" proposition is a fallacy.  There is no logical reason why claims related to a third party's use of TurboTax must be to the exclusion of their use.  Their claims necessarily relate to both.

**B.    There Is No "Temporal" Limitation to the TurboTax Agreements.**

The Arbitration Plaintiffs next attempt to manufacture a "temporal" limit to the terms of their TY13 Agreements with Intuit.  Opp. 18:1-14.  But they already have conceded their assent to *both* the TY13 and TY14 Agreements (and the same Dispute Resolution Agreement therein), and, as set forth below, the Agreements simply do not permit the interpretation they offer.

First, the Agreements' plain language reflects no such temporal limitation.  Instead, it sets forth specific circumstances whereby the Agreements may terminate, none of which are even alleged here.  Co Decl. II, Ex. 2 § A.2.1, Ex. 9 § A.2.2.  Indeed, no party ever terminated or rescinded the Agreements; in fact, *the Arbitration Plaintiffs initially sued Intuit for breach of these very contracts*.  MTC 8:5-20.  There is also no claim that the Arbitration Plaintiffs' TurboTax accounts were closed or that Intuit dispossessed itself of their PII.  They also continued to use TurboTax (presumably using their same accounts and PII) through TY14.  Regardless, even if their contracts had been terminated, the broad Dispute Resolution Agreement therein expressly survives.  Co Decl. II, Ex. 2 § A.14, Ex. 9 § A.14; *Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, No. 5:13-CV-01007-EJD, 2013 WL 6158040, at *2-3 (N.D. Cal. Nov. 22, 2013) (Davila, J.) (where dispute encompassed by provision of expired agreement, presumption favoring arbitrability must be negated "expressly or by clear implication" and finding plaintiffs failed to "provide any evidence suggesting that either [party] intended to rescind the arbitration agreement").  Indeed, the case is clearer here than in *Fimby* insofar as the Arbitration Plaintiffs affirmed their agreement to arbitrate again by accepting the TTO TOS and TTD EULA in TY14.

Second, the Arbitration Plaintiffs suggest that the TY13 Agreement had no further effect after October 15, 2014 (or some other undefined time after TY13), because their license to use was "valid only for one specific tax year."  Opp. 18:8-14.  This argument is frivolous.  No such

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  limiting "only" language exists in, or should be read into, the Agreements.  The TY13

2  Agreements do not exclusively relate to their active use of TurboTax in TY13, and its terms

3  extend beyond the end of tax season.[7]  The Arbitration Plaintiffs' theory is that Intuit, after the

4  end of tax season, had no obligations whatsoever to them regarding the security and treatment of

5  their TurboTax accounts or PII.  However, that theory is inconsistent with the Agreements' plain

6  terms, creates absurd results, and should be rejected.[8]  *See Sanders v. County of Santa Cruz*, No.

7  5:13-cv-03205 EJD, 2014 WL 4883992, at *5 (N.D. Cal. Sept. 19, 2014) (Davila, J.) (reiterating

8  general principles of contract interpretation under California law, including provisions of Cal.

9  Civ. Code §§ 1638, 1641 and 1644, while also noting that when interpreting scope of arbitration

10  clause courts must give "due regard to the federal policy in favor of arbitration by resolving

11  ambiguities as to the scope of arbitration in favor of arbitration" (citations omitted)).

12      Third, the Opposition raises issues concerning the merger provision (Opp. 19:27, 20:22)

13  and retroactive application of the TY14 Agreement (Opp. 19:1).  But as already noted, the

14  Arbitration Plaintiffs entered the TY13 *and* TY14 Agreements.  Thus whether their claims are

15  governed by the TY13 Agreement or TY14 Agreement, or if or when their TY14 Agreement

16  superseded their TY13 Agreement is immaterial—both Agreements have the same Dispute

17  Resolution Agreement.[9]  Moreover, if anything, their argument regarding applicability of the

---

18  [7] *See, e.g.*, Co Decl. II, Ex. 2 § B.2.2 (Intuit continues to store and maintain user information, but

