1  RODGER R. COLE (CSB No. 178865)
   rcole@fenwick.com
2  FENWICK & WEST LLP
   Silicon Valley Center
3  801 California Street
   Mountain View, CA  94041
4  Telephone:     650.988.8500
   Facsimile:     650.938.5200
5
   ALEXIS I. CALOZA (CSB No. 278804)
6  acaloza@fenwick.com
   HAILEY TETON (CSB No. 294262)
7  hteton@fenwick.com
   FENWICK & WEST LLP
8  555 California Street, 12th Floor
   San Francisco, CA  94104
9  Telephone:     415.875.2300
   Facsimile:     415.281-1350
10
   Attorneys for Defendant
11 INTUIT INC.

12                 UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                      SAN JOSE DIVISION

15

16 IN RE INTUIT DATA LITIGATION          Master Docket No. 15-CV-01778-EJD

17                                       **NOTICE OF MOTION AND MOTION
                                         TO DISMISS PLAINTIFFS' THIRD
18                                       CONSOLIDATED AMENDED
                                         COMPLAINT PURSUANT TO
19 THIS DOCUMENT RELATES TO:             FEDERAL RULE OF CIVIL
                                         PROCEDURE 12(B)(6);
20      ALL ACTIONS                      MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT
21                                       THEREOF**

22                                       **REDACTED VERSION OF
                                         DOCUMENT SOUGHT TO BE
23                                       SEALED**

24
                                         Date:      March 29, 2018
25                                       Time:      9:00 a.m.
                                         Location:  Courtroom 4, 5th floor
26                                       Judge:     The Hon. Edward J. Davila

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS .................................................................. vii

NOTICE OF MOTION AND MOTION TO DISMISS ................................... 1

STATEMENT OF RELIEF SOUGHT ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

    I       INTRODUCTION ................................................................ 1

    II.     STATEMENT OF ISSUES TO BE DECIDED ........................... 3

    III.    STATEMENT OF FACTS ...................................................... 4

          A.    THE RECENT RISE IN IDENTITY THEFT AND TAX
                 REFUND FRAUD ....................................................... 4

          B.    INTUIT ...................................................................... 5

          C.    PLAINTIFFS ............................................................. 7

          D.    PLAINTIFFS' ALLEGED HARM .................................... 7

    IV.    LEGAL STANDARD ........................................................... 7

    V.     ARGUMENT ..................................................................... 8

          A.    PLAINTIFFS DO NOT STATE A CLAIM FOR AIDING
                 AND ABETTING FRAUD (THIRD COUNT) ...................... 8

              1.    Plaintiffs Have Not Pled Actual Knowledge .................... 9

              2.    Plaintiffs Have Not Pled Substantial Assistance ............. 13

          B.    PLAINTIFF BROWN FAILS TO STATE A CLAIM OF
                 NEGLIGENCE (COUNT TWO) ...................................... 15

              1.    The Alleged Harm to Non-Customer Plaintiff Brown
                  Was Not Reasonably Foreseeable ............................... 16

              2.    Public Policy Militates Against Imposing Any Tort Duty
                  on Intuit ................................................................ 21

CONCLUSION .................................................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfus v. Pyramid Tech. Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) ...................................................................13

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
824 F. Supp. 2d 1164 (C.D. Cal. 2011) .................................................................8

*Antman v. Uber Techs., Inc*,
No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015)...................4

*Ballard v. Uribe*,
41 Cal. 3d 564 (1986) ..........................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................8

*Burgess v. Super. Ct.*,
2 Cal. 4th 1064 (1992) ..........................................................................................21

*Burns v. Neiman Marcus Grp., Inc.*,
173 Cal. App. 4th 479 (2009) ....................................................................17, 21, 25

*Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987)...............................................................................13

*Camp v. Dema*,
948 F.2d 455 (8th Cir. 1991)................................................................................12

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) ....................................................................... *passim*

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
438 F. Supp. 2d 1081 (N.D. Cal. 2005), *aff'd*, 263 F. App'x 630 (9th Cir.
2008) .......................................................................................................................9

*Chazen v. Centennial Bank*,
61 Cal. App. 4th 532 (1998) .............................................................................18, 24

*Colony Cove Props., LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011)...................................................................................8

*Comm. on Children's Television v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) ..........................................................................................14

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

*Dillon v. Legg,*
       68 Cal. 2d 728 (1968) ................................................................................................16

4

5

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n,*
       678 F.3d 659 (8th Cir. 2012) ....................................................................................11

6

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n,*
       795 F. Supp. 2d 874 (D. Minn. 2011) ......................................................................15

7

8

*Eisenberg v. Wachovia Bank, N.A.,*
       301 F.3d 220 (4th Cir. 2002) ....................................................................................17

9

10

*Erlich v. Menezes,*
       21 Cal. 4th 543 (1999) ..............................................................................................21

11

12

*Fiol v. Doellstedt,*
       50 Cal. App. 4th 1318 (1996) ...................................................................................13

13

*Gabriel v. Giant Eagle, Inc.,*
       124 F. Supp. 3d 550 (W.D. Pa. 2015) ......................................................................22

14

15

*Gonzalez v. Planned Parenthood of L.A.,*
       759 F.3d 1112 (9th Cir. 2014) ....................................................................................8

16

*Howard v. Superior Court,*
       2 Cal. App. 4th 745 (1992) .......................................................................................13

17

18

*Huggins v. Citibank, N.A.,*
       355 S.C. 329 (2003) ..................................................................................................22

19

20

*Ileto v. Glock Inc.,*
       349 F.3d 1191 (9th Cir. 2003) ..................................................................................15

21

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.,*
       No. SA CV 04-1234 AHS (CWX), 2006 WL 6935318
       (C.D. Cal. June 20, 2006), *aff'd,* 270 F. App'x 570 (9th Cir. 2008) .......................13

22

23

*In re First Alliance Mortg. Co.,*
       471 F.3d 977 (9th Cir. 2006) ...............................................................................9, 10

24

25

*In re Mortg. Fund '08 LLC,*
       527 B.R. 351 (N.D. Cal. 2015) .................................................................................15

26

27

*In re Sharp Int'l Corp.,*
       281 B.R. 506 (Bankr. E.D.N.Y. 2002), *aff'd,* 302 B.R. 760 (E.D.N.Y. 2003),
       *aff'd,* 403 F.3d 43 (2d Cir. 2005) ............................................................................13

28

Fᴇɴᴡɪᴄᴋ & Wᴇsᴛ LLP
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Mᴏᴜɴᴛᴀɪɴ Vɪᴇᴡ

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Karen Kane, Inc. v. Bank of America,*
    67 Cal. App. 4th 1192 (1998) ..................................................................................17, 25

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005)..........................................................................................4

*Ladd v. Cnty. of San Mateo,*
    12 Cal. 4th 913 (1996) ....................................................................................................15

*Landale Signs & Neon, Ltd. v. Runnion Equip. Co.,*
    No. 16-CV-7619, 2016 WL 7409916 (N.D. Ill. Dec. 22, 2016)....................................17

*Lerner v. Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006)...........................................................................................17

*Litson-Gruenber v. JPMorgan Chase & Co.,*
    No. CIV.A. 7:09-CV-056-0, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) ...........12

*Longenecker-Wells v. BeneCard Servs., Inc.,*
    No. 1:15-CV-00422, 2015 WL 5576753 (M.D. Pa. Sept. 22, 2015) ..........................25

*Neilson v. Union Bank of Cal., N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .........................................................................12

*Nwabueze v. AT&T Inc.,*
    No. C 09-1529 SI, 2011 WL 332473 (N.D. Cal. Jan. 29, 2011).....................................14

*Parks Sch. of Bus., Inc. v. Symington,*
    51 F.3d 1480 (9th Cir. 1995)...........................................................................................7

*Piscitelli v. Classic Residence by Hyatt,*
    408 N.J. Super. 83 (2009) .........................................................................................22, 25

*Polzer v. TRW, Inc.,*
    682 N.Y.S.2d 194 (N.Y. App. Div. 1998) ......................................................................18

*QDOS, Inc. v. Signature Fin., LLC,*
    No. B279475, 2017 WL 5793973 (Cal. Ct. App. Nov. 29, 2017) ........................17, 18, 22

*Rodriguez v. Bank Of The West.,*
    162 Cal. App. 4th 454 (2008) .........................................................................................22

*Rowland v. Christian,*
    69 Cal. 2d 108 (1968) ........................................................................................15, 16, 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*S.E.C. v. Berry*,
    580 F. Supp. 2d 911 (N.D. Cal. 2008) ...................................................................8

*Sun 'n Sand, Inc. v. United Cal. Bank*,
    21 Cal. 3d 671 (1978) ............................................................................18, 19

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996)...................................................................8

*Smith v. Citibank (S.D.), N.A.*,
    No. 00–0587–CV–W–1–ECF, 2001 WL 34079057 (W.D. Mo. Oct. 3, 2001) ......................18

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
    49 Cal. App. 4th 472 (1996) ...................................................................18, 21

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007).................................................................15

*Tarasoff v. Regents of Univ. of Cal.*,
    17 Cal. 3d 425 (1976) ............................................................................16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................8

*Vasilenko v. Grace Family Church*,
    3 Cal. 5th 1077, 1200 (2017) ...................................................................16, 20

*Willingham v. Global Payments, Inc.*,
    No. 1:12-cv-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013)....................17

*Woods v. Barnett Bank of Ft. Lauderdale*,
    765 F.2d 1004 (11th Cir. 1985)...................................................................12

*Woodward v. Metro Bank of Dallas*,
    522 F.2d 84 (5th Cir. 1975)...................................................................12

*Worix v. MedAssets, Inc.*,
    869 F. Supp. 2d 893 (N.D. Ill. 2012) ...................................................................18

**STATUTES AND RULES**

26 U.S.C. § 7216 ...................................................................5, 21

Fed. R. Civ. P. 9(b) ...................................................................3, 4, 8, 15

Fed. R. Civ. P. 12(b)(6) ...................................................................7, 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

**OTHER AUTHORITIES**

16 C.F.R. § 314 .................................................................................................................6

26 C.F.R. § 301.7216 ........................................................................................................5

IRS Pub. 1345 ............................................................................................................ *passim*

IRS Pub. 3112 ...................................................................................................................6

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Arbitration Plaintiffs | Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams |
| Brown | Plaintiff Richard Brown, a resident of Pennsylvania |
| CAC | Consolidated Amended Complaint, filed Sept. 29, 2015 (Dkt. No. 51) |
| Cole Decl. III | Declaration of Rodger R. Cole in Support of Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) |
| Darke Decl. | Declaration of Jessica Darke in Support of Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) |
| Diaz | Plaintiff Christine Diaz, a resident of Ohio |
| FTC | Federal Trade Commission |
| Fugatt | Plaintiff Michelle Fugatt, a resident of Alabama |
| GLBA | Gramm-Leach Bliley Act |
| Intuit | Defendant Intuit Inc. |
| IRC | Internal Revenue Code |
| IRS | Internal Revenue Service |
| IRS Pub. 1345 | IRS Publication 1345, "Handbook for Authorized IRS e-file Providers of Individual Income Tax Returns," attached as Exhibit E to the Cole Decl. III |
| IRS Pub. 3112 | IRS Publication 3112, "IRS e-file Application and Participation," attached as Exhibit F to the Cole Decl. III |
| Knoch | Plaintiff Carol Knoch, a resident of Illinois |
| Lebinski | Plaintiff James Lebinski, a resident of Connecticut |
| Motion to Dismiss SCAC | Intuit's Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed Feb. 5, 2016 (Dkt. No. 78) |
| Motion to Dismiss TCAC | Intuit's Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| | |
|---|---|
| PII | Personally identifiable information |
| RJN | Request for Judicial Notice in Support of Defendant Intuit Inc.'s Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint |
| SCAC | Second Consolidated Amended Complaint, filed December 18, 2015 (Dkt. No. 69) |
| Section 7216 | 26 U.S.C. §§ 7216, *et seq.* |
| Siegel | Plaintiff Todd Siegel, a resident of California |
| SSN | Social Security Number |
| Stock | Plaintiff David Stock, a resident of Maryland |
| TCAC | Third Consolidated Amended Complaint, filed Nov. 17, 2017 (Dkt. 131) |
| TTD | TurboTax Desktop |
| TY | Tax Year |
| TY10 Customer Plaintiff | Diaz |
| Williams | Plaintiff Marilyn Williams, a resident of Maryland |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **March 29, 2018**, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Hon. Edward J. Davila, Courtroom 4, 5th floor of the above-entitled court, located at 280 South First Street, San Jose, CA 95113, Intuit will move the Court to dismiss the Third Consolidated Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Intuit's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, the Declarations of Rodger R. Cole and Jessica Darke and their attached exhibits filed concurrently with this motion, and all papers on file in this consolidated action and any related actions (including all papers filed by Intuit on December 1, 2015 and February 5, 2016), and such other written or oral argument as may be properly presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Intuit seeks dismissal of the Second Count (negligence) brought by Plaintiff Brown and the Third Count (aiding and abetting fraud) brought by Plaintiffs Brown and Diaz pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Third Consolidated Amended Complaint (TCAC) alleges that Plaintiffs were the victims of identity theft *by third parties*.  The TCAC does not, however, allege that Intuit suffered a data breach, or that Plaintiffs' PII was otherwise stolen from Intuit.  Instead, the TCAC alleges that Intuit—a do-it-yourself tax preparation software company—should have, but failed, to singlehandedly insulate the country's federal and state taxation systems from the consequences of identity theft *by third parties*.  Plaintiffs invite the Court to impose a new common law duty requiring Intuit to protect Plaintiffs and other taxpayers from the consequences of identity theft *by third parties*.  But tax administration is a heavily regulated field for good reason.  It requires compromise between multiple policy goals, including ease of tax preparation, efficiency of tax administration, security of taxpayer data, and taxpayer privacy.  Congress, the IRS and their

parallel state legislatures and taxing authorities (and not the judiciary) are charged with mediating these conflicting policies and others, as well as regulating and collaborating with the industry to combat the ever-evolving challenges of stolen identity refund fraud (SIRF). The Court should once again decline Plaintiffs' invitation to create unprecedented common law rules and regulations, and impose the far-reaching obligations Plaintiffs seek to impose here.

After three consolidated amended complaints, it is now readily apparent that Plaintiffs cannot plead a cognizable claim for aiding and abetting fraud or for negligence (as to non-Intuit customer Brown). After Intuit filed its first Motion to Dismiss, Plaintiffs did not oppose the motion and instead filed the SCAC. In the SCAC, Plaintiffs made material omissions and admissions, abandoned claims, disavowed their contracts with Intuit in an unsuccessful attempt to avoid arbitration, eliminated the two classes of plaintiffs originally proposed in the CAC, admitted that Plaintiffs were SIRF victims only, and omitted allegations of an Intuit data breach. SCAC ¶¶ 79-85, 88, 98, 108, 115, 124, 133, and 162. In response to Plaintiffs' SCAC, Intuit filed a motion to compel arbitration and stay proceedings against Arbitration Plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams. Dkt. No. 75. The Court granted Intuit's motion and stayed proceedings as to the Arbitration Plaintiffs.[1] Dkt. No.123. Intuit also moved to dismiss certain of the remaining Plaintiffs Brown and Diaz's claims.[2] Dkt. Nos. 78, 124. In response to Intuit's Motion to Dismiss SCAC, the Court found that non-customer Brown had not alleged facts that would have put Intuit on notice that a fraudster was opening a TurboTax account in his name, and dismissed his negligence claim with leave to amend. Dkt. No. 124 at 5:21-6:17 ("Order"). The Court also found that Brown and Diaz had not alleged "that Intuit intentionally transmitted fraudulent returns in their names or in their Social Security numbers to taxing authorities," and

---

[1] On October 27, 2017, Plaintiffs moved for permission to seek interlocutory appellate review or for leave to file a motion for reconsideration of the Court's order on the motion to compel. Intuit filed an opposition to this motion on December 1, 2017. Dkt. No. 136. Plaintiffs' motion is currently pending, and is set to be heard on February 15, 2018. The Arbitration Plaintiffs have continued to assert their claims in the TCAC to preserve their rights. *See* TCAC ¶ 13 n.1. Because the case is stayed as to the Arbitration Plaintiffs, this motion only addresses the claims of the two remaining Plaintiffs, Brown and Diaz.

[2] Two of the eight named plaintiffs, Siegel and Fugatt, filed voluntary dismissals. *See* Dkt. Nos. 98-99, 111-112.

2

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

dismissed the aiding and abetting fraud claim with leave to amend.[3]  *Id.* at 7:20-21, 8.

Plaintiffs allege only a handful of new facts in the TCAC as compared to the SCAC, none of which overcome the deficiencies identified by the Court.  First, Brown's negligence claim fails because Intuit owes no duty to non-customers as the harm is not foreseeable since Brown has not identified any indicia of fraud.  Policy reasons also counsel against creating and imposing upon Intuit new and unlimited common law duties to all American taxpayers.  Second, Brown and Diaz's aiding-and-abetting claim fails because Plaintiffs have not pled facts about any specific intent to aid and abet a specific instance of fraud, and cannot plead that Intuit had actual knowledge or substantially assisted a fraud—a fraud that Plaintiffs must concede was based on PII stolen from a source other than Intuit and before the fraudster ever used TurboTax.

Because the allegations in the TCAC do not cure the defects described in the Order, Plaintiffs again fail to state a legal claim.  Intuit thus requests that the negligence claim brought by Brown and the aiding-and-abetting claims brought by Brown and Diaz be dismissed without leave to amend.

## II.  STATEMENT OF ISSUES TO BE DECIDED

Aiding and Abetting Fraud (Third Count)

1.  Should Plaintiffs Brown and Diaz's Third Count be dismissed because Plaintiffs fail to allege actual knowledge?

2.  Should the Third Count be dismissed because Plaintiffs fail to allege substantial assistance with the particularity required by Rule 9(b)?

Negligence (Second Count)

3.  Should Plaintiff Brown's Second Count be dismissed because Intuit does not owe a common-law duty of care to all American taxpayers?

_____

[3] The Court also dismissed the negligent enablement of third-party imposter fraud with prejudice, and denied the Motion to Dismiss Plaintiffs' unfair competition and unjust enrichment claims, as well as Diaz's negligence claim.  *See* Dkt. No. 124.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### III.  STATEMENT OF FACTS[4]

**A.      The Recent Rise in Identity Theft and Tax Refund Fraud**

Plaintiffs allege that Intuit allowed fraudulent tax returns to be filed in Plaintiffs' names in TY14, calendar year 2015.  TCAC ¶¶ 109, 122.  Plaintiffs concede that Intuit did not have a data breach.  *Compare* CAC *with* TCAC (no data breach allegations in TCAC).  In 2015, there was an unprecedented increase in identity theft and fraud across all industries, including a substantial increase in fraudulent filings submitted to the IRS and state taxing authorities.  TCAC ¶¶ 29, 31-34 nn.6, 8-17.[5]  The fraudulent tax filings generally took one of two forms:  (a) stolen identity refund fraud ("SIRF") or (b) account takeovers ("ATOs").  *Id.* ¶¶ 26, 33 n.16, 77 n.38.  SIRF involves a fraudster trying to file a tax return using an individual's PII that was obtained from a third-party source (*i.e.*, outside of Intuit).  *Id.* ¶¶ 26.a, 33 n.16.  In this situation, the fraudster can create a new TurboTax account for an individual whose PII was stolen elsewhere, including for an individual who may have never used TurboTax.  *Id.*; *see also id.* ¶ 64 n.27.  ATO involves a fraudster's use of valid login credentials obtained from a source outside of Intuit to illegally access a customer's existing TurboTax account.  *Id.* ¶ 77, n.38.  In both cases, fraudsters illegally obtain information from well-publicized data breaches (that have nothing to do with Intuit), or through phishing schemes targeting consumers directly or malware installations on victims' computers.  *Id.* ¶ 26.

The increase in attempted SIRF and ATOs in TY14 is attributable to this increased availability of PII and valid login credentials acquired from other companies' data breaches and the increased deployment of aggressive phishing and malware campaigns.  *Id.* ¶¶ 26, 48, 64, nn.27, 38.  For example, the Office of Personnel Management revealed around June 4, 2015, and July 9, 2015 (after the regular tax season), that it had suffered one of the largest government data

---

[4] Citations are to the TCAC, documents incorporated therein by reference, and any other matters judicially noticeable, and unless otherwise stated are assumed true for purposes of this Motion only.  *See* RJN; *Antman v. Uber Techs., Inc*, No. 3:15-cv-01175-LB, 2015 WL 6123054, at *2 n.2 (N.D. Cal. Oct. 19, 2015) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

[5] For the Court's convenience, copies of the materials from the 22 URLs cited in the TCAC are submitted as Exhibit A (with numbered subparts 1-22) to the Cole Decl. III.  *See* Cole Decl. III ¶ 4.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

breaches in U.S. history, whereby the PII of 4.2 million current and former government employees and 21 million others had been compromised (including background investigation records of current, former and prospective federal employees and contractors). Cole Decl. III ¶¶ 6-7, Exs. C-D. Similarly, after tax season it was reported that over 300,000 taxpayer accounts had been illegally accessed through the IRS "Get Transcript" service since February 2015. *See id.* ¶ 5, Ex. B. Third-party criminals acquire PII illegally through any number of such sources, and share or sell it on underground forums, making it accessible to other fraudsters.

Criminals also exploit consumers' tendency to re-use the same IDs and passwords across different websites by logging on to various websites (including Intuit's) using credentials illegally acquired elsewhere, including through malware or phishing scams. TCAC ¶¶ 26, 77, n.38. The TCAC itself alleges that from 2014 to March 2015, hundreds of millions of consumers' PII had been exposed in other companies' data breaches. *Id.* ¶ 31, nn.8-14. The growth in stolen PII continued during the 2015 tax season. Cole Decl. III ¶¶ 5-7, Exs. B-D. In this regard, the increase in SIRF and ATOs is reflective of a nationwide phenomenon and is neither specific to Intuit nor the result of any Intuit data breach.

## B.    Intuit

Intuit develops and offers various financial and tax preparation software and related services, including the well-known tax preparation software TurboTax. TCAC ¶¶ 9, 20. TurboTax, offered in online and desktop versions, is utilized by millions of taxpayers each year to file their federal and state tax returns. *Id.* ¶¶ 21-23. As a provider of do-it-yourself tax preparation software and as an authorized IRS e-file provider, Intuit is subject to a complex federal regulatory environment, including certain provisions of the IRC, its attendant regulations, and published IRS guidance. *See, e.g.*, Section 7216; 26 C.F.R. § 301.7216; Cole Decl. III ¶¶ 8-9, Exs. E-F (IRS Pubs. 1345 and 3112). This regulatory environment does not permit a do-it-yourself tax software provider like Intuit to use taxpayer information to block returns from being e-filed unless the IRS has provided direct guidance. *See, e.g.*, Section 7216(a) (prohibiting any person engaged in "providing services in connection with the preparation of [tax returns]" from "us[ing] any such information for any purpose other than to prepare, or assist in preparing, any

Fenwick & West LLP
Attorneys at Law
Mountain View

such return"); *see also* IRS Pub. 1345.  Rather, it generally provides two exceptions for when

Intuit may stop a return from being filed:  (1) when there is an attempt to file a second return

using the same Taxpayer Identification Number (*e.g.*, SSN); and (2) when more than five

electronic returns are filed from one software package or one e-mail address.  IRS Pub. 1345 at

12, 43.  In all but these two circumstances, Intuit must "[t]ransmit all electronic portions of

returns within three calendar days of receipt."  *Id.* at 34.

Intuit also is subject to rules and regulations governing the privacy and security of

taxpayer information.  For example, the IRS mandates six "security, privacy and business

standards to better serve taxpayers and protect [the taxpayer] information collected, processed and

stored by Online [e-file] Providers."  *Id.* at 5-6.  Such standards "are based on industry best

practices and are intended to supplement the [GLBA] and the implementing rules and regulations

promulgated by the [FTC]."  *Id.*; *see also, e.g.*, IRS Pub. 3112 at 18; 16 C.F.R. § 314 (FTC

Safeguards Rule).  Plaintiffs still do not (and cannot) allege that Intuit ever failed to meet any

statutory or regulatory obligation with respect to its use and safeguarding of taxpayer information

generally, or with respect to Plaintiffs' PII specifically.  Moreover, Plaintiffs allege they are SIRF

victims only.  TCAC ¶¶ 108-134.  In other words, Plaintiffs allege that fraudsters used stolen PII

obtained elsewhere (and not from Intuit) to open TurboTax accounts and file fraudulent returns.

*Id.* ¶ 26 (contrasting SIRF with ATOs).

It is important to understand the distinct roles government and private industry play in the

tax ecosystem.  Fraudulent returns and suspicious returns are not synonymous, and as an e-file

provider Intuit is not empowered to reach a determination whether suspicious activity is fraud—

only the IRS or equivalent state taxing authority determines which returns are fraudulent and

whether to accept or reject a return.  *See* Cole Decl. III ¶ 10. Ex. G (IRS describing "clear lines of

distinction between the roles [government and the private sector] play in the tax ecosystem" and

how "[i]ndustry is providing essential help by sharing key information" to "allow the government

to quickly and accurately make determinations of what is fraudulent and what is not"); *see also*

*id.* ¶ 11, Ex. H.  As a result, even if Intuit were to believe a return may be suspicious, the

regulatory framework severely limits Intuit's options related to that return.  As described above,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

in the vast majority of cases, Intuit is bound by federal regulation to submit the return to the IRS. The IRS itself recognizes that the entire tax system faces ongoing and growing challenges to protect taxpayers from refund fraud, and the need for joint efforts with States and private industry to combat tax fraud.  *See id.*; *see also id.* ¶ 10 Ex. G.

**C.    Plaintiffs**

> Non-Customer Plaintiff Brown.  Brown alleges he was never a TurboTax customer. TCAC ¶ 108.  He never used TurboTax, never provided his PII or paid money to Intuit, and has no relationship with Intuit.  *Id.*  He alleges he was a SIRF victim in TY14.  *Id.* ¶ 109.  Brown alleges that ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ *Id.* ¶ 111.

> TY10 Customer Plaintiff Diaz.  In 2011, Diaz purchased TTD and used it to e-file her TY10 Ohio state and federal tax returns.  *See id.* ¶¶ 119-120.  Since then, she has not used TurboTax.  *Id.* ¶ 121.  Diaz alleges she is a SIRF victim in TY14.  *Id.* ¶ 122.  Diaz alleges that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ "[i]n or about late 2010 or early 2011."  *Id.* ¶¶ 119, 124.

**D.    Plaintiffs' Alleged Harm**

> Neither of the Plaintiffs allege any physical harm or injury to property.  *Id.*  ¶¶ 116-18, 131-34.  Nor do they allege that they did not receive their TY14 tax refunds.  *Id.*  Rather, they allege various intangible or economic harms, including:  lost time dealing with the "ramifications of the fraud"; inability to e-file; hardship from receiving a delayed refund; being at heightened risk of further identity theft; and costs of credit monitoring.  *Id.* ¶¶ 116-118, 131-134.  Plaintiffs do not delineate which of their purported injuries arise from the prior theft of their PII, the creation of fraudulent TurboTax accounts, or the alleged fraudulent tax returns.

### IV.  LEGAL STANDARD

> A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint, and dismissal is appropriate if plaintiff fails to assert a cognizable legal theory or allege sufficient facts under a cognizable legal theory.  *Parks Sch. of Bus., Inc. v. Symington*, 51

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

F.3d 1480, 1484 (9th Cir. 1995); *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996).  A plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" and must allege facts that, if true, raise the right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts need not accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).  Nor must courts accept as true allegations contradicted by documents and materials referred to in the complaint. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).  A court may consider the complaint, documents attached or incorporated by reference, and any matter subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## V.  ARGUMENT

### A.   Plaintiffs Do Not State a Claim for Aiding and Abetting Fraud (Third Count)

To state a claim for aiding and abetting an intentional tort, Plaintiffs must plead that the defendant:  (1) had actual knowledge of the specific primary wrong; and (2) substantially assisted in causing the harm suffered.[6]  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005).  These elements are subject to the heightened pleading requirements of Rule 9(b).  *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 923-24 (N.D. Cal. 2008).  Substantial assistance must be pled with particularity, while actual knowledge may be averred generally.  Fed. R. Civ. P. 9(b); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011).

This Court has already dismissed Plaintiffs' aiding-and-abetting claim once:

> Plaintiffs' allegations are insufficient to establish a claim for aiding and abetting. Plaintiffs have not alleged that Intuit intentionally transmitted fraudulent returns in their names or their Social Security numbers to taxing authorities.  Plaintiffs instead allege that Intuit could determine if a return looked "suspicious," but suspicious does not amount to actual knowledge of fraud.  Nor have Plaintiffs alleged that Intuit gave substantial assistance to the alleged fraud perpetuated against Brown and Diaz . . . .  In this case, Plaintiffs allege that Intuit aided and abetting [sic] by failing to implement

---

[6] For this Motion only, Intuit presumes Plaintiffs intend for California law to apply to all claims. In so doing, Intuit does not concede, and continues to reserve, its rights to contest the applicability of California law to one or more of the Plaintiffs' claims, including on class certification.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

adequate measures: to verify taxpayer information when an account is created or a return is filed; to notify taxpayers and IRS and other taxing authorities of returns that were fraudulent or suspicious; or to time report data regarding suspicious filings to the IRS and state taxing agencies.  In general, failure to act does not constitute substantial assistance for purposes of aiding and abetting.

Order at 7:19-8:5.  Plaintiffs' amended allegations fare no better.

### 1.    Plaintiffs Have Not Pled Actual Knowledge

As this Court previously held, an aiding-and-abetting claim requires Plaintiffs to allege that Intuit possessed ***actual*** knowledge of the underlying tort.  Order at 7:22; *Casey*, 127 Cal. App. 4th at 1152.  A mere suspicion "does not amount to actual knowledge of fraud."  Order at 7:22; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006).  "[A]iding and abetting . . . necessarily requires a defendant to reach a *conscious decision* to *participate in tortious activity* for the purpose of assisting another in performing a wrongful act."  *Casey*, 127 Cal. App. 4th at 1146-52 (emphases in original) (citation omitted) (holding bankruptcy trustee failed to state aiding and abetting claim against banks for allegedly facilitating looting by fiduciaries where plaintiff only generally alleged bank knew fiduciaries were involved in "wrongful or illegal conduct," but did not plead actual, specific knowledge); *Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1087 (N.D. Cal. 2005) (under California law, "knowledge of the underlying tort is an essential element of" a claim for aiding and abetting), *aff'd*, 263 F. App'x 630 (9th Cir. 2008).  Without allegations that Intuit knew the ***specific*** returns using Plaintiffs' PII were ***fraudulent***, this claim fails.  *See Casey*, 127 Cal. App. 4th at 1152 (dismissing aiding and abetting claim where there were no allegations banks knew source of the funds deposited into accounts).

Plaintiffs fail to plead that Intuit had actual knowledge that the returns filed in Plaintiffs' names were fraudulent when filed.  The TCAC alleges that Intuit should have known that the tax return filed in Plaintiff Brown's name was fraudulent because ██████████████████ ████████████████████████████████████████████████████████████ TCAC ¶ 111 (emphasis added).  As a preliminary matter, Plaintiffs do not allege that ████████████ ████████████████████████████████████████ ████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Plaintiffs thus fail to allege that Intuit had actual knowledge █████████████████████

2  ████████████████████████████████████████████████████ Rather, as

3  reflected in Plaintiffs' own allegations, Intuit ████████████████████████████

4  █████ But the mere *risk* or suspicion of fraud does not translate into ***actual knowledge*** of fraud.

5  *See* Order at 7:22; *In re First Alliance Mortg. Co.*, 471 F.3d at 993 n.4.  And even if it did,

6  Plaintiffs' argument suffers from a fatal flaw: ██████████████████████████████

7  ███████████████████████████████████████████████

8  Darke Decl. ¶ 5, Ex. 1.  Plaintiffs cannot rely on ██████████████████████████

9  █████████████████████████████████████ Further, even if Intuit

10 ████████████████████████████████████████████████████████████

11 Intuit would not have been permitted under the IRS regulations to do anything other than transmit

12 the returns within three days.  *See* IRS Pub. 1345 at 34.

13     The TCAC also fails to allege that Intuit had actual knowledge that tax returns submitted

14 in Plaintiff Diaz's name were fraudulent.  Plaintiffs allege that Intuit should have known that the

15 tax returns were fraudulent because ████████████████████████████████████

16 ██████████████████████████████████████████████████████████████

17 ██████████████████ "[i]n or about late 2010 or early 2011."  TCAC ¶¶ 119, 124.  But there is

18 nothing inherently suspicious about █████████████████████████████████████

19 ██████████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████████████

21 ███████████████████████████████████████████ *Id.* ¶ 124.  Tax preparation

22 is a complex process, and legitimate taxpayers may wish to model multiple tax return scenarios

23 before proceeding to file.  To take just one example, IRS guidance on selecting the appropriate

24 filing status expressly states that a married taxpayer "may want to prepare their taxes both ways

25 [*i.e.*, as married filing jointly and married filing separately] before they choose."  Cole Decl. III

26 ¶ 15, Ex. L.  ██████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████████████

28 ██████████████████████████████████████████ TCAC ¶ 124.



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Fenwick & West LLP
Attorneys at Law
Mountain View

1    Plaintiffs also attempt to infer knowledge from the fact that (1) the apparent taxpayer

2    attempted to file the tax returns, ███████████████████████████████████████

3    █████████████████████████████████████████████████████████████

4    █████████████████████████████████████████████████████████████

5    ██████    TCAC ¶ 124.  Nothing in this sequence of events is remotely indicative of fraud.  Indeed,

6    █████████████████████████████████████████████████████

7    █████████████████████████████████████████████████████████████

8    ████████████████████████████    Cole Decl. III ¶ 16, Ex. M.  Finally, Plaintiffs make

9    much of the fact that Intuit, in response to discovery requests regarding specific users (*i.e.*, the

10   named Plaintiffs), could use information provided by ███████████████████████████

11   ██████████████████████████████████████████████████

12   ████████████████████████    TCAC ¶ 124.  But Plaintiffs do *not* allege that Intuit

13   █████████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████

15   ████████████████████    In short, none of the newly alleged facts included in the TCAC

16   demonstrate that Intuit had reason to *suspect* any of the tax returns filed in Diaz's name were

17   fraudulent, let alone that Intuit had *actual knowledge* that the returns were fraudulent.

18       The TCAC also alleges that Intuit generally knew that TurboTax could be used to submit

19   fraudulent tax returns, but it again fails to cite any instances where, at the time of filing, Intuit had

20   actual knowledge that a specific tax return was fraudulent.  At best, Plaintiffs allege that Intuit

21   was aware of *risk factors* that might affect the *likelihood* that a given tax return was fraudulent.

22   *See, e.g.*, TCAC ¶¶ 43-45.  But Plaintiffs do not—and cannot—allege that any of these risk

23   factors are associated exclusively with fraudulent tax returns such that *no* legitimate tax return

24   would ever exhibit similar characteristics.  Thus, Plaintiffs fail to allege that Intuit could

25   distinguish, with complete certainty, legitimate and fraudulent tax returns at the time of filing or

26   that Intuit possessed the authority under federal law and regulations to intervene in the filing of

27   these returns.  The TCAC thus fails to allege actual knowledge of fraud.  *See E-Shops Corp. v.*

28   *U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012) (affirming dismissal where plaintiff

failed to plead bank knew information processed from cardholders was false at time of receipt);

*Casey*, 127 Cal. App. at 1149 (allegations that defendant knew "something fishy" was going on insufficient to support actual knowledge because "suspicion and surmise do not constitute actual knowledge" (citation omitted)); *see also Litson-Gruenber v. JPMorgan Chase & Co.*, No. CIV.A. 7:09-CV-056-0, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (allegations setting forth "merely a story of suspicious activity" could not support California aider and abettor claim).

Plaintiffs' conclusory allegations that Intuit provided a fee payment mechanism that allowed fraudsters to file fraudulent returns without financial outlay and that it allowed customers to deposit tax refunds directly onto a prepaid debit card are also insufficient to plead actual knowledge. TCAC ¶¶ 227-28, 231. Intuit's refund transfer mechanism serves a legitimate business purpose by allowing consumers to avoid out-of-pocket costs for tax return preparation services in the event that an upfront payment would constitute a hardship. It also allows unbanked consumers without debit cards or credit cards to file tax returns through TurboTax. Prepaid debit cards also serve a legitimate purpose by allowing taxpayers to get their money faster, removing the possibility of a tax refund check being lost or stolen, and helping taxpayers avoid check-cashing fees. Allowing refund transfers and tax refunds to be deposited onto prepaid cards is not unique to Intuit; tax preparers like H&R Block, Jackson Hewitt, and Liberty Tax all offer similar services. Cole Decl. ¶¶ 17-19, Exs. N-P. The refund transfer mechanism and offering returns on prepaid cards cannot constitute actual knowledge of fraud by Intuit simply because it could theoretically be used by fraudsters for nefarious purposes. *Cf.*, *Camp v. Dema,* 948 F.2d 455, 459 (8th Cir. 1991) ("A party who engages in **atypical** business transactions or actions which lack business justification may be found liable as an aider and abettor with a minimal showing of knowledge," citing *Woods v. Barnett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1010 (11th Cir. 1985) (emphasis added)); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir. 1975) ("Conversely, if the method or transaction is **atypical** or **lacks business justification**, it may be possible to infer the knowledge necessary for aiding and abetting liability") (emphases added). And although an unusual or extraordinary financial incentive can be a consideration in gauging a defendant's alleged knowledge and substantial assistance (*Neilson*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1128 (C.D. Cal. 2003)), the financial incentive alleged by Plaintiffs cannot give rise to an inference of actual knowledge by Intuit. "Courts have consistently found that allegations of ordinary economic motives are insufficient to plead a strong financial motive to aid [] fraud, and are not a substitute for pleading actual knowledge of the primary wrongdoing." *In re Sharp Int'l Corp.*, 281 B.R. 506, 516 (Bankr. E.D.N.Y. 2002), *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005).

### 2.    Plaintiffs Have Not Pled Substantial Assistance

An aiding-and-abetting claim requires Plaintiffs to plead Intuit provided "substantial assistance" to the alleged fraud.  Order at 7:14-8:11; *Casey*, 127 Cal. App. 4th at 1145.  As this Court noted in dismissing the SCAC, "failure to act does not constitute substantial assistance for purposes of aiding and abetting liability."  Order at 8:4-5 (citations omitted); *see also Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) ("Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting.").  Rather, substantial assistance requires a "significant and active, as well as a knowing participation in the wrong." *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520 (N.D. Cal. 1990) (citation omitted); *see also Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992) (aiding and abetting "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act").  California law recognizes a narrow exception to the general rule requiring an affirmative act, but only where the party failing to act owes a fiduciary or statutory duty to the plaintiffs.  *See Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987); *Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*, No. SA CV 04-1234 AHS (CWX), 2006 WL 6935318, at *8 (C.D. Cal. June 20, 2006), *aff'd*, 270 F. App'x 570 (9th Cir. 2008) ("A defendant provides substantial assistance when it 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed.'" (citation omitted)).

The TCAC again fails to allege substantial assistance because the allegations focus on what Intuit failed to do.  *See*, *e.g.*, TCAC ¶¶ 228 (alleging that Intuit's "deficient" protocols, policies, and practices encouraged and enabled fraud); 229 (alleging there were measures Intuit

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

"could" have taken to prevent fraud); 233 (alleging Intuit "fail[ed]" to provide timely notice of fraud to Plaintiffs, purported class members and the relevant tax agencies); 240 (same); 237 (alleging Intuit maintained "deficient" authorization and security protocols); 238 (same). Plaintiffs attempt to sidestep the Court's prior order by pleading omissions in the affirmative. *See, e.g.,* TCAC ¶¶ 228-29 (alleging that Intuit had "affirmative policies and practices" that were "deficient"). But artful pleading does not circumvent the rule that aiding and abetting requires more than the mere failure to prevent a tort. *See* Order at 7:26-8:10.

Plaintiffs also try to plead around this rule by repeating the vague and unsubstantiated assertion that Intuit owes them a duty that is "fiduciary both in nature and spirit." TCAC ¶ 84. But this is unavailing, since Intuit, as a do-it-yourself tax software and IRS e-file provider is not a fiduciary to any taxpayers, whether customers or not. *See, e.g., Nwabueze v. AT&T Inc.*, No. C 09-1529 SI, 2011 WL 332473, at *20 (N.D. Cal. Jan. 29, 2011) (refusing to find fiduciary relationship where customers had provided confidential information to AT&T); *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221-22 (1983) (noting seller to buyer relationship is "not one ordinarily vested with fiduciary obligation").

Plaintiffs allege three ways in which Intuit purportedly rendered affirmative assistance to fraudsters: (1) Intuit transmitted tax returns that Plaintiffs allege were "suspicious"; (2) Intuit allowed customers to avoid upfront tax preparation fees by deducting such fees from their refund; and (3) Intuit allowed customers to deposit tax refunds directly onto a prepaid debit card rather than depositing the funds into a bank account or waiting to receive a paper check. TCAC ¶¶ 228, 231-32. The first so-called "affirmative act" does not constitute substantial assistance because Intuit is ***required by law*** to "[t]ransmit all electronic portions of returns within three calendar days of receipt." IRS Pub. 1345 at 34. And Plaintiffs have not alleged how an act that is a legal obligation can establish substantial assistance for purposes of an aiding and abetting fraud claim. As previously discussed, *supra* at Part V.A.1, allowing customers to deduct tax preparation fees from their refunds serves a legitimate business purpose by allowing customers to avoid an upfront and out-of-pocket payment that may present a hardship. Similarly, depositing tax refunds onto prepaid debit cards removes a significant obstacle for taxpayers who may be unbanked. *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    These policies make tax preparation services and refunds more accessible to all taxpayers, even

2    if, as Plaintiffs suggest, they are susceptible to potential fraud.  Such allegations do not constitute

3    substantial assistance because adoption of generally applicable policies in "ordinary business

4    transactions," without actual knowledge of the fraud, does not constitute "significant and active"

5    participation in the fraud.  *See In re Mortg. Fund '08 LLC*, 527 B.R. 351, 365 (N.D. Cal. 2015)

6    (dismissing aiding and abetting claim under California law); *Casey*, 127 Cal. App. 4th at 1145.

7          In any case, to the extent the TCAC can be construed as alleging affirmative conduct by

8    adopting policies that enabled and encouraged tax fraud, *see, e.g.*, ¶¶ 228-29, 231-32, Plaintiffs

9    have not pleaded that Intuit substantially assisted in fraud with the requisite particularity.  Fed R.

10   Civ. P. ¶ 9(b).  Plaintiffs have not identified a single third-party who opened the fraudulent

11   accounts or filed fraudulent returns in Plaintiffs' names, much less who stole their PII in the first

12   instance (or when or how).  Without specific allegations regarding ***who*** engaged in the underlying

13   fraud, Plaintiffs' aiding and abetting claim must fail.  *See E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,

14   795 F. Supp. 2d 874, 877 (D. Minn. 2011) (dismissing claim against bank that issued credit cards

15   allegedly used in fraudulent purchases where plaintiff failed to plead who had engaged in alleged

16   fraudulent conduct; general allegations that unspecified third parties engaged in fraud

17   insufficient); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (plaintiff must

18   plead "time, place and specific content of the false representations ***as well as the identities of the***

19   ***parties*** to the misrepresentations") (citation and quotations omitted; emphasis added).  The aiding

20   and abetting claim should be dismissed.

21   **B.      Plaintiff Brown Fails to State a Claim of Negligence (Count Two)**

22          To state a claim for negligence, Plaintiff Brown must plead that (1) Intuit owed him a duty

23   of care; (2) Intuit breached its duty; and (3) the breach proximately caused the resulting injury.

24   Order at 4:25-5:2 (citing *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996)).  Determining

25   whether a legal duty exists "is a 'question of law' which is simply an expression of the sum total

26   of the policy considerations that lead a court to conclude that a particular plaintiff is entitled to

27   protection."  Order at 5:2-5 (quoting *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003)).  In

28   determining whether to impose a legal duty, courts consider the factors in *Rowland v. Christian*,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

69 Cal. 2d 108 (1968), including:

> [F]oreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* at 113.  The first three factors "address the foreseeability of the relevan[t] injury" while the other four "take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." *Vasilenko v. Grace Family Church,* 3 Cal. 5th 1077, 1200 (2017).

The Court previously held that the alleged injury was ***not*** reasonably foreseeable because Brown was "not a TurboTax customer and never provided personal identifying information to Intuit," and because Brown failed to allege "'suspicious circumstances' or 'danger signals' that would have or should have placed Intuit on notice that a fraudster was opening a TurboTax account in his name."  Order at 5:21-6:17.  As such, policy considerations weighed against imposing a duty of care on Intuit to Brown.  The TCAC suffers from the same defects as the SCAC, including that Brown has failed to identify any "suspicious circumstances" about the account or filing such that Intuit should have known that it was created by a fraudster and policy reasons continue to militate against imposing an *ad hoc* duty of care that would interfere with the highly regulated tax administration system.

In short, "Brown has not alleged facts explaining how Intuit could have or should have known that the account(s) opened in Brown's name were fraudulent."  Order at 5:24-26.  Brown's negligence claim should therefore be dismissed.

### 1.     The Alleged Harm to Non-Customer Plaintiff Brown Was Not Reasonably Foreseeable

"[T]he chief element in determining whether [a] defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk." *Dillon v. Legg*, 68 Cal. 2d 728, 740 (1968); *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 434-35 (1976) ("The most important of these considerations in establishing duty is foreseeability.").  To determine duty, a court does not

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  decide if "a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular*

2  defendant's conduct" but rather evaluates more generally if "the category of negligent conduct at

3  issue is sufficiently likely to result in the kind of harm experienced." *Ballard v. Uribe*, 41 Cal. 3d

4  564, 572-73 n.6 (1986) (emphases in original).

5         As the Court previously held, there is no general duty to protect an individual from the

6  wrongful conduct of a third party. Order at 5:14-15 (citing *Tarasoff*, 17 Cal. 3d at 434-35).

7  Indeed, California courts generally refuse to impose a duty of care in the identity theft or fraud

8  context, finding the harm alleged is not reasonably foreseeable where there is no direct

9  relationship between the parties and no allegations that the defendant ignored objective indicia of

10 fraud. *See, e.g.*, *QDOS, Inc. v. Signature Fin., LLC*, No. B279475, 2017 WL 5793973, at *7 (Cal.

11 Ct. App. Nov. 29, 2017) (no duty for merchant to investigate whether check was fraudulent when

12 presented with a validly endorsed check made out to merchant, drawn from account of third

13 party); *Burns v. Neiman Marcus Grp., Inc.*, 173 Cal. App. 4th 479, 488-90 (2009) (no duty to

14 non-customer to inquire before accepting third-party checks where third party used non-

15 customer's checks to pay off credit card); *Casey*, 127 Cal. App. 4th at 1149 ("[A] bank owes no

16 duty to nondepositors to investigate or disclose suspicious activities on the part of an account

17 holder."); *Karen Kane, Inc. v. Bank of America*, 67 Cal. App. 4th 1192, 1199 (1998) (neither

18 defendant check cashing service nor defendant bank owed a duty of inquiry to a non-customer

19 with whom neither had a preexisting relationship, despite unconventional or unorthodox

20 endorsements on the allegedly forged checks). Courts in other jurisdictions have similarly

21 declined to impose a common law duty to protect non-customers' PII and prevent third-party

22 crimes as the harm is not reasonably foreseeable.[7]

23

24 [7] *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) ("As a general matter, '[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers.'" (citation omitted)); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir.

25 2002) ("[B]anks do not owe a duty of care to noncustomers even when the noncustomer is the person in whose name an account was fraudulently opened."); *Landale Signs & Neon, Ltd. v.*

26 *Runnion Equip. Co.*, No. 16-CV-7619, 2016 WL 7409916, at *2-3 (N.D. Ill. Dec. 22, 2016) (finding no common law duty to safeguard another's personal information and dismissing

27 negligence claim); *Willingham v. Global Payments, Inc.*, No. 1:12-cv-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (finding no duty of care owed to plaintiffs who sued

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Banking cases are particularly illustrative of this nationwide trend.  For example, in *Sun 'n Sand, Inc. v. United Cal. Bank*, Sun 'n Sand brought a negligence claim against defendant bank, who permitted an employee of Sun 'n Sand to deposit checks into the bank employee's personal account that were written by Sun 'n Sand and payable to defendant.  21 Cal. 3d 671, 679 (1978). The California Supreme Court imposed on the bank a "narrowly circumscribed" duty to non-customers *only* where the defendant was presented with objective indicia of fraud.  *Id*. at 695. The Court found the specific circumstances of the deposit were "sufficiently suspicious" as to give rise to a "reasonably foreseeable" risk of loss to the plaintiff, which triggered a duty of inquiry to verify the employee's authority to make deposits into her account.  *Id*. at 694-95.  The duty of inquiry was only triggered in these limited circumstances.  Later courts applying the logic of *Sun 'n Sand* have declined to find that a bank has a duty to a non-customer where there are no such "suspicious circumstances" or other objective indicia of fraud that would have placed the bank on notice, reiterating that the duty was narrow.  *See, e.g.*, *QDOS, Inc,* 2017 WL 5793973, at *6 (rejecting plaintiff's argument that *Sun 'n Sand* compelled the court to find a duty, noting the circumstances in Sun 'n Sand were "far more suspicious, and far less common," than the more routine transaction at issue, and that "*Sun 'n Sand* itself acknowledged that the duty it was recognizing was 'narrowly circumscribed'"); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479-82 (1996) (finding bank had no duty to non-customer investors to verify authorization of an individual to open a partnership account and noting that "absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer"); *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 545 (1998) (finding bank had no duty to non-customers because there was no "foreseeable risk of harm to [such] third parties," holding that "*Sun 'n Sand* and its progeny have held banks to be subject to a duty of care toward non-

---

electronic payment processing service following data breach where there was no direct relationship between plaintiff and defendant); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897-98 (N.D. Ill. 2012) (no common law duty to reasonably handle and safeguard patient medical information); *Smith v. Citibank (S.D.), N.A.*, No. 00–0587–CV–W–1–ECF, 2001 WL 34079057, at *2 (W.D. Mo. Oct. 3, 2001) (no duty to non-customer plaintiff where imposter applied for and received credit card in plaintiff's name); *Polzer v. TRW, Inc.*, 682 N.Y.S.2d 194, 195 (N.Y. App. Div. 1998) (dismissing negligence claim because bank had no special relationship with plaintiffs or with imposter who stole plaintiffs' PII and fraudulently obtained credit cards).

Fenwick & West LLP
Attorneys at Law
Mountain View

Motion To Dismiss TCAC; Memo. Of Points
And Authorities In Support Thereof

18

Master Docket No. 15-CV-01778-EJD

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  depositors only in narrow factual circumstances").

2      *Sun 'n Sand* and its progeny hold that the foreseeability of harm to non-customers requires

3  objective indicia of fraud.  Brown points to the fact that ████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████  TCAC ¶ 111 (emphasis

6  added).  But this allegation is not objective indicia of fraud and is insufficient to trigger a

7  "narrowly circumscribed" duty to protect a non-customer like Brown against fraud caused by

8  third parties who obtained his information from outside Intuit.  *See Sun 'n Sand, Inc*, 21 Cal. 3d at

9  695.

10      ***First***, the fact that ████████████████████████████████  does not

11  constitute objective indicia of fraud.  The ██████████████████████████████████

12  ████████████████████████████████████████[8]  Brown

13  does not – and cannot – ██████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  The allegations here stand in stark contrast to the clear and obvious red flags at issue in *Sun 'n*

16  *Sand*, where a rogue employee deposited checks into her personal account even though the checks

17  were expressly made payable to the defendant bank.  Taken to its logical conclusion, the duty

18  Brown seeks to impose here would require Intuit to ████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████

20  ████████████████████████████  TCAC ¶ 111.  Such a duty goes far beyond the

21  "narrowly circumscribed" duty announced by *Sun 'n Sand*.  21 Cal. 3d at 695.

22      ***Second***, even if a ████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████

24  ████████████████████████████████  TCAC ¶ 111.  However, the document

25  cited by Brown indicates that ██████████████████████████████████████████████

26

27  ―――――――――――――――――――

28  [8] *See* ████████████████████████████

1 ████████████████████████████████████████████████████████[9]

2 Darke Decl. ¶ 5, Ex. 1.  Thus, even if a ██████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████

5        **Third,** the third *Rowland* factor – the closeness of the connection between the defendant's

6 conduct and the injury suffered – militates against the foreseeability of harm due to the

7 intervening conduct of the IRS.  *See Vasilenko*, 3 Cal. 5th at 1200 (the third *Rowland* factor "is

8 strongly related to the question of foreseeability itself . . . but it also accounts for third-party or

9 other intervening conduct") (citations omitted).  Intuit, as a private company, is neither authorized

10 nor in any position to make any determinations as to which tax returns are fraudulent (as opposed

11 to merely suspicious).  This is particularly true where, as here, a fraudster files a tax return in the

12 name of a non-customer with whom Intuit has no prior relationship.  Indeed, Intuit is required to

13 transmit **all** tax returns to the IRS within three days of receipt, regardless of whether Intuit

14 believes a return is suspicious.  *See* IRS Pub. 1345 at 12, 43.

15        In contrast to Intuit, the IRS has access to a broad range of information regarding

16 legitimate taxpayers, including prior tax returns, W-2s, and other information provided by third

17 parties.  The IRS also has undisclosed fraud filters that it uses to screen for fraudulent returns.

18 Cole Decl. III ¶ 14, Ex. K.  The IRS then makes an **independent** determination, based on the

19 information available to it, as to whether a given return appears to be legitimate.  To the extent

20 Brown suffered damages in connection with SIRF, it is because **the IRS** made a determination

21 that the fraudulent tax return appeared to be sufficiently legitimate such that the return could not

22 simply be rejected offhand.  Thus, the third *Rowland* factor weighs against imposing a duty on

23 Intuit.

24        On these facts, Intuit (a do-it-yourself tax software provider) would have no reason to

25 believe this account or tax return was suspicious and no ability to determine if it was fraudulent.

26

27 [9] The Court may consider documents incorporated by reference in the Third Consolidated
Amended Complaint.  RJN at 6:11-28.

28

Fenwick & West LLP
Attorneys at Law
Mountain View

Because Brown has not identified anything in this particular transaction that "gave [Intuit] any inkling that [Brown] or anyone else was a potential victim . . . foreseeability becomes a very abstract and rarefied concern." *Software Design*, 49 Cal. App. 4th at 482.  As the harm alleged was not reasonably foreseeable to Intuit, the Court should decline to find a duty as urged by Brown.  To hold otherwise would depart from substantial authority—including this Court's prior grant of Intuit's motion to dismiss this very same claim in the SCAC—thus imposing on Intuit a duty to every single American taxpayer, and would "stretch the concept of foreseeability of harm in determining duty beyond recognition." *Burns*, 173 Cal. App. 4th at 489.

### 2.       Public Policy Militates Against Imposing Any Tort Duty on Intuit

Public policy also strongly militates against creating a new and ill-defined common law duty owed by Intuit to all taxpayers (including non-customers).  *See Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1072 (1992) (the existence of a duty "depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability").  "Because the consequences of a negligent act must be limited to avoid an intolerable burden on society, the determination of duty 'recognizes that policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk.'" *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999) (citations omitted).

Authorized IRS e-file providers, like Intuit, operate in a heavily regulated field and are subject to a host of tax and privacy statutes, rules and regulations.  For example, 26 U.S.C. § 7216(a) prohibits Intuit from "disclos[ing] any information furnished to [Intuit] for, or in connection with, the preparation of any [tax] return" or "us[ing] any such [taxpayer-provided] information for any purpose other than to prepare, or assist in preparing, any such return."  A violation of Section 7216 is subject to criminal penalties.  *Id.*  The statute is drafted so narrowly that the IRS had to issue guidance confirming that tax return preparers could, without violating Section 7216, (1) analyze taxpayer-provided information to identify suspicious or potentially fraudulent tax returns; and (2) provide information about such suspicious or potentially fraudulent tax returns to the IRS and to state tax authorities.  Cole Decl. III ¶ 20, Ex. Q.  Even if Intuit identifies a tax return as suspicious or potentially fraudulent, it may ***not*** block the return from

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   being transmitted to the IRS.  IRS Publication 1345, which sets forth the rules and requirements

2   for participating in IRS e-file, requires IRS e-file providers to "[t]ransmit *all* electronic portions

3   of returns within three calendar days of receipt."  IRS Pub. 1345 at 34 (emphasis added).  Intuit

4   may withhold a tax return from transmission to IRS only if there is an attempt to file a second

5   return using the same Taxpayer Identification Number or when an email address or software

6   package is used to originate more than five tax returns.  *Id.* at 12, 43.

7          These rules, while not exhaustive, are illustrative of a statutory and administrative tax

8   regime that embodies a number of legislative and regulatory decisions regarding the tradeoffs

9   between multiple, and at times competing, policy goals.  The Court should be particularly

10  skeptical of recognizing new common law duties where, as here, a judicially-created mandate

11  would interfere with and displace the careful weighing of interests by the legislative and

12  regulatory process.  *See, e.g.*, *QDOS, Inc.*, 2017 WL 5793973, at *7 ("[C]ourts have refused to

13  fashion new duties to deal with . . . problems such as identity theft . . . 'Given the scope of the

14  problem and the consequences to the community of imposing a noncontractual duty with resulting

15  liability for breach, a decision to shift the burden of loss from the actual victim to a third party

16  duped by the thief is one to be made, if at all, by the Legislature, not the judiciary.'" (quoting

17  *Rodriguez v. Bank Of The West.*, 162 Cal. App. 4th 454, 466 (2008)); *Gabriel v. Giant Eagle,*

18  *Inc.*, 124 F. Supp. 3d 550, 563 (W.D. Pa. 2015) (declining to impose duty to verify in part

19  because pharmacies are highly regulated and "courts are precluded from imposing duties in

20  addition to those which the legislative branch has chosen to set forth" (internal quotation marks

21  and citation omitted)); *Huggins v. Citibank, N.A.*, 355 S.C. 329, 334 (2003) (declining to impose

22  duty on banks and noting that the "legislative arena is better equipped to assess and address the

23  impact of credit card fraud on victims and financial institutions alike"); *Piscitelli v. Classic*

24  *Residence by Hyatt*, 408 N.J. Super. 83, 115 (2009) (declining to impose duty on employers in

25  light of existing identity theft statutes, and noting that "[t]he express provision of one method of

26  enforcing a substantive rule suggests that Congress intended to preclude others" (citations

27  omitted)).

28          Plaintiffs' focus on a limited set of *ad hoc* "duties" considered in isolation would

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

undermine the careful balance struck by the IRS and state tax administration regimes.  To take just one example, Plaintiffs suggest that Intuit should notify taxpayers about suspicious or potentially fraudulent tax returns filed in their name.  *See*, *e.g.*, TCAC ¶ 111, 124.  But fighting fraud is a complex problem, and mandating a "duty" to notify potential SIRF victims could lead to a number of unintended consequences.

***First*,** Intuit does not have a prior or existing relationship with non-customers like Brown and has no way to confirm, with complete certainty, accurate contact information for the legitimate taxpayer.[10]  Intuit cannot rely on contact information provided by suspected fraudsters, and requiring the Company to notify non-customers based on incomplete or inaccurate information could potentially risk disclosing sensitive taxpayer information to the wrong parties.

***Second*,** a notification requirement would be pointless without requiring the taxpayer to provide Intuit with proof of her identity.  Absent express instructions from an authenticated taxpayer, Intuit would still be legally obligated to transmit suspicious tax returns to the IRS within three days of receipt.  IRS Pub. 1345 at 34.  But requiring non-customers to provide proof of identity to Intuit could unintentionally ***promote*** fraud by encouraging taxpayers to provide sensitive information to companies with whom they have no prior relationship.  For example, the practice could potentially subject taxpayers to phishing schemes in which third parties imitate Intuit notifications to deceive taxpayers into providing sensitive information to fraudsters.[11]

***Third*,** to the extent that suspected fraudsters provide Intuit with contact information under the fraudster's own control (*e.g.*, an e-mail address created and controlled by the fraudster), a notification requirement could potentially alert fraudsters when Intuit detects a suspicious filing.  This could, in turn, potentially undermine efforts to detect fraudulent schemes by providing fraudsters with an opportunity to change their behavior as soon as they receive notification that Intuit has detected suspicious activity.  Notification could also potentially provide fraudsters with

---

[10] Plaintiffs' own allegations confirm that Intuit may not blindly rely on contact information provided by suspected fraudsters. *See* TCAC ¶ 111 (alleging that ███████████████████)

[11] *See*, *e.g.*, Cole Decl. III ¶ 21, Ex. R (noting an increase in alerts from TurboTax and other tax software companies, accompanied by a parallel increase in the number of phishing scams).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    an opportunity to test Intuit's ability to detect different types of fraud.

2         **Fourth,** even assuming Intuit could reasonably notify non-customers of potential SIRF,

3    the notification, authentication, and verification process could potentially delay transmission of

4    any false positives (*i.e.*, returns that appear suspicious but are confirmed to be legitimate) beyond

5    the three-day window mandated by IRS.  A delay in transmission could, in turn, potentially cause

6    hardship to taxpayers by delaying payment of any tax refunds.

7         These considerations underscore that the judicial process is not the proper forum to

8    consider and weigh the myriad policy considerations that may be implicated by any effort to

9    protect the tax administration regime, and taxpayers generally, from identity theft-related fraud.

10   And there is no need for the Court to do so.  The IRS has already announced joint efforts with

11   state authorities and private industry to implement initiatives for increased information sharing

12   and to put in place stronger protections to fight against the growing and evolving threat of SIRF.

13   Cole Decl. III ¶¶ 10-12, Exs. G-I.  Among other things, the IRS allows eligible taxpayers to apply

14   for Identity Protection PINs to prevent unauthorized use of their Social Security Number on

15   federal income tax returns.  Cole Decl. III ¶ 13, Ex. J.  IRS policy also strongly encourages e-

16   filing and the IRS has worked closely with e-file providers to ensure that e-filing is easy,

17   accessible, and efficient for taxpayers.  *Id*. at ¶ 12, Ex. I.  For this Court to now impose a common

18   law duty on Intuit to implement undefined security or authentication measures beyond those

19   already required by law would interfere with IRS policy decisions, including those to promote e-

20   filing and efficient processing of returns.  *Cf. Chazen*, 61 Cal. App. 4th at 539 (declining to

21   impose common law duty on banks in part because banking system operates under rules requiring

22   "banking transactions to be processed quickly and automatically and impos[ing] strict deadlines

23   for the payment or timely dishonor of checks").  Thus, the Court should leave the appropriate

24   balance to the federal and state legislatures and their respective taxing authorities, decline

25   Plaintiffs' invitation to engage in unwarranted judicial activism, and find no common law duty

26   owed by Intuit to all taxpayers.

27        In the context of identity theft, courts in California and elsewhere have found that costs

28   and other policy considerations far outweigh any benefits of imposing a common law duty.  *See,*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   *e.g.*, *Burns*, 173 Cal. App. 4th at 490 (declining to impose duty because the "scope of this

2   proposed—yet ill defined—duty of inquiry is boundless, and would impose a significant and

3   unwarranted burden on retail merchants to ascertain the veracity of a third party check any time

4   the instrument is proffered . . . which would far outweigh any resulting benefit in detecting the

5   isolated instance of embezzlement"); *Longenecker-Wells v. BeneCard Servs., Inc.*, No. 1:15-CV-

6   00422, 2015 WL 5576753, at *6-7 (M.D. Pa. Sept. 22, 2015) (declining to impose duty, noting

7   "in this era, where the threat of data breaches by unknown third parties is omnipresent, regardless

8   of what preventative measures are taken, the potential disparity between the degree of a

9   defendant's fault and the damages to be recovered could be immensely disproportionate, resulting

10  in drastic implications for defendants named in lawsuits as well as our economic system at

11  large"); *Piscitelli*, 408 N.J. Super. at 114 (declining to require employer to verify identities of all

12  prospective employees in part because "increas[ing] the cost . . . of hiring [during a known

13  economic downturn] may well be contrary to the public interest"); *Karen Kane*, 67 Cal. App. 4th

14  at 1199 (declining to impose duty on cash checking service or bank, as it would be a

15  "considerable burden" if the court "were to find that those institutions had to inquire into the

16  activities of both the makers and payees of checks regarding the possibility of internal fraud, and

17  the flow of commerce would be substantially impeded.").  Here, the policy considerations weigh

18  even more heavily against judicial imposition on Intuit of a common law duty to protect all

19  American taxpayers against SIRF.

20                                  **CONCLUSION**

21          Intuit requests the Court dismiss the Second Count (negligence) brought by Plaintiff

22  Brown and the Third Count (aiding and abetting fraud) brought by Plaintiffs Brown and Diaz

23  pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

24

25  Dated:   December 15, 2017                  FENWICK & WEST LLP

26                                              By: */s/ Rodger R. Cole*
                                                    Rodger R. Cole
27
                                                Attorneys for Defendant
28                                              INTUIT INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW