RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:      650.988.8500
Facsimile:      650.938.5200

ALEXIS I. CALOZA (CSB No. 278804)
acaloza@fenwick.com
HAILEY TETON (CSB No. 294262)
hteton@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:      415.875.2300
Facsimile:      415.281-1350

Attorneys for Defendant
INTUIT INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| IN RE INTUIT DATA LITIGATION | Master Docket No. 15-CV-01778-EJD |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **REPLY MEMORANDUM IN SUPPORT OF INTUIT'S MOTION TO DISMISS PLAINTIFFS' THIRD CONSOLIDATED AMENDED COMPLAINT**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date:          March 29, 2018<br>Time:          9:00 a.m.<br>Location:    Courtroom 4, 5th floor<br>Judge:        The Hon. Edward J. Davila |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

TABLE OF ABBREVIATIONS ......................................................................................... v

I.     INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 1

    A.    PLAINTIFFS DIAZ AND BROWN CANNOT PLEAD A
          CLAIM FOR AIDING AND ABETTING FRAUD............................. 1

        1.    Plaintiffs Have Not Alleged Actual Knowledge. ...................................... 2

        2.    Plaintiffs Have Not Pled that Intuit Substantially Assisted
            in the Fraud. ............................................................................................... 5

    B.    THE NEGLIGENCE CLAIM MUST BE DISMISSED AS TO
          NON-CUSTOMER PLAINTIFF BROWN. ....................................... 9

        1.    The Alleged Harm to Brown Was Not Reasonably Foreseeable. ............... 9

        2.    Policy Reasons Disfavor Imposing a Sweeping Duty on Intuit. ............... 12

III.    CONCLUSION ........................................................................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Alfus v. Pyramid Tech. Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) .................................................................5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................15

*Ballard v. Uribe*,
41 Cal. 3d 564 (1986) ............................................................................................10

*Bellecourt v. United States*,
784 F. Supp. 623 (D. Minn. 1992) ..........................................................................5

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) ....................................................................1, 4, 5, 6

*Collins v. Navistar*,
214 Cal. App. 4th 1486 (2013) ..............................................................................10

*Delgado v. Trax Bar & Grill*,
36 Cal. 4th 224 (2005) ..........................................................................................10

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
678 F.3d 659 (8th Cir. 2012) ....................................................................2, 3, 4, 8

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220 (4th Cir. 2002) ..................................................................................9

*Erlich v. Menezes*,
21 Cal. 4th 543 (1999) ..........................................................................................12

*Facebook, Inc. v. MaxBounty, Inc.*,
2011 WL 4346514 (N.D. Cal. Sept. 14, 2011) .....................................................6, 7

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) .................................................................................7

*Gabriel v. Giant Eagle, Inc.*,
2015 WL 4954578 (W.D. Pa. Aug. 19, 2015) .....................................................13, 14

*Huggins v. Citibank, N.A.*,
355 S.C. 329 (2003) ...........................................................................................13, 15

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) ...........................................................................10, 11

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF CONTENTS**
(continued)

Page(s)

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*,
  2006 WL 6935318 (C.D. Cal. June 20, 2006) .......................................................................8

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006).......................................................................................3, 6

*Ladd v. Cty. of San Mateo*,
  12 Cal. 4th 913 (1996) ..................................................................................................12

*Longenecker-Wells v. BeneCard Servs., Inc.*,
  2015 WL 5576753 (M.D. Pa. Sept. 22, 2015) ...............................................................9

*Luce v. State Title Agency, Inc.*,
  950 P.2d 159 (Ariz. Ct. App. 1997) .............................................................................15

*Marcelos v. Dominguez*,
  2008 WL 2788173 (N.D. Cal. July 18, 2008) ................................................................8

*O'Hara v. W. Seven Trees Corp.*,
  75 Cal. App. 3d 798 (1977)...........................................................................................10

*Pamela L. v. Farmer*,
  112 Cal. App. 3d 206 (1980)..........................................................................................10

*Polzer v. TRW, Inc.*,
  682 N.Y.S.2d 194 (N.Y. App. Div. 1998) ......................................................................9

*QDOS, Inc. v. Signature Fin., LLC*,
  2017 WL 5793973 (Cal. Ct. App. Nov. 29, 2017)..................................................13, 15

*Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*,
  88 Cal. App. 4th 595 (2001) ...................................................................................10, 11

*Sand, Inc. v. United Cal. Bank*,
  21 Cal. 3d 671 (1978) .............................................................................................10, 11

*Saunders v. Super. Ct.*,
  27 Cal. App. 4th 832 (1994) ...........................................................................................2

*Seeley v. Seymour*,
  190 Cal. App. 3d 844 (1987)..........................................................................................15

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
  49 Cal. App. 4th 472 (1996) ...................................................................................11, 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS
### (continued)

Page(s)

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)...................................................................5, 8

*Tarasoff v. Regents of Univ. of Cal.*,
   17 Cal. 3d 425 (1976) ...............................................................................9

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016).....................................................................8

*Vasilenko v. Grace Family Church*,
   3 Cal. 5th 1077, 1085 (2017) ...................................................................12

*Willingham v. Global Payments, Inc.*,
   2013 WL 440702 (N.D. Ga. Feb. 5, 2013) .................................................9

**STATUTES AND RULES**

26 U.S.C. § 7216(a) ...................................................................................14

Federal Rule of Civil Procedure 9(b) ...................................................1, 6, 8

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Brown | Plaintiff Richard Brown, a resident of Pennsylvania |
| Cole Decl. III | Declaration of Rodger R. Cole in Support of Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed Dec. 15, 2017 (Dkt. No. 140-1) |
| Darke Declaration | Declaration of Jessica Darke in Support of Motion to Dismiss Third Consolidated Amended Complaint Pursuant to Fed. Rule of Civil Procedure 12(b)(6), filed Dec. 15, 2017 (Dkt. No. 140-20) |
| Diaz | Plaintiff Christine Diaz, a resident of Ohio |
| Intuit | Defendant Intuit Inc. |
| IRS | Internal Revenue Service |
| IRS Pub. 1345 | IRS Publication 1345, "Handbook for Authorized IRS e-file Providers of Individual Income Tax Returns," attached as Exhibit E to the Cole Decl. III |
| MTD TCAC | Intuit's Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed Dec. 15, 2017 (Dkt. No. 140) |
| Opposition or Opp. | Plaintiffs' Memorandum in Opposition to Motion to Dismiss Third Consolidated Amended Complaint, filed Jan. 17, 2018 (Dkt. No. 146) |
| Order | Order Granting in Part and Denying in Part Motion to Dismiss, filed Sept. 29, 2017 (Dkt. No. 124) |
| PII | Personally identifiable information |
| Plaintiffs | Brown, Diaz, Carol Knoch, James Lebinski,  David Stock, and Marilyn Williams |
| RJN | Request for Judicial Notice in Support of Defendant Intuit Inc.'s Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint, filed Feb. 5, 2016 (Dkt. No. 141) |
| RJN Reply | Reply Memorandum in Support of Intuit's Request for Judicial Notice in Support of Motion to Dismiss Plaintiffs' Third Consolidated Amended Complaint |
| TCAC | Third Consolidated Amended Complaint, filed Nov. 17, 2017 (Dkt. 131) |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# I.  INTRODUCTION

Plaintiffs have tried *three* times to plead cognizable claims against Intuit for aiding and abetting fraud and for negligence (as to non-customer Brown), and each time Plaintiffs have failed.  In their Opposition, Plaintiffs lead by noting that Intuit is not challenging the Section 17200 or unjust enrichment claims in the TCAC, but this is irrelevant to Plaintiffs' continued failure to adequately plead the claims that Intuit is challenging in this Motion.  Plaintiffs accuse Intuit of (1) aiding and abetting fraud on the basis that fraudsters filed tax refunds using PII stolen from unidentified third parties; and (2) negligence based on a proposed duty that would impose liability if Intuit fails in any way to protect all American taxpayers from criminals who attempt to defraud the taxing authorities through TurboTax.  But the law is clear that if Plaintiffs want to proceed with their claims, they need to allege sufficient facts stating such claims.

The handful of new facts in the TCAC do not overcome the deficiencies identified by the Court in its Order.  And Plaintiffs cannot use discovery to support claims that are deficiently pled.  Brown and Diaz's aiding-and-abetting claim fails because Plaintiffs cannot plead that Intuit had actual knowledge or substantially assisted a fraud.  Brown's negligence claim fails because Intuit owes no duty to non-customers, and Brown has not otherwise identified any indicia of fraud that would have or should have put Intuit on notice of foreseeable harm.  In their Opposition, Plaintiffs simply recycle arguments already rejected by the Court, and refuse to respond substantively to controlling case law and the policy reasons that also weigh heavily against creating and imposing upon Intuit new and unlimited common law duties to all American taxpayers.  For all of these reasons and as set forth in detail below, Intuit respectfully requests that this Court grant its motion.

# II.  ARGUMENT

## A.   Plaintiffs Diaz and Brown Cannot Plead a Claim for Aiding and Abetting Fraud.

Plaintiffs Diaz and Brown's aiding and abetting fraud claim fails because they have pled neither actual knowledge nor substantial assistance, including with the particularity required under Rule 9(b).  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### 1.    Plaintiffs Have Not Alleged Actual Knowledge.

Plaintiffs concede that this Court's Order requires them to plead "more than Intuit's knowledge of the massive ongoing fraud—i.e., that Plaintiffs' actual knowledge allegations must include allegations of knowledge pertaining to ***the returns filed in their names specifically***." Opp. at 17:15-18 (citing Order at 7-8) (emphasis added).  Nevertheless, Plaintiffs spend much of their brief arguing that it is enough to allege awareness of the existence of fraud generally, and that they need not allege Intuit's actual knowledge that the tax returns "filed in [Plaintiffs'] names specifically" were, in fact, fraudulent.  *See generally id.* at Opp. at 15:20-17:12 (purporting to distinguish case law requiring allegations of actual knowledge about the underlying fraud).  But an aiding-and-abetting claim requires knowledge that "the [primary tortfeasor's] conduct constitutes a breach of duty," Order at 7:15 (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 846 (1994)), and this Court should once again reject Plaintiffs' failed attempt to plead an aiding-and-abetting claim without alleging that Intuit actually knew that it was transmitting fraudulent tax returns in Plaintiffs' names.

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659 (8th Cir. 2012) is instructive and should guide the Court here.  Opp. at 15:20-16:1.  In *E-Shops*, an online merchant accused a bank of aiding and abetting unknown third parties who fraudulently ordered merchandise from the plaintiff's website using credit cards issued to the bank's customers.  As here, the plaintiff attempted to allege actual knowledge by identifying a general pattern of activity supposedly indicative of fraud.  *See id.* at 664 (plaintiff alleged "U.S. Bank knows when fraudulent orders come through the system, because the cardholder typically has processed a change of address shortly before placing a large volume of orders on several different websites").  The Court rejected the plaintiff's argument because the pattern of allegedly fraudulent activity was also consistent with legitimate customer activity:  "The single suggestion that a change of address after a number of large orders signals identity theft is attenuated when, in the ordinary course of banking business, cardholders change their address for various unspecified reasons."  *Id.*  The Court went on to dismiss the aiding-and-abetting claim because there were no factual allegations "that U.S. Bank knew the information it processed from the cardholders were false at the time of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

receipt." *Id.*

Plaintiffs rely on *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) to argue that they need only plead "defendant's knowledge of the general fraudulent scheme," Opp. at 17:4-5, but this misconstrues the facts and holding of that case.  In *First Alliance Mortg.*, the primary tortfeasor was a mortgage company engaged in a series of fraudulent marketing practices.  471 F.3d at 985.  The aiding and abetting defendant was a large financial firm that provided the financing for the mortgage company to issue and securitize loans.  *Id.* at 986-87. Critically in that case, defendant's own investigation and internal reports noted that the specific mortgage company at issue was accused of fraudulent and unethical business practices.  *Id.* Under those circumstances – where the bank was alleged to be aware of specific misconduct by a single mortgage broker based on detailed reports it received regarding that specific company's fraudulent practices, rather than mortgage fraud generally – the court upheld the jury's finding that the bank possessed actual knowledge of the fraud.  *Id.* at 994.  As a result, *First Alliance Mortg.* is simply inapposite where, as here, the fraud is committed by many unknown third parties who are only revealed to be potentially  fraudsters *after* Intuit complies with its statutory obligations to transmit the tax return and the IRS has examined the return for potential fraud.

Applying the proper standard, which requires "allegations of knowledge pertaining to the returns filed in [Plaintiffs'] names specifically," Opp. at 17:15-18 (citing Order at 7-8), the TCAC once again fails to state a claim.  With respect to Diaz, Plaintiffs purport to allege actual knowledge of fraud because ███████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ Opp. at 17:28-18:5; TCAC ¶¶ 123-24. But Plaintiffs' opposition fails to address Intuit's argument that ████████████████ █████████████████████ MTD TCAC at 10:13-28.  ████████████████ ███████████████████████████████████ *See, e.g.*, Cole Decl. III ¶ 15, Ex. L (IRS guidance noting that a married taxpayer "may want to prepare their taxes both ways [*i.e.*, as married filing jointly and married filing separately] before they choose").  ██████████ █████████████████████████████████████████████

1  █████████████████████████  *See E-Shops*, 678 F.3d at 664 ("The single suggestion that a change of

2  address … signals identity theft is attenuated when, in the ordinary course of banking business,

3  cardholders change their address for various unspecified reasons").  Neither of these newly

4  alleged facts show that Intuit had reason to suspect any of the tax returns filed in Diaz's name

5  were fraudulent, let alone that Intuit had actual knowledge that the returns were fraudulent.

6      With respect to Plaintiff Brown, the TCAC purports to allege actual knowledge of fraud

7  based on the fact that ███████████████████████████████████████████████████

8  █████████████████████████  TCAC ¶ 111; Opp. at 17:22-24.  But an aiding-and-

9  abetting claim requires actual knowledge of fraud, not just a suspicion of fraud, *Casey*, 127 Cal.

10  App. 4th at 1152, and Plaintiffs fail to explain how knowledge of a "risk" equates to a certainty of

11  fraud.  For example, Plaintiffs do not allege that ████████████████████████████

12  ██████████████████████████████████████████████████████

13  █████████████████████████████████████████████████

14  ████████████████████████████  Absent such additional allegations, Plaintiffs

15  have pled only that Intuit was aware of a risk (*i.e.*, a possible suspicion) of fraud, but they have

16  not pled knowledge.  *See E-Shops*, 678 F.3d at 664 (dismissing aiding-and-abetting claim

17  where allegations of actual knowledge were premised on pattern of activity consistent with both

18  legitimate and fraudulent activity); *see also Casey*, 127 Cal. App. 4th at 1146-52 ("[A]iding and

19  abetting … necessarily requires a defendant to reach a ***conscious decision to participate in***

20  ***tortious activity*** for the purpose of assisting another in performing a wrongful act") (citation

21  omitted).

22      Even if the TCAC did allege actual knowledge of fraud – and it does not – Plaintiffs fail

23  to allege that Intuit acted with such knowledge at the time it transmitted the fraudulent return.

24  ██████████████████████████████████████████  *see, e.g.*, Opp. at 17:21-22, but

25  the TCAC fails to allege that Intuit had any knowledge that the account was fraudulent, or that

26  anyone had flagged the account as suspicious, at the time Intuit performed its statutory obligation

27  to transmit the tax return to the IRS.  TCAC ¶¶ 110-11.  Indeed, ████████████████████

28  ████████████████████████  evident on the face of the document quoted in the TCAC, which

Fenwick & West LLP
Attorneys at Law
Mountain View

1    this Court may consider under the incorporation by reference doctrine.[1]  Critically, ███

2    ██████████████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████  RJN at 1:9-14, 4:17-

4    5:12; Darke Declaration, Ex. 1; RJN Reply at 2:3-3:21.  The document quoted by Plaintiffs

5    clearly indicates that ████████████████████████████████████████████████

6    ████    *See* Darke Declaration, Ex. 1 at INTUIT00052010.  In contrast, ████████████

7    ██████████████████████████████████████████████████████████

8    █████████████████████    *Id.*

9        Plaintiffs argue that they should be permitted to take discovery in support of their claim,

10   Opp. at 18:19-21, but Plaintiffs should not be permitted to use discovery as a fishing expedition to

11   search for facts to support a deficient claim.  *See Bellecourt v. United States*, 784 F. Supp. 623,

12   633 (D. Minn. 1992) ("Plaintiff's assertion that he will fill in the details of his complaint with

13   additional discovery is inappropriate and insufficient to withstand defendant's motion.").

14       Plaintiffs have had three opportunities to plead a cognizable claim but still cannot plead

15   that Intuit had actual knowledge that "the returns filed in [Plaintiffs'] names specifically" were

16   fraudulent.  Order at 7:19-21.  The aiding-and-abetting claim should be dismissed with prejudice.

17       **2.       Plaintiffs Have Not Pled that Intuit Substantially Assisted in the Fraud.**

18       An aiding-and-abetting claim also requires Plaintiffs to plead that Intuit provided

19   "substantial assistance" to the alleged fraud.  Order at 7:14-8:11; *Casey*, 127 Cal. App. 4th at

20   1145.  Substantial assistance "requires a 'significant and active, as well as a knowing

21   participation in the wrong.'"  Order at 7:24-26 (quoting *Alfus v. Pyramid Tech. Corp.*, 745 F.

22   Supp. 1511, 1520 (N.D. Cal. 1990)).  Plaintiffs have failed to plead that Intuit provided

23   substantial assistance to the alleged fraud because (1) Plaintiffs have not tied any "significant and

24   active" act by Intuit to the fraudulent returns filed in Plaintiffs' names, (2) a failure to act cannot

25

26   [1] Documents incorporated by reference in the complaint may properly be considered on a motion
     to dismiss.  *See* RJN at 4:17-5:12; RJN Reply at 2:3-3:21; *Swartz v. KPMG LLP*, 476 F.3d 756,
27   763 (9th Cir. 2007) (a plaintiff cannot survive a Rule 12(b)(6) motion by referencing a writing in
     a complaint but deliberately omitting the documents upon which claims are based).  Plaintiffs'
28   argument to the contrary fails to cite any authority supporting their position.  *See* Opp. at 9:8-23.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

constitute substantial assistance as a matter of law, and (3) in any event, Plaintiffs fail to plead substantial assistance with the particularity required by Rule 9(b).

**First**, the aiding-and-abetting claim fails because Plaintiffs have not identified a "significant and active" act specifically connected to the fraudulent returns filed in Plaintiffs' names.  As a preliminary matter, Plaintiffs do not even attempt to explain how the ***automatic and obligatory*** transmission of a tax return to the IRS and relevant state agencies constitutes a "significant and active" act.  *See* Opp. at 19:15-21:10; *see also Alfus*, 745 F. Supp. at 1520; *Casey*, 127 Cal. App. 4th at 1146-52 (aiding and abetting requires a "conscious decision to participate").  Indeed, it is unclear how transmitting tax returns – which Intuit is ***legally required*** to do, *see* MTD TCAC at 5:24-6:6 – could ever be a "significant and active" act, let alone reflect a "conscious decision to participate."  With respect to Diaz, Plaintiffs allege that Intuit substantially assisted the fraud ████████████████████████████████████████ ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ TCAC ¶ 124; Opp. at 20:17-18.  Plaintiffs characterize ██████████████████████████ ███████████████████████████████████████, Opp. at 20:17-18, but Plaintiffs again fail to cite relevant authority, or otherwise explain, ████████████████████████ ████████████████████████████████████ could possibly constitute a "significant and active" act.  *Alfus*, 745 F. Supp. at 1520; *Casey*, 127 Cal. App. 4th at 1146-52.

Plaintiffs also attempt to allege substantial assistance by pointing to Intuit's adoption of policies that may, in some cases, be exploited by fraudsters.  Opp. at 19:20-20:8 (Intuit allegedly provided "a mechanism for non-traceable refunds," modified its fraud prevention technology, "allowed the re-use of the same Social Security number across numerous TurboTax accounts," and permitted filers to file unlinked state tax returns).  Plaintiffs purport to cite *Facebook, Inc. v. MaxBounty, Inc.*, 2011 WL 4346514 (N.D. Cal. Sept. 14, 2011) for the proposition that the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

adoption of generally-applicable policies can constitute a "significant and active" act for purposes

of substantial assistance, *see* Opp. at 20:9-14, but the case does not support Plaintiffs' argument.

In *Facebook*, the purported aiding-and-abetting defendant specifically signed off on and approved

of the primary tortfeasor's fraudulent techniques and procedures, even going as far as to provide

technical assistance to implement the techniques. *Id.* at *4. Plaintiffs have not alleged and could

never allege any such facts here. Moreover, even if the adoption of generally-applicable policies

could constitute substantial assistance, Plaintiffs plainly cannot meet the substantial assistance

standard without ***also*** alleging how the policies enabled or facilitated the specific fraudulent

returns filed in Plaintiffs' names.[2] *See* Order at 7. Not only does the TCAC fail to allege such

links, it actually alleges that some of the policies Plaintiffs take issue with ***could not have caused***

Plaintiffs' injuries. *See, e.g.*, TCAC ¶¶ 51-52 (describing Intuit's general policy of permitting

filers to file state tax returns without filing a corresponding federal return); *id.* at ¶ 124 (alleging

that ███████████████████████████████████████████); Darke Decl., Ex. 1 at

INTUIT00052010 (████████████████████).

     ***Second***, the TCAC fails to state a claim because, as this Court previously recognized,

"failure to act does not constitute substantial assistance for purposes of aiding and abetting

liability." Order at 8:4-5; *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) ("Mere

knowledge that a tort is being committed and the failure to prevent it does not constitute aiding

and abetting."). With respect to Brown, Plaintiffs allege only that Intuit ████████████████

████████████████████████████ Opp. at 20:15-17; TCAC ¶¶ 111-12; *see also* Part

II.A.1, *supra*. Plaintiffs also try once again to repackage Intuit's alleged failure to act as

affirmative acts by pleading omissions in the affirmative. *See, e.g.*, Opp. at 19:26-28 ("Intuit

made the deliberate choice not to use [certain software]); *id.* at 20:2-3 (Intuit "eliminated"

(*i.e.*, failed to implement) multi-factor authentication)). These allegations cannot circumvent the

rule that aiding and abetting requires more than the mere failure to prevent a tort. Order at 8:4-7.

---

[2] Plaintiffs would also need to allege actual knowledge that Intuit's policies were substantially
assisting third parties to file fraudulent returns "in [Plaintiffs'] names specifically." *See* Part
II.A.1, *supra*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1      ***Third***, Plaintiffs' aiding-and-abetting claims fail because their allegations do not satisfy

2   Rule 9(b)'s particularity requirements.  Even the cases cited by Plaintiffs acknowledge that Rule

3   9(b) requires a plaintiff to specifically allege the link between Intuit and the specific third parties

4   who filed fraudulent returns in Plaintiffs' names.  *See, e.g.*, *United States v. United Healthcare*

5   *Ins. Co.*, 848 F.3d 1161, 1181-82 (9th Cir. 2016) (dismissing certain fraud claims because

6   allegations "provide[d] no details linking these defendants to the scheme" even if they provided

7   defendants sufficient notice to defend against the charge) (internal quotations and citations

8   omitted)); *see also Marcelos v. Dominguez*, 2008 WL 2788173, at *5, 8-9 (N.D. Cal. July 18,

9   2008) (finding Rule 9(b) satisfied only where plaintiff identified in detail the party that

10  affirmatively and actively participated in an allegedly fraudulent transaction); Opp. at 21:18-22:6.

11  Without detailed allegations of the alleged misconduct, including allegations of who engaged in

12  the underlying fraud, Plaintiffs; own cases make clear that Plaintiffs cannot plead substantial

13  assistance with the requisite particularity.  *Swartz*, 476 F.3d at 764 (plaintiff must plead "time,

14  place, and specific content of the false representations as well as the identities of the parties to the

15  misrepresentations" (citation and quotation omitted)).

16      Plaintiffs argue that the fraudsters' identity might never be available because Intuit's own

17  policies impeded identifying them.  Opp. at 21:12-17.  But even these protestations constitute an

18  admission that Plaintiffs cannot carry the burden of pleading the fraudsters' identities, and

19  underscore one of the many deficiencies of this claim.  *See Impac Warehouse Lending Grp. v.*

20  *Credit Suisse First Boston Corp.*, 2006 WL 6935318, at *8-9 (C.D. Cal. June 20, 2006)

21  (allegations that defendants' actions provided a "ready, willing, and eager market" for fraud could

22  "at best, be characterized as a passive endorsement of GMA's fraud" insufficient for substantial

23  assistance); *see also E-Shops*, 795 F. Supp. 2d at 877 (dismissing claim against bank where

24  plaintiff failed to plead who had engaged in alleged fraudulent conduct; general allegations that

25  unspecified third parties engaged in fraud were insufficient).

26      Diaz and Brown have failed to properly plead their aiding and abetting fraud claim, even

27  after three attempts.  Their claim should therefore be dismissed with prejudice.

28

Fenwick & West LLP
Attorneys at Law
Mountain View

**B.**     **The Negligence Claim Must Be Dismissed as to Non-Customer Plaintiff Brown.**

Intuit owes no duty to non-customer Plaintiff Brown, and Plaintiffs have failed to identify any objective indicia of fraud that would have otherwise triggered a duty of inquiry on Intuit.

**1.**     **The Alleged Harm to Brown Was Not Reasonably Foreseeable.**

As this Court previously held, "[i]n general, there is no duty to protect against the conduct of another in the absence of a special relationship." Order at 5:14-15 (citing *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 434-35 (1976)). The Court went on to dismiss Brown's negligence claim on lack of foreseeability grounds because Brown "was not a TurboTax customer and never provided personal identifying information to Intuit," and because Brown failed to allege "suspicious circumstances" or "danger signals" which "would have or should have placed Intuit on notice that a fraudster was opening a TurboTax account in his name." Order at 5:21-26.

The Court's prior order is consistent with the long line of banking and identity theft cases declining to impose a common law duty to protect non-customers' PII and prevent crimes by unrelated third-parties absent "suspicious circumstances" or "danger signals." Order at 6:15-17; MTD TCAC at 18:1-9 (gathering cases). For example, in *Longenecker-Wells v. BeneCard Servs., Inc.*, 2015 WL 5576753 (M.D. Pa. Sept. 22, 2015), the court declined to find a duty in the identity theft context, noting that the threat of data breaches is "omnipresent" and that regardless of what preventative measures are taken, the potential disparity between the degree of defendant's fault and damages could be immensely disproportionate if the court imposed a duty. *Id.* at *6-7; *see also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002) (banks owe no duty to noncustomers "even when the noncustomer is the person in whose name an account was fraudulently opened."); *Willingham v. Global Payments, Inc.*, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (payment service owed no duty where no direct relationship exists); *Polzer v. TRW, Inc.*, 682 N.Y.S.2d 194, 195 (N.Y. App. Div. 1998) (dismissing negligence claim because bank had no relationship with plaintiffs or with imposter who stole plaintiffs' PII).

Plaintiffs try to avoid these cases by relegating them to a footnote, and arguing they involve only "isolated conduct by isolated bad actors." Opp. at 10 n.2; *see also id.* at 11 n.3. The banking and identity theft cases are instructive. Fraudulent checks and transactions are common

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    and well-known risks for banks and other financial institutions, similar to the common and well-

2    known risk of tax fraud.  It is also unclear how Plaintiffs can purport to distinguish the cases by

3    saying they "do not complain merely of 'some generally omnipresent risk of harm,'" when the

4    very same sentence (and the opposition more generally) goes on to argue "SIRF and ATO fraud

5    through TurboTax affect[s] millions of innocent taxpayers."  *Id.* at 11 n.3; *id.* at 5:18-7:6

6    (describing Intuit's awareness of fraud).  Similarly, the "isolated" bad actors at issue in the

7    banking and identity theft cases are directly analogous to the unidentified third party who filed a

8    fraudulent tax return in Brown's name.

9        Plaintiffs also attempt to sidestep the banking and identity theft cases by citing a series of

10   cases discussing duty more generally, including the duty to protect others from reasonably

11   foreseeable physical or personal injuries.[3]  Opp. at 6:22-7:6.  By contrast, the harms alleged here

12   are purely economic in nature, and "[r]ecognition of a duty to manage business affairs so as to

13   prevent purely economic loss to third parties in their financial transactions is the exception, not

14   the rule, in negligence law."  *Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th

15   595, 605 (2001); *see also id.* (California courts "are reluctant to impose duties to prevent

16   economic harm to third parties because '[a]s a matter of economic and social policy, third parties

17   should be encouraged to rely on their own prudence, diligence, and contracting power, as well as

18   other informational tools'").  This Court already rejected Plaintiffs' argument that Intuit owes a

19   duty to non-customers based on the omnipresent risks associated with tax fraud, and it should

20   continue to do so here.

21       Applying the legal standard set forth in *Sun 'n Sand, Inc. v. United Cal. Bank*, 21 Cal. 3d

22

23   _____
     [3] *See* Opp. at 6:12-7:6 (collecting cases, many of which involve a heightened or pre-existing duty).  *See, e.g.*, *Ileto v. Glock Inc.*, 349 F.3d 1191, 1204 (9th Cir. 2003) (gun manufacturers and distributors had duty not to create illegal secondary market); *Collins v. Navistar*, 214 Cal. App. 4th 1486 (2013) (finding windshield manufacturer has heightened duty to address common road hazards in strict products liability claim); *Pamela L. v. Farmer*, 112 Cal. App. 3d 206 (1980) (wife had duty not to put victims at risk where she knew of husband's prior history of molesting children); *O'Hara v. W. Seven Trees Corp.*, 75 Cal. App. 3d 798, 803 (1977) (landlord has a duty to protect in common areas); *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 245 (2005) (business has duty to maintain its premises); *Ballard v. Uribe*, 41 Cal. 3d 564 (1986) (discussing duty owed to bailor of property and vehicle owners).

28

1    671 (1978), and its progeny, and this Court's own prior Order, the TCAC fails to allege

2    suspicious circumstances giving rise to a legal duty to non-customer Brown. ███████

3    ███████████████████████████████████████████████ Opp. at 8:7-17, does

4    not constitute objective indicia of fraud.  As noted in Part II.A.1 *supra*, Plaintiffs do not allege

5    that ███████████████████████████████████████████████████

6    ████████████████████████████████[4]  The allegation here stands in stark

7    contrast to the clear and obvious red flags at issue in *Sun 'n Sand*, where a rogue employee

8    deposited checks into her personal account even though the checks were expressly made payable

9    to the defendant bank.  *Sun 'n Sand*, 21 Cal. 3d at 695.  Simply put, the allegation of ██████

10   ████████ on its own, is not a strong enough "danger signal" to trigger the "narrowly

11   circumscribed duty" to protect non-customers like Brown.  *Id*.  And not only is the █████████

12   ████████████████████████████████████████████████████

13   ███████████████████  *See* Darke Declaration, Ex. 1 at INTUIT00052010; *see*

14   *also* Part II.A.1, *supra*; Reply RJN at 2:3-3:21.  Thus, Plaintiffs have failed to allege that Intuit

15   was subject to any duty to protect non-customer Brown as of the time that Intuit transmitted the

16   fraudulent return.[5]

17          Plaintiffs also fail to address Intuit's argument that the third *Rowland* factor (closeness of

18   the connection between defendant's conduct and injury suffered) cuts against the foreseeability of

19   harm.  MTD TCAC at 20:5-23.  Intuit is neither authorized nor in any position to make any

---

20   [4] *Ileto* does not excuse Plaintiffs' failure to ████████████████████████████████

21   █████████████████████████████████████  In *Ileto*, the negligence claim
     was based on detailed allegations regarding how a manufacturer that produced the gun used in a
22   shooting negligently created a secondary market for guns.  349 F.3d at 1201-02.  The case is
     distinguishable because it involved **physical**, rather than **economic**, harm.  *See Ratcliff Architects*,
23   88 Cal. App. 4th at 605 (California courts "are reluctant to impose duties to prevent economic
     harm to third parties").

24   [5] Plaintiffs argue that it is premature to consider whether the TCAC alleges objective indicia of
     fraud at the pleading stage, and that discovery will shed light on the issue.  Opp. at 8:1-3, 7-10.
25   However, this argument is at odds with, and directly undermined by, the very cases cited by
     Plaintiffs.  *Sun 'n Sand* and *Software Design and Application* each addressed objective indicia of
26   fraud at the pleading stage.  Opp. at 10:2-13; *Sun 'n Sand*, 21 Cal. 3d at 695; *Software Design &*
     *Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479-80 (1996).  Additionally,
27   Plaintiffs cannot use discovery to supplement an otherwise deficient claim.  Plaintiffs were
     required allege the existence of "suspicious circumstances" or "danger signals" at the time Intuit
28   transmitted the tax returns filed in Brown's name.  They have failed to do so.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   determinations as to which returns are fraudulent.  This is even more true where, as here, a

2   fraudster files a tax return in the name of a non-customer with whom Intuit has no prior

3   relationship and thus very little information about the taxpayer against which to compare the

4   filing.  The IRS, on the other hand, has access to a broad range of taxpayer information, and is the

5   only entity authorized to determine whether a given return appears to be legitimate.  MTD TCAC

6   at 20:15-19.  The IRS apparently made a determination that the fraudulent return appeared

7   sufficiently legitimate.  Thus, if Brown suffered any harm in connection with SIRF, it is because

8   of the intervening conduct of the IRS, not because of any actions (or inactions) by Intuit.

9   Plaintiffs simply recite their conclusory allegations that Brown's harms are tied to tax identity

10   fraud, which they allege Intuit enabled.  Opp. at 9:24-10:1.

11          Because the alleged harm was *not* reasonably foreseeable, Intuit owed no duty to non-

12   customer Brown, and the Court should dismiss his negligence claim.[6]

13          **2.       Policy Reasons Disfavor Imposing a Sweeping Duty on Intuit.**

14          The negligence claim also fails because policy reasons disfavor the creation of a new

15   common law duty here.[7]  *See Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999) ("Because the

16   consequences of a negligent act must be limited to avoid an intolerable burden on society, the

17   determination of duty 'recognizes that policy considerations may dictate a cause of action should

18   not be sanctioned no matter how foreseeable the risk.'") (internal citation omitted).  In particular,

19   public policy reasons (including those addressed in the *Rowland* factors) continue to militate

20   _____

21   [6] Plaintiffs plainly cannot state a negligence claim based on Intuit's alleged ████████
     ████████████████████████  Opp. at 8:7-14; MTD TCAC at 18:1-

22   20:23.  After Intuit transmits the completed returns to the IRS (which it is legally obligated to do),
     the purported harm has already occurred.  Plaintiffs have not (and cannot) allege how ██████

23   ████████████████████████  Order at 4:25-5:2 (alleged breach must proximately
     cause the injury) (citing *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996))

24   [7] Plaintiffs claim that Intuit's policy argument is "unsupported and cannot justify dismissal at the
     pleading state," suggesting that the Court cannot consider policy reasons simply because

25   Plaintiffs dispute Intuit's assertions.  Opp. at 12:19-21.  But Plaintiffs do not cite any case law
     stating that a court cannot consider policy issues on a motion to dismiss, particularly where, as

26   here, the *Rowland* factors take into account multiple policy considerations.  *Vasilenko v. Grace
     Family Church*, 3 Cal. 5th 1077, 1085 (2017) (four of the *Rowland* factors "take into account

27   public policy concerns that might support excluding certain kinds of plaintiffs or injuries from
     relief.").

28

against imposing a sweeping and *ad hoc* duty of care on Intuit to all American taxpayers that would interfere with the highly regulated tax administration system.

**First**, Plaintiffs do not dispute that Intuit operates in a heavily regulated field as an IRS e-file provider and is subject to a host of tax and privacy statutes, rules, and regulations, none of which Intuit is accused of violating.  MTD TCAC at 5:17-7:4.  They also fail to acknowledge – but apparently do not contest – that within this field, the IRS, states, and industry work together to determine what measures are best suited to combat tax fraud, and are best positioned to create *uniform* rules nationwide.[8]  To ask this federal court to create a new California common law duty that would interfere with and displace the careful weighing of interests by the federal and state legislative and regulatory process would undermine these efforts.  Further, Plaintiffs' argument that no federal preemption prevents imposition of a common law duty, *see* Opp. at 13:11-16, is a red herring.  Intuit does not argue federal preemption, or otherwise assert that no negligence claim will ever be available for areas subject to federal regulation.  Rather, Intuit explains that the contours of the ordinary duty of care, if it exists, must be informed by the federal regulatory regime at issue, and demonstrates why a judicially-created common law duty is not the proper means to address an issue like tax fraud.  The Court should once again decline Plaintiffs' invitation to step into the legislative and regulatory arena.  MTD at TCAC 22:7-27 (citing *QDOS, Inc. v. Signature Fin., LLC*, 2017 WL 5793973, at *7 (Cal. Ct. App. Nov. 29, 2017) (no duty to deal with problems such as identity theft); *Gabriel v. Giant Eagle, Inc.*, 2015 WL 4954578, at *9 (W.D. Pa. Aug. 19, 2015) (no duty on highly-regulated pharmacies); *Huggins v. Citibank, N.A.*, 355 S.C. 329, 334 (2003) ( "legislative arena is better equipped to assess and address the impact of credit card fraud").

**Second**, Plaintiffs' proposed *ad hoc* duties are commercially impracticable and would not eliminate SIRF.  A fraudster possessing enough taxpayer PII to prepare a fraudulent return could get around authentication measures at account setup because the fraudster already has all the PII

---

[8] *See* Cole Decl. III, Ex. H (information sharing between industry and IRS "key to making sure there is a *level playing field* and that every organization can approach refund fraud from the same perspective. *There will no longer be safe locations in the private sector where fraudsters can avoid increased analytical review*."  (emphases added)); MTD TCAC at 24:7-26.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

needed to verify that taxpayer's identity.  And for non-customers, it is especially infeasible since Intuit would have no PII about that taxpayer against which to compare a potential fraudster's submissions.  Plaintiffs also do not explain how Intuit could (practically or legally) determine whether an account or return is fraudulent.  MTD TCAC at 6:19-7:4 (only taxing authorities can determine fraud).  Nor do they explain how Intuit could refuse to transmit a return in light of the IRS requirement that all returns be transmitted within three days.  *Id*. at 6:1-6 (citing IRS Publication 1345).  They also do not specify any way that Intuit could lawfully use such submitted taxpayer information without risking federal criminal penalties.  26 U.S.C. § 7216(a)(1), (2).  Commercial impracticability and legal restraints militate against the imposition of a new common law rule.

**Third**, Plaintiffs pay little attention to the various unintended consequences that could result from the Court's imposition of even just one *ad hoc* duty proposed by Plaintiffs.  For example, if Intuit were required to notify taxpayers about suspicious or potentially fraudulent tax returns filed in their name and request proof of identity, sensitive taxpayer information could be unnecessarily disclosed, fraudsters might have an opportunity to test Intuit's fraud policies, and suspected fraudulent returns that were actually legitimate would be delayed.  MTD TCAC at 23:6-24:6.  Instead of responding to these very real concerns, Plaintiffs simply state that these arguments are "unsupported," while simultaneously failing to support their own claim with any allegations in the TCAC.  Opp. at 12:16-21.

**Finally**, Plaintiffs argue that the public interest in preventing future harm weighs in favor of imposing a duty because Intuit is a "public trust" company that should be held to a higher duty of care.  *Id*. at 11:12-12:5.  But Plaintiffs do not allege Intuit is a "public trust" company in the TCAC, nor do they cite a single case holding tax software companies or authorized IRS e-filers are "public trust" companies, or that any such company should be held to a higher standard simply due to its market share.  *Id*. at 12:2-5.  Rather, they offer the bald assertion that Intuit "was in a unique position of power" and that its role as an e-file provider gave rise to a duty that is "fiduciary both in nature and spirit."  TCAC ¶¶ 81, 84.  As stated in Intuit's opening brief (which Plaintiffs fail to address), as a do-it-yourself tax software provider, Intuit does not undertake a

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

fiduciary relationship.  MTD TCAC at 14:8-15.  And IRS regulations actually substantially limit the "power" Intuit and other do-it-yourself tax software providers have to delay or prevent the filing of any individual tax return.  MTD TCAC at 5-6.  As a result, Plaintiffs' arguments do not meet the plausibility standard required at this stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).[9]

Thus, the *Rowland* factors, including those involving policy concerns, weigh heavily against finding a duty of care to all American taxpayers, including non-customers.  Plaintiffs' arguments and citation to cases finding a duty to protect against property damage or physical harm caused by third-party criminals are insufficient to overcome the strong body of cases, like *QDOS*, *Burns*, *Karen Kane*, *Huggins*, and *Software Design*, refusing to impose such a duty in the identity theft and analogous banking context.  This is an area where the responsibility to create common law duties belongs to the Legislature and Executive, and Plaintiffs have not cited case law showing otherwise.  Plaintiff Brown's negligence claim should be dismissed with prejudice.

### III.  CONCLUSION

For the foregoing reasons, Intuit respectfully requests that its motion be granted in its entirety.

Dated:   February 2, 2018

FENWICK & WEST LLP

By: */s/ Rodger R. Cole*
Rodger R. Cole

Attorneys for Defendant
INTUIT INC.

---

[9] Plaintiffs' continued reliance on *Seeley v. Seymour*, 190 Cal. App. 3d 844 (1987) remains misplaced.  Opp. at 11:15-12:1.  In *Seeley*, a property owner sued a title insurance company for economic damages stemming from the company's delivery of a non-recordable deed of trust to the county recorder.  In imposing a duty, the court determined that the involvement of title companies in the majority of real estate transactions compels a greater degree of accountability to the public.  *Id*. at 862.  But *Seeley* is distinguishable.  First, Intuit does not operate under a government contract.  Second, Intuit's role as an e-file provider is not as integral to the filing of tax returns as a title insurance company is to real estate transactions; taxpayers have non-electronic alternatives for filing their returns. Third, the returns filed in Plaintiffs' names through TurboTax were not void on their face. *See Luce v. State Title Agency, Inc.*, 950 P.2d 159, 162 (Ariz. Ct. App. 1997) (*Seeley* not controlling where defendant title company did not have contract with county recorder's office and did not deliver a facially invalid deed of trust).  In fact, the returns were so convincing that the IRS—the ultimate arbiter of whether a return is fraudulent— apparently ultimately accepted the tax returns.