Michael W. Sobol (SBN 194857)
msobol@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

Steven W. Teppler (*pro hac vice*)
steppler@abbottlawpa.com
ABBOTT LAW GROUP, P.A.
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: 904.292.1111

Joseph J. Siprut (*pro hac vice*)
jsiprut@siprut.com
SIPRUT PC
17 North State Street, Suite 1600
Chicago, IL 60602
Telephone: 312.236.0000

Ariana J. Tadler (*pro hac vice*)
atadler@milberg.com
MILBERG TADLER PHILLIPS
GROSSMAN LLP
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone: 212.946.9453

Mark S. Goldman (*pro hac vice*)
goldman@lawgsp.com
GOLDMAN SCARLATO & PENNY, P.C.
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: 484.342.0700

*Attorneys for Plaintiffs and the Proposed
Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INTUIT DATA LITIGATION | Master Docket No.  15-CV-1778-EJD-SVK |
| THIS DOCUMENT RELATES TO:<br><br>**ALL ACTIONS** | **PLAINTIFFS' NOTICE OF MOTION; MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  October 4, 2018<br>Time:  9:00 a.m.<br>Judge:  Honorable Edward J. Davila |

## <u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 4, 2018, at 9:00 a.m., in the Courtroom of the Honorable Edward J. Davila, United States District Judge for the Northern District of California, 280 South 1st Street, Courtroom 4, 5th Floor, San Jose, California 95113, Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams ("Plaintiffs"), will and hereby do move the Court, under Federal Rule of Civil Procedure 23, for an Order:

     a.    Granting preliminary approval of the proposed Class Action Settlement Agreement ("Agreement") entered into between the Parties;[1]

     b.    Certifying, for settlement purposes only, the Class as defined in the Agreement, pursuant to Fed. R. Civ. P. 23(b)(2);

     c.    Appointing Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams as class representatives representing the proposed Class;

     d.    Appointing Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Tadler Phillips Grossman LLP; Goldman Scarlato & Penny, PC; Abbott Law Group, PA; and Siprut PC., as Class Counsel for the proposed Class;

     e.    Approving the Parties' proposed Notice Program, including the proposed forms of notice, and directing that notice be disseminated pursuant to such Notice Program;

     f.    Appointing JND Legal Administration ("JND") as Settlement Administrator, and directing JND to carry out the duties and responsibilities of the Settlement Administrator specified in the Agreement;

     g.    Approving the Parties' proposed form and method for Class Members to enroll in the credit monitoring services provided by the Settlement, and setting deadlines for Class Members to enroll in such services and to object to the Settlement;

---

[1] A copy of the Agreement is attached as Exhibit A to the Declaration of Roger N. Heller ("Heller Decl."), filed herewith.

1        h.     Staying all non-Settlement related proceedings in this litigation pending

2 final approval of the Settlement; and

3        i.     Setting a Final Approval Hearing and certain other dates in connection with

4 the final approval of the Settlement.

5     This motion is based on this notice of motion and motion, the accompanying

6 memorandum of points and authorities, the Agreement, including all exhibits thereto, the

7 declarations of Roger Heller, Mark Goldman, Henry Kelston, Joseph Siprut, Steven Teppler, and

8 Jennifer Keough, JND Legal Administration, filed herewith, the argument of counsel, all papers

9 and records on file in this matter, and such other matters as the Court may consider.

10 Dated:   August 23, 2018             Respectfully submitted,

11

12                            _/s/ Roger N. Heller_
Michael W. Sobol (SBN 194857)

13 Roger N. Heller (SBN 215348)
Melissa A. Gardner (SBN 289096)

14 **LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

15 275 Battery Street, 29th Floor
San Francisco, CA 94111

16 Telephone: 415.956.1000
msobol@lchb.com

17 rheller@lchb.com
mgardner@lchb.com

18 Steven W. Teppler (FL SBN 14787)

19 **ABBOTT LAW GROUP P.A.**
2929 Plummer Cove Road

20 Jacksonville, FL  32223
Telephone: 904.292.1111

21 steppler@abbotlawpa.com

22 Mark S. Goldman (_pro hac vice_)
**GOLDMAN SCARLATO & PENNY, P.C**

23 8 Tower Bridge, Suite 1025
161 Washington Street

24 Conshohocken, PA 19428
Telephone: 484.342.0700

25 goldman@lawgsp.com

26

27

28

PLAINTIFFS' NOTICE OF MTN; MTN FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
MASTER DOCKET NO.  15-CV-1778-EJD-SVK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ariana J. Tadler (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Penn Plaza, Suite 1920
New York, NY 10119
Telephone: 212.594.5300
atadler@milberg.com

Joseph J. Siprut (*pro hac vice*)
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, IL 60602
Telephone: 312.236.0000
jsiprut@siprut.com

*Interim Class Counsel and Proposed Class Counsel*

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................... i

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .................................................................................................. 3

    A.  Procedural History ................................................................................... 3

    B.  Class Counsel's Discovery and Investigation ........................................... 4

    C.  Settlement Negotiations ............................................................................ 4

III.  THE PROPOSED SETTLEMENT ...................................................................... 5

    A.  The Settlement Class ................................................................................. 5

    B.  Benefits to the Class Members ................................................................. 5

        1.  Credit Monitoring Services ........................................................... 5

        2.  Security Improvements and Commitments By Intuit ..................... 6

    C.  Notice Program ......................................................................................... 6

        1.  Direct Notice to Class Members ................................................... 6

        2.  Settlement Website and Toll-Free Number ................................... 7

    D.  Objection Procedures ................................................................................ 7

    E.  Payment of Administrative Costs .............................................................. 8

    F.  Payment of Attorneys' Fees and Costs; Service Awards ........................... 8

    G.  Release ...................................................................................................... 8

IV.  ARGUMENT ...................................................................................................... 8

    A.  Applicable Legal Standards ...................................................................... 8

    B.  Certification of the Proposed Class is Appropriate.................................... 9

        1.  Rule 23(a) is Satisfied. .................................................................. 9

            a.  The Class is Too Numerous to Permit Joinder .............. 9

            b.  Common Questions are Presented ................................. 9

            c.  Plaintiffs' Claims are Typical of Those of the Class ................... 10

            d.  Plaintiffs and Proposed Class Counsel Fairly and Adequately Protect the Interests of the Class................................ 10

        2.  The Requirements of Rule 23(b)(2) are Satisfied ..................................... 11

    C.  Preliminary Approval of the Settlement is Appropriate ...................................... 12

            a.  The Settlement is the Product of Arms-Length Negotiations After a Thorough Investigation. ....................... 13

            b.  The Settlement is Well Within the Range of Reasonableness ...... 14

             c.  The Settlement Treats Class Members Fairly and Equally........... 16

            d.  The Recommendation of Experienced Counsel Favors Approval.......................................................................... 16

**TABLE OF CONTENTS**
(continued)

Page

    D.    The Proposed Forms of Notice and the Notice Program Are Reasonable and Appropriate and Should Be Approved ........................................................... 17

    E.    The Court Should Schedule a Final Approval Hearing and Related Dates .......... 18

V.    CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001)................................................................................. 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004)................................................................................. 12

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992)............................................................................... 13

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974).............................................................................................. 17

*Gallucci v. Gonzales*,
 603 F. App'x 533 (9th Cir. 2015).......................................................................... 17

*Hanlon v. Chrysler Corp*,
 150 F.3d 1011 (9th Cir. 1998).................................................................. 9, 10, 11, 12

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992)................................................................................. 10

*In re Heritage Bond Litig.*,
 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 13

*In re Syncor ERISA Litig.*,
 516 F.3d 1095 (9th Cir. 2008)............................................................................... 12

*In re Tableware Antitrust Litig.*,
 484 F.Supp.2d 1078 (N.D. Cal. 2007) .................................................................. 12

*In re Yahoo Mail Litig.*,
 308 F.R.D. 577 (N.D. Cal. 2015)..................................................................... 10, 12

*Jordan v. Cty. of Los Angeles*,
 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).............. 9

*Knight v. Red Door Salons, Inc.*,
 No. 08¬01520, 2009 WL 248367  (N.D. Cal. Feb. 2, 2009) .................................. 16

*Linney v. Cellular Alaska P'ship*,
 No. 96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997),
 *aff'd*, 151 F.3d 1234 (9th Cir. 1998)..................................................................... 16

*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2009)............................................................................... 12

*Slezak v. City of Palo Alto*,
 No. 16-03224, 2017 WL 2688224 (N.D. Cal. June 22, 2017)................................ 13

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003)................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).......................................................................................... 9, 12

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................... 3, 14

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................................. 3

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 9

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 5, 8, 11

Fed. R. Civ. P. 23(c)(2)(A) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(1) ............................................................................................. 17

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 12

**Treatises**

4 Newberg on Class Actions §§ 13:10 *et seq.* (5th ed.) ..................................... 9, 12, 13

Manual for Complex Litigation (Fed. Jud. Center, 4th ed. 2004), § 21.63 .................... 9

1                              **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.**      **INTRODUCTION**

3         Plaintiffs and Defendant Intuit, Inc. ("Intuit") have reached a Settlement to resolve this

4 litigation.[2] As discussed below, the Settlement provides relief that is well-tailored to address and

5 protect against the common harms and risks faced by the members of the Class, is the product of

6 extensive arms-length negotiations between the Parties and their informed counsel, and was

7 reached with the assistance of an experienced mediator, Hon. Edward A. Infante (Ret.) of JAMS.

8         The Settlement is absolutely fair, reasonable, and adequate given the benefits provided,

9 the nature of the alleged conduct and harm, the parties' respective litigation risks, and the fact that

10 the Settlement, if approved, would only release non-monetary claims (i.e., damages and other

11 monetary relief claims would not be released).  The Settlement presented for the Court's

12 consideration falls well within the "range of reasonableness" applicable at the preliminary

13 approval stage.  The Settlement provides the following benefits to Class Members:

14
15
16
17
- **Credit Monitoring**.  All Class Members will be able to enroll, free of charge, in two (2) years of TransUnion's credit monitoring services.  These services provide, *inter alia*, unlimited access to the consumer's credit report, daily credit monitoring and fraud alerts, up to $1 million in identity theft insurance, credit dispute and identity restoration services, unlimited toll-free access to credit specialists, and access to educational resources regarding identity protection and credit.

18
19
- **Security Changes and Commitments**.  Intuit has implemented numerous security measures designed to reduce the incidence of tax identity fraud through TurboTax, and has agreed to additional important commitments.

20         These benefits are well-tailored to address the issues raised by this litigation.  They will

21 help Class Members avoid and mitigate the harms associated with the misuse of their identities

22 and personal information, and will help reduce the incidence of tax identity fraud through

23 TurboTax going forward.  Moreover, the Settlement only releases non-monetary claims—

24 notwithstanding that it provides valuable benefits to Class Members beyond injunctive relief—

25 meaning that Class Members who experienced particular monetary damages resulting from the

26 tax fraud that occurred in their names will still be able to pursue monetary relief claims if they

27
28
---
[2] The parties' Class Action Settlement Agreement ("Agreement") is attached as Exhibit A to the accompanying Heller Decl.  Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Agreement.

1   choose.

2        The Settlement also provides for a robust Notice Program that includes direct notice to

3   Class Members, a Settlement Website where Class Members can obtain additional information

4   and enroll electronically in the credit monitoring services, and an informational toll-free

5   telephone line.

6        In addition to bearing the costs of the TransUnion services, Intuit will separately bear the

7   costs of the Notice Program and other costs of administering the Settlement, and any attorneys'

8   fees and costs and Plaintiff service awards that may be awarded by the Court.  All of these

9   amounts will be paid by Intuit in addition to (*i.e.,* on top of) the other benefits provided to Class

10  Members under the Settlement.

11       Plaintiffs and their undersigned counsel believe the Settlement to be in the best interests of

12  the Class Members and seek to begin the Court approval process that is required for all class

13  action settlements.  Plaintiffs therefore respectfully request that the Court review the Agreement,

14  which is attached as Exhibit A to the accompanying Heller Decl., and do the following:  (a) grant

15  preliminary approval of the Settlement; (b) certify, for settlement purposes, the Class as defined

16  in the Agreement, pursuant to Fed. R. Civ. P. 23(b)(2); (c) appoint Plaintiffs Richard Brown,

17  Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams as class

18  representatives; (d) appoint Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Tadler Phillips

19  Grossman LLP; Goldman Scarlato & Penny, PC; Abbott Law Group, PA; and Siprut PC., as

20  Class Counsel; (e) approve the proposed Notice Program, including the proposed forms of notice,

21  and direct that notice be disseminated pursuant to such Notice Program; (f) appoint JND Legal

22  Administration ("JND") as Settlement Administrator, and direct JND to carry out the duties and

23  responsibilities of the Settlement Administrator specified in the Agreement; (g) approve the

24  proposed form and method for Class Members to enroll in credit monitoring services provided by

25  the Settlement, and set deadlines for Class Members to enroll in such services and to object to the

26  Settlement; (h) stay all non-Settlement related proceedings in this litigation pending final

27  approval of the Settlement; and (i) set a Final Approval Hearing and certain other dates in

28  connection with the final approval of the Settlement.

II.     **BACKGROUND**

A.     **Procedural History**

The underlying actions that were consolidated in this litigation were originally filed in April and May 2015.  On August 24, 2015, those actions were consolidated before this Court.  On September 29, 2015, Plaintiffs filed a filed a Consolidated Amended Complaint (Dkt. 51).  On December 1, 2015, Intuit filed a motion to dismiss Plaintiffs' Consolidated Amended Complaint and a motion to compel the claims of four of the plaintiffs to arbitration (Dkt. 61, 62).

On December 18, 2015, Plaintiffs filed a Second Consolidated Amended Complaint (Dkt. 69).  On February 4, 2016, Intuit filed a renewed motion to compel the claims of four of the plaintiffs to arbitration (Dkt. 75) (the "Arbitration Motion").  On February 5, 2016 Intuit filed a motion to dismiss Plaintiffs' Second Consolidated Amended Complaint (Dkt. 78).  On September 20, 2016 and on July 7, 2017, respectively, Plaintiffs Michelle Fugatt and Todd Siegel voluntarily dismissed without prejudice their claims against Intuit (Dkt. 98, 111).

On September 29, 2017, the Court granted Intuit's Arbitration Motion, ruling that the question of whether the claims of four of the plaintiffs must be arbitrated should be decided by an arbitrator, and staying proceedings as to those four plaintiffs' claims (Dkt. 123) (the "Arbitration Order").  On September 29, 2017, the Court granted in part and denied in part Intuit's motion to dismiss Plaintiffs' Second Consolidated Amended Complaint (Dkt. 124).

On October 27, 2017, plaintiffs Knoch, Lebinski, Stock, and Williams filed a motion seeking certification of the Court's Arbitration Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and, in the alternative, seeking reconsideration of the Arbitration Order (Dkt. 127) ("Section 1292 Motion").  On February 16, 2018, the Court denied Plaintiffs' Section 1292 Motion (Dkt. 158).

On November 17, 2017, Plaintiffs filed a Third Consolidated Amended Complaint, alleging claims against Intuit, on behalf of themselves and a putative class, for common law negligence, aiding and abetting fraud, and unjust enrichment, and under Cal. Bus. & Prof. Code § 17200 *et seq.* (Dkt. 131).[3]  On December 15, 2017 Intuit filed a partial motion to dismiss Plaintiffs' Third

---

[3] Intuit's form consumer contract provides for the application of California law.

1   Consolidated Amended Complaint (Dkt. 139-3).  On May 15, 2018, the Court granted Intuit's partial

2   motion to dismiss, dismissing plaintiff Brown's negligence claim and dismissing the aiding and

3   abetting fraud claim (Dkt. 164).

4           **B.     Class Counsel's Discovery and Investigation**

5           Prior to filing suit, and continuing through the course of the litigation, Class Counsel have

6   conducted an extensive investigation into the factual and legal issues raised in this litigation.

7   These investigative efforts have included reviewing publicly available information about the

8   filing of fraudulent tax returns through TurboTax and through other services, identifying and

9   speaking with potential pertinent witnesses and experts, and speaking with numerous affected

10  consumers about their experiences. Declaration of Roger N.  Heller ("Heller Decl."), ¶ 6;

11  Declaration of Henry J. Kelston ("Kelston Decl."), ¶¶ 4-5; Declaration of Mark S. Goldman

12  ("Goldman Decl."), ¶ 9; Declaration of Joseph J. Siprut ("Siprut Decl."); ¶ 4; Declaration of

13  Steven Teppler ("Teppler Decl."), ¶ 17.

14          Moreover, the Parties have engaged in extensive discovery, making them well-informed

15  about the relative strengths and weaknesses of their respective positions, and providing them with

16  information needed to negotiate the proposed Settlement. Among other things, Class Counsel

17  reviewed and analyzed more than 100,000 pages of pertinent documents produced by Intuit, and

18  propounded and responded to numerous written discovery requests.  The parties held frequent,

19  often lengthy, meet and confer sessions regarding electronically stored data and documents and to

20  resolve various discovery disputes.  Through those efforts they were able to resolve most disputes

21  without the Court's assistance, however the parties litigated one important discovery dispute

22  before Magistrate Judge van Keulen.  Class Counsel also engaged in third-party discovery,

23  including regarding the U.S. Internal Revenue Service and Santa Barbara Bank, a financial

24  institution that processed certain tax refunds for returns filed through TurboTax, to identify

25  additional potentially relevant documents and information.  Heller Decl., ¶ 7.

26          **C.     Settlement Negotiations**

27          The Settlement here is the product of hard-fought, arms-length negotiations between the

28  parties.  The parties participated in mediation sessions with Hon. Edward A. Infante (Ret.) of

JAMS on December 7, 2015 and March 14, 2018.  Following the second session, and with the continuing assistance of Judge Infante, the Parties reached an agreement in principle on the terms of a proposed settlement.  After the Parties reached that agreement in principle, the Parties then negotiated regarding attorneys' fees and expenses through further mediation with Judge Infante. Since reaching an agreement in principle, the Parties have worked diligently to craft the settlement papers, including the Notice Program, working together with the proposed Settlement Administrator.  Heller Decl., ¶ 8.

### III.    THE PROPOSED SETTLEMENT

The Settlement terms are set forth in the Agreement, which is attached as Exhibit A to the accompanying Heller Decl.  The following is a summary of the Settlement terms.

### A.    The Settlement Class

Plaintiffs seek provisional certification, under Fed. R. Civ. P. 23(b)(2), of a "Class," defined in the Agreement as:

> All persons in the United States in whose identities fraudulent federal tax returns for the Tax Years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  Excluded from the Class are all employees of Intuit, counsel for the Parties, the Judge presiding over this Action, and Court staff.[4]

Intuit does not oppose certification of the above Class for settlement purposes only.  (Agreement, ¶ 46)

### B.    Benefits to the Class Members

#### 1.    Credit Monitoring Services

All Class Members will be able to enroll, free of charge, in two (2) years of TransUnion's credit monitoring services.  All Class Members will be able to enroll, free of charge, in two (2) years of TransUnion's credit monitoring services.  These services provide, *inter alia*, unlimited access to the consumer's credit report, daily credit monitoring and fraud alerts, up to $1 million in

---

[4] The Class definition varies from the definition pled in Plaintiffs' Third Consolidated Amended Complaint (Dkt. 131, ¶ 179) in the following respects: (a) it specifies the applicable tax years included; and (b) it limits the class to those persons who can reasonably be identified as having been subject to federal tax identify fraud through TurboTax using available Intuit and Internal Revenue Service records.

1   identity theft insurance, credit dispute and identity restoration services, unlimited toll-free access

2   to credit specialists, and access to educational resources regarding identity protection and credit.

3   Class Members will have a period of sixty (60) days after notice is sent to enroll in these credit

4   monitoring services.  These services will be available to Class Members within 5 business days

5   after the Court enters Final Judgment approving the Settlement.  (Agreement, ¶¶ 52-53, Ex. E)

6          In addition, the Settlement Website will provide information about other resources

7   available to Class Members who are victims of identity theft or fraud.  (Agreement, ¶ 52)

8                    **2.      Security Improvements and Commitments By Intuit**

9          The Settlement also includes security changes and commitments by Intuit.  Since this

10  litigation commenced, Intuit has adopted numerous security measures to reduce the incidence of

11  tax identity fraud occurring through TurboTax.  These security measures are summarized in

12  Exhibit B to the Agreement.  In addition to having implemented these security measures, Intuit

13  also agrees to continue to participate in the IRS Security Summit until at least 2021,[5] or until the

14  IRS Security Summit process ends, whichever is sooner.  Intuit agrees to follow the security

15  criteria that come out of the IRS Security Summit process during that time.  (Agreement, ¶ 55)

16         **C.      Notice Program**

17         The parties proposed Notice Program is described in Exhibit A to the Agreement, and will

18  consist of the following:

19                    **1.      Direct Notice to Class Members**

20         Notice will be sent directly to Class Members.  Specifically, within 7 days after entry of

21  the Preliminary Approval Order, Intuit will generate a "Class List" with the pertinent

22  identifying/contact information for Class Members.  For Class Members who, according to

23  Intuit's records, are current or former TurboTax customers, the Settlement Administrator will

24  email them notice, substantially in the form attached as Attachment 1 to the Notice Program.[6]

25         For Class Members who, according to Intuit's records, have never been TurboTax

26

27  _____

    [5] The IRS Security Summit is a collaboration between the IRS, state tax administrators, and other
28  industry members to combat identity theft refund fraud to protect the nation's taxpayers.

    [6] Email is the primary means that Intuit uses to communicate with its customers.

customers, an experienced Skip-Trace Provider will conduct a reverse look-up (i.e., skip trace) to attempt to identify a mailing address, using the name and Social Security numbers for them in the Class List, and will provide the results to the Settlement Administrator.  For each such Class Member for whom the Skip-Trace Provider identifies a mailing address, the Settlement Administrator will mail them notice, substantially in the form attached as Attachment 2 to the Notice Program, via first class U.S. Mail, postage pre-paid, at the address identified for them.

The deadline for the Settlement Administrator to email and mail the notices (the "Notice Deadline") will be 21 days after the entry of the Preliminary Approval Order.  (Agreement, Ex. A)

### 2.    Settlement Website and Toll-Free Number.

The Settlement Administrator will also establish a Settlement Website, at the URL www.IntuitDataLitigation.com, where Class Members can obtain further information about the case and the Settlement and enroll electronically in the credit monitoring services.  The Settlement Website will be optimized for display on mobile devices, and will include key case documents, including a copy of the Agreement, the operative complaint; a detailed Long-Form Notice, substantially in the form attached as Attachment 3 to the Notice Program; and a printable credit monitoring enrollment form.

The Settlement Administrator will also establish a toll-free telephone number that Class Members can call to receive additional information about the Settlement.

The Settlement Website and toll-free number will be live beginning no later than one day before the first mail or email notice is sent, and will be operational until at least the Effective Date of the Settlement.  (Agreement, Ex. A)

### D.    Objection Procedures

Any Class Member may object to the Settlement, Class Counsel's application for attorneys' fees and costs, and/or the request for Plaintiff service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to the Settlement Administrator, at the addresses listed in the Long-Form Notice, must be postmarked by the deadline proscribed by the notices,  and must include the information proscribed by the

Long-Form Notice.  (Agreement, ¶¶ 60-61, Ex. A)  The parties propose that the deadline for objections be set forty five (45) days after the Notice Deadline.[7]

### E.  Payment of Administrative Costs

All fees and costs of the Settlement Administrator will be paid by Intuit in addition to (*i.e.* on top of) the other settlement benefits provided to the Class Members.  (Agreement, ¶ 59)

### F.  Payment of Attorneys' Fees and Costs; Service Awards

Class Counsel will apply for an award of reasonable attorneys' fees and costs in a total amount not to exceed $2,820,000.  Any attorneys' fees and costs awarded to Class Counsel will be paid by Intuit in addition to (i.e., on top of) the benefits provided to Class Members.  (Agreement, ¶ 66)

Class Counsel will also request service awards of $5,000 each for the six representative Plaintiffs, to compensate them for their commitment and time on behalf of the Class in this litigation.  Any service awards will be paid by Intuit in addition to (i.e., on top of) the benefits provided to Class Members.  (Agreement, ¶ 69)

### G.  Release

In exchange for the consideration provided under the Settlement, Class Members will release Intuit and related entities from any non-monetary claims they may have related to the issues in this action.  The release provided under the Settlement extends solely to claims for declaratory, injunctive, and non-monetary equitable relief.  Class Members will not release any claims for damages or other monetary relief.  (Agreement, ¶¶ 72)

## IV.  ARGUMENT

### A.  Applicable Legal Standards

Rule 23(e) requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial approval of a proposed class action settlement is well established:

---

[7] Because Plaintiffs seek certification of the Class pursuant to Fed. R. Civ. P. 23(b)(2), there would not be an opportunity for Class Members to opt-out.

1
(1)     Certification of a settlement class and preliminary approval of the proposed
2        settlement after submission to the court of a written motion for preliminary
        approval.

3
(2)     Dissemination of notice of the proposed settlement to the affected class
        members.

4
5
(3)     A final approval hearing, at which evidence and argument concerning the
        fairness, adequacy, and reasonableness of the settlement are presented.

6   *See* Manual for Complex Litigation (Fed. Jud. Center, 4th ed. 2004), § 21.63. This procedure

7   safeguards class members' procedural due process rights and enables the Court to fulfill its role as

8   guardian of class interests. *See* 4 Newberg on Class Actions §§ 13:10 *et seq.* (5th ed.)

9   ("Newberg").

10        Plaintiffs respectfully request that the Court take the first steps in the settlement approval

11  process by: certifying the proposed settlement Class, granting preliminary approval of the

12  proposed Settlement, directing that notice be disseminated to the Class pursuant to the proposed

13  Notice Program, and issuing related relief as requested herein.

14        **B.     Certification of the Proposed Class is Appropriate.**

15        Plaintiffs contend, and Intuit does not dispute, for settlement purposes only, that the

16  proposed Class meet the requirements for class certification under Rule 23(a) and Rule 23(b)(2).

17             **1.     Rule 23(a) is Satisfied.**

18                 **a.     The Class is Too Numerous to Permit Joinder**

19        A case may be certified as a class action only if "the class is so numerous that joinder of

20  all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is

21  generally satisfied when a proposed class includes at least 40 persons. *See Jordan v. Cty. of Los*

22  *Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

23  Numerosity is easily satisfied here; according to Intuit's records, there are approximately 915,715

24  persons in the Class.  (Agreement, p. 5, fn.1)

25                 **b.     Common Questions are Presented**

26        Rule 23(a)(2) requires that there be one or more questions common to the class. *See*

27  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Wal-Mart Stores, Inc. v. Dukes*,

28  564 U.S. 338, 345 (2011).  Plaintiffs "need only show the existence of a common question of law

- 9 -

or fact that is significant and capable of classwide resolution." *In re Yahoo Mail Litig.*, 308

F.R.D. 577, 592 (N.D. Cal. 2015) (citations omitted).   The claims here raise several significant

common questions that are capable of classwide resolution, including but not limited to: whether

Intuit took adequate steps to prevent the filing of fraudulent tax returns through TurboTax;

whether Intuit's common policies and practices as alleged were unfair and/or unlawful; whether

Intuit's common policies and practices as alleged contributed to the fraud that occurred; and

whether Intuit has been unjustly enriched.  Commonality is satisfied here.

### c.   Plaintiffs' Claims are Typical of Those of the Class

Rule 23(a)(3) requires that the representative party's claim be "typical of the claims . . . of

the class." Typicality does not require total identity.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th

Cir. 2001). Rather, claims are "typical" if they are "reasonably co-extensive with those of absent

members." *Hanlon.*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

(9th Cir. 1992) (citation and quotation marks omitted) ("The test of typicality is whether other

members have the same or similar injury, whether the action is based on conduct which is not

unique to the named Plaintiffs, and whether the other class members have been injured by the

same court of conduct.").

Here, Plaintiffs' claims and those of the Class stem from the same alleged common course

of conduct by Intuit, and Plaintiffs' injuries are typical of the Class. Plaintiffs and all Class

Members had fraudulent tax returns filed in their names through TurboTax, and their claims all

arise out of Intuit's alleged failure to maintain sufficient security policies and implementation of

unfair policies and practices.  Plaintiffs and the Class share an interest in obtaining relief for this

common course of conduct.  Moreover, like all Class Members, Plaintiffs face a risk of repeated

injury in the future.  Injunctive relief will apply to, and benefit, all Plaintiffs and Class Members.

### d.   Plaintiffs and Proposed Class Counsel Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect

the interests of the class. The two-prong test for determining adequacy is: "(1) Do the

representative plaintiffs and their counsel have any conflicts of interest with other class members,

and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon,* 150 F.3d at 1020). Both prongs are satisfied here.

First, Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Class. Plaintiffs and the Class Members share an interest in ensuring that Intuit's policies and practices are appropriately designed to protect against fraudulent tax filings through TurboTax, and in obtaining relief to protect themselves against the harms that flow from such identity misuse as well as to mitigate the effects from past fraudulent filings. *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each . . . plaintiff has the same problem"). Plaintiffs will fairly and adequately protect the interests of the Class.

Second, Class Counsel have extensive experience litigating and settling class actions, including consumer cases throughout the United States.[8]  Class Counsel are well qualified to represent the Class. The Court previously designated Class Counsel to serve as Interim Class Counsel (Dkt. 39). Since then, Class Counsel have continued to vigorously litigate this action on behalf of the Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Class.

## 2.    The Requirements of Rule 23(b)(2) are Satisfied

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Here, Plaintiffs seek certification of the settlement Class under Rule 23(b)(2), which permits class certification if the Court finds that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) is satisfied here.  Plaintiffs allege in this case that Intuit failed to take sufficient steps to prevent tax identify fraud through TurboTax, and that Intuit maintained common policies and practices that contributed to the fraudulent filings in their names and the Class Members' names.  The alleged actions and inactions by Intuit apply generally to the Class,

---

[8] *See* Heller Decl., ¶¶ 3-5; Kelston Decl., ¶ 3, Ex. A; Siprut Decl., ¶ 3; Goldman Decl., ¶¶ 2-8, Ex. A; Teppler Decl., ¶¶ 2-16.

1    rendering injunctive relief appropriate as to the class as a whole. *See Wal-Mart Stores, Inc.*, 564

2    U.S. at 360-61; *Yahoo Mail Litig.*, 308 F.R.D. at 601 (citing *Rodriguez v. Hayes*, 591 F.3d 1105,

3    1125-26 (9th Cir. 2009)).  This is underscored by the relief provided by the Settlement, which

4    will benefit the entire Class.

5         **C.    <u>Preliminary Approval of the Settlement is Appropriate</u>**

6         Public policy "strong[ly] . . . favors settlements, particularly where complex class action

7    litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008);

8    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

9         "[T]he decision to approve or reject a settlement is committed to the sound discretion of

10   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

11   *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference

12   to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a

13   private consensual agreement negotiated between the parties to a lawsuit must be limited to the

14   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

15   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

16   whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (citation and quotation

17   marks omitted); *see also* Fed. R. Civ. P. 23(e)(2).

18        At the preliminary approval stage, a court need only find that the proposed settlement is

19   within the "range of possible approval," such that dissemination of notice to the class and the

20   scheduling of a fairness hearing are worthwhile and appropriate.  4 Newberg § 13.13; *see also In*

21   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

22        The proposed Settlement here readily satisfies the standard for preliminary approval

23   because: (a) it is the product of hard-fought, arms-length negotiations between the parties,

24   reached after a thorough investigation by Class Counsel of the facts and the law; (b) it provides

25   substantial relief that is appropriately tailored to the alleged conduct and the common harm and

26   risk shared by the Class Members, and is absolutely fair, reasonable, and adequate given the

27   parties' respective litigation risks and the scope of the release (which is limited to non-monetary

28   relief claims); (c) it treats all Class Members equally; and (d) it was negotiated by, and is

1    recommended by, experienced Class Counsel.

2               **a.**        **The Settlement is the Product of Arms-Length Negotiations**
3                               **After a Thorough Investigation.**

4    "Before approving a class action settlement, the district court must reach a reasoned

5    judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

6    among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.

7    1992).  Where a settlement is the product of arm's-length negotiations conducted by capable and

8    experienced counsel, the court begins its analysis with a presumption that the settlement is fair

9    and reasonable. See 4 Newberg § 13.13; *Slezak v. City of Palo Alto*, No. 16-03224, 2017 WL

10   2688224, at *5 (N.D. Cal. June 22, 2017); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2

11   (C.D. Cal. June 10, 2005).

12   The Settlement submitted for the Court's consideration is the product of hard-fought,

13   arms-length negotiations between the parties and their qualified and informed counsel.  The

14   parties participated in two full-day mediation sessions and ongoing negotiations through an

15   experienced and well-respected mediator—Hon. Edward A. Infante (Ret.) of JAMS—and were

16   able to reach an agreement with the help of Judge Infante.  During the past several weeks, the

17   parties have been working diligently to finalize the settlement papers and to select a proposed

18   Settlement Administrator.  Throughout these negotiations, the parties were represented by counsel

19   experienced in the prosecution, defense and settlement of complex class actions.

20   Moreover, as discussed above, the Settlement is informed by Class Counsel's substantial

21   investigation and discovery regarding the legal and factual issues in the litigation.  Before filing,

22   Class Counsel conducted an extensive investigation into the factual underpinnings of the practices

23   challenged and the applicable law. Additionally, Class Counsel engaged in an ongoing factual and

24   legal investigation throughout the course of the litigation, including identifying and speaking with

25   potential witnesses and experts, and speaking with numerous Class Members about their

26   experiences.  Class Counsel also conducted extensive formal discovery in this case, including

27   reviewing and analyzing more than 100,000 pages of pertinent documents produced by Intuit,

28   propounding and responding to numerous written discovery requests, engaging in extensive meet

1   and confers with Intuit's counsel, and conducting third party discovery with the U.S. Internal

2   Revenue Service and Santa Barbara Bank to locate additional pertinent documents and

3   information.  *See supra* section II-B.

4       Further, as the Court is aware, there was significant litigation and motions practice in this

5   case, including two fully briefed motions to dismiss filed by Intuit, Intuit's arbitration motion, and

6   Plaintiffs' motion for interlocutory review pursuant to 28 U.S.C. § 1292(b).  In negotiating the

7   Settlement, Plaintiffs and their counsel were significantly informed by their work in briefing these

8   motions and, of course, by the Court's rulings on these motions.

9                **b.        The Settlement is Well Within the Range of Reasonableness**

10      The Settlement provides substantial relief that is appropriately tailored to the alleged

11  misconduct and the common harm and risks faced by the Class, and is well within the "range of

12  reasonableness," particularly given that no monetary relief claims are being released.

13      All Class Members will be able to enroll in two (2) years of TransUnion's credit

14  monitoring service, which provides several valuable features including: unlimited access to the

15  consumer's credit report, daily credit monitoring and fraud alerts, up to $1 million in identity theft

16  insurance, and credit dispute and identity restoration services.  (Agreement, Ex. E)

17      The Settlement also includes important practice changes, including numerous steps that

18  Intuit has taken to reduce the incidence of tax identify fraud through TurboTax, and additional

19  commitments by Intuit that will likewise help to reduce such fraud going forward.  (Agreement, ¶

20  54, Ex. B)

21      These benefits speak directly to the shared experiences and risks face by the Class.  All

22  Class Members have been subjected to identity theft.  All of them had their personal information

23  misused by fraudsters who filed fraudulent tax returns in their names through Turbo Tax.

24  Moreover, all of them face continuing risks of identity theft and PII misuse going forward.  The

25  TransUnion services provided under the Settlement will help protect Class Members from

26  identity theft and the misuse of their information in the future, as well as to mitigate the

27  corresponding harms associated with the past misuse of their information.  Moreover, the security

28  changes and commitments by Intuit will benefit Class Members (and other taxpayers) by helping

1    to shore up Intuit's security and thereby reduce the incidence of tax identity fraud through

2    TurboTax.   Indeed, this is the type of injunctive relief that Plaintiffs sought in pursuing this

3    litigation and that would have been available had the litigation proceeded.

4           Plaintiffs also originally pursued damages as part of this litigation.  It has become

5    apparent, through discovery and the litigation, that there would be significant challenges in

6    pursuing monetary relief on a class-wide basis under the circumstances of this case, however

7    Plaintiffs and Class Counsel were careful to negotiate a Settlement that does not deprive Class

8    Members who suffered particular monetary damages of the ability to pursue those claims.  Thus,

9    although the Settlement does provide valuable benefits beyond the injunctive relief (i.e., the

10   TransUnion services), the Settlement does *not* release any damages or other monetary relief

11   claims Class Members may have.

12          The Settlement also provides for the payment of administrative costs, and Class Counsel's

13   attorneys' fees and costs, on top of the other benefits provided for the Class Members.

14          The relief obtained for Class Members represents a strong result, particularly given the

15   risks and challenges of ongoing litigation.  Among other arguments that Intuit has made and/or

16   indicated it would make if the litigation proceeded are:  (a) third party fraudsters, and not Intuit,

17   are responsible for the tax identify fraud that occurred in the Class Members' names; (b) Intuit

18   took reasonable steps to prevent the fraud; (c) Intuit is obligated to submit suspicious returns

19   prepared through TurboTax, and it is up to the IRS, not Intuit, to catch the fraud; and (d) most

20   attempts at tax fraud through TurboTax are caught.  Moreover, as the Court is aware, Intuit

21   succeeded in obtaining dismissal of some claims, and the Court has ordered that the issue of

22   whether certain Plaintiffs' claims are subject to arbitration must be decided by an arbitrator.

23          While Plaintiffs believe that these obstacles are not insurmountable, they are indicative of

24   the risks that Plaintiffs and the proposed Class would face if the litigation were to continue.  The

25   proposed Settlement provides considerable, well-tailored relief while allowing Class Members to

26   avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

27   The Settlement also provides another significant benefit that would not be available if the

28   litigation were to go to trial—prompt relief.  Proceeding to trial could add years to the resolution

1  of this litigation, given the legal and factual issues raised and likelihood of appeals.

2                       **c.**         **The Settlement Treats Class Members Fairly and Equally**

3          The proposed Settlement does not grant preferential treatment to the Plaintiffs or to any

4  segment of the Class. All Class Members will be able to enroll, free of charge, in the TransUnion

5  credit monitoring services, and all Class Members (and other taxpayers) stand to benefit from the

6  Settlement's security commitments provisions, in the form of reduced risk of being victimized by

7  tax identity fraud in the future.  Moreover, plaintiff service awards, such as those requested for

8  the six Plaintiffs here, are commonly awarded in class actions, are well-justified under the

9  circumstances here, and are appropriate in amount given precedent and the Plaintiffs'

10  commitment and effort in the litigation.

11                       **d.**         **The Recommendation of Experienced Counsel Favors Approval**

12          In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

13  should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No.

14  08¬01520, 2009 WL 248367, at *4  (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska*

15  *P'ship*, No. 96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th

16  Cir. 1998). As demonstrated herein and in their respective firm declarations, Class Counsel have

17  extensive experience litigating and settling consumer class actions and other complex matters,[9]

18  and have conducted an extensive investigation into the factual and legal issues raised in this

19  litigation.[10]  Based on their experience and knowledge about this case, Class Counsel have

20  weighed the benefits of the Settlement against the inherent risks and expense of continued

21  litigation, and they believe that the proposed Settlement is fair, reasonable, and adequate.[11]  That

22  qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and

23  adequate supports approving the Settlement.

24

25

26  [9] *See* Heller Decl., ¶¶ 3-5; Kelston Decl., ¶ 3, Ex. A; Siprut Decl., ¶ 3; Goldman Decl., ¶¶ 2-8, Ex. A; Teppler Decl., ¶¶ 2-16.

27  [10] Heller Decl., ¶¶ 6-7.

28  [11] *See* Heller Decl., ¶ 9; Kelston Decl., ¶ 7; Siprut Decl., ¶ 5; Goldman Decl., ¶ 10; Teppler Decl., ¶ 18.

1

### D.   The Proposed Forms of Notice and the Notice Program Are Reasonable and Appropriate and Should Be Approved

2

3    Plaintiffs seek certification of a non-opt out class under Rule 23(b)(2), and thus notice to

4    the Class is within the Court's discretion.  *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class

5    certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.")

6    (emphasis added).  With that said, given that the Settlement here provides benefits beyond

7    injunctive or declaratory relief—including some benefits that are provided on an enrollment

8    basis—the parties agree that it is appropriate to provide notice to the Class, and to that end have

9    submitted a robust Notice Program for the Court's approval. *See* Fed. R. Civ. P. 23(e)(1) (notice

10   to the class should be provided "in a reasonable manner to all class members who would be

11   bound by the proposal"); *Gallucci v. Gonzales*, 603 F. App'x 533, 536 (9th Cir. 2015) (notice

12   should be "reasonably calculated, under all the circumstances, to apprise interested parties of the

13   pendency of the action") (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174 (1974)).

14   The proposed Notice Program here (Agreement, Ex. A) was crafted in consultation with

15   an experienced Settlement Administrator, and satisfies all appropriate standards.[12]   The proposed

16   Notice Program includes: direct summary notice to Class Members via email and mail; a

17   Settlement Website with a detailed Long-Form Notice, key case documents, and other

18   information, and the ability for Class Members to enroll in the credit monitoring benefit

19   electronically; and a toll-free telephone line where Class Members can get additional information.

20   Moreover, the proposed forms of notice inform Class Members, in clear and concise terms, about

21   the litigation, the terms of the Settlement, how they can obtain benefits, the manner and deadline

22   for submitting objections, and about their other rights.  (Agreement, Ex. A)  The Settlement

23   Administrator reports that the cost of providing notice is estimated to be approximately $221,878.

24   Keough Decl., Ex. B.

25   In sum, the proposed Notice Program fulfills all applicable requirements and should be

26   approved.

27

28

---

[12] *See generally* Keough Decl., filed herewith.

### E.     The Court Should Schedule a Final Approval Hearing and Related Dates

The next steps in the settlement approval process are to notify Class Members of the proposed Settlement, allow Class Members an opportunity to file objections, and hold a Final Approval Hearing.  Towards those ends, the Parties propose the following schedule:

| | |
|---|---|
| Last day for Intuit to provide the Class List to the Settlement Administrator and Skip Trace Provider | **7 days after entry of Preliminary Approval Order** |
| Notice Deadline | **21 days after entry of the Preliminary Approval Order** |
| Last day for: (a) Plaintiffs to file motion for final approval of the Settlement; and (b) Class Counsel to file their application for attorneys' fees, costs, and Plaintiff service awards | **24 days after Notice Deadline** |
| Objection Deadline | **45 days after Notice Deadline** |
| Credit Monitoring Enrollment Deadline | **60 days after Notice Deadline** |
| Last day for the Parties to file any responses to objections, and any reply papers in support of motion for entry of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and Plaintiff service awards | **14 days before Final Approval Hearing** |
| Final Approval Hearing | **_____ __, 201_ at _:__ _.m.** |

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

(1)    Grant preliminary approval of the proposed Settlement;

(2)    Certify, for settlement purposes, the Class as defined in the Agreement, pursuant to Rule 23(b)(2);

(3)    Appoint Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams as class representatives;

(4)    Appoint Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Tadler Phillips Grossman LLP; Goldman Scarlato & Penny, PC; Abbott Law Group, PA; and Siprut PC as Class Counsel;

(5)    Approve the Parties' proposed Notice Program, including the proposed forms of notice, and direct that notice be disseminated pursuant to such Notice Program;

1    (6)    Appoint JND as Settlement Administrator, and direct JND to carry out the
2           duties and responsibilities of the Settlement Administrator specified in the
            Agreement;

3    (7)    Approve the Parties' proposed form and method for Class Members to
            enroll in credit monitoring services provided by the Settlement, and set
4           deadlines for Class Members to enroll in such services and to object to the
            Settlement;
5
     (8)    Stay all non-Settlement related proceedings in this litigation pending final
6           approval of the Settlement; and

7    (9)    Set a Final Approval Hearing and certain other dates, as proposed herein,
            in connection with the final approval of the Settlement.
8

9
     Dated: August 23, 2018                    Respectfully submitted,
10

11                                             __/s/ Roger N. Heller_____
                                               Michael W. Sobol (SBN 194857)
12                                             Roger N. Heller (SBN 215348)
                                               Melissa A. Gardner (SBN 289096)
13                                             **LIEFF CABRASER HEIMANN &**
                                               **BERNSTEIN, LLP**
14                                             275 Battery Street, 29th Floor
                                               San Francisco, CA 94111
15                                             Telephone: 415.956.1000
                                               msobol@lchb.com
16                                             rheller@lchb.com
                                               mgardner@lchb.com
17
                                               Steven W. Teppler (FL SBN 14787)
18                                             **ABBOTT LAW GROUP P.A.**
                                               2929 Plummer Cove Road
19                                             Jacksonville, FL  32223
                                               Telephone: 904.292.1111
20                                             steppler@abbotlawpa.com

21                                             Mark S. Goldman (*pro hac vice*)
                                               **GOLDMAN SCARLATO & PENNY, P.C**
22                                             8 Tower Bridge, Suite 1025
                                               161 Washington Street
23                                             Conshohocken, PA 19428
                                               Telephone: 484.342.0700
24                                             goldman@lawgsp.com

25

26

27

28

- 19 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ariana J. Tadler (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Penn Plaza, Suite 1920
New York, NY 10119
Telephone: 212.594.5300
atadler@milberg.com

Joseph J Siprut (*pro hac vice*)
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, IL 60602
Telephone: 312.236.0000
jsiprut@siprut.com

*Interim Class Counsel and Proposed Class Counsel*