1  Michael W. Sobol (SBN 194857)
   msobol@lchb.com
2  Roger N. Heller (SBN 215348)
   rheller@lchb.com
3  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
4  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
5  Telephone:  415.956.1000

6  *Interim Class Counsel*

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  IN RE INTUIT DATA LITIGATION          Master Docket No.  15-CV-1778-EJD

12  _____

13  THIS DOCUMENT RELATES TO:             **DECLARATION OF ROGER N. HELLER
                                          IN SUPPORT OF PLAINTIFFS' MOTION
14  **ALL ACTIONS**                       FOR PRELIMINARY APPROVAL OF
                                          CLASS ACTION SETTLEMENT**
15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Roger N. Heller, hereby declare and state:

1.      I am a member in good standing of the California State Bar and a partner in the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), one of the firms serving as Interim Class Counsel in this case.  I am admitted to practice before this Court.  I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the Class Action Settlement Agreement, including the exhibits thereto, entered into by the parties in this litigation.

## Background and Experience

3.      LCHB is one of the oldest, largest, most respected, and most successful law firms in the country representing plaintiffs in class actions, and brings to the table a wealth of class action experience.  LCHB has been repeatedly recognized over the years as one of the top plaintiffs' law firms in the country, including by The National Law Journal and The American Lawyer.  A copy of LCHB's firm resume, which describes the firm's experience in class action and other complex litigation, can be found at http://www.lchbdocs.com/pdf/firm-resume.pdf, and is not attached hereto given its length.

4.      Among the firm's other areas of practice, LCHB has served in leadership positions in a wide range of consumer protection and privacy class actions.  By way of example only:

*Consumer Protection*

- LCHB served as Co-Class Counsel and lead trial counsel in *Gutierrez v. Wells Fargo Bank, N.A.*, (N.D. Cal.), a class action alleging unfair practices and false representations by Wells Fargo in connection with its imposition of overdraft

DECLARATION OF ROGER N. HELLER
15-CV-1778-EJD

charges.  In 2016, a $203 million class judgment, which was entered in 2010 following a bench trial, became final.

- LCHB serves on the Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation* (MDL 2036, S.D. Fla.), a Multi-District proceeding involving more than two dozen banks and allegations of unfair practices and false representations in connection with the banks' imposition of overdraft charges.  Class settlements totaling hundreds of millions of dollars have been approved by the MDL court to date.

- LCHB served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation* (MDL No. 2032, N.D. Cal.), a nationwide Multi-District class action alleging that Chase breached its good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate loans.  In November 2012, the court granted final approval to a $100 million nationwide settlement that provides direct payments to approximately one million cardholders and injunctive relief.

- LCHB served as Class Counsel in *In re TracFone Unlimited Service Plan Litigation* (N.D. Cal.), a nationwide class action alleging misleading advertisements about "unlimited" mobile data plans.  In 2015, the court granted final approval of a class settlement that that included a $40 million fund and important practice changes.

- LCHB served as Co-Lead Counsel in *In Re Providian Financial Corp. Credit Card Terms Litigation* (MDL No. 1301; and related JCCP proceedings), representing credit card holders who were charged excessive interest and late charges and sold "add on" products and services with promised benefits that were illusory.  In November 2001,

the court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes to its business practices.

- LCHB served as Co-Class Counsel in *Brazil v. Dell Inc.* (N.D. Cal.), a class action alleging that defendant engaged in false reference price advertising in connection with its online sale of computers.  This was the first class action of its kind to receive class certification.

- LCHB served as Class Counsel and Lead Plaintiffs' Counsel in *In re Apple and AT&T iPad Unlimited Data Plan Litigation* (N.D. Cal.), a class action alleging that defendants falsely advertised access to an unlimited data plan for the iPad device.  In 2014, the court granted final approval of a settlement whereby class members were able to submit claims for $40 cash payments and for access to an expanded 3G data plan for their iPads.

- LCHB served as Class Counsel in *Williamson v. McAfee* (N.D. Cal), a class action alleging that McAfee unfairly charged customers for the automatic-renewal of their anti-virus software and engaged in false reference price advertising.  In 2017, the court approved a settlement that provided monetary benefits and injunctive relief.

- LCHB serves as Interim Class Counsel in *In re Arizona Theranos, Inc. Litigation*, (D. Ariz.), a class action alleging that Walgreens and startup company Theranos, Inc. and its top executives committed fraud and battery by prematurely marketing to consumers blood testing services that were still in-development, not ready-for-market, and dangerously unreliable.

- LCHB served as Settlement Class Counsel in *Kline v. The Progressive Corporation* (No. 02-L-6, Illinois Circuit Court, Johnson County), a nationwide class action challenging Progressive Corporation's private passenger automobile insurance sales

- 3 -

DECLARATION OF ROGER N. HELLER
15-CV-1778-EJD

practices. In 2002, the court approved a settlement valued at approximately $450 million, which included both cash and equitable relief.

*Privacy*

- LCHB serves as one of two firms on the Plaintiffs' Steering Committee in *In Re Anthem, Inc. Data Breach Litigation* (N.D. Cal.), a Multi-District class litigation regarding a data breach that affected tens of millions of Anthem customers.  In 2018, the court granted final approval of a $115-million settlement—the largest data breach settlement to date.

- LCHB served as Co-Lead Class Counsel in *Corona v. Sony Pictures Entertainment, Inc.*, (C.D. Cal.), a class action alleging that Sony had inadequate security measures in place, which allowed cyber attackers to successfully steal its employees' personally identifying information.  In 2016, the court granted final approval of a settlement which provided for injunctive relief, identity protection/credit monitoring, and approximately $500-$1,500 compensation to valid claimants.

- LCHB, along with co-counsel, represented plaintiffs in *Shurtleff v. Health Net of Cal., Inc.* (Sacramento Cnty. Superior Court), a patient privacy class action in which the defendant had lost service drives containing highly sensitive personal information of its patients and employees.  A class settlement resulted in significant monetary relief and important data security improvements.

- LCHB served as class counsel in *Ebarle et al. v. LifeLock Inc.* (N.D. Cal.), a class action alleging that LifeLock failed to protect the personal information of its subscribers from hackers and criminals, contrary to its representations.  In 2016, the court granted final approval to a $68 million settlement of the case.

- LCHB serves as Co-Lead Counsel and Plaintiffs' Liaison Counsel in *Campbell v. Facebook* (N.D. Cal.), a class action alleging that Facebook intercepts private data in users' personal and private e-mail messages on the social network and profits by sharing that information with third parties. The court certified a litigation class pursuant to Rule 23(b)(2), and thereafter granted final approval of an injunctive relief settlement.

- LCHB served as Co-Lead Class Counsel in *Perkins v. LinkedIn Corporation* (N.D. Cal.), a class action alleging that individuals who joined LinkedIn's network had their names and likenesses used without consent by LinkedIn to endorse LinkedIn's services and send repeated emails to their contacts asking that they join LinkedIn. In 2016, the court granted final approval to $13 million settlement that also included important practice changes.

- LCHB was appointed Liaison Counsel in *In re Google Inc. Street View Electronic Communications Litigation* (N.D. Cal.), a class action alleging that Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected personal, private data being transmitted over private Wi-Fi networks located in homes within range of the vehicles' receptors. LCHB took the lead on briefing and arguing Google's appeal of the court's denial of its motion to dismiss and, in 2013, the Ninth Circuit Court of Appeals agreed with plaintiffs that Google's actions are not exempt from the Wiretap Act.

5.     Over the course of this litigation, several lawyers at LCHB have contributed significant amounts of time and effort to this case. The following are the primary LCHB partners and associates who worked on this case:

DECLARATION OF ROGER N. HELLER
15-CV-1778-EJD

- **Roger N. Heller**:   I graduated from Columbia University School of Law in 2001, where I was a Senior Editor for the *Columbia Law Review*.  From 2001 through 2005, I was a litigation associate at O'Melveny & Myers LLP.  From 2005 through 2008, I worked for the non-profit law firm Disability Rights Advocates, where I was a Senior Staff Attorney and worked primarily on prosecuting class actions under federal and state anti-discrimination laws.  I joined LCHB in 2008, and became a partner at LCHB in 2011.  During my entire time at LCHB, my practice has been focused on consumer protection and privacy class actions.  I have successfully represented large classes in numerous cases, including cases involving consumer banking, credit cards, false advertising, and data breaches.  Among other recognitions, I have been a finalist for the CAOC Consumer Attorney of the Year Award (2012 and 2013) and for the Public Justice Trial Lawyer of the Year Award (2012).

- **Michael W. Sobol** is a 1989 graduate of Boston University School of Law.  He practiced law in Massachusetts from 1989 to 1997. From 1995 through 1997, he was a Lecturer in Law at Boston University School of Law.  In 1997, he left his partnership in the Boston firm of Shafner, Gilleran & Mortensen, P.C. to move to San Francisco and to LCHB.  Since joining LCHB in 1997, he has represented plaintiffs in numerous consumer protection, privacy, and other class actions, and has been appointed to leadership roles in numerous MDLs and other class actions.  He has been a partner with LCHB since 1999, since 2002 has served as the head of LCHB's Consumer Protection practice group, and since 2016 has served as the head of LCHB's Cybersecurity and Data Privacy practice group.

- **Melissa A. Gardner** graduated in 2011 from Harvard Law School. After graduating, she worked as a law clerk for South Brooklyn Legal Services and at the law firm

Emery Celli Brinckerhoff & Abady in New York. Since joining LCHB as an associate in 2012, Ms. Gardner has represented plaintiffs in consumer protection, digital privacy, and mass tort litigation.

- **Jason L. Lichtman** graduated from University of Michigan Law School in 2006. He is a partner in LCHB's New York office, and his practice is focused on financial fraud, damages, and appeals. He has worked on numerous consumer and privacy class actions during his time at LCHB. He is court-appointed co-lead counsel in *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, MDL No. 2001 (N.D. Ohio) and *In re VTech*, No. 1:15-cv-10889 (N.D. Ill). Lichtman also has a lead role representing consumers in the *British Airways Fuel Surcharge Litigation* pending in federal court in New York and in *qui tam* litigation against several large banks related to alleged mortgage fraud.

- **Nicole D. Sugnet** graduated from University of California, Hastings College of the Law in 2006. Prior to her departure from LCHB in February 2017, she was a partner in LCHB's San Francisco office and represented consumers in cases involving false advertising, bait-and-switch schemes, and bad faith conduct, including litigating several class actions brought against banks and financial institutions for false and deceptive business practices, as well as multiple privacy cases. Prior to joining LCHB, she was an associate attorney at Green Welling, P.C.

## Investigation and Discovery

6.     The Settlement in this case was negotiated by Class Counsel who were well-informed about the issues and litigation risks as a result of their substantial investigation and discovery efforts. Prior to filing suit, LCHB, along with co-counsel, conducted a substantial investigation regarding the factual and legal issues involved in this case. This pre-filing

investigation included reviewing publically available information about the identity tax fraud

occurring through TurboTax and other services, identifying potential witnesses, speaking with

affected consumers about their experiences, and conducting legal research about potential claims.

LCHB's investigative efforts have continued through the course of the litigation, including further

investigation of public information and legal research, speaking with potential witnesses and

experts, and speaking with putative class members about their experiences.

7.     Class Counsel have also engaged in extensive formal discovery in this case,

including:  reviewing and analyzing more than 100,000 pages of pertinent documents produced

by Intuit, propounding and responding to numerous written discovery requests, engaging in

extensive meet and confers with Intuit regarding the availability and identification of

electronically stored data and documents and to resolve various discovery disputes.  Class

Counsel also conducted third party discovery, including with respect to the U.S. Internal Revenue

Service and Santa Barbara Bank, a financial institution that processed certain tax refunds for

returns filed through TurboTax, to identify additional pertinent documents and information.

**Settlement Negotiations**

8.     The Settlement here is the product of hard-fought, arms-length negotiations

between the parties and their well-informed counsel.  The parties participated in mediation

sessions with Hon. Edward A. Infante (Ret.) of JAMS on December 7, 2015 and March 14, 2018.

Following the second such session, and with the continuing assistance of Judge Infante, the

parties reached an agreement in principle on the terms of a proposed settlement.  After the parties

reached that agreement in principle, the Parties then negotiated regarding attorneys' fees and

expenses through further mediation with Judge Infante.  Since reaching an agreement in principle,

the parties have worked diligently to craft the settlement papers, including the Notice Program,

working closely with the proposed Settlement Administrator.

1

**The Settlement is Fair, Reasonable, and Adequate**

2

9.      Based on my experience and knowledge about the facts and issues in this case, I

3

believe that the Settlement reached in this litigation represents a fair, reasonable, and adequate

4

result for, and is in the best interests of, the Class Members.

5

6

I declare under penalty of perjury that the foregoing is true and correct.  Executed at San

7

Francisco, California, this 23rd day of August, 2018.

8

_____

9

Roger Heller

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

DECLARATION OF ROGER N. HELLER
15-CV-1778-EJD

# EXHIBIT A

Michael W. Sobol (SBN 194857)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  415.956.1000

Steven W. Teppler (pro hac vice)
**ABBOTT LAW GROUP, P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: 904.292.1111

Joseph J. Siprut (*pro hac vice*)
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, IL 60602
Telephone:  312.236.0000

Ariana J. Tadler (*pro hac vice*)
**MILBERG TADLER PHILLIPS**
**GROSSMAN LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone:  212.946.9453

Mark S. Goldman
**GOLDMAN SCARLATO & PENNY, P.C.**
Eight Tower Bridge
161 Washington Street, Suite 1025
Conshohocken, PA 19428

*Attorneys for Plaintiffs and the Proposed Class*

Rodger R. Cole (SBN 178865)
rcole@fenwick.com
Chieh Tung (SBN 318963)
ctung@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Alexis Caloza (SBN 278804)
acaloza@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

*Attorneys for Defendant Intuit Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INTUIT DATA LITIGATION | Case No.  15-CV-1778-EJD-SVK |
| THIS DOCUMENT RELATES TO: | **CLASS ACTION SETTLEMENT AGREEMENT** |
| **ALL ACTIONS** | Honorable Edward J. Davila |

Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams (collectively, "Plaintiffs"), on behalf of themselves and the members of the proposed Class (defined below), and Defendant Intuit Inc. ("Intuit"), hereby enter into this Class Action Settlement Agreement ("Agreement"), subject to the approval of the Court.

## RECITALS

1.    On April 20, 2015, Christine Diaz and Michelle Fugatt filed a putative class action against Intuit in the United States District Court for the Northern District of California, *Diaz et al. v. Intuit Inc.*, No. 15-cv-01778 (N.D. Cal.).

2.    On April 24, 2015, Carol Knoch filed a putative class action against Intuit in the United States District Court for the Northern District of Illinois, *Knoch v. Intuit Inc.*, No. 15-CV-3650 (N.D. Ill.).

3.    On May 15, 2015, David Stock filed a putative class action against Intuit in the United States District Court for the Northern District of California, *Stock v. Intuit Inc.*, No. 15-cv-02287 (N.D. Cal.).

4.    On May 21, 2015, James Lebinski filed a putative class action against Intuit in the United States District Court for the Northern District of California, *Lebinski v. Intuit Inc.*, No. 15-cv-02209 (N.D. Cal.).

5.    On May 26, 2015, the *Stock* and *Lebinski* actions were administratively related to the *Diaz* action, pursuant to Northern District of California Civil Local Rule 3-12.

6.    On July 1, 2015, Intuit filed a motion to compel arbitration or, in the alternative, to transfer the *Knoch* action, pursuant to 28 U.S.C. § 1404(a), to the Northern District of California.

7.     On August 24, 2015, by stipulation of the Parties, the *Stock*, *Lebinski*, *Knoch*, and *Diaz* actions were all consolidated before the Hon. Edward J. Davila in the Northern District of California, under the consolidated case title, *In re Intuit Data Litigation* (N.D. Cal. Case No. 15-cv-1778-EJD), and Judge Davila designated as Interim Class Counsel the following:  Michael W. Sobol of Lieff Cabraser Heimann & Bernstein, LLP, Steven W. Teppler of Abbott Law Group, PA; Mark Goldman of Goldman Scarlato & Penny, PC; Ariana J. Tadler of Milberg, LLP, and Joseph J. Siprut of Siprut, PC (Dkt. 39).

8.     On August 10, 2015, September 4, 2015, and September 9, 2015, respectively, the separate putative class actions that had been commenced by plaintiffs Knoch, Lebinski, and Stock were dismissed without prejudice.

9.     On September 29, 2015, Richard Brown, Christine Diaz, Michelle Fugatt, Carol Knoch, James Lebinski, Todd Siegel, David Stock, and Marilyn Williams filed a Consolidated Amended Complaint (Dkt. 51).

10.     On December 1, 2015, Intuit filed a motion to dismiss Plaintiffs' Consolidated Amended Complaint and a motion to compel the claims of plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams to arbitration (Dkt. 61, 62).

11.     On December 18, 2015, Richard Brown, Christine Diaz, Michelle Fugatt, Carol Knoch, James Lebinski, Todd Siegel, David Stock, and Marilyn Williams filed a Second Consolidated Amended Complaint (Dkt. 69).

12.     On February 4, 2016, Intuit filed a motion to compel the claims of plaintiffs Knoch, Lebinski, Siegel, Stock, and Williams to arbitration (Dkt. 75) (the "Arbitration Motion"). On February 5, 2016 Intuit filed a motion to dismiss Plaintiffs' Second Consolidated Amended Complaint (Dkt. 78).

13.     On September 20, 2016 and on July 7, 2017, respectively, Michelle Fugatt and Todd Siegel voluntarily dismissed without prejudice their claims against Intuit (Dkt. 98, 111).

14.     On September 29, 2017, the Court granted Intuit's Arbitration Motion, delegating to an arbitrator the question of whether the claims of plaintiffs Knoch, Lebinski, Stock, and Williams must be arbitrated, and staying proceedings as to those four plaintiffs' claims (Dkt. 123) (the "Arbitration Order").

15.     On September 29, 2017, the Court granted in part and denied in part Intuit's motion to dismiss Plaintiffs' Second Consolidated Amended Complaint (Dkt. 124).

16.     On October 27, 2017, plaintiffs Knoch, Lebinski, Stock, and Williams filed a motion seeking certification of the Court's Arbitration Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and, in the alternative, seeking reconsideration of the Arbitration Order (Dkt. 127) ("Section 1292 Motion").

17.     On November 17, 2017 plaintiffs Brown, Diaz, Knoch, Lebinski, Stock, and Williams filed a Third Consolidated Amended Complaint, alleging claims against Intuit, on behalf of themselves and a putative class, under Cal. Bus. & Prof. Code § 17200 *et seq*. and common law claims for negligence, aiding and abetting fraud, and unjust enrichment (Dkt. 131).

18.     On December 15, 2017 Intuit filed a partial motion to dismiss Plaintiffs' Third Consolidated Amended Complaint (Dkt. 139-3).

19.     On February 16, 2018, the Court denied Plaintiffs' Section 1292 Motion (Dkt. 158).

20.     On May 15, 2018, the Court granted Intuit's partial motion to dismiss, dismissing plaintiff Brown's negligence claim and dismissing the aiding and abetting fraud claim of plaintiffs Brown and Diaz (Dkt. 164).

21.     The Parties participated in mediation sessions with Hon. Edward A. Infante (Ret.) of JAMS on December 7, 2015 and March 14, 2018.  Following the second such session, and with the continuing assistance of Judge Infante, the Parties reached an agreement in principle on the terms of a proposed settlement.  After the Parties reached that agreement in principle, the Parties then negotiated regarding attorneys' fees and expenses through further mediation with Judge Infante.

22.     Class Counsel has conducted an extensive investigation and discovery relating to the claims alleged in this Action, including reviewing more than 100,000 pages of documents produced by Intuit.  Plaintiffs and Class Counsel conclude, in light of the substantial benefits the Settlement confers on the Class Members, the applicable law, the uncertainties in the outcome of the Action and the expense and length of time necessary to prosecute the Action through trial and possible appeals, that the terms of the Settlement are fair, adequate, and reasonable and that it is in Class Members' interest that the Action be fully and finally settled on the terms set forth herein.  Intuit also believes that a settlement should be consummated as set forth herein.

23.     Intuit denies any wrongdoing.  This Settlement shall in no event be construed or deemed to be evidence of or an admission, presumption or concession on the part of Intuit of any fault, liability, or wrongdoing as to any facts or claims asserted in this action (or any infirmity in the defenses it has asserted or could assert in the Action), or any other actions or proceedings, and shall not be interpreted, construed, offered, or received in evidence or otherwise used against Intuit in any other action or proceeding, whether civil, criminal or administrative.

NOW THEREFORE, the Parties, by and among themselves, and through their respective counsel, hereby STIPULATE AND AGREE as follows:

## DEFINITIONS

24.     "Agreement" means this Class Action Settlement Agreement, including all Exhibits hereto.

25.     "Action" means *In re Intuit Data Litigation*, (N.D. Cal. Case No. 15-cv-1778-EJD-SVK).

26.     "ATO" means Account Takeover Refund Fraud, and describes the process by which an unauthorized person uses credentials purchased, stolen or otherwise obtained elsewhere to access an existing TurboTax account and files a fraudulent return in the victim's name through TurboTax.

27.     "Class" means:  All persons in the United States in whose identities fraudulent federal tax returns for the Tax Years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  Excluded from the Class are all employees of Intuit, counsel for the Parties, the Judge presiding over this Action, and Court staff.

28.     "Class Counsel" means Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Tadler Phillips Grossman LLP; Goldman Scarlato & Penny, PC; Abbott Law Group, PA; and Siprut, PC.

29.      "Class Member(s)" means all persons within the Class as defined herein.[1]

30.     "Credit Monitoring Provider" means TransUnion Interactive, Inc.

31.     "Court" means the United States District Court for the Northern District of California.

---

[1]  Intuit has a list of the Class Members, which it has generated from:  (a) records provided to Intuit by the United States Internal Revenue Service; and (b) Intuit's records.  Intuit represents that, according to such records, there are approximately 915,715 Class Members in total.

32.     "Effective Date" means the first date after which all of the following events have occurred:  (a) the Agreement is fully executed by all signatories; (b) the Court has approved the Settlement and entered Final Judgment; and (c) the Final Judgment has become final in that the time for appeal or writ has expired or, if any appeal and/or petition for review is taken and the Settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the judgment shall not be final.

33.     "Exhibits" means the exhibits to this Agreement.

34.     "Final Approval Hearing" means a hearing scheduled by the Court to determine the final fairness of the settlement embodied in this Agreement.

35.     "Final Judgment" means the final judgment, as entered by the Court, substantially in the form attached hereto as Exhibit D.

36.     "Intuit" means Defendant Intuit Inc.

37.     "Intuit's Counsel" means Fenwick & West LLP.

38.     "Notice Program" means the proposed forms and methods for giving notice to the Class of the Settlement, as described in Exhibit A attached hereto.

39.     "Parties" means Plaintiffs and Intuit.

40.     "Plaintiffs" means Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams.

41.     "Preliminary Approval Order" means the Court's order preliminarily certifying the Class for settlement purposes, approving and directing Class notice, and setting the Final Approval Hearing, substantially in the form attached hereto as Exhibit C.

42.     "Settlement" means the settlement described in this Agreement.

43.     "Settlement Administrator" means JND Legal Administration, subject to approval by the Court.

44.     "SIRF" means Stolen Identity Refund Fraud, and describes the process by which a fraudster gathers data about a taxpayer from outside means, creates a fraudulent, new TurboTax account in the victim's name, and uses TurboTax to file a fraudulent tax return in the victim's name.

45.     "Skip Trace Provider" means TransUnion Risk and Alternative Data Solutions, Inc., a subsidiary of TransUnion LLC.

## CERTIFICATION OF THE SETTLEMENT CLASS

46.     For settlement purposes only, Plaintiffs will seek, and Intuit will not oppose, certification of the Class, as defined herein, pursuant to Fed. R. Civ. P. 23(b)(2).  Such class certification shall be sought as to all claims for non-monetary relief asserted in Plaintiffs' Third Consolidated Amended Complaint (Dkt. 139-3).

47.     For settlement purposes only, Plaintiffs will also seek, and Intuit will not oppose, appointment of Class Counsel and appointment of Plaintiffs to represent the Class.

## SETTLEMENT ADMINISTRATOR

48.     The Parties have agreed that, subject to Court approval, JND Legal Administration (the "Settlement Administrator"), an independent third party, shall administer the Settlement.  The Settlement Administrator shall perform the administrative tasks as described in this Agreement, including but not limited to with respect to implementation of the Notice Program, and the processing of Class Members' enrollment in credit monitoring services by the Credit Monitoring Provider as set forth in paragraphs 51-53 below and Exhibit A hereto.  The Parties agree that the Settlement Administrator is an independent contractor, and not the agent of

any Party or any Party's counsel.  The Parties shall require the Settlement Administrator to treat any and all information regarding the personally identifiable information of Class Members as highly confidential and shall prohibit the Settlement Administrator from disclosing such information to any third-parties other than the Skip Tracing Provider and/or the Credit Monitoring Provider.  All fees and expenses charged by the Settlement Administrator in connection with the Settlement shall be paid by Intuit, in addition to, and separate from, the other settlement benefits provided to Class pursuant to the Settlement.

## PRELIMINARY APPROVAL

49.     Upon execution of this Agreement by all signatories, Plaintiffs shall promptly file this Agreement with the Court and request by motion (which motion Intuit will not oppose) that the Court enter an Order, substantially in the form attached hereto as Exhibit C ("Preliminary Approval Order"), granting preliminary approval of the Settlement.  The Preliminary Approval Order shall accomplish the following:

a.     Find that the requirements of Federal Rule of Civil Procedure 23(a) & (b)(2), and any other requirements for certification of a settlement class, have been satisfied, and certify the Class for settlement purposes;

b.     Preliminarily approve the Settlement as fair, reasonable, and adequate and within the range of approval;

c.     Find that the Notice Program is reasonable and appropriate and satisfies any applicable due process and other requirements, and direct the Parties and the Settlement Administrator to implement the Notice Program;

d.     Set the deadlines for Class Members to enroll in the credit monitoring services being provided pursuant to the Settlement and to submit objections to the Settlement;

e.     Set a date for the Final Approval Hearing at which the Court will finally determine the fairness, reasonableness, and adequacy of the proposed Settlement;

f.     Appoint Plaintiffs as class representatives for the Class; and

g.     Appoint Class Counsel to represent the Class.

50.     In the event the Court disapproves or sets aside this Settlement or any material part hereof for any reason, then the Parties will either jointly agree to accept the Settlement as judicially modified or engage in negotiations in an effort to jointly agree to modify the Settlement for resubmission to the Court for approval.  The Parties may agree by stipulation executed by counsel to modifications of the Exhibits to this Agreement to effectuate the purpose of the Settlement and/or to conform to guidance from the Court with regard to the contents of such Exhibits without need for further amendment of this Agreement.  Any such stipulation shall be filed with the Court.

## SETTLEMENT RELIEF

51.     Settlement relief to the Class shall consist of:  (a) two years of credit monitoring services provided, free of charge, to Class Members on an enrollment basis; and (b) Intuit's previous adoption of numerous security measures that Intuit believes have reduced the incidence of SIRF and ATO; and (c) Intuit's commitment to follow the security requirements that come out of the IRS Security Summit until at least 2021, or until the IRS Security Summit process ends, whichever is sooner.

### Credit Monitoring Services

52.     Intuit shall arrange to provide, and shall pay the costs associated with providing, two (2) years of credit monitoring service for Class Members, free of charge, on an enrollment basis.  Class Members shall have the option of enrolling, free of charge, in credit monitoring service provided by the Credit Monitoring Provider as such services are described in further

9

detail in Exhibit E hereto.  All forms of notice provided to the Class pursuant to the Notice Program shall include the web address (URL) of the page on the Settlement Website where Class Members can enroll electronically in the credit monitoring services or download a hard copy enrollment form.  All email notices sent to Class Members pursuant to the Notice Program shall include a hyperlink to the page on the Settlement Website where Class Members can enroll electronically in the credit monitoring services or download a hard copy enrollment form.  The time window for Class Members to enroll in the credit monitoring services shall be open through and including 60 days after the Notice Deadline (the "Credit Monitoring Enrollment Deadline"). In addition, the Settlement Website shall provide information about resources available to Class Members who experience identity theft or fraud. Following the Credit Monitoring Enrollment Deadline, the Settlement Administrator shall provide the Credit Monitoring Provider with a complete list of Class Members who have enrolled in the credit monitoring services.

53.     The Credit Monitoring Provider shall commence providing the two (2) years of credit monitoring services to all Class Members who timely enroll beginning no later than five (5) business days after entry of the Final Judgment, notwithstanding any objections or appeals that may be submitted or filed.

**Security Improvements Made By Intuit**

54.     Since the date of the first class action complaint in this Action (April 20, 2015), Intuit has adopted numerous security measures that Intuit believes have reduced the incidence of SIRF and ATO.  These security measures, already adopted by Intuit, are identified and described in Exhibit B hereto.

55.     Intuit agrees to continue to participate in the IRS Security Summit until at least 2021, or until the IRS Security Summit process ends, whichever is sooner.  Intuit agrees to

10

follow the security requirements that come out of the IRS Security Summit process during that time period.

## NOTICE

56.    **Notice Program.** Exhibit A hereto sets forth the Parties' proposed Notice Program for providing notice to the Class of the Settlement, subject to approval by the Court.

**57.    CAFA Notice.**  Within ten (10) days of the Plaintiffs' filing of the motion for preliminary settlement approval with the Court, Intuit (itself and/or with the assistance of the Settlement Administrator) shall serve upon the appropriate State official of each State in which a Class Member resides and the United States Attorney General, a notice of the proposed Settlement, in accordance with 28 U.S.C. § 1715, shall provide a copy of such notice to Class Counsel, and shall file with the Court a notice of compliance with 28 U.S.C. § 1715.

58.    No later than seven (7) days before the Final Approval Hearing, the Settlement Administrator shall file an affidavit confirming its implementation of the Notice Program as approved and directed by the Court.

59.    All costs and expenses of the Settlement Administrator, including in connection with the Notice Program, shall be paid by Intuit.

## OBJECTION PROCEDURES

60.    Any Class Member may object to the Settlement, Class Counsel's application for attorneys' fees and expenses, and/or the request for Plaintiff service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to Class Counsel and Intuit's Counsel, at the addresses listed in the Long-Form Notice (as defined in Ex. A), postmarked no later than forty-five (45) days after the Notice Deadline (as defined in Ex. A) (the "Objection Deadline"), and must include the following:  (i) the case caption; (ii) the name, address, telephone number, and signature of the person objecting; (iii) a statement whether the

objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, (iv) a statement of the grounds for his or her objection; and (v) the basis upon which the objector claims to be a Class Member.

61.    Class Members who do not submit timely written objections in the manner specified above shall be deemed to have waived any objections and shall be forever barred from making any objection to the Settlement.

62.    Any Class Member who submits an objection shall nevertheless be entitled to all benefits of the Settlement.

## FINAL APPROVAL

63.    Plaintiffs' motion for preliminary settlement approval shall include a request that the Court schedule a date on which the Final Approval Hearing will occur.  Pursuant to 28 U.S.C. § 1715(d), the Final Approval Hearing shall not be held, and no Final Judgment shall issue, earlier than ninety (90) days after completion by Intuit of the notice requirement in 28 U.S.C. § 1715.  The Parties further agree that, subject to the Court's schedule, the Final Approval Hearing will be held within thirty (30) days after the Credit Monitoring Enrollment Deadline.

64.    By no later than twenty one (21) days before the Objection Deadline, Plaintiffs and Class Counsel shall file a motion for final approval of the Settlement and an application for attorneys' fees and expenses and for Plaintiff service awards.  By no later than fourteen (14) days before the Final Approval Hearing, Plaintiffs and Class Counsel shall file any responses to any Class Member objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees and expenses and for Plaintiff service awards.

65.    At or following the Final Approval Hearing, the Court will determine whether to grant final approval of the Settlement, and whether to approve Class Counsel's request for

attorneys' fees and expenses and for Plaintiff service awards. In moving for final approval of the Settlement, Plaintiffs will request that the Court enter a Final Judgment substantially in the form attached hereto as Exhibit D.

## ATTORNEYS' FEES AND EXPENSES; PLAINTIFF SERVICE AWARDS

66.     Class Counsel may seek from the Court an award of attorneys' fees and expenses not to exceed $2,820,000 in total. Intuit will pay Class Counsel any attorneys' fees and expenses awarded by the Court, up to a maximum of $2,820,000 in total, in addition to the other benefits being provided to the Class Members pursuant to the Settlement.

67.     In accordance with instructions for payment provided by Class Counsel to Intuit, the attorneys' fees and expenses awarded by the Court shall be paid within twenty (20) days following the later of entry of the Final Judgment or any separate order awarding attorneys' fees and expenses. In the event the order approving attorneys' fees and expenses is reversed on appeal or the Settlement is voided, rescinded, or terminated for any other reason provided under the terms of this Agreement ("Repayment Event"), then Class Counsel shall, within ten (10) business days after the Repayment Event, return to Intuit all attorneys' fees and expenses consistent with the relevant court ruling.

68.     Class Counsel shall be solely responsible for allocating any Court-awarded attorneys' fees and expenses and distributing each participating firm's allocated share of such attorneys' fees and expenses to that firm, and Intuit shall have no responsibility for distribution of attorneys' fees and expenses among participating firms. Except as set forth herein, Intuit shall have no other payment obligations owed to Class Counsel or any other counsel for Class Members relating to the Action for any amount, individually or collectively, directly or indirectly, however denominated or for whatever purpose incurred.

69.     Class Counsel may seek from the Court service awards, in an amount not to exceed $5,000 each, for the Plaintiffs, to compensate them for their time and commitment in the Action.  Intuit will pay any service awards awarded by the Court, up to a maximum of $5,000 each, in addition to the other benefits being provided to the Class Members pursuant to the Settlement.  Any application for service awards will be based on the Plaintiffs' time and commitment in the Action, and will not be based or conditioned upon Plaintiffs' support for the Settlement.  Any service awards granted by the Court shall be remitted by Intuit to Class Counsel at the same time and in the same manner that Intuit makes payment to Class Counsel of any court-awarded attorneys' fees and expenses pursuant to paragraph 67 above.  Class Counsel shall be responsible for distributing the service awards to Plaintiffs.

70.     Class Counsel shall file any application for attorneys' fees and expenses and for Plaintiff service awards no later than twenty one (21) days before the Objection Deadline.  After it is filed, such application shall be posted on the Settlement Website.

71.     In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and expenses, or the payment of Plaintiff service awards, in the amounts requested, the remaining provisions of this Settlement shall remain in full force and effect.  No order of the Court declining to approve, in whole or in part, the payment of attorneys' fees and expenses or the payment of Plaintiff service awards, or modification or reversal or appeal of any order of the Court that has the effect of declining to approve, in whole or in part, the payment of attorneys' fees and expenses or the payment of Plaintiff service awards, shall constitute grounds for cancellation or termination of this Settlement.

## RELEASES

72.     As of the Effective Date, Plaintiffs and all other Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, partners,

successors, and assigns (collectively, the "Releasing Parties"), shall waive, release, forever discharge, and will not in any manner pursue the Action or any claims, complaints, actions, proceedings, or remedies of any kind (including, without limitation, claims for attorneys' fees and expenses and costs) whether in law or in equity, under contract, tort or any other subject area, under any statute, rule, regulation, order, or law, whether federal, state, or local, arising from the beginning of time through the Effective Date, based on any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, that were or could have been alleged in the Action or that otherwise arise from or relate to the subject matter of the Action ("Released Claims"), against Intuit or any of Intuit's current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, investors, contractors, successors, joint venturers, predecessors, related entities, and assigns, and all other individuals and entities acting on Intuit's behalf (collectively, the "Released Parties").  Notwithstanding the foregoing, the release provided for herein, and the Released Claims, shall extend only to claims for declaratory, injunctive and non-monetary equitable relief.  Without limiting the foregoing, no Releasing Party releases any claim for damages or other monetary relief.

73.    Intuit agrees not to sue Plaintiffs or their counsel for malicious prosecution or abuse of process based on the filing of this Action or the underlying actions, or any papers previously filed therein.

74.    The Parties acknowledge that they have consulted with legal counsel and are familiar with the provisions of California Civil Code Section 1542, which states:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of

executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

75.     The Parties, being aware of California Civil Code Section 1542, expressly waive any rights they may have under that statute as well as under any other statute or common law principles of similar effect with respect to the claims released in paragraphs 72-73, above.

76.     The Parties acknowledge that after the Effective Date they may discover facts different from or in addition to those that they may now know or believe to be true with respect to the matters being released by this Settlement.  The Parties expressly assume the risk of the possible discovery of any such additional or different facts.  This Settlement will remain effective in all respects regardless of any such additional or different facts.

77.     Plaintiffs acknowledge, and other Class Members by operation of law shall be deemed to have acknowledged, that the release of unknown claims was separately bargained for and was a key element of the settlement embodied in this Agreement.

78.     Upon entry of Final Judgment, the Releasing Parties shall be enjoined from prosecuting any Released Claim against the Released Parties or based on any actions taken by the Released Parties that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

79.     Nothing in paragraphs 72-75 herein shall be a bar to a claim, complaint, action, or proceeding for breach of this Agreement.

## ADDITIONAL PROVISIONS

80.     **Termination**.  The Parties shall have the right to terminate the Settlement if any of the following events occurs:

16

       a.     The Court does not enter an order granting preliminary approval of the Settlement, as provided herein;

       b.     The Court does not enter an order granting final approval of the Settlement, as provided herein; or

       c.     The Court requires material alteration of any provision of the Settlement for the Settlement to be approved, including without limitation, regarding the settlement benefits to be provided to the Class and the releases set forth in paragraphs 72-75.

81.    **Notice of Termination**.  A Party shall provide written notice of any intent to terminate the Settlement to counsel for the other Party promptly and no later than thirty (30) calendar days after receiving notice that any of the foregoing events above has occurred.

82.    **Effect of Termination**.  In the event that the Settlement is voided, terminated, or cancelled, or the Effective Date fails to occur for any reason whatsoever, then the Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of this Agreement.

83.    **Best Efforts**.  The Parties agree to cooperate in good faith and use their best efforts to effectuate all of their respective obligations under the Settlement, including obtaining preliminary and final settlement approval, and all steps that may be necessary in order to reach the Effective Date, and to do so as quickly and efficiently as practicable.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of the Settlement, the Parties shall mediate the disagreement before Hon. Edward A. Infante or another mutually-agreeable mediator.  The Parties shall not seek the Court's intervention until they have exhausted the mediation process.

84. **Limited Admissibility of Settlement**. This Settlement is made in compromise of a dispute. Regardless of whether the Court approves the Settlement, neither the Settlement nor anything that any of the Parties stated or did during the negotiation of the Settlement will be construed or used in any manner as an admission of liability or evidence of either Party's fault, liability or wrongdoing. On the contrary, the Parties expressly deny any liability or wrongdoing whatsoever. Notwithstanding the foregoing restrictions in this paragraph, Intuit may file this Agreement and the Final Judgment (if and when such Final Judgment is entered) in any action that may be or has been brought against it in order to support a defense, counterclaim or cross claim.

85. **Notices**. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the date of electronic mailing. Postal mailing will be provided as well, addressed as follows:

> **To Plaintiffs' Class Counsel**:

> Roger N. Heller
> rheller@lchb.com
> **LIEFF CABRASER HEIMANN &**
> **BERNSTEIN LLP**
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111

> Ariana J. Tadler
> atadler@milberg.com
> **MILBERG TADLER PHILLIPS**
> **GROSSMAN LLP**
> One Pennsylvania Plaza, Suite 1920
> New York, NY 10119

> Mark S. Goldman
> goldman@lawgsp.com
> **GOLDMAN SCARLATO & PENNY,**
> **P.C.**
> Eight Tower Bridge
> 161 Washington Street, Suite 1025
> Conshohocken, PA 19428

> Steven W. Teppler
> steppler@abbottlawpa.com
> **ABBOTT LAW GROUP, P.A.**
> 2929 Plummer Cove Road
> Jacksonville, FL 32223

> Todd L. McLawhorn
> tmclawhorn@siprut.com
> **SIPRUT PC**
> 17 North State Street, Suite 1600
> Chicago, IL 60602

**To Intuit's Counsel**:

| | |
|---|---|
| Rodger R. Cole (SBN 178865) | Alexis Caloza (SBN 278804) |
| rcole@fenwick.com | acaloza@fenwick.com |
| Chieh Tung (SBN 318963) | **FENWICK & WEST LLP** |
| ctung@fenwick.com | 555 California Street, 12th Floor |
| **FENWICK & WEST LLP** | San Francisco, CA 94104 |
| Silicon Valley Center | |
| 801 California Street | |
| Mountain View, CA 94041 | |

**To Intuit**:

Intuit Inc.
2700 Coast Ave.
Mountain View, CA 94043

86.    **Privacy**.   The Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information remain in effect—including the Stipulated Protective Order (Dkt. 56) and the Court's Order on Joint Letter Brief Re Documents Subject to 26 U.S.C. § 7216 (Dkt. 115)—and all Parties and counsel remain bound to comply with them.   Nothing contained in this Agreement or any order of the Court related to this Agreement, nor any act required to be performed pursuant to this Agreement is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection or any other privilege or protective doctrine afforded by law.

87.    **Limitation on Public Statements About Settlement**.   The Parties agree that both before and after Preliminary Approval of the Settlement, they shall not publish, issue, or cause to be issued any statement or press release including in print, electronic, on the internet, or other outlets concerning the Settlement without the prior written review and approval of all other Parties, which approval shall not be unreasonably withheld or delayed.

88.    **Exhibits**.   The terms of this Settlement include the terms set forth in the attached Exhibits, which are incorporated by this reference as though fully set forth herein.

89.   **Captions or Headings**.   The captions or headings of paragraphs in this Agreement are inserted for convenience, reference, and identification purposes only, and shall neither control, define, limit, nor affect any provisions of this Settlement.

90.   **Defined Terms**.   Terms defined in this Settlement shall have their defined meanings whenever and wherever they occur herein (including in the Exhibits).

91.   **Stay of Proceedings**.   To the extent approved by the Court, the Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the entry of Final Judgment.

92.   **Amendment or Modification**.   Any amendment to this Agreement must be in writing, signed by the Parties, and expressly state that it is amending this Agreement.

93.   **Waiver of Compliance**.   No Party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Settlement.  Moreover, a waiver of any breach of this Agreement by any Party shall not be deemed to be a waiver by any Party of any other breach of this Agreement.

94.   **Entire Agreement**.   This Agreement sets out all terms agreed between the Parties and supersedes all previous or contemporaneous agreements between the Parties relating to its subject matter.  In entering into this Agreement, neither Party has relied on, and neither Party will have any right or remedy based on, any statement, representation or warranty (whether made negligently or innocently), except those expressly set out in this Agreement.

95.   **Authorization to Enter Agreement**.   The Parties warrant and represent they are authorized to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement, to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.

96.    **Parties' Knowledge and Advice of Counsel**.   Each Party enters into this Agreement with the opportunity to seek the advice of counsel and executes and delivers this Agreement being fully informed as to its terms, content, and effect.

97.    **Agreement Binding on Successors in Interest**.   This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

98.    **Assignment**.   This Agreement, including any of the rights and duties of any Party under the Agreement, may not be assigned without prior written approval by the other Party.

99.    **Jurisdiction of the Court**.   The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including all Class Members, and over the interpretation, implementation, administration and enforcement of this Settlement.

100.    **No Construction Against Any Party**.   The terms of this Settlement have been negotiated at arm's-length among knowledgeable Parties represented by experienced counsel. The Parties agree that the normal rules of construction that any ambiguity in a document is construed against the drafting party shall not apply to the interpretation or enforcement of this Agreement, as the Parties, including through their counsel, each participated in the drafting of this Agreement.

101.    **Extensions of Time**.   The Parties may agree upon a reasonable extension of time for any deadline or date reflected in this Agreement, without further notice (subject to Court approval as to Court dates).

102.    **Counterparts**.   The Parties may execute this Agreement in counterparts, including facsimile, PDF, and other electronic copies, which taken together will constitute one instrument.

103.    **<u>Governing Law</u>**.  This Settlement shall be governed by, construed and enforced in accordance with the laws of California.

104.    **<u>Signatures</u>**.  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _08 — 2 2 —_, 2018

_____
Richard Brown

Dated: _____, 2018

_____
Christine Diaz

Dated: _____, 2018

_____
Carol Knoch

Dated: _____, 2018

_____
James Lebinski

Dated: _____, 2018

_____
David Stock

Dated: _____, 2018

_____
Marilyn Williams

INTUIT INC.                              Dated: _____, 2018

    By: _____
    Title: _____
    Date: _____

Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:

Dated: _____, 2018

_____
Roger N. Heller
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

23

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018     _____
                                    Richard Brown

Dated: __August 22__, 2018          _Christine Diaz_ (signature)
                                    _____
                                    Christine Diaz

Dated: _____, 2018     _____
                                    Carol Knoch

Dated: _____, 2018     _____
                                    James Lebinski

Dated: _____, 2018     _____
                                    David Stock

Dated: _____, 2018     _____
                                    Marilyn Williams

INTUIT INC.                         Dated: _____, 2018

      By:    _____
      Title: _____
      Date:  _____

Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:

Dated: _____, 2018     _____
                                    Roger N. Heller
                                    **LIEFF CABRASER HEIMANN &**
                                    **BERNSTEIN, LLP**

23

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018        _____
                                            Richard Brown


Dated: _____, 2018        _____
                                            Christine Diaz


Dated: ___8/ 23___, 2018                    _____
                                            Carol Knoch


Dated: _____, 2018        _____
                                            James Lebinski


Dated: _____, 2018        _____
                                            David Stock


Dated: _____, 2018        _____
                                            Marilyn Williams


INTUIT INC.                                 Dated: _____, 2018

        By: _____
        Title: _____
        Date: _____


Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:


Dated: _____, 2018        _____
                                            Roger N. Heller
                                            **LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP**

23

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018

_____
Richard Brown

Dated: _____, 2018

_____
Christine Diaz

Dated: _____, 2018

_____
Carol Knoch

Dated: __22 AUG__, 2018

_____
James Lebinski

Dated: _____, 2018

_____
David Stock

Dated: _____, 2018

_____
Marilyn Williams

INTUIT INC.

Dated: _____, 2018

By: _____
Title: _____
Date: _____

Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS:**

Dated: _____, 2018

_____
Roger N. Heller
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

23

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018

_____
Richard Brown

Dated: _____, 2018

_____
Christine Diaz

Dated: _____, 2018

_____
Carol Knoch

Dated: _____, 2018

_____
James Lebinski

Dated: _____8/22_____, 2018

*David Stock*_____
_____

Dated: _____, 2018

_____
Marilyn Williams

INTUIT INC.                               Dated: _____, 2018

    By:   _____
    Title:  _____
    Date:  _____

Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:

Dated: _____, 2018

_____
Roger N. Heller
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018          _____
                                        Richard Brown

Dated: _____, 2018          _____
                                        Christine Diaz

Dated: _____, 2018          _____
                                        Carol Knoch

Dated: _____, 2018          _____
                                        James Lebinski

Dated: _____, 2018          _____
                                        David Stock

Dated: _____ August 22, 2018          _____
                                        Marilyn Williams

INTUIT INC.                             Dated: _____, 2018

        By:    _____
        Title: _____
        Date:  _____

Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:

Dated: _____, 2018          _____
                                        Roger N. Heller
                                        **LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP**

23

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018        _____
                                     Richard Brown

Dated: _____, 2018        _____
                                     Christine Diaz

Dated: _____, 2018        _____
                                     Carol Knoch

Dated: _____, 2018        _____
                                     James Lebinski

Dated: _____, 2018        _____
                                     David Stock

Dated: _____, 2018        _____
                                     Marilyn Williams

INTUIT INC.                          Dated: August 23 _____, 2018

        By:     _____
        Title:  VP Finance and Treasurer, Intuit
        Date:   august 23, 2018

Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:

Dated: _____, 2018        _____
                                     Roger N. Heller
                                     **LIEFF CABRASER HEIMANN &**
                                     **BERNSTEIN, LLP**

22

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by themselves or by their duly authorized counsel.

Dated: _____, 2018      _____
                                  Richard Brown


Dated: _____, 2018      _____
                                  Christine Diaz


Dated: _____, 2018      _____
                                  Carol Knoch


Dated: _____, 2018      _____
                                  James Lebinski


Dated: _____, 2018      _____
                                  David Stock


Dated: _____, 2018      _____
                                  Marilyn Williams


INTUIT INC.                       Dated: _____, 2018

        By: _____
        Title: _____
        Date: _____


Reviewed and Approved By:

**COUNSEL FOR PLAINTIFFS**:

Dated: _8/23/18_, 2018            _____
                                  Roger N. Heller
                                  **LIEFF CABRASER HEIMANN &**
                                  **BERNSTEIN, LLP**


23

Dated: _August 23_, 2018

_Ariana Tadler_
Ariana J. Tadler
**MILBERG TADLER PHILLIPS
GROSSMAN LLP**

Dated: _____, 2018

Mark Goldman
**GOLDMAN SCARLATO & PENNY, PC**

Dated: _____, 2018

Joseph J. Siprut
**SIPRUT, PC**

Dated: _____, 2018

Steven W. Teppler
**ABBOTT LAW GROUP, PA**

**COUNSEL FOR INTUIT INC.**

Dated: _____, 2018

Rodger R. Cole
**FENWICK & WEST LLP**

1571458.7

Dated: _____, 2018

    _____

    Ariana J. Tadler
    **MILBERG TADLER PHILLIPS
    GROSSMAN LLP**

Dated: _August 22_, 2018

    _____

    Mark Goldman
    **GOLDMAN SCARLATO & PENNY, PC**

Dated: _____, 2018

    _____

    Joseph J. Siprut
    **SIPRUT, PC**

Dated: _____, 2018

    _____

    Steven W. Teppler
    **ABBOTT LAW GROUP, PA**

**COUNSEL FOR INTUIT INC.**

Dated: _____, 2018

    _____

    Rodger R. Cole
    **FENWICK & WEST LLP**

1571458.7

24

Dated: _____, 2018

_____

Ariana J. Tadler
**MILBERG TADLER PHILLIPS GROSSMAN LLP**

Dated: _____, 2018

_____

Mark Goldman
**GOLDMAN SCARLATO & PENNY, PC**

Dated:   *August 23*, 2018

_____

Joseph J. Siprut
**SIPRUT, PC**

Dated: _____, 2018

_____

Steven W. Teppler
**ABBOTT LAW GROUP, PA**

**COUNSEL FOR INTUIT INC.**

Dated: _____, 2018

_____

Rodger R. Cole
**FENWICK & WEST LLP**

1571458.7

24

Dated: _____, 2018

_____
Ariana J. Tadler
**MILBERG TADLER PHILLIPS**
**GROSSMAN LLP**

Dated: _____, 2018

_____
Mark Goldman
**GOLDMAN SCARLATO & PENNY, PC**

Dated: _____, 2018

_____
Joseph J. Siprut
**SIPRUT, PC**

Dated: August 23, _____, 2018

_____
Steven W. Teppler

Digitally signed by Steven Teppler
DN: cn=Steven Teppler, o=TImeCertain,
LLC, ou, email=steppler@me.com, c=US
Date: 2018.08.23 12:44:47 -04'00'

Steven W. Teppler
**ABBOTT LAW GROUP, PA**

**COUNSEL FOR INTUIT INC.**

Dated: _____, 2018

_____
Rodger R. Cole
**FENWICK & WEST LLP**

1571458.7

Dated: _____, 2018

_____
Ariana J. Tadler
**MILBERG TADLER PHILLIPS
GROSSMAN LLP**

Dated: _____, 2018

_____
Mark Goldman
**GOLDMAN SCARLATO & PENNY, PC**

Dated: _____, 2018

_____
Joseph J. Siprut
**SIPRUT, PC**

Dated: _____, 2018

_____
Steven W. Teppler
**ABBOTT LAW GROUP, PA**

**COUNSEL FOR INTUIT INC.**

Dated: *August 23*, 2018

*Rodger Cole* /AIC
_____
Rodger R. Cole
**FENWICK & WEST LLP**

# EXHIBIT A

EXHIBIT A

<u>NOTICE PROGRAM</u>

*In re Intuit Data Litigation*, Case No. 15-CV-1778-EJD-SVK (N.D. Cal.)

1.      Unless otherwise indicated, terms herein shall have the same meaning as in the Agreement.

2.      **<u>Class List:</u>**  Within seven (7) days after entry of the Preliminary Approval Order, and subject to entry of a Court Order authorizing Intuit to disclose information subject to 26 U.S.C. § 7216 to the Settlement Administrator, the Skip Trace Provider, and the Credit Monitoring Provider, Intuit shall, in a secure manner, provide the Settlement Administrator and the Skip Trace Provider with data files (the "Class List") as follows:

        a.      For Class Members who, according to Intuit's records, are current or former TurboTax customers ("Customer Class Members"), Intuit shall provide the Settlement Administrator with the following information:  (i) name; and (ii) last known email address in Intuit's records.

        b.      For Class Members who, according to Intuit's records, have never been TurboTax customers ("Non-Customer Class Members"), Intuit shall provide the Skip Trace Provider with the following information:  (i) name; and (ii) Social Security Number(s).

        The Settlement Administrator shall maintain the Class List in a secure manner at all times and shall not disclose the Class List or any other personally identifiable information of Class Members to any third-parties other than the Skip Tracing Provider and/or the Credit Monitoring Provider.

EXHIBIT A

        3.      **Email Notice**.  By no later than twenty one (21) days after entry of the Preliminary Approval Order (the "Notice Deadline"), the Settlement Administrator shall email notice, substantially in the form attached hereto as **Attachment 1**, to each Customer Class Member on the Class List, at the email address listed for them in the Class List.  The email notices shall be sent with the sender title "Intuit Data Litigation Administrator" and the subject line "*In re:  Intuit Data Litigation*."

        4.      **Mail Notice**.  The Skip Trace Provider shall conduct a reverse look-up (i.e., skip trace) to attempt to identify a mailing address for each Non-Customer Class Member on the Class List, using the names and Social Security Numbers for them in the Class List and shall provide the results to the Settlement Administrator.  For each Non-Customer Class Member for which the Skip Trace Provider identifies a mailing address through the process identified above in this paragraph, by no later than twenty-one (21) days after entry of the Preliminary Approval Order (the "Notice Deadline"), the Settlement Administrator shall mail them notice, substantially in the form attached hereto as **Attachment 2**, via first class U.S. Mail postage pre-paid, at the mailing addresses identified.

        5.      **Settlement Website**.  As soon as practicable, but no later than one (1) day before the first date that any notices are emailed or mailed to Class Members, the Settlement Administrator shall establish an Internet website, at the URL www.Intuitdatalitigation.com (the "Settlement Website"), where Class Members can obtain further information about the Action, the Settlement, and their rights, and enroll electronically in the credit monitoring services being provided pursuant to the Settlement. The Settlement Website shall be optimized for display on mobile devices.  The

EXHIBIT A

Settlement Website shall include, and make available for download:  a copy of the

Agreement; the operative complaint in this Action; a long-form class notice ("Long-Form

Notice") substantially in the form attached hereto as **Attachment 3**; a downloadable,

printable form for enrolling in the credit monitoring services, substantially in the form

attached hereto as **Attachment 4**; and such other case documents as agreed to by the

Parties.  The Settlement Website shall be operational until at least the Effective Date.

      6.      **<u>Toll-Free Number</u>**:  As soon as practicable, but no later than one (1) day

before the first date that any notices are emailed or mailed to Class Members, the

Settlement Administrator shall establish a toll-free telephone number (the "Toll-Free

Number") that Class Members can call to receive additional information about the

Settlement.  The Toll-Free Number shall be operational until at least the Effective Date.

# ATTACHMENT 1

Your Personal ID #:  1234567

## Class Action Settlement Notice
**You can get two years of Free Credit Monitoring Services and other benefits from a class action settlement.**

**To claim the Free Credit Monitoring Services, click here**

Comment [A1]: Hyperlink

For more information, visit **www.IntuitDataLitigation.com** or call [Toll-Free Number]

**WHAT IS THIS NOTICE?**  A Settlement has been reached in a class action lawsuit (*In re Intuit Data Litigation*, Case No. 15-cv-1778-EJD (N.D. Cal.)) about taxpayers whose identities were used to file fraudulent federal tax returns by someone else using Intuit's TurboTax service for tax years 2014, 2015, and 2016 (for which tax returns were filed in calendar years 2015, 2016 and 2017, respectively).  The lawsuit claims that Intuit failed to adequately prevent the filing of these fraudulent tax returns in their names.  Intuit denies any wrongdoing and **the Court has not ruled that Intuit did anything wrong or violated any law.  This Notice is not intended to be an expression of any opinion by the Court with respect to the truth of the allegations in this action or the merits of the claims or defenses asserted.**

**WHO IS INCLUDED?**  The "Class" includes all persons in the United States in whose identities fraudulent federal tax returns for the tax years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  If you received this notice, Intuit's records indicate that you are part of the Class and part of the Settlement.

**WHAT DOES THE SETTLEMENT PROVIDE?**  The Settlement provides two years of TransUnion credit monitoring services, free of charge, for every class member who enrolls, and Intuit already has adopted numerous security measures it believes have reduced the incidence of fraud.  For more information, visit www.IntuitDataLitigation.com.

Comment [A2]: Hyperlink

**HOW DO I RECEIVE THE FREE CREDIT MONITORING SERVICES?  You must enroll to receive the two years of free credit monitoring services.** There are two ways to enroll: (1) Enroll online, at www.IntuitDataLitigation.com; or (2) Print a claim form, available at www.IntuitDataLitigation.com, fill it out, and mail it (with postage) to the address listed on the claim form. There is no cost to enroll or to receive the services.  **The deadline to enroll is [DATE].**

Comment [A3]: Hyperlink

**YOUR OTHER OPTIONS.**  The Court will hold a Final Approval Hearing in this case (*In re Intuit Data Litigation*, Case No. 15-cv-1778-EJD) on [DATE] at [TIME] to consider whether to approve: (1) the Settlement; (2) attorneys' fees and costs of up to $2,820,000 for Class Counsel, to be paid by Intuit in addition to the benefits provided to class members; and (3) service awards of $5,000 each for the six plaintiffs who have served as class representatives in this case.  You may object to the Settlement and/or the request for attorneys' fees, costs or service awards.  The detailed class notice, available at www.IntuitDataLitigation.com, explains how to object.  You may appear at the Final Approval Hearing, but you don't have to.  The Court has appointed attorneys (called "Class Counsel") to represent the class members.  These attorneys are listed in the detailed class notice.  You may hire your own attorney to appear for you, but you will have to pay that attorney.

**WHERE CAN I GET MORE INFORMATION?**  For more information, visit www.IntuitDataLitigation.com or call [TOLL-FREE #].

*A federal court authorized this notice.  This isn't a solicitation from a lawyer.  You aren't being sued.*

**www.IntuitDataLitigation.com**                                    1-XXX-XXX-XXXX

# ATTACHMENT 2

Your Personal ID #:  1234567

**Class Action Settlement Notice**

# You can get two years of Free Credit Monitoring Services and other benefits from a class action settlement.  Read on for more information.

# To claim the Free Credit Monitoring Services, go to www.IntuitDataLitigation.com or return the attached claim form

### 800-XXX-XXXX

*Para una notificación en Español, llamar o visitar nuestro sitio web.*

In re Intuit Data Litigation
c/o [NAME]
[ADDRESS]
[CITY, STATE ZIP]

Forwarding Service Requested

Postal Service: Please do not mark barcode
Claim No.:

John Claimant
555 Main St.
Seattle, WA 98104

**What is this Notice?**  A Settlement has been reached in a class action lawsuit about taxpayers whose identities were used to file fraudulent federal tax returns by someone else using Intuit's TurboTax service for tax years 2014, 2015, and 2016 (for which tax returns were filed in calendar years 2015, 2016 and 2017, respectively).  The lawsuit claims that Intuit failed to adequately prevent the filing of these fraudulent tax returns in their names.  Intuit denies any wrongdoing and **the Court has not ruled that Intuit did anything wrong or violated any law**.

**Who is Included?**  The "Class" includes all persons in the United States in whose identities fraudulent federal tax returns for the tax years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  If you received this notice, Intuit's records indicate that you are part of the Class and may participate in the Settlement.

**What Does the Settlement Provide?**  The Settlement provides two years of TransUnion credit monitoring services, free of charge, for every class member who enrolls, and  Intuit already has adopted numerous security measures it believes have reduced the incidence of fraud.  For more information, visit www.IntuitDataLitigation.com.

**How Do I Receive the Free Credit Monitoring Services?**   **You must enroll to receive the two years of free credit monitoring services**. There are two ways to enroll:  (1) enroll online at **www.IntuitDataLitigation.com**; or (b) complete and return the attached claim form.  There is no cost to enroll or to receive the services.  **The deadline to enroll is [DATE].**

**Your Other Options:**  The Court will hold a Final Approval Hearing in this case (*In re Intuit Data Litigation*, Case No. 15-cv-1778-EJD) on [DATE] at [TIME] to consider whether to approve: (1) the Settlement; (2) attorneys' fees and costs of up to $2,820,000 for Class Counsel, to be paid by Intuit in addition to the benefits provided to class members; and (3) service awards of $5,000 each for the six plaintiffs who are serving as class representatives in this case.  You may object to the Settlement and/or the request for attorneys' fees, costs or service awards.  The detailed class notice, available at www.IntuitDataLitigation.com, explains how to object.  You may appear at the Final Approval Hearing, but you don't have to.  The Court has appointed attorneys (called "Class Counsel") to represent the class members.  These attorneys are listed in the detailed class notice.  You may hire your own attorney to appear for you, but you will have to pay that attorney.

**Where can I get more information?**  For more information, visit www.IntuitDataLitigation.com or call [TOLL-FREE #].

### FREE CREDIT MONITORING SERVICES CLAIM FORM

To receive the two (2) years of free TransUnion credit monitoring services through the settlement in *In re Intuit Data Litigation*, you must enroll.  There is no cost to enroll or to receive the services.  You have two options for enrolling:

(1) <u>Enroll Online</u>.  Enroll online at www.IntuitDataLitigation.com; or

(2) <u>Enroll by Mail</u>:  Fill out, sign, and return this form to:  [ADDRESS].

### <u>IMPORTANT:  THE DEADLINE TO ENROLL IS [DATE].</u>

Your Name          _____

Street Address     _____

City          _____ State _____ ZIP _____

Email Address: _____

By signing below, I am requesting to be enrolled in two (2) years of free TransUnion credit monitoring services through the settlement in *In re Intuit Data Litigation*.  The Settlement Administrator will confirm your eligibility.

_____          _____

**Your Signature**                                        **Date**

*Personal ID # : 123456789*



**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL  PERMIT NO. *#### Louisville. KY

POSTAGE WILL BE PAID BY ADDRESSEE

In re          Data          Litigation
P.O. Box #####
Louisville, KY #####-####

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

# ATTACHMENT 3

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

*In re Intuit Data Litigation*, Case No. 15-cv-1778-EJD

**NOTICE OF CLASS ACTION SETTLEMENT**

**If you had a fraudulent tax return filed in your name by someone else using TurboTax for Tax Years 2014, 2015, or 2016, you may be entitled to two years of Free Credit Monitoring Services and other benefits from a class action settlement.**

This is a Court approved Legal Notice.  This is not a solicitation.

**<u>Read This Entire Notice Carefully as it Affects Your Rights</u>**

- A proposed Settlement has been reached in a class action lawsuit against Intuit, Inc. (*In re Intuit Data Litigation*, Case No. 15-cv-1778-EJD (N.D. Cal.)) about taxpayers whose identities were used to file fraudulent federal tax returns by someone else using Intuit's TurboTax service for tax years 2014, 2015, and 2016 (for which tax returns were filed in calendar years 2015, 2016, and 2017, respectively).  The lawsuit claimed that Intuit failed to adequately prevent the filing of these fraudulent tax returns.  Intuit denies any wrongdoing, and the Court has not ruled that Intuit did anything wrong or violated any law.  This Notice is not intended to be an expression of any opinion by the Court with respect to the truth of the allegations in this action or the merits of the claims or defenses asserted.

- This Notice explains the nature of the lawsuit, the general terms of the proposed Settlement, and your legal rights and obligations.

- The Settlement affects the following "Class":  All persons in the United States in whose identities fraudulent federal tax returns for the tax years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  Individuals within the Class are called "Class Members."

- Under the Settlement, Intuit will provide two (2) years of credit monitoring services, free of charge, through TransUnion to Class Members who choose to enroll.  Class Members must enroll to get the free credit monitoring services.  There is no cost to enroll or to receive the services.  For more information on how to enroll, see Question 9 below.  In addition, the Settlement also includes Intuit's previous adoption of numerous security measures that Intuit believes have reduced the incidence of SIRF and ATO, and Intuit's commitment to follow the security requirements that come out of the IRS Security Summit until at least 2021, or until the IRS Security Summit process ends, whichever is sooner.   Intuit will also separately pay for the costs of administrating the Settlement and court-approved attorneys' fees and costs and service awards for the Plaintiffs who are serving as class representatives.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **ENROLL IN FREE CREDIT MONITORING** | To receive two (2) years of free TransUnion credit monitoring services, you must affirmatively enroll. There is no cost to enroll or to receive the services. There are two ways to enroll: (1) Enroll online, at www.IntuitDataLitigation.com; or (2) Enroll by mail. See Question 9. | Deadline: [DATE] |
| **DO NOTHING** | If you do nothing, you will not be eligible to receive the free credit monitoring services.  You will still receive the other benefits of the settlement.  See Question 17. | |
| **OBJECT OR COMMENT ON THE SETTLEMENT** | You may object to the Settlement or provide comments regarding the Settlement. See Question 15. | Deadline: [DATE] |
| **ATTEND THE FINAL APPROVAL HEARING** | You may, but are not required to, attend the Final Approval Hearing where the Court may hear arguments concerning the approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. See Question 22. | Hearing Date: [DATE] |

- These rights and options, and the deadlines to exercise them, are explained in this Notice.
- The Court in this case still has to decide whether to approve the Settlement.

**For more information, read on or visit** www.IntuitDataLitigation.com

# WHAT THIS NOTICE CONTAINS

**Page**

BACKGROUND INFORMATION ................................................................................................. 5

   1.  Why is there a notice? ........................................................................................................ 5

   2.  What is this lawsuit about? ................................................................................................ 5

   3.  Why is this a class action? ................................................................................................. 5

   4.  Why is there a settlement? ................................................................................................ 5

SETTLEMENT CLASS MEMBERSHIP ................................................................................... 6

   5.  How do I know if I am part of the Settlement? ................................................................. 6

BENEFITS FOR CLASS MEMBERS ....................................................................................... 6

   6.  What benefits does the Settlement provide? ..................................................................... 6

   7.  What credit monitoring services are being provided? ...................................................... 6

   8.  Am I eligible to receive the free credit monitoring services? .......................................... 7

   9.  How do I enroll in the free credit monitoring services? .................................................. 7

   10. When and how will I receive the credit monitoring benefits? ......................................... 7

   11. What happens if my contact information changes after I enroll in the credit monitoring
       services? ............................................................................................................................. 7

   12. What can I do if I am a victim of identity theft or fraud? ................................................ 8

   13. What practice changes are included in the Settlement? ................................................... 8

   14. What am I giving up as part of the Settlement? ............................................................... 8

OBJECTING TO OR COMMENTING ON THE SETTLEMENT ........................................... 9

   15. How do I tell the Court that I like or don't like the Settlement? ...................................... 9

   16. May I exclude myself from the Settlement? ................................................................... 9

IF YOU DO NOTHING ............................................................................................................ 9

   17. What happens if I do nothing? ......................................................................................... 9

THE LAWYERS REPRESENTING YOU ................................................................................ 9

   18. Do I have a lawyer in the case? ....................................................................................... 9

   19. How will Class Counsel be paid? ................................................................................... 10

3

FINAL APPROVAL HEARING ................................................................................. 10

    20.  When and where will the Court decide whether to approve the Settlement? ................... 10

    21.  Do I have to come to the hearing? .................................................................. 10

    22.  May I speak at the hearing? .......................................................................... 11

GETTING MORE INFORMATION ......................................................................... 11

    23.  How do I get more information? ..................................................................... 11

# BACKGROUND INFORMATION

### 1.      Why is there a notice?

A Court authorized this notice because you have a right to know how the proposed Settlement may affect your rights.  This notice explains the nature of the lawsuit, the general terms of the proposed Settlement and what it may mean to you.  This notice also explains the ways you may participate in the Settlement.

### 2.      What is this lawsuit about?

During tax years 2014, 2015, and 2016 (for which tax returns were filed in calendar years 2015, 2016, and 2017, respectively), some taxpayers' identities were used by someone else to file fraudulent federal tax returns using the TurboTax service.  This lawsuit claimed that Intuit (the "defendant" in this lawsuit and the operator of TurboTax) failed to adequately prevent the filing of these fraudulent tax returns.  "Plaintiffs" in this lawsuit are six of the taxpayers whose identities were used by someone else to file fraudulent federal tax returns using TurboTax.  Intuit denies any wrongdoing, and the Court has not ruled that Intuit did anything wrong or violated any law.  This Notice is not intended to be an expression of any opinion by the Court with respect to the truth of the allegations in this action or the merits of the claims or defenses asserted.

The operative complaint in this litigation, which describes the specific legal claims alleged by the Plaintiffs, is available at www.IntuitDataLitigation.com.

### 3.      Why is this a class action?

In a class action, one or more people (called "Plaintiffs") sue on behalf of people who have similar claims.  All of the people who have claims similar to the Plaintiffs are members of the "Class."

The Court has determined, for settlement purposes only, that this lawsuit should proceed as a class action, with the Plaintiffs serving as "class representatives," and has granted preliminary approval of the proposed Settlement, subject to a Final Approval Hearing.

### 4.      Why is there a settlement?

Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to Class Members when the Settlement becomes final.  The Court has not decided in favor of Plaintiffs or Defendant.  Instead, both sides agreed to a settlement.  The Plaintiffs and the attorneys for the Class (called "Class Counsel") believe that the Settlement is in the best interests of the Class Members.

# SETTLEMENT CLASS MEMBERSHIP

**5.     How do I know if I am part of the Settlement?**

You are a "Class Member," and are affected by this Settlement, if you are in the "Class."  The Class includes: All persons in the United States in whose identities fraudulent federal tax returns for the tax years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  Excluded from the Class are all employees of Intuit, counsel for Plaintiffs and Intuit, the Judge presiding over this lawsuit and Court staff.

If you received a notice about this Settlement by email or mail, you have been identified, based on Intuit's records, as being in the Class.

# BENEFITS FOR CLASS MEMBERS

**6.     What benefits does the Settlement provide?**

The Settlement provides the following benefits to Class Members:

- Two (2) years of TransUnion credit monitoring services, free of charge, for Class Members who enroll (See Questions 9-11);

- Intuit has already adopted numerous security measures it believes have reduced the incidence of fraud (See Question 13);

**7.     What credit monitoring services are being provided?**

Under the Settlement, Class Members who enroll will receive two (2) years of credit monitoring services through TransUnion, free of charge.  There is no cost to enroll or to receive the services. The TransUnion credit monitoring services being provided include the following features:

- Unlimited access to the Class Member's TransUnion credit report and VantageScore® credit score, with updates available daily, as well as related analysis and information regarding credit score trends.

- Daily credit monitoring service that provides email notifications of key changes to the Class Member's TransUnion credit file, including:  name changes, address changes, new credit inquiries, new credit accounts, changes to existing credit accounts, new public records, delinquent accounts, fraud alerts, and more.

- Online credit dispute and identity restoration services, which includes assistance with police reports, affidavits, FTC submissions, and other general assistance, as well as unlimited toll-free access to credit specialists.

- Unlimited access to TransUnion's credit lock service, which places a credit lock on the Class Member's TransUnion credit file.

- Up to $1 million in identity theft insurance without a deductible (subject to policy limitations and exclusions), as well as toll-free 24/7 access to identity theft insurance specialists.

- Unlimited online access to credit management and identity theft prevention resources located in an online education center.

Further information is available at www.IntuitDataLitigation.com.

**8.    Am I eligible to receive the free credit monitoring services?**

All Class Members are <u>eligible</u> to claim the TransUnion credit monitoring services under the Settlement, but <u>you must enroll</u> in order to receive these services.  There is no cost to enroll or to receive the services.  See Question 9 for how to enroll.

**9.    How do I enroll in the free credit monitoring services?**

You have two options for enrolling in the free TransUnion credit monitoring services being provided under the Settlement:

- <u>Online</u>:  You can enroll online at www.IntuitDataLitigation.com.

- <u>By Mail</u>:    You can download and print a claim form by visiting www.IntuitDataLitigation.com, fill it out, and mail your completed form (with postage) to:  [ADDRESS].  If you received notice of this Settlement by mail, you can also fill out the claim form that was attached to that notice and send it to:  [ADDRESS].

There is no cost to enroll or to receive the services.

**The deadline to enroll online is [DATE].  Mailed claim forms must be postmarked by no later than [DATE].**

**10.    When and how will I receive the credit monitoring benefits?**

Class members who timely enroll in the free credit monitoring services will begin receiving benefits if the Settlement is finally approved.  This process may take several months or longer.  Please be patient.  If the Settlement is finally approved, you will receive instructions about how to activate the services.

**11.    What happens if my contact information changes after I enroll in the credit monitoring services?**

If, after you enroll in the free credit monitoring services, you change your contact information, it is your responsibility to inform the Settlement Administrator of your updated information.  You may do so by contacting the Settlement Administrator at:  [CONTACT INFO].

## 12.        What can I do if I am a victim of identity theft or fraud?

You can find additional resources and information to help you in the event that you are a victim of identity theft or fraud, at www.IntuitDataLitigation.com.

## 13.        What practice changes are included in the Settlement?

Since the date of the first class action complaint in this litigation, Intuit has adopted numerous security measures that Intuit believes have reduced the incidence of fraudulent tax returns filed on its Turbo Tax platform.

Some of the security measures adopted by Intuit include:

- Email and telephone number verification via code notification
- Elimination of option to file state tax returns that are not associated with a federal return
- Notification of customers if the same Social Security Number is used to file tax returns from more than one customer account during the current or prior two tax years
- Provision of additional information and leads to IRS with submission of suspicious tax returns
- Active participation in the Identity Theft Refund Fraud Information Sharing & Analysis Center ("ISAC") and IRS Security Summits
- Strengthened password requirements and expanded multifactor authentication
- Employment of ThreatMetrix to assess risk associated with each login
- Account holder notified of any and all changes to his or her account profile and when tax return is filed
- Creation of new customer security portal and online security center
- Numerous security measures to prevent breach of Intuit's systems

In addition, Intuit will continue to participate in the IRS Security Summit until at least 2021, or until the IRS Security Summit process ends, whichever is sooner, and will follow the security requirements that come out of the IRS Security Summit process during that time period.

## 14.        What am I giving up as part of the Settlement?

If the Settlement is approved and becomes final, Class Members will not be able to bring claims against Intuit or its affiliates for non-monetary relief about the issues raised in this case.  Class Members will, however, retain all rights to bring claims against Intuit and its affiliates for damages or other monetary relief for the issues raised in this case (in other words, only non-monetary relief claims are being "released;" monetary relief claims are not being "released" by this Settlement).

8

# OBJECTING TO OR COMMENTING ON THE SETTLEMENT

**15.    How do I tell the Court that I like or don't like the Settlement?**

You can comment on, or object to, the Settlement, Class Counsel's request for attorneys' fees and costs, and/or the request for service awards for the Plaintiffs.  To comment or object, you must send a written letter including the following:

a.    The name of this case (*In re Intuit Data Litigation*, Case No. 15-cv-1778-EJD);
b.    Your name, address, telephone number, and signature;
c.    Whether you intend to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number;
d.    The grounds for your objection or comment; and
e.    The basis upon which you claim to be a Class Member.

To be considered by the Court, your comment or objection must be filed or mailed to the Clerk of Court, or by filing them in person at any location of the United States District Court for the Northern District of California, and mailed to the Settlement Administrator, filed/postmarked no later than [DATE], at the following addresses:

| THE COURT | THE SETTLEMENT ADMINISTRATOR |
|---|---|
| Clerk of the Court<br>USDC, Northern District of California<br>280 South 1st Street, Room 2112<br>San Jose, CA 95113 | [ADMIN MAILING ADDRESS] |

**16.    May I exclude myself from the Settlement?**

No.  This is a settlement under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  This Rule does not allow class members to "opt out" of the Settlement.

# IF YOU DO NOTHING

**17.    What happens if I do nothing?**

If you do nothing, you will not be eligible to receive the free TransUnion credit monitoring services but will receive the other benefits of the Settlement.

# THE LAWYERS REPRESENTING YOU

**18.    Do I have a lawyer in the case?**

Yes, the Court appointed the following law firms to represent the Class: Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Tadler Phillips Grossman LLP; Goldman Scarlato & Penny, PC; Abbott Law Group, PA; and Siprut, PC.  These law firms are called "Class Counsel."

If you want to be represented by your own lawyer, you may hire one at your own expense.

The Court also appointed Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams to represent the Class in this litigation (called "class representatives").

| 19. | How will Class Counsel be paid? |
|---|---|

Class Counsel intends to ask the Court to award attorneys' fees and reimbursement of costs in the total amount of $2,820,000. Class Counsel also intends to ask the Court to award service awards of $5,000 each to the six class representatives, to compensate them for their time and efforts on behalf of the Class in this litigation.

The Court will determine the amount of attorneys' fees, costs, and service awards to award. Any attorneys' fees, costs and service awards awarded by the Court will be paid by Intuit in addition to (that is, on top of) the benefits provided to Class Members under the Settlement, and thus won't reduce the benefits provided to Class Members under the Settlement.

Class Counsel's application for attorneys' fees, costs, and service awards will be available at www.IntuitDataLitigation.com after it is filed.

# FINAL APPROVAL HEARING

The Court will hold a hearing (the "Final Approval Hearing") to decide whether to approve the Settlement and the request for attorneys' fees, costs and service awards. You may attend the Final Approval Hearing, but you don't have to.

| 20. | When and where will the Court decide whether to approve the Settlement? |
|---|---|

The Court will hold the Final Approval Hearing at __:__ a.m./p.m. on _____, 201_, at the United States District Court for the Northern District of California, 280 South 1st Street, 5th Floor, Courtroom 4, San Jose, CA 95113. The hearing may be moved to a different date, time, or location without notice, so check for updates at www.IntuitDataLitigation.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court may also consider Class Counsel's application for attorneys' fees and costs and for service awards for the class representatives. If there are objections, the Court will consider them at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We don't know how long the decision will take.

| 21. | Do I have to come to the hearing? |
|---|---|

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you submit a written objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not required.

**22.        May I speak at the hearing?**

At that hearing, the Court will at its discretion hear any objections and arguments concerning the fairness of the Settlement.  To ask the Court to speak at the Final Approval Hearing, you must: (a) timely submit a written objection or comment in compliance with the instructions listed in Question 15 above; and (b) indicate in that objection or comment that you intend to appear at the Final Approval Hearing.

# GETTING MORE INFORMATION

**23.        How do I get more information?**

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement itself.  You can get a copy of the Settlement Agreement, view other case documents, and get additional information and updates by visiting www.IntuitDataLitigation.com.    You can also call [TOLL-FREE NUMBER] for more information, contact Class Counsel at [PHONE NUMBER], access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, 2nd Floor, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE FREE CREDIT MONITORING ENROLLMENT PROCESS.

# ATTACHMENT 4

# Free Credit Monitoring Services Claim Form

To receive the two (2) years of free TransUnion credit monitoring services through the settlement in *In re Intuit Data Litigation*, you must enroll.  There is no cost to enroll or to receive the services.  You have two options for enrolling:

(1) <u>Enroll Online</u>.  Enroll online at www.IntuitDataLitigation.com; or

(2) <u>Enroll by Mail</u>:  Fill out, sign, and return this form to:  [ADDRESS]

## IMPORTANT:  THE DEADLINE TO ENROLL IS [DATE].

### Step 1:  Provide Your Contact Information

Personal ID #  ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

(You can find this number on the top of the settlement notice you received.  If you no longer have the notice, and need your Personal ID Number, email the Settlement Administrator at: [EMAIL ADDRESS].

Your Name      _____

Street Address      _____

City      _____ State _____ ZIP _____

Email Address:  _____

### Step 2:  Confirm That You Want to Receive the Free Credit Monitoring Benefit

Check the box below to confirm you want to receive two (2) years of TransUnion free credit monitoring services through the settlement.   The Settlement Administrator will confirm your eligibility.

☐   I want to receive the two (2) years of credit monitoring services, free of charge, through the settlement in *In re Intuit Data Litigation*. **(check box)**

### Step 3:  Sign the Form

_____     _____
**Your Signature**                                    **Date**

# EXHIBIT B

## SECURITY MEASURES IMPLEMENTED BY INTUIT

### *In re Intuit Data Litigation*, Master Docket No. 15-cv-1778 EJD (N.D. Cal.)

**Security Measures to Prevent SIRF**
- Intuit attempts to verify all email addresses and phone numbers by means of a code sent to the email address and phone number.
- Intuit eliminated the option to file "unlinked" state tax returns (*i.e.*, state tax returns that are not associated with a corresponding federal tax return).
- Intuit notifies TurboTax customers if the same SSN is used to file tax returns from more than one customer account during the current or prior two tax years. In addition, Intuit places a temporary hold for up to three days before filing the return in order to give customers the opportunity to contact Intuit regarding any unauthorized filings. If the customer does not respond or cannot authenticate herself within three days, Intuit must transmit the tax return to IRS in accordance with IRS rules and regulations.
- While Intuit still lacks authority to hold back suspicious tax returns, it now includes additional data elements with each tax return. These data elements – which were collaboratively identified by Intuit, the IRS, State taxing authorities, and other industry participants through the IRS Security Summit Process – help the IRS and State taxing authorities to better authenticate legitimate taxpayers and immediately reject fraudulent tax returns. Many of the specific data elements are subject to the law enforcement privilege, but publicly-disclosed examples include the following:
  - The Ultimate Bank Account (*i.e.*, the final destination of refunds, whether a gift or prepaid card, paper check or direct deposit);
  - Information from State-issued identification (*e.g.*, a driver's license) where authorized and/or requested by State taxing authorities; and
  - W-2 verification codes (as part of a pilot program to help the IRS and State taxing authorities to authenticate legitimate taxpayers).
- Intuit invests significant resources to analyze tax returns after filing and identify potential indicia of fraud. Intuit then provides aggregated and anonymized leads reports to the IRS and State taxing authorities on a weekly basis (during peak tax season) and monthly basis (after peak tax season). While Intuit still lacks authority to determine which returns are fraudulent, the Company's independent judgment and analysis are helpful to the IRS and State taxing authorities when improving their own fraud filters.
- Intuit has voluntarily submitted leads reports to IRS since tax year 2011 (calendar year 2012). However, the IRS did not provide feedback on confirmed instances of tax return fraud until tax year 2014 (calendar year 2015). Intuit now analyzes the data provided by IRS in order to continuously improve and update the Company's fraud filters.
- Intuit actively participates in the Identity Theft Refund Fraud Information Sharing & Analysis Center ("ISAC"), which was established to share information regarding emerging identity theft schemes.
- Intuit actively participated in the IRS Security Summits "Taxes. Security. Together." Awareness campaign, which informs taxpayers about identity theft and cyberattack risks.

**Security Measures to Prevent ATO**
- Intuit strengthened password requirements, including the following:
  - At least 8 characters;
  - A combination of upper and lower case letters, numbers, and special characters; and
  - The password cannot be on a list of commonly-used weak passwords.

- Intuit required all TurboTax customers to pass multifactor authentication ("MFA") in connection with Intuit's rollout of enhanced authentication measures.
    - o Beginning on Beginning February 6, 2015, Intuit required TurboTax customers to pass MFA before accessing their account using an unrecognized device. Customers could authenticate themselves by (a) entering a code sent to the email address or mobile phone associated with their account; (b) answering a previously-provided security question (if applicable); (c) providing the social security number ("SSN") for the primary filer; or (d) answering "out of wallet" questions.
    - o Beginning February 28, 2015, Intuit required all TurboTax customers to pass MFA before accessing their account, regardless of whether they were using a previously-known device (*i.e.*, Intuit treated all devices as an unrecognized device for purposes of MFA).
- Intuit provides TurboTax customers with greater flexibility and control over how MFA applies to their account, including the option to require MFA for every login. In addition, TurboTax customers may choose to authenticate themselves through alternative mobile technologies, including application soft tokens and fingerprint technology.
- Intuit employs ThreatMetrix to assess the risk associated with each login. All high-risk logins must pass MFA using a method other than email.
- Intuit sends the account holder email and/or mobile notifications of all changes to the account profile, including changes to the account holder's name, bank account and refund method.
- Intuit sends the account holder email and/or mobile notifications when a tax return is filed.
- Intuit created a new Customer Security Portal through which customers can review account activity, including any devices used to access their account with estimated geographic location of login. Customers can also verify the authenticity of any emails sent from Intuit.
- Intuit created an Online Security Center providing tips on cybersecurity, including information on known phishing attempts and other security threats.
- Intuit modified the account recovery process to require TurboTax customers to provide the email address associated with their account in order to recover their user ID.
- Intuit automated a number of manual processes used to identify and investigate potential fraud.

**Security Measures to Prevent Breach of Intuit's Systems**
- Network firewalls
- Phishing detection and prevention software
- Threat intelligence interrogation services
- Vulnerability scanners and management software
- Malware sandboxes
- Network traffic flow tools
- Intrusion detection and prevention systems
- Penetration testing
- DDoS prevention services
- URL filtering tools
- Code analysis scanners
- Security logging software
- Host forensics tools
- Device fingerprinting technology
- ThreatMetrix analytics and reporting
- Security code reviews

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| IN RE INTUIT DATA LITIGATION | Master Docket No. 15-CV-1778-EJD-NC |
|---|---|
| THIS DOCUMENT RELATES TO:<br>**ALL ACTIONS** | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Honorable Edward J. Davila |

18         Upon review and consideration of Plaintiffs' Motion for Preliminary Approval of Class

19   Action Settlement, and all briefing, arguments, exhibits and other evidence submitted in support

20   thereof, including the Class Action Settlement Agreement ("Agreement"), dated August 23, 2018

21   and executed by Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David

22   Stock, and Marilyn Williams, and by Defendant Intuit Inc. ("Intuit"), it is hereby ORDERED as

23   follows:

24         1.       Capitalized terms not otherwise defined herein shall have the same meaning as set

25   forth in the Agreement.

26         2.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and has

27   personal jurisdiction over the Parties.  Venue is proper in this District.

28

3.      The following "Class" is provisionally certified, for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(e):    All persons in the United States in whose identities fraudulent federal tax returns for the Tax Years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  Excluded from the Class are all employees of Intuit, counsel for the Parties, the Judge presiding over this Action, and Court staff.

4.      The Court finds that, for settlement purposes only, the Class, as defined above, meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2)—namely, that for settlement purposes, (1) the Class Members are sufficiently numerous such that joinder is impracticable; (2) there are common questions of law and fact; (3) the Plaintiffs' claims are typical of those of the Class Members; (4) the Plaintiffs and Class Counsel have adequately represented, and will continue to adequately represent, the interests of the Class Members; and (5) as alleged, Intuit has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

5.      Certification of the Class shall be solely for settlement purposes and without prejudice to the Parties in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

6.      The Court preliminarily approves the proposed Settlement as fair, reasonable and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval.  The Court notes that the Settlement was reached through significant arms-length negotiations assisted by an experienced mediator, Hon. Edward Infante (Ret.) of JAMS.

7.      The Court appoints Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams as class representatives for the Class.

8.      The Court appoints the following law firms as Class Counsel for Class: Lieff, Cabraser, Heimann & Bernstein, LLP; Milberg Tadler Phillips Grossman LLP; Goldman Scarlato & Penny, PC; Abbott Law Group, PA; and Siprut, PC.

9. The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator, and directs JND to carry out all duties and responsibilities of the Settlement Administrator as specified in the Agreement and herein.

10. The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.

11. The Court approves the form and content of the proposed credit monitoring services claim form, substantially in the form attached as Attachment 4 to Exhibit A to the Agreement, and approves the procedures set forth in the Agreement for Class Members to enroll in the free credit monitoring services.

12. Class List: Within seven (7) days after entry of this Order, Intuit shall, in a secure manner, provide the Settlement Administrator and TransUnion Risk and Alternative Data Solutions, Inc., a subsidiary of TransUnion LLC (the "Skip Trace Provider"), with data files (the "Class List") as follows:

a. For Class Members who, according to Intuit's records, are current or former TurboTax customers ("Customer Class Members"), Intuit shall provide the Settlement Administrator with the following information: (i) name; and (ii) last known email address in Intuit's records.

b. For Class Members who, according to Intuit's records, have never been TurboTax customers ("Non-Customer Class Members"), Intuit shall provide the Skip Trace Provider with the following information: (i) name; and (ii) Social Security Number(s).

13. Intuit is hereby authorized and directed to provide the Class List, including such information in the Class List that may be subject to 26 U.S.C. § 7216, to the Settlement

3

1  Administrator, the Skip Trace Provider and TransUnion Interactive, Inc. (the "Credit Monitoring

2  Provider").  The Settlement Administrator, the Skip Tracing Provider and the Credit Monitoring

3  Provider are authorized to use the Class List, including such information in the Class List that

4  may be subject to 26 U.S.C. § 7216, consistent with, and solely to effectuate, the terms of this

5  Settlement.  The Settlement Administrator shall maintain the Class List in a secure manner at all

6  times and shall not disclose the Class List or any other personally identifiable information of

7  Class Members to any third-parties other than the Skip Tracing Provider and/or the Credit

8  Monitoring Provider. The Skip Tracing Provider and/or the Credit Monitoring Provider also shall

9  maintain the Class List in a secure manner at all times and shall not disclose the Class List or any

10 other personally identifiable information of Class Members to any third-parties.

11         14.    Email Notice:   By no later than twenty one (21) days after entry of this Order (the

12 "Notice Deadline"), the Settlement Administrator shall email notice, substantially in the form

13 attached as Attachment 1 to Exhibit A to the Agreement, to each Customer Class Member on the

14 Class List, at the email address listed for them in the Class List.  The sender title and subject line

15 for the email notices shall be as set forth in the Agreement.

16         15.    Mail Notice:   The Skip Trace Provider shall conduct a reverse look-up (i.e., skip

17 trace) to attempt to identify a mailing address for each Non-Customer Class Member on the

18 Class List, using the names and Social Security Numbers for them in the Class List and shall

19 provide the results to the Settlement Administrator.  For each Non-Customer Class Member for

20 which the Skip Trace Provider identifies a mailing address through the process identified above

21 in this paragraph, by no later than the Notice Deadline, the Settlement Administrator shall mail

22 them notice, substantially in the form attached as Attachment 2 to Exhibit A to the Agreement,

23 via first class U.S. Mail postage pre-paid, at the mailing addresses identified.

24         16.    Settlement Website:  As soon as practicable, but no later than one (1) day before

25 the first date that any notices are emailed or mailed to Class Members, the Settlement

26 Administrator shall establish an Internet website, at the URL, www.IntuitDataLitigation.com (the

27 "Settlement Website"), where Class Members can obtain further information about this Action,

28 the Settlement, and their rights, and enroll electronically in the credit monitoring services being

provided pursuant to the Settlement.  The Settlement Website shall be optimized for display on mobile devices.  The Settlement Website shall include, and make available for download:  a copy of the Agreement; the operative complaint in this Action; a long-form class notice ("Long-Form Notice") substantially in the form attached as Attachment 3 to Exhibit A to the Agreement; a downloadable, printable form for enrolling in the credit monitoring services, substantially in the form attached as Attachment 4 to Exhibit A to the Agreement; and such other case documents as agreed to by the Parties.  The Settlement Website shall be operational until at least the Effective Date of the Settlement.  The Settlement Website shall include an appropriate mechanism for Class Members to update their contact information.

17.    Toll-Free Number:  As soon as practicable, but no later than one (1) day before the first date that any notices are emailed or mailed to Class Members, the Settlement Administrator shall establish a toll-free telephone number (the "Toll-Free Number") that Class Members can call to receive additional information about the Settlement.  The Toll-Free Number shall be operational until at least the Effective Date of the Settlement.

18.    All costs and expenses of the Notice Program and other costs of the Settlement Administrator shall be paid by Intuit.

19.    No later than seven (7) days before the Final Approval Hearing, the Settlement Administrator shall file an affidavit with the Court confirming its implementation of the Notice Program.

20.    Class Members shall have the option of enrolling in the free credit monitoring services benefit, provided pursuant to the Settlement, online via the Settlement Website or by mail.  The deadline for Class Members to enroll shall be sixty (60) days after the Notice Deadline (the "Credit Monitoring Enrollment Deadline").  Mailed enrollment forms must be postmarked by the Credit Monitoring Enrollment Deadline.

21.    Any Class Member may comment on, or object to, the Settlement, Class Counsel's application for attorneys' fees and costs, and/or the request for Plaintiff service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court, and mailed to the Settlement Administrator at the addresses listed in the Long Form Class

Notice, postmarked no later than forty-five (45) days after the Notice Deadline (the "Objection Deadline"), and must include the following: (i) the case caption; (ii) the name, address, telephone number, and signature of the person objecting; (iii) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, (iv) a statement of the grounds for his or her objection; and (v) the basis upon which the objector claims to be a Class Member.

22.     No Class Member may contest the approval of the terms and conditions of the Settlement, the Final Judgment, any request for or award of attorneys' fees and costs to Class Counsel, or any request for or award of Plaintiff service awards, except by filing and serving a written objection in accordance with the provisions set forth above.  Any Class Member who fails to object in the manner prescribed above, shall be deemed to have waived, and shall be foreclosed forever from raising, objections to the Settlement, Class Counsel's application for attorneys' fees and costs, and any application for Plaintiff service awards.

23.     The Court directs that the Final Approval Hearing be scheduled for _____, 201_, at ____ a.m., to assist the Court in determining whether the Settlement should be finally approved as fair, reasonable and adequate to the Class Members; whether the Final Judgment should be entered; whether Class Counsel's application for attorneys' fees and costs should be approved; and whether any request for service awards for the Plaintiffs should be approved.

24.     By no later than twenty one (21) days before the Objection Deadline, Plaintiffs and Class Counsel shall file a motion for final approval of the Settlement and an application for attorneys' fees and expenses and for Plaintiff service awards.  By no later than fourteen (14) days before the Final Approval Hearing, the Parties shall file any responses to any Class Member objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees and expenses and for Plaintiff service awards.  After it is filed Class Counsel's application for attorneys' fees, costs, and Plaintiff service awards shall be posted on the Settlement Website.

25.     The Court reserves the right to modify the date of the Final Approval Hearing and related deadlines set forth herein.  In the event the Final Approval Hearing is moved, the new date and time shall be posted on the Settlement Website.

26.     If the Settlement terminates for any reason, this Action will revert to its previous status in all respects as it existed before the Parties executed the Agreement. This Court's conditional certification of the Class and findings underlying the conditional certification shall be solely for settlement purposes. This Order will not waive or otherwise impact the Parties' rights or arguments.

27.     Pending the final determination of whether the Settlement should be approved, all proceedings in this Action, except as may be necessary to implement the Settlement or comply with the terms of the Settlement, are hereby stayed.

28.     Without further order of the Court, the Parties may agree to make non-material modifications in implementing the Settlement that are not inconsistent with this Order.

29.     The following chart summarizes the dates and deadlines set by this Order:

| | |
|---|---|
| Last day for Intuit to provide the Class List to the Settlement Administrator and Skip Trace Provider | **7 days after entry of Preliminary Approval Order** |
| Notice Deadline | **21 days after entry of the Preliminary Approval Order** |
| Last day for: (a) Plaintiffs to file motion for final approval of the Settlement; and (b) Class Counsel to file their application for attorneys' fees, costs, and Plaintiff service awards | **24 days after Notice Deadline** |
| Objection Deadline | **45 days after Notice Deadline** |
| Credit Monitoring Enrollment Deadline | **60 days after Notice Deadline** |
| Last day for the Parties to file any responses to objections, and any reply papers in support of motion for entry of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and Plaintiff service awards | **14 days before Final Approval Hearing** |
| Final Approval Hearing | **[TBD]** |

7

1

2

3      IT IS SO ORDERED.

4   Dated: _____, 201__

5

6                                                    _____
                                                     Edward J. Davila
7                                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   IN RE INTUIT DATA LITIGATION          |   Master Docket No.  15-CV-1778-EJD-NC
12
13   THIS DOCUMENT RELATES TO:             |   **[PROPOSED] FINAL JUDGMENT**
     **ALL ACTIONS**
14                                          |   Honorable Edward J. Davila
15
16
17          This matter came before the Court for hearing pursuant to the Court's Preliminary

18   Approval Order dated _____, 201__ (Dkt. No. __), and on the motion for final approval of

19   the Class Action Settlement Agreement, dated August 23, 2018 (the "Agreement"), entered into

20   by the Parties, as well as Class Counsel's motion for an award of attorneys' fees and costs and

21   for Plaintiff service awards.  Due and adequate notice having been given to the Class Members

22   of the proposed Settlement and the pending motions, as directed by the Court's Preliminary

23   Approval Order, and upon consideration of all papers filed and proceedings had herein, and good

     cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

24          1.      Capitalized terms not otherwise defined herein shall have the same meaning as set

25   forth in the Agreement.

26          2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and has

27   personal jurisdiction over the Parties.  Venue is proper in this District.

28          3.      The "Class" for purposes of this Order, shall mean:

10247391.2                              1

All persons in the United States in whose identities fraudulent federal tax returns for the Tax Years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service.  Excluded from the Class are all employees of Intuit, counsel for the Parties, the Judge presiding over this Action, and Court staff.

4.      The Court finds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this matter.

5.      The Court finds that the program for disseminating notice to the Class Members provided for in the Agreement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and that such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes notice reasonably calculated under the circumstances to appraise Class Members of the pendency of the Action, the terms of the Settlement, their right to object to the Settlement, and their right to appear at the Final Approval Hearing.

6.      The Court reaffirms that this Action is properly maintained as a class action, for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(e), and that Class Counsel and the Plaintiffs, as class representatives, fairly and adequately represent the interests of the Class Members.  [Discussion regarding Rule 23 factors].

7.      The Court finds that the Agreement, including the exhibits thereto, is fair, reasonable and adequate to the Class Members, has been entered into in good faith, and should be and hereby is fully and finally approved pursuant to Federal Rule of Civil Procedure 23.  The Agreement represents a fair resolution of the claims asserted on behalf of the Plaintiffs and the Class Members in this Litigation and released by the Agreement, and fully and finally resolves all such claims.  Intuit, Plaintiffs, and the Class Members shall be bound by the Agreement, including the Release provisions set forth in paragraphs 72-79 of the Agreement, which is incorporated by reference herein, and by this Order and the Final Judgment entered in connection with this Order.

8.      [Findings required by *Churchill Village LLC v. General Electric Corp.*, 361 F.3d 566, 575 (9th Cir. 2004).]

9.      [Findings required by *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).]

10.     Class Counsel are hereby awarded attorneys' fees and costs in the total amount of $_____ [not to exceed $2,820,000 in total].  Intuit shall pay such amount to Class Counsel pursuant to the terms of the Agreement, separate from and in addition to the other benefits provided to Class Members pursuant to the Settlement.  [Findings in support of Class Counsel's fee and cost award]

11.     The Court hereby awards service awards of $5,000 each, to Plaintiffs Richard Brown, Christine Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams, to compensate them for their commitments and efforts on behalf of the Class Members.  Intuit shall pay such amounts pursuant to the terms of the Agreement, separate from and in addition to the other benefits provided to Class Members pursuant to the Settlement.  [Findings in support of service awards]

12.     [Discussion regarding any objections].  The Court has considered and hereby overrules all objections to the Settlement.

13.     The Parties and Settlement Administrator are hereby directed to implement the Settlement in accordance with the terms and provisions thereof.

14.     As of the Effective Date, Plaintiffs and all other Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns (collectively, the "Releasing Parties"), shall waive, release, forever discharge, and will not in any manner pursue the Released Claims against any Released Parties, as defined and set forth in paragraph 72 of the Agreement.  As set forth in the Agreement, the Release shall apply only to claims for declaratory, injunctive and non-monetary equitable relief, and not to any claims for damages or other monetary relief.  Intuit shall not sue Plaintiffs or their counsel for malicious prosecution or abuse of process based on the filing of this Action or the underlying actions, or any papers previously filed therein.

1    15.    The Court hereby dismisses this Action with prejudice, and without fees or costs

2    except as provided in the Agreement and this Order.

3    16.    Nothing in this Order or the Final Judgment entered in connection with this Order

4    shall preclude any action to enforce the terms of the Settlement.

5    17.    Without affecting the finality of this Order or the Final Judgment entered in

6    connection with this Order in any way, the Court hereby retains continuing jurisdiction over:

7    (a) all matters relating to the modification, interpretation, administration, implementation,

8    effectuation and enforcement of the Settlement; (b) further proceedings, if necessary, on Class

9    Counsel's application for attorneys' fees and costs and/or the request for Plaintiff service awards;

10   and (c) the Parties, Class Counsel and Class Members for the purpose of administering,

11   supervising, construing and enforcing this Order and the Settlement in accordance with its terms.

12   18.    Neither this Order (nor the Final Judgment entered in connection with this Order),

13   the Agreement, nor any action taken to carry out this Order or the Final Judgment entered in

14   connection with this Order shall be construed or used against Intuit or the Released Parties as an

15   admission, concession or evidence of the validity of any claim or defense or any actual or

16   potential fault, wrongdoing, or liability whatsoever.

17   19.    Without further order of the Court, the Parties may agree to reasonably necessary

18   extensions of time to carry out any of the provisions of the Settlement and to make other non-

19   material modifications, in implementing the Settlement, that are not inconsistent with this Order.

20   20.    There is no just reason for delay in the entry of this Final Judgment and

21   immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the

22   Federal Rules of Civil Procedure.

23   **IT IS SO ORDERED**.

24   Dated: _____, 201__

25

26                                                        _____
                                                          Edward J. Davila
27                                                        UNITED STATES DISTRICT JUDGE

28

10247391.2                                    4

# EXHIBIT E

## EXHIBIT E:  SUMMARY OF CREDIT MONITORING SERVICES

Credit monitoring services for Class Members will be provided by TransUnion Interactive, Inc. ("TransUnion") at no cost to the Class Member.  TransUnion's *my*TrueIdentity service includes 2 years of unlimited access to the Class Member's TransUnion credit report and VantageScore® credit score, with updates available daily, as well as related analysis and information regarding credit score trends.  TransUnion will also provide a daily credit monitoring service that provides email notifications of key changes to the Class Member's TransUnion credit file, including:  name changes, address changes, new credit inquiries, new credit accounts, changes to existing credit accounts, new public records, delinquent accounts, fraud alerts, and more.  Class Members will have access to online credit dispute and identity restoration services, which includes assistance with police reports, affidavits, FTC submissions, and other general assistance, as well as unlimited toll-free access to credit specialists.  They will also have unlimited access to TransUnion's credit lock service, which places a credit lock on the Class Member's TransUnion credit file.  In addition, TransUnion will provide Class Members up to $1 million in identity theft insurance without a deductible (subject to policy limitations and exclusions), as well as toll-free 24/7 access to identity theft insurance specialists.  The service also includes unlimited online access to credit management and identity theft prevention resources located in an online education center.

Class Members will have a minimum of 60 days from the mailing of the notice to subscribe to credit monitoring services.  They must be able to verify their identity and otherwise complete the credit monitoring enrollment process.  Class Members are not eligible for the credit monitoring services if they do not have a TransUnion credit file, if they do not have a valid United States address and Social Security Number, or if they are under 18 years of age.