1   Michael W. Sobol (SBN 194857)
    msobol@lchb.com
2   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
3   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
4   Telephone: 415.956.1000

5   Steven W. Teppler (*pro hac vice*)
    steppler@abbottlawpa.com
6   ABBOTT LAW GROUP, P.A.
    2929 Plummer Cove Road
7   Jacksonville, FL 32223
    Telephone: 904.292.1111
8
    Joseph J. Siprut (*pro hac vice*)
9   jsiprut@siprut.com
    SIPRUT PC
10  17 North State Street, Suite 1600
    Chicago, IL 60602
11  Telephone: 312.236.0000

    Ariana J. Tadler (*pro hac vice*)
    atadler@milberg.com
    MILBERG TADLER PHILLIPS
    GROSSMAN LLP
    One Pennsylvania Plaza, Suite 1920
    New York, NY 10119
    Telephone: 212.946.9453

    Mark S. Goldman (*pro hac vice*)
    goldman@lawgsp.com
    GOLDMAN SCARLATO & PENNY, P.C.
    8 Tower Bridge, Suite 1025
    161 Washington Street
    Conshohocken, PA 19428
    Telephone: 484.342.0700

    *Class Counsel*

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15

16  IN RE INTUIT DATA LITIGATION

17

18  THIS DOCUMENT RELATES TO:

19  **ALL ACTIONS**

20

21

22

    Master Docket No.  15-CV-1778-EJD-SVK

    **PLAINTIFFS' NOTICE OF MOTION AND
    MOTION FOR FINAL APPROVAL OF
    CLASS ACTION SETTLEMENT;
    MEMORANDUM OF POINTS AND
    AUTHORITIES**

    Date:       February 7, 2019
    Time:       10:00 a.m.
    Judge:      Honorable Edward J. Davila
    Courtroom:  4, Fifth Floor

23

24

25

26

27

28

1674039.2

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

**PLEASE TAKE NOTICE** that on February 7, 2019, at 10:00 a.m., in the Courtroom of

4
the Honorable Edward J. Davila, United States District Judge for the Northern District of

5
California, 280 South 1st Street, San Jose, California 95113, Plaintiffs Richard Brown, Christine

6
Diaz, Carol Knoch, James Lebinski, David Stock, and Marilyn Williams ("Plaintiffs") will and

7
hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting

8
final approval of the Class Action Settlement Agreement entered into between the Parties (ECF

9
No. 171-1) and entering Final Judgment in this matter.

10

Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying

11
Memorandum of Points and Authorities, the declarations of Roger Heller, Mark Goldman, Steven

12
Teppler, Joseph Siprut, Henry Kelston, Richard McCune, Julian Hammond, Richard Brown,

13
Christine Diaz, Carol Knoch, James Lebinski, David Stock, Marilyn Williams, and Jennifer

14
Keough, JND Legal Administration LLC, filed herewith, the papers filed in support of Plaintiffs'

15
motion for preliminary settlement approval, the papers filed in support of Class Counsel's

16
application for attorneys' fees, costs, and service awards, the record in this case, and any

17
additional argument and evidence the Court may consider.

18

Dated: December 17, 2018                    Respectfully submitted,

19

20

_/s/ Roger N. Heller_
Michael W. Sobol (SBN 194857)
Roger N. Heller (SBN 215348)

21

Melissa A. Gardner (SBN 289096)
**LIEFF CABRASER HEIMANN &**

22

**BERNSTEIN, LLP**
275 Battery Street, 29th Floor

23

San Francisco, CA 94111
Telephone: 415.956.1000

24

msobol@lchb.com
rheller@lchb.com

25

mgardner@lchb.com

26

27

28

1

Steven W. Teppler (FL SBN 14787)
2 **ABBOTT LAW GROUP P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
3 Telephone: 904.292.1111
steppler@abbotlawpa.com

4

Mark S. Goldman (*pro hac vice*)
5 **GOLDMAN SCARLATO & PENNY, P.C**
8 Tower Bridge, Suite 1025
6 161 Washington Street
Conshohocken, PA 19428
7 Telephone: 484.342.0700
goldman@lawgsp.com

8

9

Ariana J. Tadler (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN**
10 **LLP**
One Penn Plaza, Suite 1920
11 New York, NY 10119
Telephone: 212.594.5300
12 atadler@milberg.com

13

Joseph J. Siprut (*pro hac vice*)
**SIPRUT PC**
14 17 North State Street, Suite 1600
Chicago, IL 60602
15 Telephone: 312.236.0000
jsiprut@siprut.com

16

17 *Class Counsel*

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MTN; MTN FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT; MPA
MASTER DOCKET NO. 15-CV-1778-EJD-SVK

1

# TABLE OF CONTENTS

2

Page

3

I.      INTRODUCTION ................................................................................................. 1

4

II.     RELEVANT BACKGROUND ........................................................................... 2

        A.      Procedural History ................................................................................... 2

5

        B.      Preliminary Settlement Approval ............................................................ 2

6

III.    THE SETTLEMENT ......................................................................................... 2

7

        A.      The Class ................................................................................................. 2

        B.      Benefits to the Class ............................................................................... 3

8

                1.      Credit Monitoring Services ........................................................ 3

9

                2.      Security Improvements and Commitments By Intuit ................. 4

10

        C.      Limited Release ...................................................................................... 4

        D.      Separate Payment of Administrative Costs ............................................ 4

11

        E.      Separate Payment of Attorneys' Fees, Costs and Service Awards ........ 4

12

IV.     NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE
        COURT-APPROVED NOTICE PROGRAM ................................................... 5

13

        A.      Direct Notice to Class Members ............................................................ 5

14

        B.      Settlement Website and Toll-Free Number ............................................ 5

15

V.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ......... 6

16

        A.      The strength of plaintiffs' case, the litigation risks, expenses, complexity,
                and likely duration of further litigation, and the risk of maintaining class
                action status throughout the trial all favor approval (*Churchill* factors 1, 2,

17

                3) ............................................................................................................. 7

18

        B.      The amount offered in settlement favors approval (*Churchill* factor 4) ................ 9

        C.      The extent of discovery and stage of proceedings favor approval (*Churchill*

19

                factor 5) ................................................................................................. 10

20

        D.      The recommendation of experienced counsel favors approval (*Churchill*
                factor 6) ................................................................................................. 11

21

        E.      The Class response to date favors approval (*Churchill* factor 8) ......................... 12

22

        F.      The Parties' non-collusive, arms-length negotiations favor approval ................. 13

        G.      The Rule 23(e)(2) considerations favor approval ................................. 14

23

                1.      The Class Representatives and Class Counsel have adequately
                        represented the Class ............................................................... 14

24

                2.      The Settlement was negotiated at arm's length ........................ 15

25

                3.      The relief provided for the Class is adequate .......................... 15

26

                4.      The proposal treats Class Members equitably ......................... 15

27

VI.     CONCLUSION .................................................................................................. 15

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**Cases**

5
*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015)..................................................................... 10, 11

6
*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................................ 11

7
*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)................................................................................... 13

8
*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998)................................................................................... 14

9

10
*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011).............................................................................. 6, 13

11
*In re Heritage Bond Litig.*,
   No. 02-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................... 13

12
*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................... 14

13

14
*In re Netflix Privacy Litig.*,
   No. 11-379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)........................................ 6

15
*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 12

16
*In re Rambus Inc. Derivative Litig.*,
   No. 06- 3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)...................................... 13

17
*Johnson v. Quantum Learning Network, Inc.*,
   No. 15-5013, 2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ........................................ 9

18

19
*Larsen v. Trader Joe's Co.*,
   No. 11-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014).................................... 11

20
*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998).................................................................................... 10

21
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 9, 11

22
*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)........................................................................................ 6

23
*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)........................................................................................ 9

24

25
*Satchell v. Fed. Express Corp.*,
   No. 03-2659, 2007 WL 1114010  (N.D. Cal. Apr. 13, 2007), ................................... 14

26
*Schuchardt v. Law Office of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016)............................................................................... 13

27
*Slezak v. City of Palo Alto*,
   No. 16-3224, 2017 WL 2688224 (N.D. Cal. June 22, 2017)......................... 10, 11, 13

28

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3
4

*Tadepalli v. Uber Techs., Inc.*,
   No. 15-04348, 2016 WL 162288 (N.D. Cal. Apr. 25, 2016) .................................................... 12

5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................................... 6

6

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................................................. 6

7

*Wakefield v. Wells Fargo & Co.*,
   No. 13-05053, 2015 WL 3430240 (N.D. Cal. May 28, 2015) .................................................. 13

8

**Statutes**

9

Fed. R. Civ. P. 23 ................................................................................................................. 8, 13

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1674039.2

- v -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and the Court's October 4,

4   2018 Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary

5   Approval Order"; ECF No. 173), Plaintiffs respectfully request that the Court grant final approval

6   of the Class Action Settlement Agreement[1] reached between Plaintiffs and Defendant Intuit, Inc.

7   ("Intuit") to resolve this case.

8        The Settlement is the product of extensive, arms-length negotiations between the parties

9   and their experienced and well-informed counsel, and represents a strong result for the Class,

10   particularly given the limited release that is provided and the parties' respective litigation risks.

11        The Settlement provides substantial relief to Class Members, without the Class Members

12   releasing any claims they may have for monetary relief.  Under the Settlement, all Class Members

13   may enroll, at Intuit's expense, in two years of TransUnion credit monitoring and identity

14   restoration services.  Moreover, the Settlement includes important security changes and

15   commitments by Intuit that are well-designed to help protect the Class Members and other

16   taxpayers from being subjected to tax identity fraud through TurboTax going forward.

17        At the preliminary approval stage, the Court reviewed the Settlement and found that

18   certification of the Class was appropriate for settlement purposes and that the proposed

19   Settlement appeared to be "fair, reasonable and adequate, entered into in good faith, free of

20   collusion and within the range of possible judicial approval."  Preliminary Approval Order, ¶ 8.

21   The Court further directed that notice be disseminated to the Class pursuant to the proposed

22   Notice Program set forth in the Agreement.  *Id.*, ¶¶ 10-19.

23        As set forth in the accompanying declaration of Jennifer Keough, the Notice Program

24   approved and directed by the Court has been implemented by the parties and the Court-appointed

25   Settlement Administrator.  Keough Decl., ¶¶ 4-18.

26        The reaction of the Class thus far has been very positive.  Direct email or mail notice was

27

28

---

[1] The Class Action Settlement Agreement ("Agreement") is on the docket at ECF No. 171-1. Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Agreement.

sent to 846,816 Class Members.  *Id.*, ¶ 7.  As of the date of this filing, there have only been 3

objections filed.  By contrast, more than 7,600 claims for the credit monitoring services have

already been filed.[2]  *Id.* ¶ 19.

For the foregoing reasons and the others detailed below, the Settlement here readily

satisfies the standards for final settlement approval and should be approved.

## II.      RELEVANT BACKGROUND

### A.      Procedural History

A detailed history of this litigation and the negotiations that led to the proposed Settlement

was included in Plaintiffs' motion for preliminary settlement approval (ECF No. 171 at 3-5).

Additional details regarding Class Counsel's work in the litigation are included in the

accompanying counsel declarations and in Class Counsel's motion for attorneys' fees, costs, and

service awards, filed herewith.

### B.      Preliminary Settlement Approval

Plaintiffs filed a motion for preliminary approval of the Settlement on August 23, 2018

(ECF No. 171).  On October 4, 2018, the Court held a hearing on that motion and entered the

Preliminary Approval Order (ECF No. 173).  On November 6, 2018, the Court entered a

stipulated order continuing certain of the notice and related deadlines provided in the Preliminary

Approval Order, which continuance was necessitated by unforeseen delays in Intuit compiling the

Class List for purposes of disseminating notice (ECF No. 179).

Following the entry of the Preliminary Approval Order, the parties have worked closely

with the Settlement Administrator regarding implementation of the Notice Program and other

implementation matters.  Heller Decl., ¶ 24.

## III.     THE SETTLEMENT

### A.      The Class

In the Preliminary Approval Order, the Court provisionally certified, for settlement

---

[2] The deadline for Class Members to file objections is January 7, 2019.  The deadline for Class Members to file claims for the credit monitoring services is January 22, 2019.  Plaintiffs and/or the Settlement Administrator will update the Court regarding the final claims and objections numbers in advance of the Final Approval Hearing, which is scheduled for February 7, 2019.

purposes, the Class defined as follows:

> All persons in the United States in whose identities fraudulent federal tax returns for the Tax Years 2014, 2015, and/or 2016 were filed using TurboTax, as determined by the United States Internal Revenue Service. Excluded from the Class are all employees of Intuit, counsel for the Parties, the Judge presiding over this Action, and Court staff.

Preliminary Approval Order, ¶ 3.  According to Intuit's records, there are approximately 861,352 unique persons within the Class definition.  Keough Decl., ¶ 7.[3]

### B.    Benefits to the Class

The Settlement provides relief that is well-tailored to address and protect against the common harms and risks faced by the members of the Class.

### 1.    Credit Monitoring Services

All Class Members may enroll, at Intuit's expense, in two (2) years of TransUnion's credit monitoring and identity restoration services.  These services provide, among other benefits, unlimited access to the consumer's credit report, daily credit monitoring and fraud alerts, up to $1 million in identity theft insurance, credit dispute and identity restoration services, unlimited toll-free access to credit specialists, and access to educational resources regarding identity protection and credit.  (Agreement, ¶¶ 52-53, Ex. E).

The Settlement Website allows Class Members to enroll electronically in the TransUnion services. Class Members may also choose to enroll by mail. The Settlement Website further provides information about other resources available to Class Members who are victims of identity theft or fraud.  (Agreement, ¶ 52).

The deadline for Class Members to file claims for the TransUnion services is January 22, 2019.  As of the date of this filing, more than 7,600 claims have been filed.  Keough Decl., ¶ 19.

These credit monitoring and identity restoration services will be available to Class Members who enroll, within 5 business days after the Court enters Final Judgment approving the Settlement.  (Agreement, ¶¶ 52-53, Ex. E).

---

[3] Following de-duplication of the data, this number is slightly less than the 915,715 originally estimated by Intuit (*see* Agreement, p. 5, fn.1).

- 3 -

**2.**   **Security Improvements and Commitments By Intuit**

The Settlement also includes important security changes and commitments by Intuit. Since this litigation commenced, Intuit has adopted numerous security measures to reduce the incidence of tax identity fraud occurring through TurboTax.  These security measures are summarized in Exhibit B to the Agreement.  In addition to having implemented these security measures, Intuit agreed to continue to participate in the IRS Security Summit until at least 2021,[4] or until the IRS Security Summit process ends, whichever is sooner.  Intuit also agreed to follow the security criteria that come out of the IRS Security Summit process during that time. (Agreement, ¶ 55).

**C.**   **Limited Release**

In exchange for the consideration provided under the Settlement, Class Members will release Intuit and related entities from any non-monetary claims they may have related to the issues in this action.  The release provided under the Settlement extends solely to claims for declaratory, injunctive, and non-monetary equitable relief.  Class Members will not release any claims for damages or other monetary relief.  (Agreement, ¶ 72).

**D.**   **Separate Payment of Administrative Costs**

All fees and costs of the Settlement Administrator will be paid by Intuit in addition to (that is, on top of) the other settlement benefits provided to the Class Members.  (Agreement, ¶ 59).

**E.**   **Separate Payment of Attorneys' Fees, Costs and Service Awards**

Concurrently with this motion, Class Counsel are filing an application for an award of reasonable attorneys' fees and costs.  Class Counsel are requesting attorneys' fees in the amount of $2,717,225.56, plus reimbursement of $102,774.44 in litigation costs.  Class Counsel's fee application also requests service awards of $5,000 for each of the six Plaintiffs.  Any such attorneys' fees, costs, and service awards that are granted by the Court will be paid by Intuit in addition to (i.e., on top of) settlement benefits provided to the Class Members (Agreement, ¶ 66).

---

[4] The IRS Security Summit is a collaboration between the IRS, state tax administrators, and other industry members to combat identity theft refund fraud to protect the nation's taxpayers.

PLAINTIFFS' NOTICE OF MTN; MTN FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT; MPA
MASTER DOCKET NO. 15-CV-1778-EJD-SVK

IV.    **NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM**

The Notice Program approved and directed by the Court in its Preliminary Approval Order has been implemented by the Settlement Administrator and the parties.  *See generally* Keough Decl, filed herewith.  This program—which includes direct email/mail notice to the Class, a dedicated Settlement Website, and an informational Toll-Free Number—was well-designed to notify the Class about the case and the Settlement.

A.    **Direct Notice to Class Members**

As directed by the Preliminary Approval Order, Intuit provided the Settlement Administrator with a "Class List" with the pertinent identifying/contact information for Class Members, which the Settlement Administrator used to disseminate direct notice to Class Members via email and mail.  Keough Decl., ¶¶ 4-7.

For Class Members who, according to Intuit's records, were current or former TurboTax customers, the Settlement Administrator emailed them notice in the form approved by the Court. Keough Decl., ¶ 12.

For Class Members who, according to Intuit's records, have never been TurboTax customers, an experienced Skip-Trace Provider conducted a reverse look-up (i.e., skip trace) to attempt to identify a mailing address, using the name and Social Security numbers for them in the Class List, and provided the results to the Settlement Administrator.  Through this process, mailing addresses were found for more than 96% of these non-customer Class Members, and they were mailed notice in the form approved by the Court.  Keough Decl., ¶ 6.

B.    **Settlement Website and Toll-Free Number**

As directed by the Preliminary Approval Order, prior to sending the notices, the Settlement Administrator established a Settlement Website, at the URL www.IntuitDataLitigation.com, where Class Members can obtain further information about the case and the Settlement and enroll electronically in the credit monitoring services.  The Settlement Website is optimized for display on mobile devices, and includes key case documents, including a copy of the Agreement, the operative complaint; a detailed Long-Form Notice in the

1  form approved by the Court; and a printable credit monitoring enrollment form. The Settlement

2  Administrator also established a toll-free telephone number that Class Members can call to

3  receive additional information about the Settlement. Keough Decl., ¶¶ 17-18.

4  **V.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

5       The Ninth Circuit has identified "an overriding public interest in settling and quieting

6  litigation" and has noted that "[t]his is particularly true in class action suits." *Van Bronkhorst v.*

7  *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Netflix Privacy Litig.*, No. 11-379,

8  2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013). In evaluating a proposed class action

9  settlement under Federal Rule of Civil Procedure 23(e), the court's ultimate inquiry is whether the

10  settlement "is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv.*

11  *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted); *accord Torrisi v. Tucson Elec.*

12  *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

13       Under Ninth Circuit precedent, a district court should generally consider the following

14  factors when making this determination:  (1) the strength of the plaintiff's case; (2) the risk,

15  expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

16  action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

17  completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

18  presence of a governmental participant; and (8) the reaction of the class members of the proposed

19  settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)

20  (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Where, as here,

21  a proposed settlement is negotiated prior to formal class certification, courts must also scrutinize

22  the agreement for "evidence of collusion or other conflicts of interest." *Id.*

23       Moreover, under the recently-amended Rule 23(e)(2), a court must also consider whether:

24  (A) the class representatives and class counsel have adequately represented the class; (B) the

25  proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and

26  (D) the proposal treats class members equitably relative to each other.

27       Application of the relevant factors here demonstrates that the Settlement here is absolutely

28  fair, reasonable, and adequate and should be approved.

**A.**   **The strength of plaintiffs' case, the litigation risks, expenses, complexity, and likely duration of further litigation, and the risk of maintaining class action status throughout the trial all favor approval (*Churchill* factors 1, 2, 3)**

The Settlement provides substantial relief that is well-tailored to address the alleged misconduct and to protect against the common harms and risks faced by the members of the Class. These benefits will help Class Members avoid and mitigate the harms associated with the misuse of their identities and personal information, and will help reduce the incidence of tax identity fraud through TurboTax going forward. Moreover, the Settlement only releases non-monetary claims—notwithstanding that it provides valuable benefits to Class Members beyond injunctive relief—meaning that Class Members who experienced particular monetary damages resulting from the tax fraud that occurred in their names will still be able to pursue monetary relief claims if they choose.

These benefits speak directly to the shared experiences and risks faced by the Class. All Class Members have been subjected to identity theft. All of them had their personal information misused by fraudsters who filed fraudulent tax returns in their names through Turbo Tax. Moreover, all of them face continuing risks of identity theft and PII misuse going forward. The TransUnion services provided under the Settlement will help protect Class Members from identity theft and the misuse of their information in the future, as well as to mitigate the corresponding harms associated with the past misuse of their information. Moreover, the security changes and commitments by Intuit will benefit Class Members (and other taxpayers) by helping to shore up Intuit's security and thereby reduce the incidence of tax identity fraud through TurboTax. Indeed, this is the very type of injunctive relief that Plaintiffs sought in pursuing this litigation and that would have been available had the litigation proceeded.

Plaintiffs originally pursued damages as part of this litigation. It has become apparent, through discovery and the litigation, however, that there would be significant challenges in pursuing monetary relief on a class-wide basis under the circumstances of this case. It bears mentioning here, that the Class Members in this case were <u>not</u> deprived of their legitimate tax refunds due to the fraud, though in many cases those who were due a refund were delayed in receiving it. And some Class Members suffered out-of-pocket losses, such as for amounts paid to

1   accountants to help understand and deal with the fraud that occurred.

2         Plaintiffs and Class Counsel were careful to negotiate a Settlement that does not deprive

3   Class Members who suffered particular monetary damages the ability to pursue those claims.

4   Thus, although the Settlement does provide valuable benefits beyond the injunctive relief (the

5   TransUnion services), the Settlement does *not* release any damages or other monetary relief

6   claims Class Members may have.

7         The relief obtained for Class Members represents a strong result, particularly given the

8   risks and challenges of ongoing litigation.  Among other arguments that Intuit has made and/or

9   indicated it would make if the litigation proceeded are:  (a) third party fraudsters, and not Intuit,

10  are responsible for the tax identify fraud that occurred in the Class Members' names; (b) Intuit

11  took reasonable steps to prevent the fraud; (c) Intuit is obligated to file suspicious returns

12  prepared through TurboTax, and it is up to the IRS, not Intuit, to catch the fraud; and (d) most

13  attempts at tax fraud through TurboTax are caught.  Moreover, as the Court is aware, Intuit

14  succeeded in obtaining dismissal of some claims, and the Court has ordered that the issue of

15  whether certain Plaintiffs' claims are subject to arbitration must be decided by an arbitrator.

16        While Plaintiffs believe that these obstacles are not insurmountable, they are indicative of

17  the risks that Plaintiffs and the proposed Class would face if the litigation were to continue.  The

18  proposed Settlement provides well-tailored relief while allowing Class Members to avoid the

19  risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

20        The Settlement also provides another significant benefit that would not be available if the

21  litigation were to go to trial—prompt relief.  Proceeding to trial could add years to the resolution

22  of this litigation, given the legal and factual issues raised and likelihood of appeals.

23        In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued

24  litigation, trial and likely appeals is uncertain and could add years to this litigation, or could result

25  in no benefits to the Class.  Class Counsel strongly believe in the merits of this case, but

26  recognize that unsettled legal and factual questions would have been tested on a motion for class

27  certification, a motion for summary judgment, at trial, and/or on appeal.  Had this litigation

28  reached trial on behalf of a certified litigation class, it would have presented a costly, expert-

1  intensive and technically complicated trial that could have spanned weeks and necessitated

2  extensive and costly trial preparation.  Appeals would likely have followed the trial, resulting in

3  further delay, added costs, and further uncertainty for the Class regarding the result.

4       The substantial relief obtained through this Settlement, balanced against the length,

5  expense, and uncertainty of further litigation, weighs in favor of final approval.  *See Johnson v.*

6  *Quantum Learning Network, Inc.*, No. 15-5013, 2017 WL 747462, at *1 (N.D. Cal. Feb. 27,

7  2017) ("Courts have noted that uncertainty favors approval of a settlement."); *Rodriguez v. West*

8  *Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

9  *Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation

10  and compare the significance of immediate recovery by way of the compromise to the mere

11  possibility of relief in the future, after protracted and expensive litigation.") (citation omitted).

12       **B.    The amount offered in settlement favors approval (*Churchill* factor 4)**

13       Even though this Settlement would release only non-monetary claims (damages and other

14  monetary relief claims would not be released), the Settlement still provides valuable benefits to

15  Class Members beyond injunctive relief.  All Class Members may enroll in two (2) years of

16  TransUnion's credit monitoring service, which provides several valuable features including:

17  unlimited access to the consumer's credit report, daily credit monitoring and fraud alerts, up to $1

18  million in identity theft insurance, and credit dispute and identity restoration services.

19       Based on a comparison to other similar services available on the market, a reasonable

20  estimate of the retail value of the TransUnion services is between approximately $10 and $20 per

21  month, for a total value per enrollee of approximately $240 to $480 for the two years of service

22  provided by the Settlement.[5]

23       The Settlement also includes important security practice changes and commitments by

24  Intuit that have helped reduce tax fraud through TurboTax and will continue to do so going

25  forward.  While it is not possible assign a precise monetary value to this relief, there is no

26  question that it provides very significant benefits and cost savings to Class Members and to other

27

28  [5] *See* David Gewirtz, *Best Identity monitoring services for 2018*, CNET (Mar. 2, 2018),
    https://www.cnet.com/news/best-identity-monitoring-services/.

PLAINTIFFS' NOTICE OF MTN; MTN FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT; MPA
MASTER DOCKET NO. 15-CV-1778-EJD-SVK

1    taxpayers throughout the United States who otherwise would have faced a greater risk of being

2    victimized by tax identity fraud in the future.

3         The settlement relief here weighs strongly in favor of final approval.

4    **C.    The extent of discovery and stage of proceedings favor approval (*Churchill***

5         **factor 5)**

6         Class Counsel here negotiated on behalf of the Class armed with significant information

7    about the case and after years of investigation, discovery, and litigation.  This factor favors final

8    approval.  *See Slezak v. City of Palo Alto*, No. 16-3224, 2017 WL 2688224, at *4 (N.D. Cal. June

9    22, 2017) ("So long as the parties have 'sufficient information to make an informed decision

10   about settlement," this factor will weigh in favor of approval.'") (quoting *Linney v. Cellular*

11   *Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)); *Bellinghausen v. Tractor Supply Co.*, 306

12   F.R.D. 245, 257 (N.D. Cal. 2015) ("[T]he court's focus is on whether the parties carefully

13   investigated the claims before reaching a resolution.").

14        Indeed, the Settlement is informed by Class Counsel's substantial investigation and

15   discovery regarding the legal and factual issues in the litigation.  Before filing, Class Counsel

16   conducted an extensive investigation into the factual underpinnings of the practices challenged

17   and the applicable law.  Throughout the course of the litigation, Class Counsel engaged in an

18   ongoing factual and legal investigation, including reviewing publicly available information about

19   the filing of fraudulent tax returns through TurboTax and through other services, identifying and

20   speaking with potential pertinent witnesses and experts, and speaking with numerous affected

21   consumers about their experiences.  Heller Decl., ¶¶ 7, 11-19, 32-39; Goldman Decl., ¶¶ 7-12;

22   Kelston Decl. ¶¶ 2-3, 6-9; Siprut Decl., ¶¶ 4-8; Teppler Decl., ¶¶ 15, 18.

23        Moreover, the Parties engaged in extensive formal discovery, making them well-informed

24   about the relative strengths and weaknesses of their respective positions, and providing them with

25   information needed to negotiate the proposed Settlement.  Among other things, Class Counsel

26   reviewed and analyzed more than 100,000 pages of pertinent documents produced by Intuit, and

27   propounded and responded to numerous written discovery requests.  The Parties held frequent,

28   often lengthy, meet and confer sessions regarding their written discovery requests and objections

1   thereto, electronically stored data and documents, and to resolve various discovery disputes.

2   Heller Decl., ¶¶ 13-15.

3       Through those efforts they were able to resolve most disputes without the Court's

4   assistance, however the parties litigated one important discovery dispute before Magistrate Judge

5   van Keulen.  Class Counsel also engaged in third-party discovery, including with the U.S.

6   Internal Revenue Service and Santa Barbara Bank, a financial institution that processed certain

7   tax refunds for returns filed through TurboTax, to identify additional potentially relevant

8   documents and information.  Heller Decl., ¶ 17.

9       Further, as the Court is aware, there was significant litigation and motion practice in this

10  case, including two fully briefed motions to dismiss filed by Intuit, Intuit's arbitration motion, and

11  Plaintiffs' motion for interlocutory review pursuant to 28 U.S.C. § 1292(b).  In negotiating the

12  Settlement, Plaintiffs and their counsel were significantly informed by their work in briefing these

13  motions and, of course, by the Court's rulings on these motions.

14      As a result of this discovery and investigation, both parties were able to negotiate the

15  Settlement on a fully informed basis and with a thorough understanding of the merits and value of

16  the parties' respective claims and defenses.  Accordingly, the extent of discovery completed and

17  the stage of the proceedings weigh strongly in favor of final approval of the Settlement. *See*

18  *DIRECTV*, 221 F.R.D. at 528 ("the proposed settlement was reached only after the parties had

19  exhaustively examined the factual and legal bases of the disputed claims" and "[t]his fact strongly

20  militates in favor of the Court's approval of the settlement.").

21      **D.      The recommendation of experienced counsel favors approval (*Churchill*
            factor 6)**

22

23      The judgment of experienced counsel that final approval is appropriate "should be given

24  considerable weight."  *Slezak*, 2017 WL 2688224, at *5 (quoting *Larsen v. Trader Joe's Co.*, No.

    11-05188, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014)).  *See also Bellinghausen*, 306

25  F.R.D. at 257 (citation omitted) ("The trial court is entitled to, and should, rely upon the judgment

26  of experienced counsel for the parties.")  "The recommendations of plaintiffs' counsel should be

27  given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.

28

1    1979).

2          Class Counsel have extensive experience litigating and settling consumer class actions and

3    other complex matters,[6] and have conducted an extensive investigation into the factual and legal

4    issues raised in this litigation.  Based on their experience and knowledge about this case, Class

5    Counsel weighed the benefits of the Settlement against the inherent risks and expense of

6    continued litigation, and believe that the proposed Settlement is fair, reasonable, and adequate.[7]

7    That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and

8    adequate supports approving the Settlement.

9          **E.     The Class response to date favors approval (_Churchill_ factor 8)**

10         A court may appropriately infer that a class settlement is fair, reasonable, and adequate

11   when few class members object to it.  _See In re Omnivision Techs., Inc._, 559 F. Supp. 2d 1036,

12   1043 (N.D. Cal. 2008) ("[T]he absence of a large number of objections to a proposed class action

13   settlement raises a strong presumption that the terms of a proposed class settlement are favorable

14   to the class members.") (quotation marks and citation omitted).

15         Direct email or mail notice was sent to 846,816 Class Members.  Keough Decl., ¶ 7.  The

16   deadline for Class Members to object to the Settlement is January 7, 2019, and the deadline for

17   Class Members to submit claims for the credit monitoring benefit is January 22, 2019.  To date,

18   only 3 objections have been filed.[8]  By contrast, more than 7,600 claims for the credit monitoring

19   benefit have already been submitted.  Keough Decl., ¶ 19.[9]

20         A relatively small number of objections compared to the overall size of the Class would

21   certainly weigh in favor of the proposed Settlement.  _See Tadepalli v. Uber Techs., Inc.,_ No. 15-

22   04348, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (quoting _Omnivision Techs.,_ 559 F.

---

[6] Heller Decl., ¶¶ 2-4; Goldman Decl., ¶¶ 2-6, 9; Kelston Decl. ¶¶ 4-9, Ex. A; Siprut Decl., ¶¶ 2-3; Teppler Decl., ¶¶ 2-14; McCune Decl., ¶¶ 2-5; Hammond Decl., ¶¶ 3-8, Ex. 1.

[7] Heller Decl., ¶ 52; Goldman Decl., ¶ 17; Kelston Decl. ¶ 17; Siprut Decl., ¶ 13; Teppler Decl., ¶ 15.

[8] Pursuant to the schedule entered by the Court, Plaintiffs will address these objections, and any additional objections that may be filed before the deadline, in advance of the February 7, 2019 Final Approval Hearing.  _See_ ECF No. 179 at 3.

[9] Plaintiffs and/or the Settlement Administrator will update the Court regarding the final claims and objections numbers in advance of the Final Approval Hearing.

PLAINTIFFS' NOTICE OF MTN; MTN FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT; MPA
MASTER DOCKET NO. 15-CV-1778-EJD-SVK

1   Supp. 2d at 1043) (observing "the absence of a large number of objections to a proposed class

2   action settlement raises a strong presumption that the terms of a proposed class settlement action

3   are favorable to the class members"); *see also In re Rambus Inc. Derivative Litig.*, No. 06- 3513,

4   2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009).[10]

5       **F.      The Parties' non-collusive, arms-length negotiations favor approval**

6           The Court "must reach a reasoned judgment that the proposed agreement is not the

7   product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs*

8   *v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (citations omitted). *See also* Fed. R. Civ.

9   P. 23(e)(2)(B). Particular scrutiny of this factor is applied where, as here, a settlement is

10  negotiated before formal class certification. *Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d at

11  946. The present Settlement, and the hard-fought process by which it was reached, absolutely

12  withstand such scrutiny.

13          Where, as here, a settlement is the product of arm's-length negotiations conducted by

14  capable and experienced counsel, the court begins its analysis with a presumption that the

15  settlement is fair and reasonable. *See* 4 William B. Rubenstein, Alba Conte & Herbert Newberg,

16  Newberg on Class Actions § 13.45 (5th ed. 2014); *Slezak*, 2017 WL 2688224, at *5; *Wakefield v.*

17  *Wells Fargo & Co.*, No. 13-05053, 2015 WL 3430240, at *4 (N.D. Cal. May 28, 2015); *In re*

18  *Heritage Bond Litig.*, No. 02-1475, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).

19          The Settlement submitted for the Court's consideration is the product of hard-fought,

20  arm's-length negotiations between the parties and their qualified and informed counsel. The

21  parties participated in two full-day mediation sessions and ongoing negotiations through an

22  experienced and well-respected mediator—Hon. Edward A. Infante (Ret.) of JAMS—and were

23  able to reach an agreement with the help of Judge Infante. Throughout these negotiations, the

24  parties were represented by counsel experienced in the prosecution, defense and settlement of

25

26  _____

    [10] In addition, while there is no governmental entity party to this action (*Churchill* factor 7),
27  neither state nor federal officials have lodged any objection, to date, after receiving the required
    notice of the Agreement pursuant to 28 U.S.C. § 1715. *See generally Schuchardt v. Law Office of*
28  *Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) (finding that failure of governmental entity
    to file objection favored settlement approval).

1    complex class actions.  The participation of respected and neutral mediator Judge Infante across

2    two mediation sessions and ongoing negotiations shows that the proposed Settlement here is not

3    the product of collusion.  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D.

4    Cal. 2007) (involvement of mediator was "highly indicative of fairness"); *Satchell v. Fed.*

5    *Express Corp.*, No. 03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance

6    of an experienced mediator in the settlement process confirms that the settlement is non-

7    collusive."), *aff'd sub nom. Satchell v. Wallace*, 439 F. App'x 644 (9th Cir. 2011).  This factor

8    weighs in support of final approval.

9    **G.      The Rule 23(e)(2) considerations favor approval**

10    Under the recently-amended Rule 23(e)(2), a court considering whether to grant final

11    approval of a class settlement must also consider whether:  (A) the class representatives and class

12    counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

13    (C) the relief provided for the class is adequate; and (D) the proposal treats class members

14    equitably relative to each other.  These factors overlap substantially with the *Churchill* factors

15    discussed above, and likewise support approving the Settlement here.

16    **1.      The Class Representatives and Class Counsel have adequately**
          **represented the Class**

17

18    Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Class.

19    Plaintiffs and the Class Members share an interest in ensuring that Intuit's policies and practices

20    are appropriately designed to protect against fraudulent tax filings through TurboTax, and in

21    obtaining relief to protect against the harms that flow from such identity misuse as well as to

22    mitigate the effects from past fraudulent filings.  *See Hanlon v. Chrysler Corp*, 150 F.3d 1011,

23    1021 (9th Cir. 1998) (adequacy satisfied where "each . . . plaintiff has the same problem").

24    Moreover, Plaintiffs each committed substantial time to this case, and each reviewed and

25    approved of the proposed Settlement upon finding it was fair, reasonable, and adequate for the

26    Class.[11]  Plaintiffs have fairly and adequately protected the interests of the Class.

27    Moreover, as discussed above (*supra* section V.D), Class Counsel have extensive

28    _____

[11] Brown Decl. ¶¶ 4-9; Diaz Decl. ¶¶ 3-5; Knoch Decl. ¶¶ 3-5; Lebinski Decl. ¶¶ 3-5; Stock Decl. ¶¶ 7-9; Williams Decl. ¶¶ 3-5.

1    experience litigating and settling class actions, including consumer cases throughout the United

2    States.  Class Counsel are well qualified to represent the Class and have and will continue to

3    fairly and adequately protect the interests of the Class.

4         This consideration supports granting approval of the Settlement.

5         **2.    The Settlement was negotiated at arm's length**

6         As discussed above (*supra* section V.F), the Settlement here is the product of hard-fought,

7    arm's-length negotiations between the parties and their qualified and informed counsel, with the

8    assistance of Judge Infante, an experienced and well-respected mediator.  The parties participated

9    in two full-day mediation sessions and continued negotiations through Judge Infante before

10   reaching this Settlement.  This consideration weighs in favor of granting approval.

11        **3.    The relief provided for the Class is adequate**

12        As discussed above, this consideration is satisfied.  The Settlement provides substantial,

13   well-tailored relief for Class Members, and represents a particularly strong result given the

14   limited release provided (no monetary relief claims are released) and the parties' respective

15   litigation risks.  *See supra* section V.A-B.

16        **4.    The proposal treats Class Members equitably**

17        The proposed Settlement does not grant preferential treatment to any segment of the

18   Class. All Class Members may enroll, at Intuit's expense, in the TransUnion credit monitoring

19   services provided by the Settlement, and all Class Members (and other taxpayers) stand to benefit

20   from Intuit's security changes and commitments, in the form of reduced risk of being victimized

21   by tax identity fraud in the future.  Moreover, plaintiff service awards, such as those requested for

22   the six Plaintiffs here, are commonly awarded in class actions, are well-justified under the

23   circumstances here, and are appropriate in amount given precedent and the Plaintiffs'

24   commitment and effort in the litigation.

25   **VI.    CONCLUSION**

26        For the foregoing reasons, Plaintiffs respectfully request that the Court grant final

27   approval of the Settlement and enter Final Judgment in this matter.

28

1    Dated: December 17, 2018            Respectfully submitted,

2

3                                    */s/ Roger N. Heller*

Michael W. Sobol (SBN 194857)
Roger N. Heller (SBN 215348)

4                           Melissa A. Gardner (SBN 289096)

5                           **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

6                           275 Battery Street, 29th Floor
San Francisco, CA 94111

7                           Telephone: 415.956.1000
msobol@lchb.com

8                           rheller@lchb.com
mgardner@lchb.com

9                           Steven W. Teppler (FL SBN 14787)

10                         **ABBOTT LAW GROUP P.A.**
2929 Plummer Cove Road

11                         Jacksonville, FL  32223
Telephone: 904.292.1111

12                         steppler@abbotlawpa.com

13                         Mark S. Goldman (*pro hac vice*)
**GOLDMAN SCARLATO & PENNY, P.C**

14                         8 Tower Bridge, Suite 1025
161 Washington Street

15                         Conshohocken, PA 19428
Telephone: 484.342.0700

16                         goldman@lawgsp.com

17                         Ariana J. Tadler (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**

18                         One Penn Plaza, Suite 1920
New York, NY 10119

19                         Telephone: 212.594.5300
atadler@milberg.com

20

21                         Joseph J. Siprut (*pro hac vice*)
**SIPRUT PC**

22                         17 North State Street, Suite 1600
Chicago, IL 60602

23                         Telephone: 312.236.0000
jsiprut@siprut.com

24                         ***Class Counsel***

25

26

27

28