19  not obligated to provide copy of TY13 return at any time after October 15, *2015*) (emphasis
   added); *id.* Ex. 2 § A.3.e, Ex. 9 § A.3.d (automatic renewal for Services offered on annual

20  payment or subscription basis); *id.* Ex. 2 §§ A.6, A.6.3, Ex. 9 §§ A.6, A.6.3 (granting Intuit non-
   exclusive, royalty-free, worldwide license to host and use content provided by customers and for

21  any feedback provided); *id.* Ex. 2 § B.4.a.ii, Ex. 9 § B.4 (user must notify Intuit of calculation
   errors when user learns of mistake, and no later than 30 days after penalty or interest assessed);

22  *id.* Ex. 9 § B.8 (tax preparation services for TY13 not supported beyond October 15, *2016*)
   (emphasis added); *id.* Ex. 2 § B.6 (user must remember ID and password to electronically transfer

23  tax return information into *next year's* return), Ex. 9 § B.9 (option to transfer data "between Intuit
   tax products from *year to year*" and enabling user to start, continue, and complete a return for

24  *following tax year*) (emphases added); *id.* Ex. 2 § B.4, Ex. 9 § B.5 (users must submit claims
   under Maximum Refund Guarantee by *December 15*, 2014) (emphasis added).

25  [8] Similarly, their argument that the mere use of "TAX YEAR 2013" or "TAX YEAR 2014" in the
   title of the documents means that the Agreements' terms do not extend "beyond a given tax year"

26  (Opp. 18:4-7) is frivolous and contrary to the Agreements' plain terms.
   [9] The Opposition cites inapposite cases.  *In re TFT-LCD Antitrust Litig.*, 2011 U.S. Dist. LEXIS

27  106268 (N.D. Cal. Sept. 19, 2011) (Opp. 18:18-21), ordered arbitration, and its discussion
   concerned if three "fixed term" contracts had been merged into a later agreement whereby that

28  arbitration provision applied retroactively.  The Agreements have no such fixed terms, and the
   TY13 and TY14 Agreements have the *same* Dispute Resolution Agreement.  In *Long v. Fid.*

---

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Dispute Resolution Agreement to future disputes (Opp. 19:14) only reinforces the applicability of

2    the TY13 Dispute Resolution Agreement to the Arbitration Plaintiffs' claims here.

3    **C.      The Arbitration Plaintiffs Fail to Carry Their Burden to Invalidate the Arbitration Agreements on Unconscionability, Or Any Other Grounds.**

4

5            Unconscionability is the only grounds on which the Arbitration Plaintiffs try to invalidate

6    the Dispute Resolution Agreement.  But they fall short of carrying their burden to establish both

7    procedural and substantive unconscionability here.  *Fimby*, 2013 WL 6158040, at *3 (arbitration

8    agreement "must be both procedurally and substantively unconscionable" to be unenforceable).

9            First, with regard to any purported procedural unconscionability, they concede they

10   repeatedly accepted the TurboTax TOS and EULAs for seven years or more, including the

11   Dispute Resolution Agreement therein at least three times since TY12.  Although it is the core of

12   Arbitration Plaintiffs' argument on this point, the fact that the Dispute Resolution Agreement

13   appears in a form contract of adhesion (Opp. 21:19-22:9) is not sufficient grounds to invalidate

14   the agreement.[10]  MTC 14:7-23; *Loewen v. Lyft*, No. 15-CV-01159-EDL, 2015 WL 5440729, at

15   *7 (N.D. Cal. Sept. 15, 2015) (citing *Serpa v. Cal. Sur. Investigation, Inc.*, 215 Cal. App. 4th 695,

16   704 (2013) ("When, as here, there is no other indication of oppression or surprise, 'the degree of

17   procedural unconscionability of an adhesion agreement is low, and the agreement will be

18   enforceable unless the degree of substantive unconscionability is high.'")).  Indeed, the

19   Opposition fails to cite a single case invalidating an arbitration agreement as a result of its mere

20   inclusion in an adhesive contract.  This is because courts regularly enforce arbitration agreements

21   *Water Sys., Inc.*, No. C-97-20118, 2000 WL 989914, (N.D. Cal. May 26, 2000) (Opp. 19:10-13)

22   the court rejected retroactive application of an arbitration agreement that defendant had tried to insert as a subsequent unilateral modification to an agreement that had *no* arbitration agreement.

23   The Ninth Circuit's decision in *Three Valleys Mun. Water Dist v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (Opp. 19:10) only supports that the Dispute Resolution Agreement

24   "should be read expansively" as it held in favor of arbitration.  Finally, in *Morse v. Servicemaster Global Holdings, Inc*, No. C 10-00628 SI, 2012 U.S. Dist. LEXIS 144691 (N.D. Cal. Oct. 4,

25   2012), defendant sought retroactive application of an arbitration agreement for claims that arose prior to its execution.  Again, retroactive application is unnecessary here because the Arbitration

26   Plaintiffs agreed to the same Dispute Resolution Agreement in TY13 *and* TY14.

     [10] The Arbitration Plaintiffs misquote Intuit's MTC in their Opposition.  *Compare* Opp. 21:19-21

27   (arguing "Intuit argues that placing arbitration provisions in form contracts of adhesion does not render them *procedurally* unconscionable") (emphasis added) *with* MTC at 14:7-9 (arguing "mere

28   allegation that the Dispute Resolution Agreement reside within 'form adhesion contracts' is insufficient to render them *unconscionable* as a matter of law") (emphasis added).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  in even adhesive contracts where the terms, like those here, are not substantively unconscionable.

2  MTC 14:7-23 (citing authorities); *cf. AT&T Mobility LLC, v. Concepcion*, 563 U.S. 333, 346-47

3  (2011) (noting "times in which consumer contracts were anything other than adhesive are long

4  past"); *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1161 (N.D. Cal. 2012) (citing

5  *Concepcion* and collecting cases) ("The clear import of *Concepcion*…pushes against finding that

6  an adhesive contract, without more, is per se procedurally unconscionable."); *Fimby*, 2013 WL

7  6158040, at *3-4 (Opp. 21:19-23[11]) (even where parties agreed contract adhesive, plaintiffs still

8  failed to meet burden to establish unconscionabilty).  Moreover, any procedural unconscionability

9  that ordinarily might be presumed by the fact that these are adhesive contracts is mitigated by the

10  Arbitration Plaintiffs' long history as TurboTax customers and their repeated acceptance of the

11  Agreements.  MTC 14:16-23 (citing *Crook*, 2013 WL 6039399, at *5 (finding "plaintiffs' claims

12  of oppression and unfair surprise [were] unpersuasive" where parties had entered multiple

13  agreements with similar dispute resolution clauses).  There is no evidence of any purported

14  oppression or surprise.  And the Opposition concedes the numerous tax preparation market

15  alternatives to TurboTax, further undermining any degree of procedural unconscionability.  MTC

16  14:24-15:15 (citing *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, No. 5:13-

17  CV-02559-EJD, 2014 WL 116442, at *3 (N.D. Cal. Jan. 13, 2014) (Davila, J.) ("[T]here can be

18  no oppression establishing procedural unconscionability, even assuming unequal bargaining

19  power and an adhesion contract, when the customer has meaningful choices.")).

20     Nor do the Arbitration Plaintiffs articulate any reason why the Dispute Resolution

21  Agreement could be considered substantively unconscionable.  *Compare* MTC 15:7-22 (detailing

22  how substantive terms of Dispute Resolution Agreement are the same, if not more favorable, than

23  those upheld in *Coneff* and *Concepcion*), *with* Opp. 22:11-21 (arguing, without explanation, the

24  Dispute Resolution Agreement is "one-sided"); *cf.* MTC 15:23-16:1 (noting TurboTax users have

25

26  ───────────────
[11] In *Fimby*, plaintiffs sought to invalidate their arbitration agreements on substantive
unconscionability grounds due to the inclusion of a class action waiver, an argument this Court
soundly rejected.  *Fimby*, 2013 WL 6158040, at *4 (concurring with decisions in this District

27  rejecting viability of *Gentry v. Sup. Ct.* to invalidate class action waivers post-*Concepcion*).  The
Arbitration Plaintiffs do not even raise this argument here, nor have they identified *any* specific

28  substantive unconscionability grounds at all.  *See* Opp. 22:11-21.

───────────────
INTUIT REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION     11      Master Docket No. 15-CV-01778-EJD

already availed themselves of provisions and expeditiously resolved similar claims against Intuit in proper forums).  Their cursory discussion on substantive unconscionability (Opp. 22:11-21) addresses none of Intuit's arguments, and gives no substance to their conclusory pleading (*see* SCAC ¶ 86).  Because the Arbitration Plaintiffs present no substantive grounds to invalidate the Dispute Resolution Agreement, the Court should find it valid and enforceable.[12]

**D.   The Arbitration Plaintiffs Must Arbitrate Their Common Law Claims and Cannot Proceed As Class Representatives.**

The Arbitration Plaintiffs also try to avoid arbitration by relying on the injunctive relief provision in the Dispute Resolution Agreement.  Opp. 20:14-21:10.  Their argument is made regarding their UCL claim *only*, and they thus concede their tort claims neither seek nor require injunctive or equitable relief (and therefore are not excluded from arbitrability).  The Arbitration Plaintiffs also mischaracterize the arbitration clause as permitting "only" this Court to hear their UCL claim (Opp. 20:12-13).  But this clause is *not mandatory*.  Co Decl. II, Ex. 2 § A.14, Ex. 9 § A.14 ("any party to the arbitration *may*" seek injunctive or other equitable relief) (emphasis added).  Indeed, nothing in the law, the Dispute Resolution Agreement or the AAA rules precludes an arbitrator from hearing the UCL claim and other TurboTax customers have presented precisely that issue to an arbitrator for adjudication.  *See* Cole Decl. II ¶ 10, Ex. H.

---

[12] The Opposition cites distinguishable cases without explanation, none of which support a different result.  The Ninth Circuit upheld an arbitration provision as unconscionable in *Elite Logistics Corp. v. Hanjin Shipping Co.*, 589 Fed. Appx. 817 (9th Cir. 2014) (Opp. 21:13), but unlike here, it lacked mutuality, imposed a time limit shorter than the statute of limitations, and provided the arbitration panel no authority to enjoin the conduct.  In *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109 (2013) (Opp. 21:14-17) the California Supreme Court post-*Concepcion* held that although the FAA preempted California law which prohibited adhesive arbitration agreements waiving employees' access to a Berman hearing, courts were to nevertheless consider an unconscionability defense.  Both *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) and *Aral v. Earthlink Inc.*, 134 Cal. App. 4th 544 (2005) (Opp. 21:24-28; 22:11-21) are factually inapposite and since abrogated in part by *Concepcion*.  And while in *Antonelli v. Finish Line*, No. 5:11-cv-03874 EJD, 2012 WL 525538 (N.D. Cal. Feb. 16, 2012) (Davila, J.) (Opp. 22:3-9) this Court found an arbitration agreement unconscionable, there:  it was a condition for application of employment; plaintiff teenagers had no reasonable opportunity to review the terms; the fee provisions were substantively unconscionable; California residents were required to arbitrate in Indiana; and defendant had a unilateral cancellation right.  No analogous provisions exist in the Dispute Resolution Agreement here.  Finally, in *Gerton v. Fortiss, LLC*, No. 15-cv-04805-TEH, 2016 WL 613011, at *15 (N.D. Cal. Feb. 16, 2016), the court enforced an employee's arbitration agreement though it had severed a class action waiver found therein on very fact-specific unconscionability grounds not present (or even raised) here.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   More importantly, even if the injunctive relief sought by their UCL claim were excluded,

2   the Arbitration Plaintiffs ignore that their arbitration agreement includes a class action waiver,

3   whereby they expressly agreed that "ANY AND ALL DISPUTES MUST BE BROUGHT IN

4   [THEIR] INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN

5   ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING."  Co Decl. II Ex. 2 §

6   A.14, Ex. 9 § A.14.  This, with the fact that this clause allows this exception for "any party *to the*

7   *arbitration*," reflects that the parties agreed such injunctive relief would be sought in their

8   individual capacities only.  *See Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1087

9   (E.D. Cal. 2014) (noting claims "fall within the scope of the Arbitration Agreement's waiver

10  provision and therefore Plaintiff may be prohibited from bringing those claims in court or in

11  arbitration"); *Hoai Dang v. Samsung Elecs.*, No. 14-cv-0053-LHK, 2015 U.S. Dist. LEXIS

12  105594, at *31 (N.D. Cal. Aug. 10, 2015) (dismissing putative class action claims "[b]ecause the

13  Arbitration Provision bars Plaintiff from combining or consolidating his individual claims into a

14  class action").  Regardless, even if the Arbitration Plaintiffs were allowed to maintain their UCL

15  claim in this forum, it should be stayed until resolution of their arbitrable claims.  *See* Part IV.

16  **IV.   THE ARBITRATION PLAINTIFFS' PROCEEDINGS SHOULD BE STAYED.**

17  The Arbitration Plaintiffs concede a stay must issue as to any arbitrable claims.  9 U.S.C.

18  § 3.  Left in this Court's discretion[13] is whether any non-arbitrable claims (*i.e.*, their request for

19  injunctive relief under the UCL) should be stayed until their arbitrable tort claims are resolved.[14]

20  Assuming their UCL class claims are not dismissed outright (*see* Part III.D *supra*), a stay of their

21  entire proceedings is warranted here.  Courts have broad discretion to stay all claims where

22  avoiding duplicative efforts would result in economy and efficiency, or where arbitrable and

23

24  [13] A court's decision to stay is reversed only for abuse of discretion.  *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

25  [14] The Court's discretion is the same in deciding whether to stay the litigation among the non-arbitrating parties.  Opp. Mot. Open Disc. 7:21-8:5; s*ee, e.g.*, *Moses H. Cone Mem'l Hosp.*, 460

26  U.S. at 21 n.23 ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district

27  court…as a matter of its discretion to control its docket."); *Gray v. Conseco, Inc.*, No. SA CV 00-322DOC (EEx), 2000 WL 1480273, at *8 (C.D. Cal. Sept. 29, 2000) (discretion to stay is same

28  "whether the non-arbitrable claims arise between parties with other arbitrable claims or instead are brought by parties with no arbitrable claims").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

nonarbitrable claims are interdependent. *Mediterranean Enters.*, 708 F.2d at 1465 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." (citation omitted)); *Gray*, 2000 WL 1480273, at *8 (factors include "(1) economy and efficiency that result from avoiding duplication of effort; (2) how suited the dispute is to the arbitration process; and (3) the interdependence of the arbitrable claims and non arbitrable claims" (citation omitted)); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) (stay appropriate even where all parties not bound to arbitrate given "similarity" of factual and legal issues "to those that will be considered during arbitration, as well as the potential for inconsistent findings absent a stay"). Here, these factors support a stay of their entire proceedings.[15]

First, the UCL claim expressly depends on the outcomes of the arbitrable common law counts. *See* MTD Opp. at II.A.1 ("common law violations" serving as basis for UCL claim); SCAC ¶¶ 176.a.-176.e. (UCL claim based on same purported failures giving rise to negligence counts); *id.* ¶¶ 176.f.-176.g. (UCL claim based on aiding and abetting fraud claim); *id.* ¶ 186 (alleging unlawful conduct based on "violations of common law"). Because the sufficiency of the Arbitration Plaintiffs' UCL claim is derived from the viability of their arbitrable common law claims, allowing the UCL claim to proceed would put the cart before the horse, as it cannot be resolved until the arbitrable claims are resolved.

Second, arbitrable issues predominate, and there is nearly complete overlap of issues between the UCL and common law claims, thereby risking inconsistent findings absent a stay. *See id.* ¶¶ 176-188, ¶¶ 193-233 (allegations supporting UCL claim paralleling those of common law claims); *id.* ¶¶ 174, 192, 203, 225 (all claims incorporating by reference all prior substantive allegations of the SCAC). For example, the arbitrator would resolve issues such as:

---

[15] The cases cited in the Opposition do not indicate otherwise. In *United Commc'ns Hub, Inc. v. Qwest Commc'ns*, Inc., 46 F. App'x 412, 414 (9th Cir. 2002), half of the issues were not subject to arbitration. In *Global Live Events v. Ja-Tail Enters., LLC*, No. CV 13-8293 SVW, 2014 WL 1830998, at *7 (C.D. Cal. May 8, 2014), the court found it would be inefficient stay the judicial proceedings where a trial scheduled in two months would "resolve a broader range of legal and factual issues" than the single claim submitted to arbitration. Further, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 224 (1985), did not address whether non-arbitrable claims should be stayed pending the outcome of arbitration, and instead held that courts must compel arbitration as to arbitrable claims where a case contains both arbitrable and non-arbitrable claims.

- Intuit's purported knowledge of fraudulent or suspicious filings and the continuing risk of SIRF and ATO (*compare id.* ¶¶ 193, 194, 207, 231, *with* ¶¶ 176.e., 180-82);

- Intuit's purported knowledge regarding the (in)adequacy of security protocols and available measures it could (or could not) have taken to address the fraud (*compare id.* ¶¶ 193, 194, 195, 209, 217-18, 227, 229, *with* ¶¶ 176.a., 176.b., 176.e., 179, 180, 188);

- Whether Intuit could have prevented the fraud, whether Intuit caused their damages, and what relief they may recover (*compare id.* ¶¶ 199-200, 222, 223, 234, *with* ¶¶ 179, 180, 184, 187, 188);

- Whether Intuit deliberately encouraged tax fraud for its own benefit (*compare id.* ¶¶ 210, 214-15 *with* ¶ 176.f.);

- Whether Intuit failed to timely transmit data related to suspicious filings to taxing authorities (*compare id.* ¶¶ 213, 220, 232, *with* ¶ 176.d.), or whether Intuit could have or failed to timely notify the Arbitration Plaintiffs of the fraudulent returns (*compare id.* ¶¶ 213, 232, 233, *with* ¶¶ 176.c., 180, 181, 184);

- Whether Intuit owed or breached any common law duties (*compare id.* ¶¶ 193, 195-96, 198, 228, 230, 232, *with* ¶¶ 181-82, 184).

Because these issues predominate and overlap, their request for equitable relief under the UCL should be stayed until their arbitrations are complete. *Gray*, 2000 WL 1480273, at *8 (stay of "non-arbitrable equitable portion of [UCL claim]" promoted "judicial economy and efficiency").

Third, allowing the Arbitration Plaintiffs' UCL claim to proceed (on a class basis) will unnecessarily expand discovery and these class proceedings. Unlike Fugatt and Brown (non-customers) and Diaz (a TY10 TTD customer with no arbitration agreement), the Arbitration Plaintiffs represent TY12, TY13 and TY14 TurboTax customers with arbitration agreements with Intuit. If their claims are resolved through arbitration, these putative class proceedings will be significantly narrowed. Moreover, the outcomes in their arbitrations may directly impact these putative class proceedings. The individualized nature of the factual issues considered and resolved by the arbitrators vis-à-vis each Arbitration Plaintiff may directly inform this Court as to whether their claims could even be maintainable on a class basis under Rule 23.

## V.   CONCLUSION

For the foregoing reasons, Intuit requests the Court grant its motion.

Dated:   April 1, 2016                         FENWICK & WEST LLP

                                              By: */s/ Rodger R. Cole*
                                              Rodger R. Cole
                                              Attorneys for Defendant INTUIT INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW